# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE WIRE HARNESS SYSTEMS ANTITRUST LITIGATION<br><br>MDL No. 2311<br><br><br>THIS DOCUMENT PERTAINS TO:<br>ALL ACTIONS | **Case No. 12-md-02311-MOB**<br><br><br><br>Assigned to the Honorable Marianne O. Battani |

## APPLICATION OF BRIAN R. STRANGE FOR INTERIM LEAD COUNSEL OF INDIRECT PURCHASER PLAINTIFFS AND CRAIG E. HILBORN FOR LIAISON COUNSEL OF INDIRECT PURCHASER PLAINTIFFS

Pursuant to this Court's February 17, 2012 Order Setting Initial Status Conference ("Order"), this collective group of firms respectfully submits their application to appoint Brian R. Strange as Interim Lead Counsel for a class of Indirect Purchaser Plaintiffs defined below, and Craig E. Hilborn as Liaison Counsel for the same class. As noted by this Court, the Direct Purchaser Plaintiffs filed a motion to consolidate their actions and to appoint interim lead and liaison counsel (Case No. 11-cv-15186, Doc. No. 11). In addition, there is a motion by the automobile dealer Plaintiffs to consolidate the cases and appoint interim counsel for the automotive dealer indirect Plaintiffs (Case Nos. 12-10676, 12-10681, 12-10687, 12-10688, Doc. Nos. 6-3). This is a motion for appointment to represent Indirect Purchaser Plaintiffs, separate from automobile dealers, respectfully submitted by Brian R. Strange of Strange & Carpenter as Interim Lead Counsel and Craig E. Hilborn of Hilborn & Hilborn as Liaison Counsel.

This MDL involves allegations of a conspiracy to fix prices involving wiring harnesses and related products in the automotive parts industry.[1] Additional automotive components antitrust actions are pending before the JPML, including *In re Instrument Panel Clusters Antitrust Litigation,* MDL No. 2349; *In re Fuel Senders Antitrust Litigation*, MDL No. 2350; and *In re Heating Control Panels Antitrust Litigation,* MDL No. 2351. Strange & Carpenter and this collective group of firms[2] have been investigating these automotive component claims, including the wiring harness, fuel sender, heating control panel and instrument panel cluster issues and are still in the process of sorting out the relationships between the claims and the parties. This application for appointment and the wiring harness case filed concurrently herewith, was filed to meet the March 8, 2012 deadline set by this Court for this MDL. Through discovery, the exact roles of the Defendants and relationships of the Plaintiff classes need to be defined. For

---

[1] The Department of Justice defined related products as automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, electronic control units, fuse boxes, relay boxes, junction blocks, and power distributors.

[2] The resume of Carpenter, Zuckerman & Roley LLP from Los Angeles is attached hereto as Exhibit "D," and the resume of Newman | DuWors, LLP from Seattle is attached hereto as Exhibit "E." The resume of Hilborn & Hilborn P.C. is attached hereto as Exhibit "C" and described herein. Instead of filing separate actions, the firms have agreed on Brian R. Strange as the proposed Interim Lead Counsel and filed one complaint.

example, at least some of the conspiring Defendants part manufacturers have exclusive contracts with the automobile manufacturers, which require that the parts that they manufacture not be sold directly to anyone other than those automobile manufacturers. Thus, many automobile dealers purchase directly from the manufacturer of the particular automobile, *i.e.*, a Cadillac dealer must purchase a part from General Motors. Many of the parts supplied to the automobile dealers are on warranty programs and thus, the automobile manufacturer obtains them from the parts manufacturers and sends them directly to the dealers without charge. Repair shops that need replacement parts frequently have to go directly to the dealers and not to the Defendants. Likewise, the similarities and differences between the wiring harness, the fuel sender, the heating control panel and the instrument panel clusters cases should all be analyzed.[3]

Strange & Carpenter and Hilborn & Hilborn respectfully point out these critical issues, not so they can be decided at the first status conference, but rather, so the Court can consider a leadership structure between direct action Plaintiffs, indirect action Plaintiffs for the automobile dealers and the indirect Plaintiffs in general, which can carefully map-out the best way for this case to proceed.

Strange & Carpenter respectfully submits, as set forth more fully below, it is well qualified to be Interim Lead Counsel for the indirect non-automobile Purchasers in this case.[4] Of particular significance to this case, Brian R. Strange was recently appointed by the Honorable Jack Zouhary to the Plaintiffs' Steering Committee in an antitrust price fixing case entitled *In re Polyurethane Foam Antitrust Litigation*, MDL No. 2196, with similar allegations of a criminal conspiracy to fix prices in the foam industry. That case is currently pending in the Northern District of Ohio. Mr. Strange has also authored articles on antitrust issues and has been involved in antitrust trials and appeals. With respect to the automobile industry, Mr. Strange is currently Co-Lead Counsel in the California State coordination proceedings involving unintended

---

[3] It appears that some of the same law firms have filed in other pending MDLs involving component parts separate from the wiring harnesses involved in this MDL. It further appears likely that the other MDLs (Nos. 2349, 2350 and 2351) may be transferred to this Court. Thus, the leadership here may influence or need to be coordinated with the other MDLs.

[4] Strange & Carpenter's resume is attached hereto as Exhibit "A."

acceleration issues for Toyota automobiles, entitled *Toyota Motor Cases*, JCCP No. 4621.  In

addition, Mr. Strange is at the forefront of Japanese and foreign corporation litigation issues,

including being recently appointed to the leadership committee in *In re Sony Gaming Networks

and Customer Data Security Breach Litigation,* MDL No. 2258, by the Honorable Anthony J.

Battaglia in the Southern District of California.  Later this month, Mr. Strange is speaking at the

International Seminar on Consumer Litigation for Japan, the United States and China, in Tokyo,

Japan.  This seminar will be held jointly by the Japan Federation of Bar Associations (the JFBA)

and the American Bar Association (the ABA) and involves legal experts from these three

countries focusing on recent trends and issues in class-action consumer lawsuits and cross-border

consumer litigation in their respective countries.

Mr. Strange's knowledge of current antitrust price fixing issues, the Japanese automobile

industry, and complex MDLs will be helpful in this case.  Strange & Carpenter's willingness and

ability to commit to a time-consuming process, ability to cooperate with others and access to

sufficient resources to advance this litigation in a timely manner, are more fully discussed below.

In addition, Hilborn & Hilborn respectfully submits that Mr. Hilborn is well qualified to

be Interim Liaison Counsel for the indirect non-automobile Purchasers in this case.[5]  In 1993,

Mr. Hilborn and his father founded Hilborn & Hilborn, P.C. and since that time, he has

successfully prosecuted cases against automobile manufacturers in many multi-million dollar

cases, as more fully discussed below.  Liaison Counsel is also well versed in the auto industry

having previously been an attorney in the Office of the General Council at Ford Motor Company.

## I.    SUMMARY OF ARGUMENT

"The judge must choose the class counsel when more than one class action has been

filed and consolidated or centralized. . . . If there are multiple applicants, the court's task is to

select the applicant best able to represent the interests of the class." *Manual for Complex

Litigation,* Fourth Edition ("MCL4th"), § 21.271.  In evaluating the leadership appointment

---

[5] Hilborn & Hilborn, P.C.'s CV is attached hereto as Exhibit "C."

factors set forth in the applicable case law, Fed. R. Civ. P. 23(g), and the *Manual*, a court should consider the work that will be required to prosecute the particular class action lawsuits. Moreover, the trend is that individual attorneys, rather than law firms, should be appointed, since it is the individual lawyers who make the difference in any case.

Proposed Interim Lead and Liaison Counsel bring the level of multidistrict litigation experience and technical expertise required to effectively and efficiently litigate these actions. Strange & Carpenter has used its expertise and knowledge of the applicable law, and has worked extensively to identify and investigate the facts and claims asserted in this case.[6]

Proposed Interim Lead Counsel have extensive experience crafting and obtaining multi-state class certifications under a variety of state consumer protection laws. Because a case like this rises or falls on the class certification determination, appointing leadership counsel experienced in this area is vitally important to protecting plaintiffs' and the other class members' claims. These attorneys have a proven track record of getting this done.

Moreover, proposed Interim Lead and Liaison Counsel have proven experience successfully leading multidistrict litigations, including managing cases and lawyers in cases similar to this one. Lawyers who can cooperate with others and who can take into account and manage often competing interests and viewpoints are essential to a successful MDL prosecution.[7]

---

[6] In addition to being a geographically diverse group, including firms from Seattle and Los Angeles, proposed Interim Liaison Counsel, Hilborn & Hilborn have over 19 years of experience in this Court.

[7] Because this application was just filed in this MDL, Strange & Carpenter have not had a chance to confer with other counsel regarding the leadership structure for the indirect plaintiffs. They will do so prior to the March 16, 2012 status conference and report to the Court.

Finally, proposed Interim Lead and Liaison Counsel are fully committed to this litigation, and have more than adequate capital and personnel resources to prosecute this action against their well funded and deep-pocketed adversaries.

## II.    BACKGROUND

Over the last year, the United States Department of Justice and its counterparts in Europe and Asia have uncovered one of the largest price fixing conspiracies in history. The conspiracy involves Tier 1 suppliers to auto-manufacturers which have been bid-rigging and illegally allocating market shares for critical electronic systems that are installed into every automobile in the planet. These systems are mostly sold to original equipment manufacturers ("OEMs"), such as General Motors and Ford, who generally pass on the costs to individual consumers.

The suppliers fixed the prices for auto-wiring harness systems, the central nervous system of automobiles' electronic systems. The market for auto-wiring harness systems alone is over $10 billion annually in the United States. The conspirators also agreed to fix the prices for instrument cluster panels that have replaced traditional dashboards, as well as the market for fuel senders that electronically inform drivers of the amount of fuel remaining in their gas tanks.

Two of the main defendants in these consolidated matters, Yazaki Corporation and Furukawa Electric Co., Ltd., pled guilty to criminal antitrust charges in the United States. They also agreed to pay record setting fines of $470,000,000 and $200,000,000, respectively.

The process and nature of the modern automobile manufacturing process and the market for automotive subsystems and parts played a significant contribution in the creation of the conspiracy. OEMs do not design and manufacture all the parts and systems in their automobiles. Brakes and electronic systems are often designed and manufactured to the OEM specifications by the Tier 1 suppliers. The Tier 1 suppliers then sell the systems to the OEMs, who assemble the various systems into the finished product. There are only a handful of Tier 1

suppliers. They only have a limited number of direct customers. This made it far easier to arrange and enforce the agreement to fix prices.

The Tier 1 suppliers' systems that are sold for replacements parts are distributed mostly through the OEMs to dealerships and repair shops.

## III. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 23(g)(3) authorizes the court to "designate interim class counsel to act on behalf of a putative class before determining whether to certify the action as a class action." While Rule 23(g) does not set forth the standards to be applied in choosing interim class counsel, courts have held that the factors used to appoint class counsel pursuant to Rule 23(g)(1) should be applied. *Parkinson v. Hyundai Motor Am*., No. SACV 06-345 AHS (MLGx), 2006 U.S. Dist LEXIS 59055, at *6 (C.D. Cal. Aug. 7, 2000) (citing MCL4th § 21.11); *In re Air Cargo Shipping Serv. Antitrust Litig*., 240 F.R.D. 56, 57 (E.D.N.Y. 2006). These factors include:

- The work counsel has done in identifying or investigating potential claims in the action;

- Counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action;

- Counsel's knowledge of the applicable law; and

- The resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

"In evaluating prospective class counsel, the court should weigh all pertinent factors. No single factor should necessarily be determinative in a given case." Advisory Committee Notes to the 2003 Amendments to Fed. R. Civ. P. 23(g). A court may also consider "the

attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court." MCL4th, §10.224, p. 27. As discussed herein, Proposed Interim Class Counsel satisfy all of the Rule 23(g) factors and are the counsel best able to represent the interests of the various classes proposed in this Action. The success of these attorneys in leading these types of cases is attributable to their experience and qualifications, their ability to manage litigation such as this, and their willingness to devote the necessary resources to prosecute these types of actions to their successful conclusion.

## IV.    INVESTIGATION BY EXPERIENCED COUNSEL

Proposed Interim Lead and Liaison Counsel's experience in class action litigation, including multidistrict litigation and antitrust matters, and their ability and willingness to commit the resources required to effectively prosecute this case make them the clear choice for leadership selection here, based on the four enumerated Rule 23(g)(1)(A) factors. Strange & Carpenter has been actively investigating the potential claims here. Strange & Carpenter has:

- Extensively investigated the relationships between automobile dealers, repair shops, end users and suppliers of parts;

- Analyzed the wholesale and MSRP structures of the components parts; and

- Analyzed economic data and consulted with top economic experts on the industry.

**A.    Proposed Interim Lead and Liaison Counsel's Experience in Handling Class Actions and Other Complex Litigation, As Well As Their Knowledge of and Experience in the Applicable Antitrust Laws, Supports Approval of Their Requested Leadership Structure (Fed. R. Civ. P. 23(g)(1)(A)(ii) and (iii))**

Courts applying Rule 23(g) have placed great emphasis on proposed lead class counsel's experience with and knowledge of the applicable law – considering it to be the "most persuasive" factor in the Rule 23(g) analysis. *See, e.g., In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) ("The consideration that the Court finds to be the most persuasive, however, relates to [proposed class counsel's] experience in, and

7

knowledge of, the applicable law in this field.").  Proposed Interim Class Counsel is a recognized and proven leader of the complex litigation bar, has substantial experience litigating claims similar to those here, possesses knowledge of the applicable law, and has expertise in handling class actions and other complex litigation, including antitrust cases.

Here, for example, proposed Lead Counsel is serving on the Plaintiffs' Steering Committee in a similar antitrust price fixing litigation, *In re Polyurethane Foam Antitrust Litigation*, MDL No. 2196 (appointed by Judge Zouhary), considered one of the largest price fixing cases in recent years.

As demonstrated below, both applicants have the expertise and skill set that qualify them to lead this litigation.[8]

### 1.  Brian R. Strange of Strange & Carpenter

Brian R. Strange is an experienced and respected class action and complex business trial lawyer.  Mr. Strange has lectured on class actions before numerous organizations, including the California State Bar, the Practicing Law Institute, and various consumer attorneys organizations, and is frequently quoted in various media outlets as an authority on class action litigation.

Mr. Strange has served as lead counsel in several class action cases with settlements obtained in excess of $500 million, including settlements with the nation's largest corporations,

---

[8] The trend in appointing interim class counsel (and class counsel) in multidistrict litigation has been toward appointing individual lawyers, rather than their law firms.  By so doing, the Court is assured that the appointed attorneys are personally engaged in prosecuting the case to its successful conclusion, instead of turning the case over to unknown attorneys, for the benefit of the appointed attorneys' firms.  District Court Judge Carl Barbier recently made this point in his leadership appointment order in *In Re: Apple iPhone 3G and 3GS "MMS" Marketing and Sales Practices Litigation*, MDL No. 2116 (E.D. La. March, 4 2010), stating:

> The aforementioned counsel are to be aware that appointment to the PSC is of a personal nature.  Accordingly, the above appointees cannot be substituted by other attorneys, including members of the appointee's law firm, to perform the PSC's exclusive functions, such as committee meetings and court appearances, except with prior approval of the Court.

*Id*. at *2.  A copy of this Order is attached hereto as Exhibit "B."

and has organized and coordinated numerous slates of plaintiffs' counsel in various MDLs across the country. He has been at the forefront of many multidistrict and class action cases, including arguing *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 30 Cal. Rptr. 3d 76 (2005) before the California Supreme Court. In what was one of the most widely cited cases by courts nationwide on this issue, the Court in *Discover Bank* held that bans on class actions in arbitration clauses were unenforceable. Mr. Strange has also been appointed lead counsel in numerous national class actions, including: (a) a nationwide settlement against AT&T Mobility LLC regarding flat-rate early termination fees for mobile phones, entitled *Hall, et al. v. AT&T Mobility LLC f/k/a Cingular Wireless LLC, et al.*, Case No. 07-05325 (JLL) (D. N.J.), which resolved cellular telephone cases involving early termination fees across the country; (b) *Simonet, et al. v. GlaxoSmithKline, et al.*, Case No. 06-1230 (GAG/CVR) (D. P.R.), a case involving the anti-depressant drug Paxil; (c) *In Re: Apple iPhone 3G and 3GS MMS Marketing and Sales Practices Litigation*, MDL No. 2116 (E.D. La.) (Executive Committee member in lawsuit concerning the operation of the Apple iPhone on AT&T 3G and 3GS networks); (d) *Toyota Motor Cases*, J.C.C.P. 4621 (L.A. Sup. Ct.) (Mohr, J.) (appointed Co-Lead Class Counsel in the California state coordinated proceeding involving allegations of unintended acceleration in Toyota vehicles); and (e) *In re Sony Gaming Networks and Customer Data Security Breach Litigation,* MDL No. 2258 (Southern District of California) (appointed Plaintiffs' Steering Committee member).

Mr. Strange authored an article entitled *Municipalities: Welcome to the Antitrust Restraints of the Free Market*, <u>Century City Bar Journal</u>, Spring, 1982, and has lectured on class actions before various organizations, including the California State Bar and the Practicing Law Institute. At the end of March, Mr. Strange will speak in Japan regarding cross-border class actions and comparison of United States, Japan and Chinese consumer laws. Mr. Strange was designated as one of Southern California's Super Lawyers in 2010, 2011 and 2012, and is an

"AV" rated lawyer by Martindale Hubbell.

## 2. Craig E. Hilborn of Hilborn & Hilborn

Mr. Hilborn is President and co-founder of Hilborn & Hilborn, P.C. Mr. Hilborn is well qualified to be Interim Liaison Counsel for the indirect non-automobile Plaintiffs in this case. In 1993, Mr. Hilborn and his father founded Hilborn & Hilborn, P.C., and since that time, he has concentrated on representing persons seriously injured as a result of defective products and the negligence of others. On August 20, 2004, Mr. Hilborn won an appeal in the United States Sixth Circuit Court of Appeals, *Nemir v. Mitsubishi*, Case No. 02-1780; 03-1228. *Nemir* will have widespread legal ramifications for product liability cases throughout the United States. For nearly four decades, Hilborn & Hilborn has prosecuted cases against automobile manufacturers in many cases in the courts in Michigan. Mr. Hilborn has settled many multi-million dollar cases and has established a track record not just because of his deep expertise, but his tenacity and passion for justice. Mr. Hilborn has lectured on the subject of complex product liability issues involving international manufacturers, has been nominated as a Michigan Super Lawyer for the past six years and is AV rated by Martindale Hubbell. Liaison Counsel is also well versed in the auto industry having previously been an attorney in the Office of the General Council at Ford Motor Company.

### B. Proposed Interim Lead and Liaison Counsel's Significant Commitment of Resources on Behalf of the Class and Their Commitment to Provide Such Resources Supports Their Appointment as Co-Lead Counsel (Fed. R. Civ. P. 23(g)(1)(A)(iv))

Proposed Interim Lead and Liaison Counsel's track record of effectively prosecuting complex class actions reflects their willingness to commit the resources and time necessary to effectively prosecute this case. On many occasions, proposed Interim Lead and Liaison Counsel have prosecuted cases lasting many years and requiring significant resources. For example, in a recent settlement with Dell Computer, approved by Judge Ware in the Northern District of California, Strange & Carpenter litigated the case for over six years. *Fiori, et al. v. Dell Computer, et al.,* Case No. 5:09-cv-01518-JW. Proposed Interim Lead and Liaison Counsel fully

expect that similarly extensive resources will be required here, and they are prepared to invest those resources on behalf of plaintiffs and the other members of the proposed classes.

Proposed Interim Lead and Liaison Counsel have the capital and personnel resources necessary to represent plaintiffs and the proposed class and have already demonstrated a willingness to expend these resources to properly and efficiently prosecute these actions. Indeed, based on their experience in filing and successfully litigating other class actions, proposed Interim Lead and Liaison Counsel fully understand the substantial investment of time and resources necessary to properly pursue and lead such litigation and are committed to devoting the necessary resources to this case.

## V.    CONCLUSION

The moving parties respectfully submit that Brian R. Strange of Strange & Carpenter should be appointed Lead Counsel for the indirect Purchaser Class, excluding automobile dealers, and that Craig E. Hilborn of Hilborn & Hilborn should be selected as Liaison Counsel for the same class. Strange & Carpenter would also be willing to serve as Co-Lead Counsel for such a class to the extent the Court thinks such a structure is appropriate.

Dated:  March 8, 2012               **STRANGE & CARPENTER**

_____/s/_____
Brian R. Strange

STRANGE & CARPENTER
BRIAN R. STRANGE
12100 Wilshire Blvd., Suite 1900
Los Angeles, CA 90025
Telephone:  (310) 207-5055
Facsimile: (310) 826-3210
lacounsel@earthlink.net

Craig E. Hilborn
HILBORN & HILBORN, P.C.
CRAIG HILBORN (Mi. Bar. No. P43661)
GEORGE HILBORN (Mi. Bar. No. P14955)
999 Haynes Street, Suite 205
Birmingham, Michigan 48009
Telephone: (248) 642-8350
Facsimile: (248) 642-3016
Craig@hilbornlaw.com
George@hilbornlaw.com

CARPENTER, ZUCKERMAN & ROWLEY, LLP
PAUL S. ZUCKERMAN
8827 West Olympic Blvd.
Beverly Hills, CA 90211
Telephone: (310) 273-1230
Facsimile: (310) 858-1063
paul@czrlaw.com

Derek A. Newman
NEWMAN | DUWORS, LLP
1201 Third Ave., Ste. 1600
Seattle, WA 98101
(206) 274-2800
(206) 274-2801 (fax)

*Attorneys for Plaintiff and all others similarly situated*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed through the CM/ECF system on March 8, 2012, which automatically serves an electronic notice to all registered individuals.

Dated:  March 8, 2012                **STRANGE & CARPENTER**

                                                     **/s/**
                        Brian R. Strange

                        STRANGE & CARPENTER
                        BRIAN R. STRANGE
                        12100 Wilshire Blvd., Suite 1900
                        Los Angeles, CA 90025
                        Telephone:  (310) 207-5055
                        Facsimile: (310) 826-3210
                        lacounsel@earthlink.net

# EXHIBIT A

# Strange & Carpenter

12100 Wilshire Blvd., Suite 1900
Los Angeles, CA  90025
Tel: (310) 207-5055
Fax: (310) 826-3210
www.strangeandcarpenter.com

## FIRM RESUME

# FIRM RESUME

Strange & Carpenter has battled at the forefront of class actions and complex business disputes since the firm's establishment 23 years ago. Its members were educated at the nation's leading law schools before joining forces to provide the superior and responsive legal services that Strange & Carpenter is known for today.

The firm has been featured as one of the five most successful California small law firms as far back as 1994 by *California Law Business*. In just the last few years, Strange & Carpenter's settlements for class members in various cases have exceeded $100 million. Partners Brian R. Strange and Gretchen Carpenter were named as Southern California Super Lawyers in 2010, 2011 and for the upcoming year 2012, an award given to only 5% of practicing lawyers in California. Strange & Carpenter has been appointed lead counsel and held numerous leadership positions in class actions and mass disaster litigation across the country, including noted cases such as the San Juan Dupont Plaza Hotel fire litigation and litigation arising out of the Iran-Contra scandal.

Strange & Carpenter serves at the forefront of several current class action issues, including Discover Bank v. Superior Court, 36 Cal. 4th 148, 30 Cal. Rptr. 3d 76 (2005) where Strange & Carpenter counsel argued before the California Supreme Court in a case ultimately holding that class action bans are unenforceable in California. Strange & Carpenter has also recently litigated cases involving Internet security breaches and privacy violations. The following is a partial list of the class action settlements in which the firm has served as class counsel over the last several years: Carpenters and Joiners Welfare Fund, et al. v. SmithKline Beecham Corporation d/b/a GlaxoSmithKline, et al., United States District Court for the District of Minnesota Case No. CV 04-3500 MJD/SRN (settled for $40 million); MacGregor v. Schering-Plough Corporation, Los Angeles Superior Court Case No. BC 24804 (settlement valued at $202.5 million); Schwartz, et al. v. Citibank (South Dakota), N.A., et al., United States District Court for the Central District of California Case No. 00-00075 LGB (JWJx) (settled for $36 million); Mayemura, et al. v. Chase Manhattan Bank, United States District Court for the Central District of California Case No. 00-00753 LGB (JWJx) (settled for $22.5 million); Blake H. Brown v. Fremont Compensation Insurance Company, Los Angeles Superior Court Case No. BC 180443 (settled for $25 million); Edelist v. First USA, N.A., Orange County Superior Court Case No. 02CC00294 (settled for $57 million); Shea v. Household Bank (SB), National Association, Orange County Superior Court Case No. 00CC12588 (settled for $34.9 million); Hall, et al. v. AT&T Mobility LLC f/k/a Cingular Wireless LLC, et al., United States District Court for the District of New Jersey Case No. 07-05325 (JLL) (settled for $18 million); Fiori, et al. v. Dell Inc., United States District Court for the Northern District of California Case No. C 09- 01518-JW (settled for $30 million); and Simonet, et al. v. SmithKline Beecham Corporation d/b/a GlaxoSmithKline, et al., United States District Court for the District of Puerto Rico Case No. 06-1230 (GAG) (settled for $28 million).

Strange & Carpenter selectively chooses and monitors its cases and clientele in order to provide the highest quality work and immediate attention to its cases and the needs of clients and class members. The firm utilizes paralegals as well as computerized document control, which enables its lawyers to effectively manage large cases of national scope.

The following is a biographical sketch of the some of the members of Strange & Carpenter.

## Brian R. Strange

Brian R. Strange is an experienced and respected class action and complex business trial lawyer. Mr. Strange has lectured on class actions before various organizations, including the California State Bar, the Practicing Law Institute, and various consumer attorneys organizations. In late March 2012, Mr. Strange is speaking at the International Seminar on Consumer Litigation in Japan, the United States and China, in Tokyo. This seminar will be held jointly by the Japan Federation of Bar Associations (the JFBA) and the American Bar Association (the ABA) and involves legal experts from these three countries focusing on recent trends and issues in class-action consumer lawsuits and cross-border consumer litigation in their respective countries. Mr. Strange recently authored an article entitled "Security Breach Injury in Cyberspace: Does the Law Keep Up with New Damage Frontiers?" published in *Los Angeles Lawyer* February 2012. Mr. Strange was designated as one of Southern California Super Lawyers in 2010, 2011 and 2012 and has successfully concluded settlements for class members in excess of $100 million in just the last two years.

Mr. Strange was recently appointed to Plaintiffs' Steering Committee in *In re Sony Gaming Networks and Customer Data Security Breach Litigation*, MDL No. 2258, by the Honorable Anthony J. Battaglia in the Southern District of California. Mr. Strange was approved by Judge Jack Zouhary to serve on the Plaintiffs' Executive Committee in a consolidated antitrust case, In Re: Polyurethane Foam Antitrust Litigation, pending in the United States District Court for the Northern District of Ohio, MDL No. 2196. That case involves allegations of price fixing in the sale of polyurethane foam and is considered one of the largest antitrust cases in the last 10 years. Mr. Strange was also recently appointed Co-Lead Class Counsel by Los Angeles Superior Court Judge Anthony Mohr in the California state coordinated proceeding in Toyota Motor Cases, J.C.C.P. 4621, involving allegations of unintended acceleration in Toyota vehicles. Mr. Strange was appointed to the Plaintiffs' Steering Committee by Judge Ortrie D. Smith in In Re: Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation, pending in the United States District Court for the Western District of Missouri - Western Division (Kansas City), MDL No. 1967. That case involves polycarbonate plastic baby bottles and children's training or spill-resistant cups containing the chemical Bisphenol-A ("BPA"). Mr. Strange was also selected by Judge Carl Barbier as a member of the Plaintiffs' Executive Committee in In Re: Apple iPhone 3G and 3GS MMS Marketing and Sales Practices Litigation, pending in the United States District Court for the Eastern District of Louisiana (New Orleans), MDL No. 2116. That case involves the operation of the Apple iPhone on AT&T 3G and 3GS networks. Mr. Strange

has been involved in cases at the forefront of Internet law in the last few years and has been lead counsel in numerous class actions related to credit cards and online issues, including against the nation's largest banks, telephone companies and pharmaceutical companies. Mr. Strange served as lead Class Counsel in a nationwide settlement against AT&T Mobility LLC regarding flat-rate early termination fees for mobile phones, entitled Hall, et al. v. AT&T Mobility LLC f/k/a Cingular Wireless LLC, et al., United States District Court for the District of New Jersey, Case No. 07-05325 (JLL), which resolved cellular telephone cases involving early termination fees across the country. Mr. Strange also served as lead counsel in a recently settled case entitled Simonet, et al. v. GlaxoSmithKline, et al., held in the United States District Court for the District of Puerto Rico, Case No. 06-1230 (GAG/CVR), involving the anti-depressant drug Paxil.

In his past 20 years participating in complex cases, Mr. Strange has been involved in noted mass disaster litigation such as the MGM Grand Hotel fire litigation; the "Crandall" gem case; the San Juan Dupont Plaza Hotel fire litigation in Puerto Rico; litigation arising out of the Iran-Contra scandal; and numerous national class actions. Trial victories include a $160 million judgment against the principals of an investment scam in a case tried in Los Angeles Superior Court in 1991. In February 1993, Mr. Strange obtained a $21 million punitive damage verdict against First State Insurance Company, reportedly one of the largest punitive damage verdicts in California in 1993. In May 1993, Mr. Strange obtained the first punitive damage verdict in 17 years in a courtroom in Santa Barbara on behalf of a homeless family. Since 2000, Mr. Strange has acted as lead counsel in several class action cases with settlements obtained in excess of $500 million, including settlements with the nation's largest corporations.

Mr. Strange has been interviewed for stories relating to his cases by *The New York Times*, *The Los Angeles Times*, *The Washington Post*, *The National Law Journal*, *The Daily Journal*, and others.

Mr. Strange received his Bachelor of Arts in Economics from the University of California at Los Angeles and his law degree from the University of California, Hastings College of Law. Mr. Strange is admitted to practice before all courts in the State of California, the United States Supreme Court, all federal district courts in California, and the United States Courts of Appeals for the First, Third, Fifth, Eighth, Ninth, and Tenth Circuits, as well as the United States Court of Federal Claims. Mr. Strange authored "Municipalities: Welcome to the Antitrust Restraints of the Free Market," *Century City Bar Journal*, Spring, 1982.

Mr. Strange is an active member of the community, where he sits on the Board of Directors and the Executive Committee of Public Counsel, the nation's largest pro-bono law firm, and is the President of the Boys and Girls Club of Malibu. A noted adventurer, Mr. Strange was awarded an anniversary medal by the King of Nepal for his 2009 summit of Mount Everest. He is one of the select few who have summitted the highest peaks of all seven continents.

## Gretchen Carpenter

Gretchen Carpenter is a partner of Strange & Carpenter. She received her Bachelor of Arts in Political Science and Theatre, *cum laude*, from the University of California at San Diego, where she was a member of Phi Beta Kappa. Ms. Carpenter received her law degree from UCLA School of Law, where she was an editor of the Women's Law Journal. She is admitted to practice before all courts in the State of California and several federal courts throughout the country, including United States Courts of Appeals for the Third, Fifth, Eighth, Ninth, and Tenth Circuits. Ms. Carpenter was chosen as one of Southern California's Super Lawyers in 2010, 2011 and 2012.

Ms. Carpenter is an experienced and respected class action litigator, having successfully analyzed, drafted and argued numerous class certification and other complex motions. Ms. Carpenter has extensive knowledge of Rule 23 procedures, and her superior drafting and analytical skills have brought her to the forefront of class action litigation, including certifying a nationwide class under California law in <u>Talwar, et al. v. Creative Labs, Inc.</u>, United States District Court for the Central District of California Case No. CV 05-3375 FMC (AJWx). Ms. Carpenter recently successfully argued before the California Court of Appeal in <u>Hale v. Sharp Healthcare</u>, 183 Cal. App. 4th 1373, 108 Cal. Rptr. 3d 669 (2010), which upheld claims under California's Unfair Competition Law in a published decision that has been cited by several other state and federal courts, including the California Supreme Court, as well as in various treatises. Ms. Carpenter has also lectured on class actions and class-wide arbitration procedures before various continuing legal education groups and other organizations.

## John Kristensen

John Kristensen is an associate of Strange & Carpenter who joined the firm in 2011. He returned to Los Angeles, where he began his career, to expand his practice to include prosecution of class action cases. In 2011, the Daily Journal selected Mr. Kristensen as one of five associates to watch in the state of California. He was the sole plaintiffs' attorney to receive the accolade.

Mr. Kristensen spent the previous three years in the Bay Area representing plaintiffs in catastrophic cases with an emphasis on aviation and automobile products liability lawsuits. He remains in the role as the youngest attorney appointed to the plaintiffs' steering committees in the California Toyota Sudden Acceleration cases.

In May 2010, the National Highway Traffic Safety Administration ("NHTSA") accepted Mr. Kristensen's request to open a timeliness query into the 2005 Toyota steering relay rod recall. Mr. Kristensen uncovered that Toyota had received nearly 40 complaints of the rods failing in the United States by October 2004 when Toyota issued the recall for the parts in pickups and 4Runners in Japan, but not the United States. Toyota told NHTSA at the time they had no similar information in the United States and that is why Toyota delayed

the recall for nearly a year in America. Toyota paid the maximum fine in December 2010 of over $16 million as a result of Mr. Kristensen's investigation.

Good Morning America, *USA Today*, AP, *Los Angeles Times*, *Washington Post*, KNBC and the *Daily Journal* have all reported on Mr. Kristensen's relentless effort to hold manufacturers accountable.

Mr. Kristensen was born in Massachusetts and raised in North Andover. Mr. Kristensen received his Undergraduate degree in Political Science at the University of Oregon. Upon graduation, Mr. Kristensen moved to Los Angeles to work for the California Democratic Party in the 1998 election. In 1999, Mr. Kristensen received a scholarship to attend Washington & Lee University School of Law in Lexington, Virginia.

### Carolyn Deverich

Carolyn Deverich is an associate of Strange & Carpenter. Ms. Deverich received her J.D. from Brigham Young University, *magna cum laude*, in 2007, where she served as senior editor of the BYU Law Review, competed on the Trial Advocacy team, and served as a small claims mediator in the Utah County court system. In 2006, she published a comment on First Amendment Establishment and Free Exercise rights in the BYU Law Review. She received her Bachelor of Arts in American Studies, *magna cum laude* and *University Honors*, from Brigham Young in 2004, and in conjunction with her Honors distinction, penned a thesis on American history and historical relativism. She has also published articles in the BYU Pre-Law Review, Insight Magazine, the Latin American Literature Forum, and the Americana Journal of American Studies.

Prior to joining Strange & Carpenter, Ms. Deverich worked as a litigation associate at the international law firm Paul, Hastings, Janofsky & Walker LLP where she specialized in securities law, business torts and class action claims. Before entering private practice, Ms. Deverich interned with the Criminal Appellate Division of the U.S. Department of Justice in Washington D.C.

### David Holop

David Holop is an associate of Strange & Carpenter. Mr. Holop received his law degree from UCLA in 2011. While at UCLA, Mr. Holop was the Managing Editor for the UCLA Law Review, Managing Editor for the UCLA Journal of International Law and Foreign Affairs, a volunteer for the El Centro Legal Mobile Clinic and LAFLA Landlord-Tenant Clinic and a mentor for the Law Fellows Outreach Program. Mr. Holop received his Bachelor of Science in Economics, *cum laude*, from the University of Pennsylvania, Wharton School.

## Adrian Bacon

Adrian Bacon is an associate of Strange & Carpenter. Mr. Bacon received his law degree from UCLA in 2011. While at UCLA, Mr. Bacon was a member of the UCLA Mock Trial Competition Team, achieving Third Place in the Akin Gump Mock Trial Competition and participated in the Jones Day Moot Court, 1L Practice Competition. Mr. Bacon was also a member of the Journal of Law and Technology. Mr. Bacon received his Bachelor of Science in Business Administration from the University of Arizona - Eller College of Management, with a major in Economics and a minor in Philosophy.

## Jill Hood

Jill Hood is a paralegal of Strange & Carpenter. She received her Associate of Science and Bachelor of Science degrees in Paralegal from the University of La Verne, where she served as Secretary to the Paralegal Association. Ms. Hood has been with Strange & Carpenter since 1997 and has many years of experience in complex litigation matters. Ms. Hood has extensive experience involving preliminary and final approval of class action settlements, including claim administration and distribution processes. Ms. Hood has extensive experience handling settlement classes consisting of multi-millions of members. Ms. Hood also has extensive experience in investigating claims and corporate wrongdoing.

## Carlo Aguilar

Carlo Aguilar is a paralegal of Strange & Carpenter. He received his Bachelor of Arts degree in Political Science from the University of California, Los Angeles, where Mr. Aguilar was on the Dean's List.

# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: APPLE iPHONE 3G AND 3GS "MMS" MARKETING AND SALES PRACTICES LITIGATION | : : : : : : | MDL NO. 2116 SECTION: J JUDGE BARBIER MAG. JUDGE WILKINSON |

. .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .

**THIS DOCUMENT RELATES TO ALL CASES**

**PRETRIAL ORDER #6**

I. Plaintiffs' Steering Committee

Having carefully reviewed Plaintiffs' request for certain individuals to be appointed to Plaintiffs' Steering Committee (PSC), **IT IS ORDERED** that Plaintiffs' **Motions to Appoint Counsel to PSC (Rec. Docs. 16, 18)** are hereby **PARTIALLY GRANTED** and the following individuals are appointed to the PSC:

John R. Climaco;

Stephen Barnett Murray;

Ronnie G. Penton;

Virginia E. Anello;

David M. Cialkowski;

J. Andrew Meyer;

Brian R. Strange;

Timothy G. Blood.

The aforementioned counsel are to be aware that appointment to the PSC is of a personal nature. Accordingly, the above appointees cannot be substituted by other attorneys, including members of the appointee's law firm, to perform the PSC's exclusive functions, such as committee meetings and court appearances, except with prior approval of the Court. Furthermore, the appointment to the PSC is for one year from the date of this order. Appointees may apply to be reappointed when their term expires. If, or when, they reapply, their application should contain references to the nature and scope of their work on the PSC including the time and resources expended during the past term.

The PSC will have the following responsibilities:

**Discovery**

1. Initiate, coordinate, and conduct all pretrial discovery on behalf of plaintiffs in all actions which are consolidated with the instant multi-district litigation.

2. Develop and propose to the Court schedules for the commencement, execution, and completion of all discovery on behalf of all plaintiffs.

3. Cause to be issued in the name of all plaintiffs the necessary discovery requests, motions, and subpoenas

pertaining to any witnesses and documents needed to properly prepare for the pretrial of relevant issues found in the pleadings of this litigation.  Similar requests, notices, and subpoenas may be caused to be issued by the PSC upon written request by the individual attorney in order to assist him/her in the preparation of the pretrial stages of his/her client's particular claims.

4.   Conduct all discovery in a coordinated and consolidated manner on behalf and for the benefit of all plaintiffs.

**Hearings and Meetings**

1.   Call meetings of counsel for plaintiffs for any appropriate purpose, including coordinating responses to questions of other parties or of the Court. Initiate proposals, suggestions, schedules, or joint briefs, and any other appropriate matters pertaining to pretrial proceedings.

2.   Examine witnesses and introduce evidence at hearings on behalf of plaintiffs.

3.   Act as spokesperson for all plaintiffs at pretrial proceedings and in response to any inquiries by the Court, subject of course to the right of any plaintiff's counsel to present non-repetitive individual or different positions.

**Miscellaneous**

1.  Submit and argue any verbal or written motions presented to the Court or Magistrate on behalf of the PSC as well as oppose when necessary any motions submitted by the defendant or other parties which involve matters within the sphere of the responsibilities of the PSC.

2.  Negotiate and enter into stipulations with Defendants regarding this litigation. All stipulations entered into by the PSC, except for strictly administrative details such as scheduling, must be submitted for Court approval and will not be binding until the Court has ratified the stipulation. Any attorney not in agreement with a non-administrative stipulation shall file with the Court a written objection thereto within five (5) days after he/she knows or should have reasonably become aware of the stipulation. Failure to object within the term allowed shall be deemed a waiver and the stipulation will automatically be binding on that party.

3.  Explore, develop, and pursue all settlement options pertaining to any claim or portion thereof of any case filed in this litigation.

4.  Maintain adequate files of all pretrial matters,

including establishing and maintaining a document or exhibit depository, in either real or virtual format, and having those documents available, under reasonable terms and conditions for examinations by all MDL Plaintiffs or their attorneys.

5.   Perform any task necessary and proper for the PSC to accomplish its responsibilities as defined by the Court's orders, including organizing subcommittees compromised of plaintiffs' attorneys not on the PSC and assigning them tasks consistent with the duties of the PSC.   Membership on these subcommittees shall be subject to the approval of the Court.   Compensation for work performed by these subcommittees and the approved cost will be paid by common benefit funds.

6.   Perform such other functions as may be expressly authorized by further orders of the Court.

## II.   Plaintiffs' Executive Committee

Further, having carefully reviewed Plaintiffs' request for certain individuals to be appointed to Plaintiffs' Executive Committee, the Court finds that an executive committee is not necessary.

Accordingly, Plaintiffs' **Motion to Appoint an Executive Committee (Rec. Doc. 16)** is hereby **DENIED** and no Executive

Committee will be appointed in this matter.

New Orleans, Louisiana, this __4th__ day of __March__, 2010.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

# EXHIBIT C

## CRAIG E. HILBORN RESUME

Craig E. Hilborn is an experienced and respected product liability in complex civil litigation trial work. He has litigated in both single causes of action cases, as well as class actions against Japanese entities on numerous occasions over the past twenty-two (22) years. (Zavala v. Takata (BC277327) – class action, Nemir v. Mitsubishi (96-75380) and Edwards v. Honda (CV 06-06161 GW (Rzx)), to name a few).

He has practiced in seventeen (17) different states. Mr. Hilborn and is admitted to the U.S. District Court for the Eastern District of Michigan, Western District of Michigan, Southern District of Ohio and District of Colorado. He also is admitted to the U.S. Court of Appeals for the 1st, 6th and 10th Circuits. Mr. Hilborn has lectured on the subject of complex product liability issues involving international manufacturers with a specific emphasis on manufacturers located in Japan. Those lectures were to the American Bar Association, Michigan Association of Justice and Utah Association of Justice. He has been admitted to practice in the Eastern District of Michigan since 1993 and has handled numerous complex product liability cases involving Japanese manufacturers.

Mr. Hilborn has been involved in multiple multi-district litigation causes of action around the country. His firm is AV rated by Martindale Hubbell and he was nominated as a Michigan Super Lawyer for 2007, 2008, 2009, 2010, 2011 and for the upcoming year 2012. He was recently nominated as a Leader in the Law in the area of product liability law in the year 2012.

## GEORGE A. HILBORN RESUME

George Hilborn has worked on both sides of the personal injury field as Detroit Regional Manager for in-house counsel at Michigan Mutual Liability. Mr. Hilborn was also a staff attorney in the product liability section of the Office of General Council at Ford Motor Company, supervising litigation such as the Pinto gas tank cases and "drop out of park" cases involving Ford's C4-C6 transmissions. Mr. Hilborn has been in private practice since 1981 and his practice is concentrated in the area of products litigation. His areas of involvement include vehicle crashworthiness, fuel systems, rollover, airbags and seatbelt failures. Mr. Hilborn has been admitted to practice before the United States Circuit Court of Appeals for the Third, Fifth, Sixth and Seventh Circuits. He has also served as lead trial counsel in cases in state and federal venues throughout the United States.

# EXHIBIT D

CARPENTER, ZUCKERMAN & ROWLEY, LLP

PAUL S. ZUCKERMAN
JOHN C. CARPENTER
NICHOLAS C. ROWLEY
CANDICE S. KLEIN
_____

ROBERT J. OUNJIAN
GARY S. LEWIS
LARRY J. LITZKY
SARK OHANIAN
SCOTT D. PEEBLES
SLAV KASRELIOVICH
MAUREEN JOHNSON
KATE HARVEY-LEE
RICHARD BENAVIDEZ

6827 WEST OLYMPIC BOULEVARD
BEVERLY HILLS, CALIFORNIA 90211-3613

TELEPHONE
(310) 273-1230
FAX (310) 858-1063

BRUCE FISHELMAN
OF COUNSEL
_____

MICHAEL S. KOPPLE
OF COUNSEL

TRIAL LAWYERS
FOR JUSTICE
OF COUNSEL

# FIRM RESUME

Carpenter, Zuckerman & Rowley is one of the largest law firms in the State of California exclusively dedicated to the representation of injured people.

CZ&R has won more than $100 million in jury verdicts and settlements by listening to our clients, understanding what they have lost, and explaining to juries and insurance companies their personal stories.

CZ&R believes it is a lawyer's highest moral calling to stand up for injured people. The firm never forgets that our client's case is the most important thing in his or her life.

<u>Some of the firm's recent verdicts and settlements include:</u>

- $31.6 million for a young woman with a traumatic brain injury in Kern County, California

- $17 million for a woman with a traumatic brain injury where she appeared normal to those who did not know her

- $13.86 million for a professional fighter who suffered a mild traumatic brain injury after a car crash

- $12 million for a young man who suffered a mild traumatic brain injury

- $7.6 million for a client when the defense only offered $300,000

- $6.9 million for a college football player with a traumatic brain injury where the insurance company only offered $300,000 to settle

- $6.1 million for a client with mild traumatic brain injury with normal MRI scans and normal neuropsychological testing

<u>Some of the firm's recent accomplishments include:</u>

•    In 2010, the *Los Angeles Daily Journal* recognized the 10 "Top Plaintiff's Verdicts by Impact." CZ&R was honored as trial counsel for two of the verdicts. No other firm had more than one verdict.

•    CZ&R Partner Nicholas C. Rowley has twice been selected by the Consumer Attorneys Association of Los Angeles (CAALA) as a finalist for their "Trial Lawyer of the Year" award.

•    In 2009, Mr. Rowley received the Consumer Attorneys of San Diego County's "Outstanding Trial Lawyer of the Year" award.

•    A CZ&R verdict was selected as one of VerdictSearch's "Top 100 Verdicts of 2010."

<u>The following are short biographical sketches of some of the lawyers at CZ&R:</u>

### Paul S. Zuckerman

In 1991, after graduating near the top of his class, an insurance company hired Paul Zuckerman to be their lawyer. Mr. Zuckerman approached the job with optimism. He believed the company's advertisement and thought that he was hired to be there, like a good neighbor, for policyholders in need. However, Mr. Zuckerman soon discovered that his work was merely padding the pockets of his employer, and not ensuring that injured people were compensated fairly. Thus, Mr. Zuckerman , with his law school classmate John Carpenter, established a new kind of law firm: A law firm that only represents injured people against insurance companies. Mr. Zuckerman provides each client with personal attention. He makes unsolicited phone calls to clients to check on them. He believes that only through personal attention can a lawyer build trust with the client, understand the client's loss, and empathize with the client's personal story. Mr. Zuckerman has used this type of outreach and love to win far in excess of $100 million for his clients. Amongst Mr. Zuckerman's successes is winning $13.86 million for a boxer who suffered a mild traumatic brain injury in an automobile collision. Mr. Zuckerman won $2.1 million for a homeless drug addict who had been run over by a garbage truck. Today, the client

is clean and sober and helps other homeless men and women get off of the street. Mr. Zuckerman won $2 million in less than six months for a British woman who was struck by a van while on her morning walk. He won $1.3 million in less than six months for a former male model and songwriter who exacerbated a longstanding spinal injury after a car collision. He won $1.23 million for a U.S. Army veteran and former railroad worker who exacerbated a back injury after a car crash. Mr. Zuckerman received his undergraduate degree from the University of Southern California and his law degree from Southwestern Law School.

### John C. Carpenter

For the past 20 years, John Carpenter has won more than $100 million for individuals with life-altering injuries. Mr. Carpenter's practice focuses on helping clients with the gravest injuries – especially traumatic brain injuries – recover the money they need to re-establish their lives. He has tried dozens of catastrophic injury cases to verdict. In 2011, on the eve of trial, Mr. Carpenter settled a case for $13.86 million settlement for a former professional fighter who suffered a traumatic brain injury in an automobile collision. Most of the symptoms of the client's traumatic brain injury did not present themselves until several months after the crash. The insurance companies argued the client was faking his movement disorder. To defeat the insurance companies' claims, Mr. Carpenter litigated the case for more than four years, creating what is believed to be the largest file in the history of a Santa Monica courtroom, exceeding 60 volumes. Similarly, in 2010, Mr. Carpenter served as counsel in a bar fight case in which a college football player was beaten by a security guard. The jury awarded CZ&R's client more than $6.8 million despite the client having incurred less than $23,000 in past medical bills. In addition to his trial work, Mr. Carpenter has an active appellate practice. Twice the California Supreme Court has granted his petitions for review. Mr. Carpenter has been selected as a Top 100 Trial Lawyer and has had his work recognized by VerdictSearch's "Verdict of the Week." Mr. Carpenter received his undergraduate degree from UCLA and his law degree from Southwestern Law School.

## Nicholas C. Rowley

Many consider Nicholas C. Rowley to be the most accomplished trial lawyer of his generation. He has extensive courtroom experience representing victims of serious injuries and medical malpractice, especially those who have suffered traumatic brain injuries, spinal injuries, and chronic pain. In 2009 and 2010, the Consumer Attorneys Association of Los Angeles (CAALA) named Mr. Rowley as a finalist for its prestigious "Trial Lawyer of the Year" award. Mr. Rowley was also recognized by the *Los Angeles Daily Journal* for winning a "Top Verdict of 2010" for his $31.6 million jury verdict for the victim of a traumatic brain injury. In 2009, the Consumer Attorneys of San Diego awarded Mr. Rowley its "Outstanding Trial Lawyer of the Year" award. Mr. Rowley was the youngest winner ever. Some of Mr. Rowley's other recent successes include a $17,000,000 win for a mild traumatic brain injury caused by a fall from a hotel window and a $13,860,000 win for a mild traumatic brain injury caused by an automobile crash. Mr. Rowley has served as an instructor at Gerry Spence's famed Trial Lawyers College and delivers keynote addresses nationwide on his revolutionary approach to voir dire and damages. Other lawyers, faced with low settlement offers from insurance companies, frequently bring Mr. Rowley into their cases just before trial. Mr. Rowley is a relentless warrior who has prevailed in the courtroom time and time again. He prides himself on his caring and empathic approach to working with his clients and their families, and his ability to help juries find the truth and deliver justice to the injured.

## Bruce Fishelman, Of Counsel

For over 30 years, Bruce Fishelman has worked to obtain justice for those who need it most. After law school, Mr. Fishelman served as an Assistant Corporation Counsel for Jersey City, New Jersey and helped to establish the first full-time municipal court in New Jersey. He further served as the city's first full-time prosecutor. In the years since his government service, Mr. Fishelman has handled some of the most complex civil cases in the country, including prominent pharmaceutical litigation. Mr. Fishelman filed one of the first federal cases alleging improprieties with the diet drug cocktail "Fen-Phen," and was one of the primary attorneys in a key Vioxx matter. He recently obtained a $3.7 million jury verdict for a personal injury victim.

### Candice S. Klein

As a Senior Attorney at Carpenter, Zuckerman & Rowley, Candice S. Klein has first-chaired more than 15 jury trials to verdict. Ms. Klein has a proven track record of winning difficult cases. She won a jury verdict of nearly $700,000 for a pedestrian who was struck by a car, but never fell down. Ms. Klein also won a significant six-figure settlement against a school district for negligently supervising a special education student who was molested by a peer. The case was particularly difficult as the testimony of the plaintiff was severely compromised by her disability. Ms. Klein's dedication to her clients is unmatched. After a trial court erroneously dismissed one of her client's cases, Ms. Klein successfully appealed. The judge was removed from the case and the matter settled thereafter for $600,000. Having completed UCLA's prestigious gross anatomy program for litigators, Ms. Klein is particularly effective at explaining her client's medical damages to juries. She is a graduate of Gerry Spence's prestigious Trial Lawyers College and received her law degree from Southwestern Law School.

### Gary Lewis

For more than three decades, Gary Lewis's legal practice has focused on legal research and writing. Prior to joining Carpenter, Zuckerman & Rowley, Mr. Lewis played a key role in the aftermath of the sensational Doris Day litigation. Mr. Lewis wrote much of the briefing on behalf of Ms. Day's former attorney/manager who successfully sued his insurance carriers for bad faith. In another case, Mr. Lewis's briefing helped a widow recover an eight-figure settlement from an accounting firm and brokerage house which were alleged to have squandered the widow's money through fraud and malpractice. At CZ&R, Mr. Lewis has repeatedly defeated efforts by insurance companies to try to limit the firm's clients from obtaining punitive damages. Mr. Lewis earned his undergraduate degree in Mathematics from the University of Michigan and his law degree from the University of Southern California.

## Donn Christensen

For more than 12 years, Mr. Christensen has handled difficult and complex litigation for plaintiffs all over the country. He has experience handling products liability litigation, including cases involving autos, boats and planes; defective commercial equipment, such as fork lifts and transport carts; and medical products including jaw and hip implants. Mr. Christensen has been involved in numerous significant medical malpractice actions, state and federal government tort claims, air crash litigation, as well as mass tort litigation involving dangerous pharmaceutical products.

Mr. Christensen was an attorney of record for plaintiff in the published decision by the California Court of Appeal in *LaPlante v. Wellcraft Marine Corp.* (2001) 94 Cal.App.4th 282, (reversing summary judgment and holding that Federal Boat Safety Act does not preempt state common law and product liability claims). He is a published author on legal issues, including articles published in the Consumer Attorney's magazine "The Advocate" (June, 2005), and elsewhere. Mr. Christensen was a speaker at the 2006 and 2007 Consumer Attorneys Association of Los Angeles (CAALA) Convention in Las Vegas; and was named a "Top Attorney" in Pasadena by "Pasadena" magazine in both 2009 and 2010.

Mr. Christensen served three years on the Board of Governors for CAALA and a year as a member of the Board of Governors for the Consumer Attorneys of California (CAOC). Over the course of his career Mr. Christensen has recovered over $50,000,000.00 in justice for his clients.

## Larry Litzky

Larry Litzky joined Carpenter, Zuckerman & Rowley in 2009. Previously, Mr. Litzky was of counsel to one California's most prominent plaintiffs' law firms. At CZ&R, Mr. Litzky's practice has focused on mediation. Over the course of his career, Mr. Litzky has settled more than $30 million in cases for injured plaintiffs. Mr. Litzky has a gift for not merely understanding, but also empathizing, with clients' pain and suffering. He has a unique ability to communicate the gravity of clients' damages to defense lawyers and to persuade insurance companies to see CZ&R's clients as people, not mere statistics. Mr. Litzky received his undergraduate degree in music from the prestigious Frost School of Music at the University of

Miami in Coral Gables, Florida. He earned his law degree from Southwestern Law School.

### Maureen Johnson

For the past decade, Ms. Johnson has regularly taught Legal Drafting as an adjunct professor at Loyola Law School Los Angeles. At Carpenter, Zuckerman & Rowley, Ms. Johnson's practice focuses on law and motion as well as appellate briefing. Ms. Johnson has repeatedly defeated insurance industry efforts to prevent CZ&R's clients from presenting their full medical damages to juries. She has further protected the firm's clients from insurance companies' harassing fishing expeditions into the private medical records of injured people. Ms. Johnson earned her MFA in screenwriting from UCLA. Her training as a screenwriter informs her legal briefs which effectively communicate the gravity of client's story. Ms. Johnson earned her law degree from Loyola Law School Los Angeles where she graduated 12th in her class of 412. She has worked on numerous pro bono matters including those involving the NAACP, LAMBDA, The Alliance for Children's Rights, and Public Counsel.

### Michael Kopple, Of Counsel

After graduating law school, Michael Kopple worked for Riverside County's Office of the Public Defender, where he won an award for outstanding service to his clients. Since 2002, Mr. Kopple has been of counsel to Carpenter, Zuckerman & Rowley, where he applies his criminal trial experience to personal injury cases. For instance, Mr. Kopple represented a college student who was beaten in a bar fight by a security guard. The jury awarded CZ&R's client more than $6.8 million despite the client having incurred less than $23,000 in medical bills. Of his last eight trials for CZ&R, Mr. Kopple has won every one and obtained significant six- or seven-figure jury verdicts in each case. Mr. Kopple is a graduate of Gerry Spence's prestigious Trial Lawyers College. He graduated from U.C. Davis School of Law.

### Richard Benavidez

Richard Benavidez started his legal career at Carpenter, Zuckerman & Rowley, after completing his undergraduate degree at UCLA. While working as a law clerk at CZ&R, Mr.

Benavidez discovered the moral calling of fighting for injured people against the insurance industry. After several years of work as a law clerk, Mr. Benavidez left CZ&R to attend the University of New Hampshire School of Law and then, after graduating, returned to the firm as an attorney. Fluent in Spanish, Richard fights to ensure that all injured people receive the full justice they deserve.

### Robert Ounjian

For more than a decade, Robert J. Ounjian has practiced general liability and medical malpractice litigation with an emphasis in birth injuries. Over the course of his career, Mr. Ounjian has settled more than $30 million in cases for injured plaintiffs. Mr. Ounjian is particularly effective at persuading insurance companies to settle with Carpenter, Zuckerman & Rowley's clients. Most recently, Mr. Ounjian obtained a $1.5 million settlement for a motorcyclist who suffered genital injuries that caused post-traumatic stress disorder and required invasive surgery. Mr. Ounjian graduated from Southwestern Law School in 2000.

### Sark Ohanian

For more than a decade, Sark Ohanian has practiced personal injury litigation with a focus on discrimination and life-changing injuries. In 2006, Mr. Ohanian won an important jury trial in which it was established that California dentists cannot discriminate against HIV-positive patients. In 2009, Mr. Ohanian was co-counsel in a successful jury trial where the plaintiff was beaten by his landlord's security guard and suffered brain damage. And, in 2011, Mr. Ohanian obtained a significant settlement from the U.S. Army on behalf of a CZ&R client who was a Hong Kong national. The client was severely injured when the U.S. Army negligently drove a Humvee on a civilian highway. Mr. Ohanian upholds the Carpenter, Zuckerman & Rowley philosophy that attorneys must truly connect with their clients in order to effectively present their cases to a jury and judge. Sark graduated from Loyola Law School Los Angeles.

### Slav Kasreliovich

Slav Kasreliovich began his relationship with Carpenter, Zuckerman & Rowley in 1998 as a client. Mr. Kasreliovich was so impressed with the firm's commitment to justice that he went to law school so he could join the CZ&R team and join the fight against insurance companies. Since becoming a lawyer in 2008, Mr. Kasreliovich has tried 25 cases to verdict. Further, Mr. Kasreliovich's litigation skills have resulted in judges issuing terminating sanctions for defense misconduct on three occasions. Mr. Kasreliovich graduated from Thomas Jefferson School of Law.

### Steven Mazza

Steven Mazza has over three decades of experience successfully representing injury victims against the insurance companies that seek to take advantage of them. Mr. Mazza has extensive jury experience, having taken over 125 cases to trial. He has also served as lead appellate counsel on *Lopez v Southern California Rapid Transit District*, a landmark California Supreme Court case in which he successfully argued that bus companies have a duty to protect passengers from their co-passengers criminal activities. Mr. Mazza considers himself a student of the Civil Discovery Act and prides himself on his ability to win cases on the paper. Having lost his son due to the negligence of a drunk driver, Mr. Mazza is familiar with the pain that injury victims and their families must endure. This tragic experience allows him to better understand and explain his clients' pain and suffering to juries.

# EXHIBIT E



NEWMAN | DU WORS

A T T O R N E Y S

With offices in Los Angeles and Seattle—and a nationwide practice—Newman | Du Wors represents businesses and consumers in unfair competition and consumer-protection litigation. It has successfully represented consumers in class actions alleging unfair and deceptive practices, including for claims brought under California's Unfair Competition Law and Consumer Legal Remedies Act.

Newman | Du Wors's experience includes:

• Successfully representing a class alleging that the launch of the .biz generic top-level domain name was an illegal lottery, which resulted in a total refund for the affected consumers and injunctive relief. *Smiley v. Internet Corporation for Assigned Names and Numbers et al.*, Cal. Super Court., Case No. BC 254659.

• Bringing a federal class action relating to the illegal issuance of prepaid cellphone cards affecting millions of consumers, which resulted in a change to state law and then a favorable settlement; *Duwors v. Tracfone Wireless, Inc. et al.*; U.S.D.C., W.D. Wa. Case No. 10-1789 RSM.

• Representing consumers in a state-wide class action relating to deceptive automotive warranty practices, resulting in a full refund available to consumers affected by the unlawful practice at issue. *Lane v. Volkswagen Group of America, Inc. et al.*, Wash. Super Ct., Case No. 09-2-42561-2SEA.

• Representing consumers in a nationwide class action against mobile service provider over deceptive data charges, which resulted in credits or refunds available to affected consumers. *In re Verizon Wireless Data Charges Litigation*, U.S.D.C. D.N.J. 10-cv-1749 (LFW) (LHG).

• Representing consumers in a nationwide class action against an online coupon website over unlawful gift card issuance, which will result in injunctive relief and a claims process for affected consumers. *In re Groupon Marketing and Sales Practices Litigation*, U.S.D.C. S.D. Cal. Case No. 11-md-02238-DMS-RBB.

In addition, Newman | Du Wors regularly represents defendants in consumer class actions and cases involving alleged unlawful advertising and consumer protection violations, including *Swift v. Zynga, Inc., et al.*, U.S.D.C. N.D. Cal., 09-cv-05443-EDL; and *Chang v. Wozo, LLC, et al.*, U.S.D.C. D. Mass., Case No. 11-cv-10245-DJC. Finally, Newman | Du Wors has brought on behalf of plaintiffs, and settled on behalf of defendants, dozens of lawsuits alleging unfair competition and deceptive business practices.

100 Wilshire Blvd. Ste. 950   P  (310) 359-8200
Santa Monica, CA 90401       F  (310) 359-8190
www.newmanlaw.com