UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| THIS DOCUMENT RELATES TO: All Actions | |

**RESPONSE BY CERTAIN DEFENDANTS REGARDING PLAINTIFFS' MOTION TO COORDINATE ALL ACTIONS IN MDL 2311**

Defendants Hitachi Automotive Systems, Ltd., Hitachi Automotive Systems Americas, Inc., Hitachi, Ltd., DENSO Corporation, DENSO International America, Inc., Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., Mitsubishi Electric Automotive America, Inc., and T. RAD Co., Ltd..[1] (hereinafter referred to as "Joining Defendants") file this response to the Motion to Coordinate All Actions in MDL 2311 filed by End-Payor Plaintiffs, Auto Dealer

---

[1] For simplicity, Hitachi, Ltd., Hitachi Automotive Systems, Ltd. and Hitachi Automotive Systems Americas, Inc. will be referred to as "HIAMS." DENSO Corporation and Denso International America, Inc., will be referred to as "DENSO" and Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc. will be referred to as "MELCO."

Plaintiffs, The State of Florida, and the City of Richmond (the "Filing Plaintiffs") (Dkt. No. 703).

## I. PRELIMINARY STATEMENT

The dozens of cases consolidated here should not be thought of a single case just because they have some common plaintiffs and all concern automobile parts. Not only do the different cases involve different direct purchaser plaintiffs, different defendants, and different alleged conspiracies with respect to different automobile parts – meaning different actors and alleged conduct regarding different transactions are at issue in each case – but the economic analyses affecting the various automobile parts differ, as well. Nonetheless, the Joining Defendants agree that some degree of coordination among the cases in the MDL, where possible, would be helpful in promoting efficiency, reducing costs, and avoiding undue delay. The present Motion, however, is both premature and counter-productive.

Plaintiffs' Motion is premature because they filed their Motion without any meaningful meet and confer process with respect to the procedures Plaintiffs now propose. At the last status conference, the Court instructed the parties to meet and confer to discuss a potential procedure for streamlining future motions to dismiss while preserving for appeal in later cases issues previously decided by the Court in earlier-filed cases. The parties exchanged their respective drafts, limited to that

objective. At that point, the Plaintiffs filed their pending motion, proposing an entirely new structure for the entire MDL, which goes far beyond the procedure for motions to dismiss that the Court instructed the parties to discuss and far beyond anything actually discussed among the parties. While the parties might well be able to agree on some basic steps for promoting efficiency across the various cases in this MDL, if they were to meet and confer about such steps, there has been no opportunity for that process to occur here. Moreover, it would in any event be premature for the Court to address many of the issues raised in Plaintiffs' motion, given that Plaintiffs have yet even to file operative consolidated amended complaints in any of the later-filed cases, and of course whatever Defendants that may end up being named in such future consolidated amended complaints have not had the opportunity to respond to any such complaints by motion or otherwise.

Furthermore, the present Motion is counter-productive since Plaintiffs' proposals would impinge on substantive rights of the Defendants, cause unreasonable and unnecessary delay, especially for the earlier-filed cases, and in doing so, undermine efficiency and increase costs for the parties and this Court.

Plaintiffs' Motion seeks:

(1) to organize the cases into "tranches," seemingly chosen arbitrarily, which would require some cases to sit idle while other, unrelated cases, proceed;

(2) to coordinate discovery across all cases, even though the various cases involve different direct purchaser plaintiffs, different defendants, and different conspiracies, involving different automobile parts, giving rise to limited opportunities for such coordination, which can be achieved in a much simpler fashion without such prejudice to the parties;

(3) to impose discovery limitations that could have the effect of forcing defendants in later-filed cases to choose between participating in depositions of common witnesses in earlier cases that involve different direct purchaser plaintiffs, different defendants, and different conspiracies involving different automobile parts, or foregoing the ability to examine the witness and being stuck with whatever testimony was elicited in the earlier case;

(4) to prohibit any plaintiff from being deposed more than once, and only, years from now, after all discovery of all defendants in all of the different cases in largely completed, even though doing so will greatly delay dispositive motions and class certification proceedings in the various cases, especially in the earlier-filed cases, that may substantially narrow those cases and facilitate their prompt and efficient resolutions;

(5) to not only delay class certification *motions* (which the Court has already recognized is a potentially significant weakness in Plaintiffs' cases) in the early cases until fact discovery is completed in all cases, but to prevent the defendants

from even conducting class certification *discovery* until the plaintiffs have completed merits discovery – essentially creating a priority system unsupported by the Federal Rules of Civil Procedure, under which the plaintiffs get to go first, and the defendants are not allowed to take discovery on critical issues until the plaintiffs declare themselves ready; and

(6) to deviate from the standard rules of discovery by requiring certain Defendants to make broad disclosures independent of any discovery requests, including broad disclosures to elaborate beyond whatever was contained in the DOJ's criminal information or the plea allocution. (Pl. Br. 14 - 15).

Plaintiffs' proposals would significantly delay and alter the conduct of these cases and would impinge on substantive rights of all Defendants. And the proposals will affect each Defendant differently, depending on whether a particular Defendant is in an early case, a later case, more than one case, or if there is unique factual background for the products in the cases where they were named. Many of these issues do not need to be resolved in the abstract now, but can be addressed on a context-specific basis if problems actually arise. Plaintiffs' Motion is premature, counter-productive, and should be denied.

## II. ARGUMENT

### A. Issues Regarding the Efficient Resolution of Motions to Dismiss Should Be Discussed Through Case-Specific Meet and Confer Conferences

The only issue raised in Plaintiffs' Motion that was subject to any previous communication (albeit brief) between the parties is the procedure for streamlining motions to dismiss in later filed cases.

Joining Defendants do not oppose Plaintiffs' suggestion that the parties meet and confer before motions to dismiss are filed in the later cases in accordance with Local Rule 7.1(a). Further, Joining Defendants do not oppose pre-motion conferences with the Court if the Court believes holding such conferences would be helpful. Joining Defendants wish to avoid filing needless motions – which will burden the Court and incur costs upon the parties. Joining Defendants, however, oppose Plaintiffs' proposal to impose briefing limits at this time and their proposed ban on joint briefs and elimination of oral argument on motions to dismiss. Those details should be addressed between the parties during pre-motion meet and confers and, if necessary, determined by the Court after a pre-motion conference based on the circumstances and issues in a particular case.

### B. Tranches

In crafting the best way to organize the various cases, the parties must be mindful that while all of the cases involve automobile parts, each complaint is different in terms of the defendants involved, the part implicated and the

6

conspiracy alleged. Accordingly, the potential for coordination among the various different automobile parts cases is limited. Where multiple cases are proceeding in discovery, defendants in those cases should seek to coordinate in deposing the plaintiffs, just as plaintiffs in those cases should seek to coordinate in deposing any of defendants' employees who may have been responsible for sales of the products at issue in the particular cases. And parties on both sides should coordinate in serving discovery on third parties. But no case should be unreasonably delayed by any other case. Beyond that, written discovery, class certification, dispositive motions, etc., will all be unique for any given product-specific case.

Plaintiffs' proposal actually does little to coordinate the various cases and instead focuses only on staging them – providing for certain cases to proceed, while others sit idle. Plaintiffs give no rationale for requiring most of the cases in this MDL to remain stalled while they pursue other, unrelated cases.

Indeed, Plaintiffs' proposal is silent on the initial issue of when Plaintiffs themselves will begin to take any steps to prosecute their various cases, by filing their consolidated amended complaints. The fact that so many of Plaintiffs' cases have not progressed at all is due solely to Plaintiffs' failure to take any steps to pursue them, including initially at least filing any consolidated amended complaints that they intend to file. Nothing has stopped Plaintiffs in any of the "later cases" from filing consolidated amended complaints, proposing case

7

management orders for each of those cases, scheduling responsive pleadings, and moving them forward.

Nor does Plaintiffs' proposal do anything to assist the Court or the parties to efficiently move these cases through discovery, class certification, and dispositive motions. Instead, Plaintiffs' proposal would require these cases to continue to sit idle while unrelated cases proceed, memories fade, evidence becomes stale, and the parties are deprived of a prompt resolution. Plaintiffs have not articulated anything that would be achieved by their proposed "tranches" other than significant delay (especially of the earlier filed cases). They are proposing that nothing happen in most of these cases for years, while postponing Defendants' discovery of Plaintiffs in the earlier, "initial cases" indefinitely.

### C. Discovery

Plaintiffs raise multiple issues regarding discovery. Again, these are issues that the parties should discuss in meet and confers and coordinate without the arbitrary and rigid procedures that Plaintiffs want to impose.

#### 1. General Discovery Issues

The Joining Defendants do not agree with Plaintiffs' proposal to delay the progress of the earlier-filed cases for potential coordination of discovery across the entire MDL. The products that are at issue, and will become at issue, are too diverse, the conspiracies alleged are too different, and the defendants too disparate

8

and numerous. Even Plaintiffs' "tranche" proposal does not address burdens imposed on certain defendants who would be required to engage in discovery for multiple products (and at least three sub-classes per product) simultaneously.

### 2. Timing of Discovery

Discovery should proceed consistent with the Federal Rules of Civil Procedure in each case, based on the allegations in Plaintiffs' complaints. There is no justification for Plaintiffs' request that the Court impose deadlines or obligations not found in the Federal Rules requiring disclosure of certain information, such as information underlying plea agreements or admissions about "collusive conduct" suggested by Plaintiffs. Such disclosures, which go far beyond the disclosures mandated by Rule 26(a)(1), corrupt the adversarial process. If Plaintiffs would like such information, they should serve discovery requests at the appropriate time and proceed pursuant to the Federal Rules. In the event that disputes arise, those rules provide mechanisms and procedures that are more than sufficient, such as motions to compel or seeking protective orders. *See* Fed. R. Civ. P. 26(c), 37. The Plaintiffs have articulated no reason for deviating from the Federal Rules.

Disclosure and discovery obligations should be triggered by the answering of a complaint that properly states a claim. In particular, Defendants should not be required prematurely to produce transactional data and other discoverable

9

information before responding to consolidated amended complaints, especially where Plaintiffs have not even filed such complaints. And when discovery of transactional data for a given case does begin, it should go in both directions. For instance, when the parts manufacturers produce data about their sales by part, purchasers and price, the dealership plaintiffs should likewise produce information about their purchases of cars by make, model and price, as well as information about purchases of any replacement parts for their service departments and body shops. They should also provide information about rebates, manufacturer incentive programs, leasing and financing commissions, advertising subsidies and other forms of compensation (including sales of tied products such as window etching, undercarriage spray, scratch and dent insurance and the like) that affect their true costs and profits. Plaintiffs' effort to forestall such discovery is unsupported by the Federal Rules.

Similarly unnecessary is Plaintiffs' suggestion that any case or group of cases should be required to provide status reports to the Court every 60 days and requiring the Court to conduct telephonic conferences (by tranche) if issues arise. There is no present need to impose such burdens on the Court or the parties in this way. The parties have demonstrated an ability to work together to resolve issues, and there is no reason at this early stage to create an extra process for addressing disputes that do not exist. Plaintiffs' suggestion creates unnecessary burdens for

the Court and the parties. If any of the disputes Plaintiffs speculate may occur actually arise as the later cases get underway, the parties and the Court would be free to revisit whether additional Court involvement makes sense.

3. Depositions

Joining Defendants agree that the parties should endeavor to coordinate depositions to avoid duplication. Indeed, Joining Defendants prefer that their witnesses whose knowledge concerns multiple products in different cases be deposed one time each, or at least as few times as possible. Similarly, Joining Defendants recognize that depositions of plaintiffs should also be coordinated to minimize duplicative depositions, while not imposing undue delay on any particular case. However, Plaintiffs' Motion seeks a blanket prohibition against any plaintiff being deposed more than once, even though being subject to discovery is a responsibility each named plaintiff necessarily assumed when he or she chose to file a multiplicity of cases against unrelated defendants whose only common connection is that they all manufacture automobile parts. Such a universal rule could have unfair prejudicial effect on defendants in later-filed cases and give an unintended advantage to Plaintiffs.

D. Class Certification

Joining Defendants disagree with Plaintiffs' request to delay class certification in any case until discovery is largely completed in all cases.

Plaintiffs' Motion seeks to have class certification for all of these different cases potentially resolved in a single motion, even though they involve different complaints against different defendants based on different conspiracies involving different products.

Consistent with Plaintiffs' various complaints, class certification should be considered by product and, as required by Fed. R. Civ. P. 23(c)(1)(A), be decided at an "early practicable time," which will differ by case. The complaints are asserted on behalf of putative classes that are different for each product. The facts, documents, witness testimony, and other issues and considerations differ by each unique product because the conspiracies alleged differ by product. An automobile purchaser may be a member of a class for one component of the car but not for other components. It would not be efficient or otherwise appropriate to conduct one class certification analysis across all products. Nor would it be consistent with Rule 23 to consider at the same time class allegations relating to a multitude of separate alleged conspiracies covering different parts at different times for different procurement programs for different vehicles by different manufacturers.

## III.   CONCLUSION

For the foregoing reasons, Joining Defendants respectfully submit that Plaintiffs' Motion should be denied.

Dated:  May 27, 2014

/s/ Craig P. Seebald
Craig P. Seebald
Alden L. Atkins
Lindsey R. Vaala
Vinson & Elkins LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037-1701
Telephone: (202) 639-6500
Fax: (202) 879-8995
cseebald@velaw.com
aatkins@velaw.com
lvaala@velaw.com

***Counsel for Hitachi Automotive Systems Americas, Inc., Hitachi Automotive Systems, Ltd. and Hitachi, Ltd.***

/s/ Steven F. Cherry
Steven F. Cherry
David P. Donovan
Brian C. Smith
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Fax: (202) 663-6363
steven.cherry@wilmerhale.com
david.donovan@wilmerhale.com
brian.smith@wilmerhale.com

***Counsel for DENSO Corporation and Denso International America, Inc.***

/s/ Gary K. August
Gary K. August
Zausmer, Kaufman, August
   & Caldwell, P.C.
31700 Middlebelt Road
Suite 150
Farmington Hills, Michigan 48334-2374
Telephone (248) 851-4111
gaugust@zkac.com

*Counsel for Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Automotive America, Inc.*


/s/ Peter L. Simmons
Peter L. Simmons
Fried, Frank, Harris, Shriver
   & Jacobson LLP
One New York Plaza
New York, New York 10004
Telephone: (212) 859-8455
Fax: (212) 859-4000
peter.simmons@friedfrank.com

Thomas J. Tallerico
BODMAN PLC
Suite 500
201 W. Big Beaver Road
Troy, Michigan  48084
Telephone: (248) 743-6073
Fax: (248) 743-6002
ttallerico@bodmanlaw.com

*Counsel for T. RAD Co., Ltd.*

14

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In Re:   AUTOMOTIVE PARTS ANTITRUST LITIGATION | )<br>)<br>)<br>)   Master File No. 12-md-02311<br>)   Honorable Marianne O. Battani |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | )<br>)<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2014, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all filing users indicated on the Electronic Notice List through the Court's electronic filing system.

                                                        */s/ Lindsey Vaala*

                                                        Lindsey R. Vaala
                                                        Vinson & Elkins LLP
                                                        2200 Pennsylvania Avenue NW
                                                        Suite 500-W
                                                        Washington, DC 20037-1701
                                                        Telephone: (202) 639-6500
                                                        Fax: (202) 879-8995
                                                        lvaala@velaw.com