# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re:  AUTOMOTIVE PARTS ANTITRUST LITIGATION | : | Master File NO. 12-md-02311 |
| | : | Honorable Marianne O. Battani |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | **REPLY IN SUPPORT OF** |
| | : | **MOTION OF END-PAYOR** |
| All Actions | : | **PLAINTIFFS, AUTO DEALER** |
| | : | **PLAINTIFFS, THE STATE OF** |
| | : | **FLORIDA, AND THE CITY OF** |
| | : | **RICHMOND  TO COORDINATE** |
| | : | **ALL ACTIONS IN MDL 2311** |
| | : | |
| | : | |
| | : | |
| | : | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................. 1

II.   RELEVANT FACTS ........................................................................ 2

III.  ARGUMENT .................................................................................... 6

    A.   Coordination is Necessary and Appropriate............................ 6

    B.   An Efficient Process to Resolve Motion to Dismiss Issues.............. 9

    C.   Discovery ................................................................................ 11

        1.   Coordination of Discovery.................................................... 11

        2.   Depositions ........................................................................ 13

            a.   Defendant Witnesses................................................. 13

            b.   Class Representatives ............................................... 14

        3.   Non-Party Discovery .......................................................... 18

        4.   Active Involvement of the Court........................................... 18

    D.   Class Certification ................................................................. 19

    E.   Moving Plaintiffs' Efforts to Meet and Confer Before Filing this Motion.................................................................. 20

IV.   CONCLUSION ............................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*American Elec. Power v. United States*
   191 F.R.D. 1432 (S.D. Ohio 1999) ........................................................................... 18

*Associated General Contractors of California, Inc. v. California State Council of Carpenters
("AGC")*
   459 U.S. 519 (1983) .................................................................................................... 8

*Comcast v. Behren*
   ___ U.S. ___, 133 S. Ct. 1426 (2013) ...................................................................... 19

*Compare In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*
   516 F. Supp.2d 1072 (N.D. Cal. 2007) ....................................................................... 9

*In re Am. Medical Sys., Inc., Pelvic Repair Sys. Prods. Liab. Litig., et al.*
   2012 WL 432533 (J.P.M.L. Feb. 7, 2012) .................................................................. 2

*In re Cathode Ray Tube (CRT) Antitrust Litigation*
   738 F. Supp.2d 1011 (N.D. Cal. 2010) ....................................................................... 9

*In re Flash Memory Antitrust Litig.*
   643 F. Supp.2d 1133 (N.D. Cal. 2009) ....................................................................... 9

*In re Graphics Processing Units Antitrust Litig., (GPUs II)*
   540 F. Supp.2d 1085 (N.D. Cal. 2007) ....................................................................... 9

*In re Optical Disk Drive (ODD) Litigation*
   2011 U.S. Dist. LEXIS 101763 (N.D. Cal. Aug. 3, 2011) .......................................... 9

*In re Static Random Access Memory (SRAM) Antitrust Litig.*
   580 F. Supp. 2d 896 (N.D. Cal. 2008) ...................................................................... 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
   586 F. Supp.2d 1109 (N.D. Cal. 2008) ....................................................................... 9

*Motorola Mobility LLC v. AU Optronics Corp.*
   746 F.3d 842 (7th Cir. 2014) .................................................................................. 16

<u>Statutes</u>

28 U.S.C. § 1407 ............................................................................................................... 1

**<u>Other Authorities</u>**

Manual on Complex Litigation (Fourth) .......................................................................... 18

**<u>Rules</u>**

Federal Rule of Civil Procedure  23 ............................................................................... 19

Federal Rule of Civil Procedure 1 ............................................................................ 1, 21

## INDEX OF MOST CONTROLLING AUTHORITIES

1. Federal Rule of Civil Procedure 1.

2. 28 U.S.C. § 1407.

3. Federal Rule of Civil Procedure 16(2)(L).

4. *Comcast v. Behrend,* ___ U.S. ___, 133 S. Ct. 1426 (2013).

## I.    INTRODUCTION

End-Payor Plaintiffs, Auto Dealer Plaintiffs, the State of Florida, and the City of Richmond ("Moving Plaintiffs") respectfully submit this reply memorandum in support of their motion to establish procedures to coordinate all actions in MDL 2311, pursuant to Federal Rule of Civil Procedure 1 and 28 U.S.C. § 1407.

This is a large, complex case because Defendants participated in a large, complex antitrust conspiracy.  Almost all of them have admitted to their participation in a criminal antitrust conspiracy as evidenced by their guilty pleas.  These complexities do not make the case unmanageable.  Instead, they require the procedures for coordination either as proposed by Moving Plaintiffs or as the Court determines would best serve the goals of achieving "the just, speedy, and inexpensive" resolution of this litigation.  The degree of coordination or consolidation of these actions is, of course, committed to the sound discretion of the Court.

Defendants have divided themselves into five groups in opposing this motion.  Defendants object to almost every proposal made to coordinate and streamline these actions, but offer no proposals of their own to accomplish those important goals.  Instead, Defendants argue that the present course should be followed, with each case proceeding seriatim far into the distant future and with vague, generalized references to using "best efforts" where possible to avoid duplication.  Certain Defendants premise their arguments on issues related to the Direct Purchaser Plaintiffs – e.g., the suggestion that interlocutory review may be sought of this Court's motion to dismiss order in the Heater Control Panel case – but these arguments have no application to the Indirect Purchaser Plaintiffs' claims.  The Direct Purchaser Plaintiffs purchased the specific component part

products directly.  The Moving Plaintiffs, by contrast, purchased motor vehicles which contained the price-fixed products as component parts.

Defendants' approach contradicts the Judicial Panel on Multidistrict Litigation's transfer order creating this single multidistrict litigation. The Defendants' vague proposals will not accomplish any cost savings or efficiencies, and will instead prejudice the rights of the victims of their admitted conspiracy.

## II.   RELEVANT FACTS

Moving Plaintiffs submit that the following facts are essential in considering this motion:

1.      The Judicial Panel on Multidistrict Litigation has established the single multidistrict litigation *In re Automotive Parts Antitrust Litigation,* MDL 2311, and all of the cases before this Court are part of that multidistrict litigation. In creating this single multidistrict litigation, the Panel stated:

> We have concluded that including all actions in MDL No. 2311 will lead to the most efficient handling of these cases.  Moving plaintiffs seek to create three new separate MDLs, and certain parties supporting such an arrangement argue that the cases in each MDL involve a separate alleged conspiracy that will involve facts, time frames, parties and witnesses specific to that alleged conspiracy.  In many situations, we are hesitant to bring together actions naming separate defendants and involving separate products.  *See, e.g., In re Am. Medical Sys., Inc., Pelvic Repair Sys. Prods. Liab. Litig., et al.,* MDL Nos. 2325, 2326, 2327, 2012 WL 432533 (J.P.M.L. Feb. 7, 2012).  ***In situations such as this, however, where similar conspiracies are alleged involving overlapping defendants and stemming from the same government investigation, and the parties and counsel already overlap to such a large extent, we find that the creation of a single MDL presents less of a concern.  Significant overlap in factual issues, parties and claims leads us to conclude that inclusion of all actions in MDL No. 2311 is the most appropriate outcome.***  In fact, we have communicated with Judge Battani, who has indicated she would prefer to handle all actions in MDL No. 2311.

Transfer Order (doc. 117) (emphasis added) (Exhibit 1).

2.      Twenty-seven Defendants before this Court have entered criminal guilty pleas for participating in conspiratorial conduct relating to component parts for motor vehicles.  These Defendants are:

a.   Aisin Industry Co., Ltd.

b.   Autoliv, Inc.

c.   Bridgestone Corporation

d.   DENSO Corporation

e.   Diamond Electric Mfg. Co., Ltd.

f.   Fujikura, Ltd.

g.   Furukawa Electric Co., Ltd.

h.   G.S. Electech, Inc.

i.   Hitachi Automotive Systems, Ltd.

j.   JTEKT Corporation

k.   Koito Manufacturing Co., Ltd.

l.   Mitsuba Corporation

m.   Mitsubishi Electric Corporation

n.   Mitsubishi Heavy Industries, Ltd.

o.   Nippon Seiki Co., Ltd.

p.   NSK, Ltd.

q.   Panasonic Corporation

r.   Showa Corporation

s.   Stanley Electric Co., Ltd.

t.   T.RAD Co., Ltd.

u.   Takata Corporation

v.   Tokai Rika Co., Ltd.

w.   Toyo Tire & Rubber Co., Ltd.

x.   TRW Deutschland Holding GmbH

y.   Valeo Japan, Ltd.

z.   Yamashita Rubber Co., Ltd.

aa.   Yazaki Corporation

See Exhibits 2 through 28.  Almost every one of these plea agreements, which have been accepted by the Courts to which they have been presented, state "[i]n light of the availability of civil causes of action, which potentially provide for a recovery of a multiple of actual damages, the recommended sentence ***does not*** include a restitution order for the offense charged in the Information."  See, e.g., Denso Plea Agreement (Exhibit 5) (emphasis added).  Those that do not have this specific language have substantially equivalent language.  In addition to the corporate pleas identified above, twenty-four individuals employed by Defendants have either pled guilty or been indicted.  Compensation for the victims of the conspiracy will only come in this multidistrict litigation.

It is important to emphasize that these admitted price-fixers are the parties claiming that *their* due process rights will be violated if the proposals made by Moving Plaintiffs are implemented.   While nothing proposed by Moving Plaintiffs would, in fact, violate any party's due process rights, it is the victims of the Defendants' admitted criminal acts whose rights to fairly and efficiently prosecute their claims for restitution and damages would be prejudiced by Defendants' proposals.

3.     In addition to the guilty pleas for price-fixing, three Defendants and two executives of those Defendants have pled guilty to obstruction of justice or otherwise admitted to destroying evidence.  These are:

    a.     Hitachi

    b.     Mitsuba

    c.     Tokai Rika

    d.     Denso executive Kazuaki Fujitani

    e.     Tokai Rika executive Hitoshi Hirano

    f.     Mitsubishi

In reference to the most recent indictment of Tokai Rika's executive Hitoshi Hirano, Deputy Assistant Attorney General Brent Snyder said "The Antitrust Division will not tolerate executives directing their subordinates to engage in illegal cartels and conspiracies.  Attempts to then obstruct justice and destroy evidence will give rise to additional charges."  (Exhibit 29).  It has been reported that "[t]hough the techniques and strategies sometimes differed, the executives generally carried out the collusion by trading coded emails, meeting at remote locations, and destroying documents to avoid paper trails."  *Associated Press*, May 25, 2014. (Exhibit 30).  The obstruction of justice, destruction of relevant evidence and the use of "coded emails" and other subterfuges undercuts the Wire Harness Defendants' arguments that merely providing Plaintiffs with documents that they previously produced to the DOJ will sufficiently inform Plaintiffs as to the facts of their conspiracy.

    4.    The following Defendants have been fined by foreign competition authorities for their role in the international conspiracy:

    a. Calsonic Kansei Corporation.

    b. Ichikoh Industries Ltd.

    c. Leoni AG

    d. Nachi-Fujikoshi Corporation

    e. NTN

    f. Robert Bosch GmbH

    g. Schaeffler AG

    h. SKF AB

    i. Sumitomo Electric Industries Ltd.

    5.    Moving Plaintiffs were the victims of the conspiracy.  Attorney General Eric Holder and other representatives of the United States Department of

Justice ("DOJ") have made the following statements concerning the DOJ's

investigation of the automotive parts industry:

> "Americans paid more for their cars. And American companies . . . were
> victims," Holder said of the investigation, which is still ongoing after several
> years.

*Washington Post,* September 26, 2013 (Exhibit 31).

> "It's a very, very safe assumption that U.S. consumers paid more, and
> sometimes significantly more, for their automobiles as a result of this
> conspiracy[.]"

> Deputy Assistant Attorney General Brent Snyder, quoted by the

Associated Press, May 25, 2014 (Exhibit 30).

> "It's still very much ongoing, but it already appears to be the biggest
> criminal antitrust investigation that we've ever encountered,"
> [Deputy Assistant Attorney General Scott] Hammond said. "I say (it
> is) the biggest with respect to the impact on U.S. businesses and
> consumers, and the number of companies and executives that are
> subject to the investigation."

Reuters, February 15, 2013 (Exhibit 32).

### III.   ARGUMENT

### A.   Coordination is Necessary and Appropriate

In its order creating the single multidistrict litigation *In re Automotive Parts*

*Antitrust Litigation,* the MDL Panel stated "We have long left the degree of

coordination or consolidation of involved actions to the sound discretion of the

transferee judge." (Exhibit 1).  Moving Plaintiffs have made specific proposals as

to how coordination can be accomplished in a way that reduces waste and creates

efficiencies for the Court and all parties.  Although they pay lip service to the

salutary goals of efficiency and coordination, Defendants' responses offer no

concrete proposals to accomplish these goals, and instead seek to avoid

coordination and accelerate discovery of the named Plaintiffs in order to further

their litigation strategies, all to the prejudice of Plaintiffs.  Moving Plaintiffs respectfully suggest that the equities weigh against stacking the deck in favor of the admitted criminal conspirators to the detriment of the conspirators' victims as proposed by Defendants.  Instead, for the reasons set forth in the opening brief and set forth below, Moving Plaintiffs suggest their proposals be adopted by the Court.

Some Defendants argue that these cases should not be coordinated because the electronics component part cases in the Northern District of California proceeded as separate cases before separate judges.  Certain co-lead counsel for the End-Payors in this case participated in almost all of the electronics cases in the Northern District of California as either lead counsel, co-lead counsel, or a member of the executive committee and is intimately familiar with those cases. Defendants' argument about those cases is wrong and misleading for the following reasons.

First, the electronics cases involved different end product markets, unlike these cases which, for the Moving Plaintiffs, involve *the same end-product market* – motor vehicles.  By contrast, the end-product markets in the electronics cases included, but were not limited to, televisions, computer monitors, thumb drive storage, iPods, smartphones, routers, servers, switches, and modems.

Second, the electronics cases had markedly different time frames and conspiracy periods.   The DRAM case, the first of the electronics cases, began in 2002, and MDL centralization took place in 2005.  The LCD cases were first filed in 2006, and MDL centralization took place in 2007.  The most recent electronics case referenced by Defendants, the Lithium Ion Batteries case, began in 2012, and MDL centralization took place in 2013 – 11 years after the DRAM case commenced and years after the DRAM, SRAM, and LCD classes were certified. All of the cases presently before the Court were centralized once, and all have been

filed within two and one-half years of the first filed case.  Furthermore, all of these cases are at an early point procedurally.

Third, the DOJ's multiple investigations of the electronics cases were seriatim and unrelated.  Several concluded without guilty pleas or indictments, others were continued and completed, and still others are ongoing.  The Auto Parts cases, by contrast, are all part of a single DOJ investigation and all involve guilty pleas and fines by U.S. and foreign competition authorities.  As the DOJ has stated, "[t]he auto parts investigation is the largest criminal investigation the Antitrust Division has ever pursued, both in terms of its scope and the potential volume of commerce affected by the alleged illegal conduct."  DOJ Spring 2012 Update. (Exhibit 33).

Fourth, unlike the Auto Parts cases, no single multidistrict litigation was ever created and no party or Court ever sought to centralize the various electronic cases as has been done here, or to coordinate the cases as Moving Plaintiffs propose.

Finally, the experience of the electronics cases suggests why Moving Plaintiffs' proposal is appropriate, and why the suggestion of the Deferred Defendants to sever their cases for assignment to a different judge is plainly inappropriate.  Putting aside the fact that the Deferred Defendants' argument contradicts the terms of the order of the Judicial Panel on Multidistrict Litigation, the electronics cases suffered from inconsistent adjudications – which even Defendants would concede should be avoided.  As this Court recalls from the repeated and prolonged briefing on motions to dismiss the indirect purchaser complaints (amounting to wasteful repetition which the "Deferred Defendants" continue to seek), the DRAM court held that *Associated General Contractors of California, Inc. v. California State Council of Carpenters ("AGC")*, 459 U.S. 519 (1983) barred certain indirect purchaser claims, while five other judges of that

court reached the opposite conclusion.  *Compare In re Dynamic Random Access Memory (DRAM) Antitrust Litigation,* 516 F. Supp.2d 1072, 1093 (N.D. Cal. 2007) with *In re Graphics Processing Units Antitrust Litig.*, (*GPUs II*), 540 F. Supp.2d 1085, 1097 (N.D. Cal. 2007) (holding even if *AGC* applied in all of the indirect purchaser states, and to the extent that it applies in any indirect purchaser states, indirect purchasers have standing); *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 586 F. Supp.2d 1109, 1123 (N.D. Cal. 2008) (same); *In re Flash Memory Antitrust Litig.,* 643 F. Supp.2d 1133, 1151-53 (N.D. Cal. 2009) (same); *In re Cathode Ray Tube (CRT) Antitrust Litigation,* 738 F. Supp.2d 1011, 1024 (N.D. Cal. 2010) (holding that indirect purchasers of CRT components in televisions and monitors had standing under state antitrust laws); *In re Optical Disk Drive (ODD) Litigation,* 2011 U.S. Dist. LEXIS 101763, *46 (N.D. Cal. Aug. 3, 2011) (acknowledging *DRAM* but following *LCDs* to conclude that "plaintiff's claims here should not be dismissed for lack of antitrust standing under [*AGC*]").   Given that the indirect purchaser classes at issue here – purchasers of automobiles containing price-fixed component parts – are the same in all of these cases, consistent adjudications are critical and would be accomplished through this Court maintaining and coordinating all of these cases.

**B.   An Efficient Process to Resolve Motion to Dismiss Issues**

Moving Plaintiffs have proposed that the cases be divided into tranches for the purpose of addressing motions directed at the complaints, and have proposed procedures for these motions, as described below.  One Defendant group agrees with the proposal for pre-motion conferences and that the Court should not be forced to consider "needless motions."  (Doc. 712, p. 6).  The vast majority of Defendants, however, disagree with the concept of tranches and the proposal for streamlining motions to dismiss, yet offer no alternate way to proceed.  One thing is clear: the current procedure for considering full-blown motions to dismiss on a

9

seriatim basis makes no sense, creates needless delay and overburdens the Court with repetitive, identical arguments, at times by the same counsel representing multiple parties.  Thus, Moving Plaintiffs propose:

1.      Prior to the filing of any motion to dismiss in any case for which briefing has not commenced, a meaningful meet-and-confer between the parties concerning the motion must be held.  The parties must specifically address:

     a.      whether any issue which any movant seeks to raise has previously been addressed by the Court;

     b.      if so, what the resolution was; and

     c.      the movant's claimed justification for seeking a ruling contrary to the Court's prior resolution.

2.      Prior to any motion being filed, a pre-motion conference shall be held with the Court.  No less than seven days before the pre-motion conference, each side may file a single, three page statement setting forth their position on whether the proposed motion addresses any matter not previously addressed by the Court.

3.      If the Court permits motions to dismiss to be filed, there shall be no joint briefs other than for Defendants within a single corporate group and briefing shall be subject to the following limits:

     a.      Ten page opening briefs;

     b.      Ten page responses; and

     c.      Seven page replies.

There shall be no oral argument unless ordered by Court.

/ / /

C.   **Discovery**

   1.   **Coordination of Discovery**

   While the stay is in place, Plaintiffs are severely limited in the discovery which they can take.  Merits depositions are barred.  However, there are certain things that can be ordered now that will help to move the cases forward.  ***The DOJ has been consulted and does not object to these proposals***:

>    a.   Each Defendant should produce transactional data consistent with the resolution of disputed issues concerning transactional data productions in the Wire Harness cases.
>
>    b.   Each Defendant who has pled guilty should identify the make, model and model year of any vehicles which were the subject of their guilty pleas.

Certain Defendants oppose this, but offer no sound reason for their opposition.  To the extent that they argue that this would violate the stay, DOJ has agreed that this discovery may go forward.  To the extent that they argue that such discovery should await resolution of motions to dismiss to be filed in the future, this argument should be rejected.  There is no automatic stay of discovery, and the Court has not ordered any stay of this discovery.  In circumstances similar to those present in this case – where Defendants have pleaded guilty and already likely produced documents and data to the government – courts may permit discovery to commence before motions to dismiss are resolved.  *See, e.g.*, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 899-900 (N.D. Cal. 2008).  Given the guilty pleas described above, there can be no argument that Plaintiffs have failed to plausibly allege a conspiracy.  Defendants who have pled guilty, admitting their involvement in the criminal conspiracy at issue in these

cases, should not be permitted to delay discovery of the basic facts concerning their admitted unlawful conduct.

Defendants drastically overstate the progress of discovery in the Wire Harness case.  It is true that, over Defendants' objections, the Wire Harness Defendants produced copies of their DOJ document productions to Plaintiffs, much of which is in Japanese.  As noted by the DOJ, the Defendants used "coded emails" to perpetrate their conspiracy, and therefore only the wrongdoers fully understand the meaning of these documents.   Plaintiffs have made productions of documents to Defendants, and all parties have served and responded to interrogatories.  Beyond that, little has happened to meaningfully advance discovery, and nothing has happened that would be inconsistent with Moving Plaintiffs' proposals.

This is primarily because of the DOJ stay, which prohibits Plaintiffs from proceeding with any merits depositions.  This bar effectively precludes Plaintiffs from the most important form of discovery, and this bar applies ***to all cases***.   Only when the stay is lifted will the Plaintiffs be permitted to explore the precise contours of the Defendants' wrongdoing.

Perhaps more important, the documents and interrogatory responses that Moving Plaintiffs produced in the Wire Harness case ***are the same or substantially similar*** to those they will produce in the subsequent cases because they all relate to the same thing – their purchases of automobiles.  Thus, the discovery provided by Moving Plaintiffs to date is entirely consistent with the coordination proposals that they have made, and also supports their position that depositions of the Moving Plaintiffs should be coordinated and take place only once to avoid needless, wasteful duplication and repetition.

The Heating Control Panel Defendants in particular make misleading arguments about their intention to file a motion for interlocutory review of this Court's order denying their motion to dismiss the Direct Purchaser Complaint and

to take early depositions. Their mistake in this argument is that it is premised on their attacks on the Direct Purchasers' claims – not on the Moving Plaintiffs, as to whom their arguments lack any merit.

### 2. Depositions

#### a. Defendant Witnesses

Plaintiffs have made specific proposals to avoid duplicative depositions of Defendants and their employees. Defendants offer nothing more than their representation that "best efforts" will be made, but this is insufficient for many reasons. First, it is vague and thus unenforceable. Second, these "best efforts" would be within the control and discretion of the Defendants. For these reasons, Defendants' proposal defeats one of the primary goals sought by Plaintiffs in coordinating these depositions – to have a single opportunity to examine Defendant witnesses who were involved in collusion relating to more than one component part so that they can seek to fully reveal the nature and scope of the conspiracy, rather than, as Defendants would have it, approaching it piecemeal.

This issue is well-illustrated by reference to Denso. Denso is a Defendant in thirteen cases. In six of those cases, Hitachi is a co-Defendant. In three of the cases in which both Denso and Hitachi are co-Defendants, Mitsubishi Electric is also a Defendant. In these cases, Moving Plaintiffs are entitled to an opportunity to uncover the links between these common defendants and their common conduct, which will inform the parties and the Court as to the ultimate way to handle class certification issues. Each of these cases is the subject of guilty pleas by the defendants – meaning that these claims are not simply based on Plaintiffs' allegations, but on admitted criminal violations of the antitrust laws.

There are further, compelling reasons why coordination of these depositions is essential. Plaintiffs understand Defendants' position to be that Plaintiffs must go to the witnesses' location to take these depositions. For many of these witnesses,

this means travel to Asia.  In the event that these depositions are taken in Japan, this will require the parties to be subject to the esoteric and burdensome procedures imposed by Japanese law for the conduct of depositions.  It would be unfair to require Plaintiffs to repeatedly travel to Japan in case after case to take depositions of Defendants or their employees.   Defendants' proposal that Plaintiffs rely on Defendants' best efforts to avoid imposing needless and costly burdens on Plaintiffs is unavailing because it has no teeth and no enforceability.

**b.    Class Representatives**

Moving Plaintiffs are indirect purchasers who purchased automobiles with price-fixed component parts.  That is true of every case in which they have filed. There is no good reason to force these Plaintiffs to be deposed over and over again, and there are ample reasons why those Plaintiffs should not be forced to be deposed now.

Other than what is known through the investigation of their counsel and the limited facts made available to date in discovery and through other sources, it bears repeating that these Plaintiffs do not know the facts of the conspiracy.  They do not personally know when the conspiracy started, what the scope of the conspiracy was, how it was initiated, executed, and policed by Defendants, and what specific component parts were involved.  Only the Defendants know this.  There is nothing to be gained from forcing these Plaintiffs to be deposed now.  Defendants simply seek to take unfair advantage of the present procedural posture of these cases to their benefit and Plaintiffs' prejudice.  This result is particularly unjust given that most Defendants are convicted price-fixers who have admitted to the conspiracy, and others are most certainly applicants under DOJ's leniency program who avoided criminal charges only by self-reporting their illegal conduct and who are legally bound to provide assistance to Plaintiffs should those Defendants seek to avoid treble damages and joint and several liability.

14

Certain Defendants argue that Moving Plaintiffs' are inadequate class representatives because they refuse to be deposed, but this is a misstatement of Moving Plaintiffs' position.  Instead, Moving Plaintiffs will be deposed but should be deposed at a time when the nature, scope, and extent of Defendants' conspiracy is more clearly known so that their depositions need only be taken once.  Moving Plaintiffs purchased vehicles which contain price fixed component parts, and given what is presently understood about Defendants' conspiracy, most likely purchased vehicles containing multiple price-fixed parts.   However, due to the DOJ discovery stay, at this time only limited information has been made available to Plaintiffs about what specific component parts were price-fixed.  It would be unfair to force these class representatives to be deposed now, only to find out that the automobile they purchased had five or ten additional price-fixed parts for which they do not yet have information.

Defendants argue that they must take these depositions now so that they can make summary judgment motions at the earliest possible time.  The Court should not tip the equities in favor of the admitted criminal price-fixers at the expense of their victims by front-loading discovery so that Defendants can make early summary judgment motions.  Their position is especially ironic.  For example, in the opposition brief filed by "Certain Defendants" they argue that Moving Plaintiffs' proposal is flawed because it supposedly prevents Defendants from taking "class certification *discovery* until after plaintiffs have completed merits discovery – essentially creating a priority system unsupported by the Federal Rules of Civil Procedure, under which the plaintiffs get to go first, and the defendants are not allowed to take discovery on critical issues until the plaintiffs declare themselves ready." (emphasis in original).   Aside from the fact that this blatantly misstates Moving Plaintiffs' proposal, what these Defendants complain of is exactly what the Defendants propose to do – take all the discovery they want from

Plaintiffs now, while Plaintiffs are barred from taking substantive discovery of Defendants due to the stay.

Furthermore, Defendants' arguments appear premised on their supposition that the Court will grant these motions. There is no basis for this supposition. Defendants argue that they want to bring motions based upon the Foreign Trade Antitrust Improvements Act ("FTAIA") as well as additional motions challenging Plaintiffs' standing. Defendants have not discussed any of these anticipated motions with Plaintiffs, but it is difficult to perceive how either basis would meaningfully advance resolution of the Moving Plaintiffs' claims. The FTAIA is a *federal* statute which defines the scope of *federal* antitrust claims, not state law claims. The Wire Harness Defendants cite *Motorola Mobility LLC v. AU Optronics Corp.,* 746 F.3d 842, 844 (7th Cir. 2014), *petition for en banc review pending,* in support of this argument. However, that case only discussed federal claims under the Sherman Act and not indirect purchaser claims under state laws. As a matter of law, the FTAIA does not govern state law claims, it does not bar claims based upon conspiratorial conduct taking place in the United States, and it does not bar claims based upon import trade or commerce or foreign conduct that has a direct, substantial, and reasonably foreseeable effect on U.S. domestic trade or commerce – such as fixing the prices of component parts for automotive vehicles imported into the United States. The primary evidence concerning any FTAIA-related issues, such as where the conspiratorial acts took place, is solely within the control of the Defendants, but at this time they are not subject to discovery due to the stay. This argument is not a basis to argue that class representative depositions must take place at this time and no Defendant would suffer any cognizable legal prejudice if these depositions do not go forward now.

The same is true concerning Defendants' arguments that they intend to move for summary judgment based upon standing. Presumably, Defendants intend to

move for summary judgment on the grounds that certain class representatives may not have purchased vehicles containing particular price-fixed parts.  This argument, advanced by admitted criminals and/or presumed amnesty applicants, comes with remarkable ill grace.  First, at a point when Class Plaintiffs are effectively barred from pursuing substantive discovery, the admitted price-fixers seek to base their motions on information that has not been tested in the ordinary discovery process.   Second, the Wire Harness Defendants argue that they need this discovery in order to know "which products and/or car models each plaintiff purchased."  But these Defendants have failed to tell the Court that the End Payors have already answered discovery and provided this information to the Wire Harness Defendants, and the Auto Dealer have also responded to discovery and are currently providing this information to the Wire Harness Defendants.

In addition, any such motions can only be designed to obstruct efficiency, burden the Court's resources, and unnecessarily add to the victim's expense. Plaintiffs will almost certainly be entitled to respond with Rule 56(d) declarations showing why consideration of these motions must be deferred until discovery can be conducted.  The result would be make-work advanced by the same Defendants who have repeatedly sought to re-brief and re-argue practically every major decision this Court has made during the course of this litigation.  Finally, Defendants' desire to move for early summary judgment based on standing issues ignores the fact that class representatives may, subject to Court approval, be substituted to the extent discovery reveals relevant facts affecting an individual representative's standing.  This is yet another reason why any such motions should be made only after discovery has run its course.

The Court should reject Defendants' argument that class representative depositions must proceed now.   Particularly in light of the fact that Moving Plaintiffs' class representatives are plaintiffs in multiple cases and that no

discovery has been had in almost all of those cases, nothing would be gained by having those depositions move forward now.

### 3. Non-Party Discovery

The area of non-party discovery presents one of the most compelling reasons why discovery must be coordinated.  The Moving Plaintiffs will need to issue third-party discovery to Original Equipment Manufacturers ("OEMs"), such as the automakers who were direct victims of Defendants' conspiracy, and who then passed on the illegal overcharges to the Moving Plaintiffs.  For the sake of efficiency and to limit the burden on non-parties, such discovery should only take place when Moving Plaintiffs are free to move forward in all cases.  But again, Defendants offer nothing more than a suggestion to use "best efforts" – which is insufficient to accomplish the necessary goal of coordination and to satisfy the requirement that the Court and the parties minimize the burden to third-parties. *American Elec. Power v. United States*, 191 F.R.D. 1432, 134 (S.D. Ohio 1999) ("[c]ourts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure"); *see also* Manual on Complex Litigation (Fourth), § 11.47 ("[a] party seeking such production [from a non-party] has a duty to take reasonable steps to avoid imposing undue burden or expense on the person subpoenaed").  Defendants' proposed vague, unenforceable "best efforts" standard will not meet this requirement.

### 4. Active Involvement of the Court

Moving Plaintiffs proposed that regular reports be provided to the Court to advise the Court of the progress of the cases and to flag issues which may need attention.   Most Defendants are silent on this proposal, while others, inexplicably, oppose it.  Moving Plaintiffs can discern no reason why providing necessary

information to the Court to assist in the management of these cases would be objectionable.

### D.   Class Certification

Moving Plaintiffs' proposal as it relates to class certification issues is actually quite simple.  Recognizing that, due to the ongoing discovery stay, too little is known concerning the conspiracy or conspiracies at issue in this case to effectively address class certification issues absent merits discovery, Moving Plaintiffs simply urge the Court to schedule class certification when the time is right—and all parties to this action are free to advise the Court on their views as to when and how the issue of class certification should be presented to the Court.

Defendants argue that class certification must go forward at the earliest "practicable" time, citing Fed. R. Civ. Proc. 23.  "Practicable" has little meaning without context.  In light of *Comcast v. Behrend,* ___ U.S. ___, 133 S. Ct. 1426 (2013), this means that Plaintiffs must address and the Court must consider merits issues to the extent that they are necessary to evaluate the Rule 23 criteria.  This can only happen after adequate discovery has taken place on these merits issues. The reasons are simple.  At this point, in the absence of meaningful discovery, it is difficult to predict the scope and contours of the class or classes the Plaintiffs will seek to certify.  It is also likely that certain Moving Plaintiffs will need to address the existence of multiple price-fixed parts in single vehicles when their experts submit reports modeling impact for purposes of class certification.  Defendants' arguments fail to account for these considerations, and this Court should reject those arguments.  Finally, to the extent that Defendants argue that this Court's statements during the discussion of the Supplemental Discovery Plan in the Wire Harness case constituted a "ruling" that class certification must proceed promptly in the Wire Harness case once the stay is lifted, Moving Plaintiffs respectfully disagree that this was an order of the Court and suggest that the decision on how to

proceed with class certification shall be the subject of the filings that the parties make once the stay is lifted.

The Wire Harness Defendants in particular spend significant portions of their brief arguing class certification issues. These arguments are plainly premature and irrelevant to this motion. Most importantly, it is Plaintiffs who will choose the form of their motion for class certification, not Defendants, and until the time that class certification proceedings begin, Defendants' arguments should not be considered.

## E. Moving Plaintiffs' Efforts to Meet and Confer Before Filing this Motion

Moving Plaintiffs' motion set forth, in accordance with this Court's Local Rules, that an effort was made to meet and confer prior to filing this motion. One group of Defendants claims that Moving Plaintiffs did not meaningfully meet and confer with them before filing the motion, while others claim that no meet and confer was held at all. As set forth in the Declaration of Steven N. Williams submitted with this reply, Moving Plaintiffs maintain that they did comply with the Local Rules. As demonstrated by the oppositions which have been filed – in which Defendants reject virtually every single proposal made by Moving Plaintiffs – it is apparent that agreement could not be secured.

## IV. CONCLUSION

Moving Plaintiffs submit that they have set forth concrete proposals to effect coordination and to create savings of time and resources. Defendants have failed to set forth any proposal that would accomplish this, other than vague and unenforceable platitudes about "best efforts." The Court is presiding over a large, complex antitrust action because the Defendants perpetrated a large, complex criminal antitrust conspiracy. Moving Plaintiffs – the victims of this unlawful conspiracy – should not be prejudiced by procedures which would serve to unfairly

20

limit their ability to prove their claims against Defendants.  Federal Rule of Civil Procedure 1 commands the "*just,* speedy and inexpensive determination of every action and proceeding."  Refusing to implement any procedures to coordinate these actions would only serve to deny justice to Moving Plaintiffs.  No one should prejudge the resolution of these cases and whether Plaintiffs or Defendants will prevail.  But it is indisputable that the Defendants engaged in a massive criminal conspiracy – one that the DOJ calls its largest antitrust investigation ever.  All Moving Plaintiffs seek is a fair opportunity to seek to prove the claims that they have arising from the Defendants' wrongdoing in an efficient manner.

Dated:  June 2, 2014

*Frank C. Damrell, Jr.*
Frank C. Damrell, Jr.
Steven N. Williams
Adam J. Zapala
Elizabeth Tran
COTCHETT, PITRE & McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
fdamrell@cpmlegal.com
swilliams@cpmlegal.com
azapala@cmplegal.com
etran@cpmlegal.com

Hollis Salzman
Bernard Persky
William V. Reiss
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
hsalzman@rkmc.com

21

bpersky@rkmc.com
wreiss@rkmc.com

Marc M. Seltzer
Steven G. Sklaver
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Warren T. Burns
SUSMAN GODFREY L.L.P.
901 Main Street, Suite 5100
Dallas, TX 75202
Telephone: (214) 754-1900
Facsimile: (214) 754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com
 ***Interim Co-Lead Class Counsel for End-Payor Plaintiffs***

/s/ E. Powell Miller
E. Powell Miller
Adam Schnatz
THE MILLER LAW FIRM
950 W. University Drive
Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
aschnatz@millerlawpc.com
***Interim Liaison Counsel for End-Payor Plaintiffs***

22

Don Barrett
David McMullan
Brian Herrington
Barrett Law Group, P.A.
P.O. Box 927
404 Court Square
Lexington, MS  39095
Telephone:  (662) 834-2488
Email: dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Jonathan W. Cuneo
Joel Davidow
Victoria Romanenko
Cuneo Gilbert & LaDuca, LLP
507 C Street, N.E.
Washington, DC 20002
Phone: (202) 789-3960
Fax: (202) 789-1813
Email: jonc@cuneolaw.com
Joel@cuneolaw.com
Vicky@cuneolaw.com

Shawn M. Raiter
Larson • King, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN  55101
Telephone: (651) 312-6500
Email: sraiter@larsonking.com

***Interim Co-Lead Class Counsel for Auto-Dealer Plaintiffs***

Gerard V. Mantese (Michigan Bar No. P34424)
David Hansma (Michigan Bar No. P71056)
Brendan Frey (Michigan Bar No. P70893)
Joshua Lushnat (Michigan Bar No. P75319)

23

Mantese Honigman Rossman
 and Williamson, P.C.
1361 E. Big Beaver Road
Troy, Michigan 48083
Phone: (248) 457-9200 ext. 203
Fax: (248) 457-9201
Email: gmantese@manteselaw.com
dhansma@manteselaw.com
bfrey@manteselaw.com
jlushnat@manteselaw.com

***Interim Liaison Counsel for Auto Dealer
Plaintiffs Plaintiffs***

PAMELA JO BONDI
Attorney General
STATE OF FLORIDA

/s/ R. Scott Palmer
PATRICIA A. CONNERS
(Florida Bar No. 361275)
Associate Deputy Attorney General
Trish.Conners@myfloridalegal.com
R. SCOTT PALMER
(Florida Bar No. 220353)
Special Counsel for Antitrust Enforcement
Scott.Palmer@myfloridalegal.com
GREGORY S. SLEMP
(Florida State Bar No. 478865)
Greg.Slemp@myfloridalegal.com
TIMOTHY FRASER
(Florida Bar No. 957321)
Timothy.Fraser@myfloridalegal.com
Office of the Attorney General
State of Florida
PL-01, The Capitol
Tallahassee, FL 32399-1050
Tel: (850) 414-3300
Fax: (850) 488-9134

24

*Counsel for the State of Florida*

By: */s/ Lesley E. Weaver*
Robert S. Green
James Robert Noblin
Lesley E. Weaver
Green & Noblin, P.C.
700 Larkspur Landing Circle
Suite 275
Larkspur, CA 94393
(415) 477-6700
gnecf@classcounsel.com
lew@classcounsel.com

Karen L. Morris
Patrick F. Morris
R. Michael Lindsey
Morris and Morris LLC
Counselors At Law
4001 Kennett Pike
Suite 300
Wilmington, DE 19807
(302) 426-0400
kmorris@morrisandmorrislaw.com
pmorris@morrisandmorrislaw.com
rmlindsey@morrisandmorrislaw.com
***Counsel for City of Richmond***

## CERTIFICATE OF SERVICE

I, Frank C. Damrell, Jr., hereby certify that I caused a true and correct copy of the foregoing brief and exhibits to be served upon all counsel of record via the Court's ECF Filing System on June 2, 2014.

*Frank C. Damrell, Jr.*
Frank C. Damrell, Jr.