# EXHIBIT 3

# FILED

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JUN 2 1 2012

CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

UNITED STATES OF AMERICA,

      v.

AUTOLIV, INC.

             Defendant.

_____/

Criminal No.: 12-20383

Filed: 6-21-12

Violation: 15 U.S.C. § 1

TWO COUNTS

## PLEA AGREEMENT

The United States of America and Autoliv, Inc. ("defendant"), a corporation organized and existing under the laws of Delaware, hereby enter into the following Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."):

## RIGHTS OF DEFENDANT

1.    The defendant understands its rights:

    (a)    to be represented by an attorney;

    (b)    to be charged by Indictment;

    (c)    to plead not guilty to any criminal charges brought against it;

    (d)    to have a trial by jury, at which it would be presumed not guilty of the charges and the United States would have to prove every essential element of the charged offenses beyond a reasonable doubt for it to be found guilty;

    (e)    to confront and cross-examine witnesses against it and to subpoena witnesses in its defense at trial;

    (f)    to appeal its conviction if it is found guilty; and

    (g)    to appeal the imposition of sentence against it.

## AGREEMENT TO PLEAD GUILTY
## AND WAIVE CERTAIN RIGHTS

2.      The defendant knowingly and voluntarily waives the rights set out in Paragraph

1(b)-(f) above.  The defendant also agrees to waive any objection or defense it may have to the

prosecution of the charged offenses in the United States District Court for the Eastern District of

Michigan based on venue.  The defendant also knowingly and voluntarily waives the right to file

any appeal, any collateral attack, or any other writ or motion, including but not limited to an

appeal under 18 U.S.C. § 3742, that challenges the sentence imposed by the Court if that

sentence is consistent with or below the recommended sentence in Paragraph 8 of this Plea

Agreement, regardless of how the sentence is determined by the Court.  This agreement does not

affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b)-(c).

Nothing in this paragraph, however, shall act as a bar to the defendant perfecting any legal

remedies it may otherwise have on appeal or collateral attack respecting claims of ineffective

assistance of counsel or prosecutorial misconduct.  The defendant agrees that there is currently

no known evidence of ineffective assistance of counsel or prosecutorial misconduct.  Pursuant to

Fed. R. Crim. P. 7(b), the defendant will waive indictment and plead guilty to a two-count

Information to be filed in the United States District Court for the Eastern District of Michigan.

Count One of the Information will charge the defendant with participating in a combination and

conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to

rig bids for, and to fix, stabilize, and maintain the prices of, certain seatbelts sold to Japanese

Automobile Manufacturer A from at least as early as May 2008 until at least February 2011 in

violation of the Sherman Antitrust Act, 15 U.S.C. § 1.  Count Two of the Information will charge

the defendant with participating in a combination and conspiracy to suppress and eliminate

2

competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, certain seatbelts, airbags and/or steering wheels sold to Japanese Automobile Manufacturer B from at least as early as March 2006 until at least February 2011 in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

      3.     The defendant, pursuant to the terms of this Plea Agreement, will plead guilty to the criminal charges described in Paragraph 2 above and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below.

## FACTUAL BASIS FOR OFFENSES CHARGED

      4.     Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts:

     (a)     As to Count One:

         (i)     For purposes of this Plea Agreement, the "relevant period" is that period from at least as early as May 2008 until at least February 2011. During the relevant period, the defendant was a corporation organized and existing under the laws of Delaware, with its principal place of business in Stockholm, Sweden. During the relevant period, the defendant was a manufacturer of seatbelts, employing more than 5,000 individuals, and was engaged in the sale of seatbelts in the United States and elsewhere. Seatbelts are safety strap restraints designed to secure an occupant in position in a vehicle in the event of an accident. A seatbelt includes belt webbing, a buckle, a retractor, and hardware for installation in a vehicle. It may also include, depending on the requirements of the vehicle

3

manufacturer, a height adjuster, a pretensioner, or other devices associated with the seatbelt.

(ii)     During the relevant period, the defendant, through certain employees of its wholly-owned subsidiary, Autoliv Japan, Ltd., including a high-level employee of the subsidiary, participated in a conspiracy with other persons and entities engaged in the manufacture and sale of seatbelts, the primary purpose of which was to rig bids for, and to fix, stabilize, and maintain the prices of certain seatbelts sold to Japanese Automobile Manufacturer A in the United States and elsewhere.  In furtherance of the conspiracy, the defendant, through certain employees of that subsidiary, engaged in discussions and attended meetings with co-conspirators involved in the manufacture and sale of seatbelts.  During such meetings and conversations, agreements were reached to (a) allocate the supply of certain seatbelts sold to Japanese Automobile Manufacturer A on a model-by-model basis; (b) rig bids quoted to Japanese Automobile Manufacturer A for those seatbelts; and (c) fix, stabilize, and maintain the prices of those seatbelts, sold to Japanese Automobile Manufacturer A in the United States and elsewhere.

(iii)     Seatbelts sold by one or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of seatbelts, as well as payments for seatbelts, traveled in interstate and foreign commerce. The business activities of the defendant and its co-conspirators in connection with the production and sale of seatbelts that were the subject of this conspiracy were

4

within the flow of, and substantially affected, interstate and foreign trade and commerce.

(b)    As to Count Two:

(i)    For purposes of this Plea Agreement, the "relevant period" is that period from at least as early as March 2006 until at least February 2011. During the relevant period, the defendant was a corporation organized and existing under the laws of Delaware, with its principal place of business in Stockholm, Sweden. During the relevant period, the defendant was a manufacturer of seatbelts, airbags, and steering wheels, employing more than 5,000 individuals, and was engaged in the sale of seatbelts, airbags, and steering wheels in the United States and elsewhere. Airbags are occupant restraints designed to control the movement of an occupant inside a vehicle in case of an accident. An airbag consists of a light fabric air bag, an inflator, which through use of pressurized gas (typically generated by pyrotechnic materials), rapidly inflates the airbag upon deployment, and an initiator to initiate the deployment. It may also include, depending on the requirements of the vehicle manufacturer, an injection molded plastic decorative cover or other devices associated with the airbag. Steering wheels consist of a die-cast armature (frame) covered by molded polyurethane and finished with leather, wood trim, or plastic, and may include various electronic features and controls, depending on the requirements of the vehicle manufacturer.

(ii)    During the relevant period, the defendant, through certain employees of its wholly-owned subsidiary, Autoliv Japan, Ltd., including a high-

5

level employee of the subsidiary, participated in a conspiracy with other persons and entities engaged in the manufacture and sale of seatbelts, airbags, and steering wheels, the primary purpose of which was to rig bids for, and to fix, stabilize, and maintain the prices of certain seatbelts, airbags, and steering wheels sold to Japanese Automobile Manufacturer B in the United States and elsewhere. In furtherance of the conspiracy, the defendant, through certain employees of that subsidiary, engaged in discussions and attended meetings with co-conspirators involved in the manufacture and sale of seatbelts, airbags, and steering wheels. During such meetings and conversations, agreements were reached to (a) allocate the supply of certain seatbelts, airbags, and/or steering wheels sold to Japanese Automobile Manufacturer B on a model-by-model basis; (b) rig bids quoted to Japanese Automobile Manufacturer B for those seatbelts, airbags, and/or steering wheels; and (c) fix, stabilize, and maintain the prices of those seatbelts, airbags, and/or steering wheels, sold to Japanese Manufacturer B in the United States and elsewhere.

(iii)    Seatbelts, airbags, and steering wheels sold by one or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of seatbelts, airbags, and steering wheels, as well as payments for seatbelts, airbags, and steering wheels, traveled in interstate and foreign commerce. The business activities of the defendant and its co-conspirators in connection with the production and sale of seatbelts, airbags, and steering wheels

6

that were the subject of this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

## POSSIBLE MAXIMUM SENTENCE

5.    The defendant understands that the statutory maximum penalty which may be imposed against it upon conviction for each violation of Section One of the Sherman Antitrust Act is a fine in an amount equal to the greatest of:

(a)    $100 million (15 U.S.C. § 1);

(b)    twice the gross pecuniary gain the conspirators derived from the crime (18 U.S.C. § 3571(c) and (d)); or

(c)    twice the gross pecuniary loss caused to the victims of the crime by the conspirators (18 U.S.C. § 3571(c) and (d)).

6.    In addition, the defendant understands that:

(a)    pursuant to 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years for each of the charged crimes;

(b)    pursuant to §8B1.1 of the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") or 18 U.S.C. § 3563(b)(2) or 3663(a)(3), the Court may order it to pay restitution to the victims of the offenses; and

(c)    pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the defendant to pay a $400 special assessment upon conviction for each of the charged crimes.

## SENTENCING GUIDELINES

7

7.     The defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in effect on the day of sentencing, along with the other factors set forth in 18 U.S.C. § 3553(a), in determining and imposing sentence. The defendant understands that the Guidelines determinations will be made by the Court by a preponderance of the evidence standard. The defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

## SENTENCING AGREEMENT

8.     Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant agree that the appropriate disposition of this case is, and agree to recommend jointly that the Court impose, a sentence requiring the defendant to pay to the United States a criminal fine of $14.5 million, payable in full before the fifteenth (15th) day after the date of judgment and no order of restitution ("the recommended sentence"). The parties further agree that the recommended sentence set forth in this Plea Agreement is reasonable.

(a)     Section 5K2.0 of the U.S.S.G. provides for a sentence above the range established by the applicable guideline if there exists a circumstance not adequately taken into consideration in formulating the Guidelines. The United States will make a motion pursuant to U.S.S.G. §5K2.0 requesting that the Court depart from the sentence calculated pursuant to U.S.S.G. §2R1.1 and impose the agreed-upon sentence set out above. The upward departure is based on the fact that all of the defendant's commerce affected by its participation in the charged conduct fell outside the charged conspiracy

8

periods, and there were no affected sales during the charged conspiracy periods. This is due to the fact that the automobile parts contracts that were the subject of the charged conspiracies were entered into approximately three years prior to the manufacture of affected models. Failing to take this affected commerce into account would vastly understate the seriousness of the offense. Therefore, the United States and the defendant agree that an upward departure is appropriate in this case.

(b)     The defendant understands that the Court will order it to pay a $400 special assessment for each offense charged in the Information, pursuant to 18 U.S.C. § 3013(a)(2)(B), in addition to any fine imposed.

(c)     In light of the availability of civil causes of action, which potentially provide for a recovery of a multiple of actual damages, the recommended sentence does not include a restitution order for the offenses charged in the Information.

(d)     Both parties will recommend that no term of probation be imposed, but the defendant understands that the Court's denial of this request will not void this Plea Agreement.

(e)     The United States and the defendant jointly submit that this Plea Agreement, together with the record that will be created by the United States and the defendant at the plea and sentencing hearings, and the further disclosure described in Paragraph 9, will provide sufficient information concerning the defendant, the crimes charged in this case, and the defendant's role in the crimes to enable the meaningful exercise of sentencing authority by the Court under 18 U.S.C. § 3553. The United States and the defendant agree to request jointly that the Court accept the defendant's guilty

9

pleas and impose sentence on an expedited schedule as early as the date of arraignment, based upon the record provided by the defendant and the United States, under the provisions of Fed. R. Crim. P. 32(c)(1)(A)(ii), U.S.S.G. §6A1.1, and Rule 32.1(h) of the Criminal Local Rules. The Court's denial of the request to impose sentence on an expedited schedule will not void this Plea Agreement.

9.      Subject to the full, truthful, and continuing cooperation of the defendant and its subsidiaries, as defined in Paragraph 11 of this Plea Agreement, and before sentencing in the case, the United States will fully advise the Court and the Probation Office of the fact, manner, and extent of the defendant's and its subsidiaries' cooperation, and their commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to the defendant's involvement in the charged offenses and all other relevant conduct.

10.     The United States and the defendant understand that the Court retains complete discretion to accept or reject the recommended sentence provided for in Paragraph 8 of this Plea Agreement.

(a)     If the Court does not accept the recommended sentence, the United States and the defendant agree that this Plea Agreement, except for Paragraph 10(b) below, shall be rendered void.

(b)     If the Court does not accept the recommended sentence, the defendant will be free to withdraw its guilty pleas (Fed. R. Crim. P. 11(c)(5) and (d)). If the defendant withdraws its pleas of guilty, this Plea Agreement, the guilty pleas, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty pleas or this Plea Agreement, or made in the course of plea discussions with an attorney

10

for the government, shall not be admissible against the defendant in any criminal or civil proceeding, except as otherwise provided in Federal Rule of Evidence 410. In addition, the defendant agrees that, if it withdraws its guilty pleas pursuant to this subparagraph of the Plea Agreement, the statute of limitations period for any offenses referred to in Paragraph 13 of this Plea Agreement shall be tolled for the period between the date of the signing of the Plea Agreement and the date the defendant withdrew its guilty pleas or for a period of sixty (60) days after the date of the signing of the Plea Agreement, whichever period is greater.

## DEFENDANT'S COOPERATION

11.    The defendant and its subsidiaries will cooperate fully and truthfully with the United States in the prosecution of this case; the conduct of the current federal investigation of violations of federal antitrust and related criminal laws involving the manufacture or sale of seatbelts, airbags, or steering wheels; any other federal investigation resulting therefrom; and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party ("Federal Proceeding"). The full, truthful, and continuing cooperation of the defendant and its subsidiaries shall include, but not be limited to:

(a)    producing to the United States all non-privileged documents, information, and other materials, wherever located (and with translations into English), in the possession, custody, or control of the defendant or its subsidiaries, requested by the United States in connection with any Federal Proceeding; and

(b)    using its best efforts to secure the full, truthful, and continuing cooperation, as defined in Paragraph 12 of this Plea Agreement, of the current and former

11

directors, officers and employees of the defendant or its subsidiaries as may be requested by the United States, but excluding Takayoshi Matsunaga, Georg Rauch, and Kengo Tanaka, including making these persons available in the United States and at other mutually agreed-upon locations, at the defendant's expense, for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with any Federal Proceeding.

12.     The full, truthful and continuing cooperation of each person described in Paragraph 11(b) above, will be subject to the procedures and protections of this paragraph, and shall include, but not be limited to:

(a)     producing in the United States and at other mutually agreed-upon locations all non-privileged documents, including claimed personal documents and other materials, wherever located (and with translations into English), requested by attorneys and agents of the United States;

(b)     making himself or herself available for interviews in the United States and at other mutually agreed-upon locations, not at the expense of the United States, upon the request of attorneys and agents of the United States;

(c)     responding fully and truthfully to all inquiries of the United States in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making false statements (18 U.S.C. § 1001) and obstruction of justice (18 U.S.C. § 1503, *et seq.*);

(d)    otherwise voluntarily providing the United States with any non-privileged material or information not requested in (a) - (c) of this paragraph that he or she may have that is related to any Federal Proceeding;

(e)    when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the United States fully, truthfully and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401-402) and obstruction of justice (18 U.S.C. § 1503, *et seq.*); and

(f)    agreeing that, if the agreement not to prosecute him or her in this Plea Agreement is rendered void under Paragraph 14(c), the statute of limitations period for any Relevant Offense as defined in Paragraph 14(a) shall be tolled as to him or her for the period between the date of the signing of this Plea Agreement and six (6) months after the date that the United States gave notice of its intent to void its obligations to that person under the Plea Agreement.

## GOVERNMENT'S AGREEMENT

13.    Upon acceptance of the guilty pleas called for by this Plea Agreement and the imposition of the recommended sentence, and subject to the cooperation requirements of Paragraph 11 of this Plea Agreement, the United States agrees that it will not bring further criminal charges against the defendant or its subsidiaries for any act or offense committed before the date of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the manufacture or sale of seatbelts, airbags or steering wheels described in paragraphs

13

4(a)(i) and 4(b)(i) hereof. The nonprosecution terms of this paragraph do not apply to civil matters of any kind, to any violation of the federal tax or securities laws or to any crime of violence.

14. The United States agrees to the following:

  (a) Upon the Court's acceptance of the guilty pleas called for by this Plea Agreement and the imposition of the recommended sentence and subject to the exceptions noted in Paragraph 14(c), the United States will not bring criminal charges against any current or former director, officer, or employee of the defendant or its subsidiaries for any act or offense committed before the date of this Plea Agreement and while that person was acting as a director, officer, or employee of the defendant or its subsidiaries that was undertaken in furtherance of an antitrust conspiracy involving the manufacture or sale of seatbelts, airbags or steering wheels described in paragraphs 4(a)(i) and 4(b)(i) hereof ("Relevant Offenses"), with the exception that the protections granted in this paragraph shall not apply to Takayoshi Matsunaga, Georg Rauch, and Kengo Tanaka;

  (b) Should the United States determine that any current or former director, officer, or employee of the defendant or its subsidiaries may have information relevant to any Federal Proceeding, the United States may request that person's cooperation under the terms of this Plea Agreement by written request delivered to counsel for the individual (with a copy to the undersigned counsel for the defendant) or, if the individual is not known by the United States to be represented, to the undersigned counsel for the defendant;

14

(c)     If any person requested to provide cooperation under Paragraph 14(b) fails to comply with his or her obligations under Paragraph 12, then the terms of this Plea Agreement as they pertain to that person, and the agreement not to prosecute that person granted in this Plea Agreement, shall be rendered void;

(d)     Except as provided in Paragraph 14(e), information provided by a person described in Paragraph 14(b) to the United States under the terms of this Plea Agreement pertaining to any Relevant Offense, or any information directly or indirectly derived from that information, may not be used against that person in a criminal case, except in a prosecution for perjury (18 U.S.C. § 1621), making a false statement (18 U.S.C. § 1001), making a false statement or declaration in grand jury or court proceedings (18 U.S.C. § 1623), or obstruction of justice (18 U.S.C. § 1503, *et seq.*);

(e)     If any person who provides information to the United States under this Plea Agreement fails to comply fully with his or her obligations under Paragraph 12 of this Plea Agreement, the agreement in Paragraph 14(d) not to use that information or any information directly or indirectly derived from it against that person in a criminal case shall be rendered void;

(f)     The nonprosecution terms of this paragraph do not apply to civil matters of any kind, to any violation of the federal tax or securities laws, or to any crime of violence; and

(g)     Documents provided under Paragraphs 11(a) and 12(a) shall be deemed responsive to outstanding grand jury subpoenas issued to the defendant or its subsidiaries.

15.     The United States agrees that when any person travels to the United States for interviews, grand jury appearances, or court appearances pursuant to this Plea Agreement, or for meetings with counsel in preparation therefor, the United States will take no action, based upon any Relevant Offense, to subject such person to arrest, detention, or service of process, or to prevent such person from departing the United States. This paragraph does not apply to an individual's commission of perjury (18 U.S.C. § 1621), making a false statement (18 U.S.C. § 1001), making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*) or contempt (18 U.S.C. §§ 401-402) in connection with any testimony or information provided or requested in any Federal Proceeding.

16.     The defendant understands that it may be subject to administrative action by federal or state agencies other than the United States Department of Justice, Antitrust Division, based upon the convictions resulting from this Plea Agreement, and that this Plea Agreement in no way controls whatever action, if any, other agencies may take. However, the United States agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such administrative action of the fact, manner, and extent of the cooperation of the defendant and its subsidiaries as a matter for that agency to consider before determining what administrative action, if any, to take.

## REPRESENTATION BY COUNSEL

17.     The defendant has been represented by counsel and is fully satisfied that its attorneys have provided competent legal representation. The defendant has thoroughly reviewed this Plea Agreement and acknowledges that counsel has advised it of the nature of the charges, any possible defenses to the charges and the nature and range of possible sentences.

16

## VOLUNTARY PLEA

18.     The defendant's decision to enter into this Plea Agreement and to tender pleas of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement. The United States has made no promises or representations to the defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

## VIOLATION OF PLEA AGREEMENT

19.     The defendant agrees that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that the defendant or its subsidiaries has failed to provide full, truthful, and continuing cooperation, as defined in Paragraph 11 of this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United States will notify counsel for the defendant in writing by personal or overnight delivery or facsimile transmission and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and the defendant and its subsidiaries shall be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement. The defendant agrees that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendant or its subsidiaries for any offense referred to in Paragraph 13 of this Plea Agreement, the statute of limitations period for such offense shall be tolled for the period between the date of the signing of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

17

20. The defendant understands and agrees that in any further prosecution of it or its subsidiaries resulting from the release of the United States from its obligations under this Plea Agreement, because of the defendant's or its subsidiaries' violation of the Plea Agreement, any documents, statements, information, testimony, or evidence provided by it, its subsidiaries, or current or former directors, officers, or employees of it or its subsidiaries to attorneys or agents of the United States, federal grand juries or courts, and any leads derived therefrom, may be used against it or its subsidiaries in any such further prosecution. In addition, the defendant unconditionally waives its right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Federal Rule of Evidence 410.

## ENTIRETY OF AGREEMENT

21. This Plea Agreement constitutes the entire agreement between the United States and the defendant concerning the disposition of the criminal charges in this case. This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

22. The undersigned is authorized to enter this Plea Agreement on behalf of the defendant as evidenced by the Resolution of the Board of Directors of the defendant attached to, and incorporated by reference in, this Plea Agreement.

23. The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

24. A facsimile or PDF signature shall be deemed an original signature for the purpose of executing this Plea Agreement. Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

18

DATED: _6/14/12_

BY: _____
Lars Sjöbring
Group Vice President Legal Affairs
and General Counsel
Autoliv, Inc.
7th Floor
Vasagatan 11
Stockholm, Sweden

BY: _____
Peter Kontio
William H. Jordan
Michael L. Brown
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel.: (404) 881-7000
Counsel for Autoliv, Inc.

BY: _____
Kathryn Hellings
Shane Cralle
Paul Gallagher
Nikhil Pyati
Trial Attorneys
United States Department of Justice
Antitrust Division
450 Fifth Street, NW
Suite 11300
Washington, D.C. 20530
Tel.: (202) 307-6694

19

**AUTOLIV, INC.**

**CEO and Secretary's Certificate**

Jan Carlson and Lars Sjöbring hereby certify that we are the duly elected Chief Executive Officer and President and Vice President – Legal Affairs, Secretary and General Counsel, respectively, of Autoliv, Inc., a Delaware corporation (the "Company"), and that, as such, we are authorized to execute this certificate on behalf of the Company, and do hereby further certify that the resolutions of the Board of Directors of the Company attached hereto were adopted on May 8, 2012 in compliance with all procedural requirements of the General Corporation Law of the State of Delaware (the "DGCL"), the Company's Restated Certificate of Incorporation and Restated Bylaws, including but not limited to the manner in which notice of meetings was given or waived, the presence of a quorum, and the number of votes required for adoption of the resolutions. The directors of the Company who approved attached resolutions, and the officers of the Company acting on behalf of the Company in furtherance of the attached resolution, were duly appointed and incumbent in their offices at the time of all relevant corporate action.

IN WITNESS WHEREOF, we have executed this Certificate this 5th day of June, 2012.

Name: Jan Carlson
Title: President and Chief Executive Officer

Name: Lars Sjöbring
Title:   Vice President – Legal Affairs,
         Secretary and General Counsel

## RESOLUTIONS RELATING TO
## PLEA AGREEMENT WITH U.S. DEPARTMENT OF JUSTICE

**WHEREAS,** on February 8, 2011, Autoliv ASP, Inc. ("Autoliv ASP"), an Indiana corporation and wholly-owned subsidiary of Autoliv, Inc. (the "Corporation"), received a grand jury subpoena from the Antitrust Division of the United States Department of Justice ("DOJ") requesting documents and information as part of an investigation into possible anti-competitive behavior among suppliers to the automotive vehicle industry (the "Investigation");

**WHEREAS,** the Corporation has been cooperating with the DOJ in its Investigation since February 2011;

**WHEREAS,** the DOJ has proposed that the Corporation enter into a plea agreement with the United States of America pursuant to which the Corporation, in recognition of improper conduct by employees of one or more subsidiaries, will agree to waive indictment, plead guilty to the charges set forth in the plea agreement and the criminal information to be filed therewith, and pay the amount of the criminal fine specified in exchange for the DOJ's agreement, as set forth in the plea agreement, to bring no further criminal charges against the Corporation, its subsidiaries or their respective officers, directors and employees (other than those individuals expressly excluded from such plea agreement);

**WHEREAS,** Lars Sjöbring, Vice President Legal Affairs and General Counsel of the Corporation, has presented the Board of Directors of the Corporation (the "Board") with the terms contained in a draft plea agreement currently being negotiated by the Corporation and the DOJ, including the following material terms (the "Settlement Terms"):

- the entry of a guilty plea by the Corporation to each of the counts charged in the criminal information (with such counts to be further negotiated by the appropriate representatives of the Corporation, which will be reflected in the final form of plea agreement);

- the payment by the Corporation of a $14.5 million criminal fine and up to $1,200 in special assessments to the United States pursuant to the sentence imposed by the Court in its discretion, provided that the sentence is consistent with the jointly recommended sentence currently contemplated in negotiations between the Corporation and the DOJ; and

- the use of the best efforts of the Corporation in securing the full, truthful and continuing cooperation of those employees of the Corporation or its subsidiaries as requested by the DOJ, with the exception of those employees that are excluded from the non-prosecution protections of the plea agreement.

**WHEREAS,** the Compliance Committee of the Board (the "Compliance Committee") has recommended that the Corporation enter into a plea agreement with the DOJ substantially on the Settlement Terms;

**WHEREAS,** the Board has determined that it is advisable and in the best interests of the Corporation and its stockholders to reach a final and certain resolution regarding the DOJ's Investigation by entering into a plea agreement substantially on the Settlement Terms;

**NOW, THEREFORE, BE IT RESOLVED,** that the Board hereby (a) authorizes the Compliance Committee to approve on behalf of the Board the final form of plea agreement and provide final authorization for the Corporation to enter into the same; (b) authorizes and directs the Corporation to enter into a plea agreement with the DOJ substantially on the Settlement Terms (subject to further negotiation as described below), as approved in final form by the Compliance Committee;

**FURTHER RESOLVED,** that the Board hereby authorizes each of Lars Sjöbring, Vice President Legal Affairs and General Counsel of the Corporation and Michael Anderson, Vice President Legal Affairs and General Counsel of Autoliv ASP, acting individually, to do the following on behalf of the Corporation: (i) negotiate the final form of plea agreement substantially on the Settlement Terms, with any modifications thereto as he may deem necessary or advisable upon the advice of outside counsel, (ii) execute the final form of plea agreement as approved by the Compliance Committee, (iii) execute all other documents pertaining to the plea agreement, and (iv) take such other actions as he deems necessary or advisable for the implementation of the foregoing resolutions;

**FURTHER RESOLVED,** that the Board authorizes each of Lars Sjöbring, Vice President Legal Affairs and General Counsel of the Corporation and Michael Anderson, Vice President Legal Affairs and General Counsel of Autoliv ASP, acting individually, to enter, on behalf of the Corporation, a guilty plea to each of the counts charged in the criminal information to be filed by the DOJ pursuant to the final form of plea agreement and to admit and allocute with respect to the conduct charged therein;

**FURTHER RESOLVED,** that the Board authorizes and directs the appropriate officers of the Corporation to publicly disclose the entry into the final plea agreement by the Corporation and the DOJ in appropriate filings made with the U.S. Securities and Exchange Commission;

**FURTHER RESOLVED,** that the Board hereby authorizes the appropriate officers of the Corporation to perform such further acts and deeds as may be necessary, desirable, convenient or appropriate, in the judgment of any such appropriate officer, to carry out the purpose and intent of the foregoing resolutions, including, without limitation, payment of any fines or penalties, any filings with or notices to, any supranational, national federal, state or local government or governmental authority, department, commission, board, bureau, agency or instrumentality, any self-regulatory organization or any stock, commodities, options or other exchange, and all acts and deeds previously performed by the officers of or counsel for the Corporation prior to the date of these resolutions that are within the authority conferred hereby are hereby ratified, approved and confirmed in all respects; and

**FURTHER RESOLVED,** that all actions of the Corporation, its officers, directors, agents and employees heretofore taken with respect to the aforesaid matters, are hereby ratified, approved and confirmed in each and every respect.

# AUTOLIV, INC.

### Secretary's Certificate

I, Lars A. Sjöbring, certify that I am the Vice President - Legal Affairs, Secretary and General Counsel of Autoliv, Inc., a Delaware corporation (the "Company"), and that, as such, I am authorized to execute this certificate on behalf of the Company, and do hereby further certify that the resolutions of the Compliance Committee of the Company's Board of Directors attached hereto were adopted on June 5, 2012 in compliance with all procedural requirements of the General Corporation Law of the State of Delaware (the "DGCL"), the Company's Restated Certificate of Incorporation and the Restated Bylaws, including but not limited to the manner in which notice of meetings was given or waived, the presence of a quorum, and the number of votes required for adoption of the resolutions. The directors of the Company who approved attached resolutions, and the officers of the Company acting on behalf of the Company in furtherance of the attached resolution, were duly appointed and incumbent in their offices at the time of all relevant corporate action.

IN WITNESS WHEREOF, I have executed this Certificate this 5th day of June, 2012.

Name: Lars A. Sjöbring
Title:   Vice President - Legal Affairs,
            Secretary and General Counsel

## RESOLUTIONS OF THE COMPLIANCE COMMITTEE
## RELATING TO
## PLEA AGREEMENT WITH U.S. DEPARTMENT OF JUSTICE

The following resolutions were approved by the Compliance Committee (the "Compliance Committee") of the Board of Directors (the "Board") of Autoliv, Inc., a Delaware corporation (the "Corporation") on June 5, 2012:

**WHEREAS,** on February 8, 2011, Autoliv ASP, Inc., an Indiana corporation and wholly-owned subsidiary of the Corporation ("Autoliv ASP"), received a grand jury subpoena from the Antitrust Division of the United States Department of Justice ("DOJ") requesting documents and information as part of an investigation into possible anti-competitive behavior among suppliers to the automotive vehicle industry (the "Investigation");

**WHEREAS,** the Corporation has been cooperating with the DOJ in its Investigation since February 2011;

**WHEREAS,** the DOJ has proposed that the Corporation enter into a plea agreement with the United States of America, pursuant to which the Corporation, in recognition of improper conduct by employees of one or more subsidiaries, will agree to waive indictment, plead guilty to the charges set forth in the plea agreement and the criminal information to be filed therewith, and pay the amount of the criminal fine specified in exchange for the DOJ's agreement, as set forth in the plea agreement, to bring no further criminal charges against the Corporation, its subsidiaries or their respective officers, directors and employees (other than those individuals expressly excluded from the plea agreement);

**WHEREAS,** Mr. Lars Sjöbring, Vice President Legal Affairs and General Counsel of the Corporation, presented the Compliance Committee with the terms contained in the plea agreement, including the following material terms (the "Settlement Terms"):

- the entry of a guilty plea by the Corporation to each of the counts charged in the criminal information;

- the payment by the Corporation of a $14.5 million criminal fine and up to $1,200 in special assessments to the United States pursuant to the sentence imposed by the Court in its discretion, provided that the sentence is consistent with the jointly recommended sentence currently contemplated by the Plea Agreement; and

- the use of the best efforts of the Corporation in securing the full, truthful and continuing cooperation of employees of the Corporation and its subsidiaries as requested by the DOJ, with the exception of those employees that are excluded from the non-prosecution protections of the plea agreement.

LEGAL02/33338333v2

WHEREAS, at the recommendation of the Compliance Committee, the Board has previously (a) authorized the Compliance Committee to approve on behalf of the Board the final form of plea agreement and provide final authorization for the Corporation to enter into the same; (b) authorized and directed the Corporation to enter into a plea agreement with the DOJ substantially on the Settlement Terms (subject to further negotiation), as approved in final form by the Compliance Committee; and (c) further authorized each of Lars Sjöbring, Vice President Legal Affairs and General Counsel of the Corporation and Michael Anderson, Vice President Legal Affairs and General Counsel of Autoliv ASP, acting individually, to do the following on behalf of the Corporation: (i) negotiate the final form of plea agreement substantially on the Settlement Terms, with any modifications thereto as he may deem necessary or advisable upon the advice of outside counsel, (ii) execute the final form of plea agreement as approved by the Compliance Committee, (iii) execute all other documents pertaining to the plea agreement, and (iv) take such other actions as he deems necessary or advisable for the implementation of the resolutions taken by the Board on May 8, 2012;

WHEREAS, Mr. Sjöbring has negotiated the final form of plea agreement, attached hereto as Exhibit A, substantially on the Settlement Terms, with such modifications thereto as he deemed necessary or advisable upon the advice of outside counsel; and

WHEREAS, the Compliance Committee has determined that it is advisable and in the best interests of the Corporation and its stockholders to reach a final and certain resolution regarding the DOJ's Investigation by entering into the final form of plea agreement attached hereto as Exhibit A.

NOW, THEREFORE, BE IT RESOLVED, that the Compliance Committee hereby approves, on behalf of the Board, the final form of plea agreement attached hereto as Exhibit A, and authorizes and directs the Corporation to enter into the final form of plea agreement attached hereto as Exhibit A; and

FURTHER RESOLVED, that the Compliance Committee hereby authorizes each of Lars Sjöbring, Vice President Legal Affairs and General Counsel of the Corporation and Michael Anderson, Vice President Legal Affairs and General Counsel of Autoliv ASP, acting individually, to do the following on behalf of the Corporation: (i) execute the final form of plea agreement attached hereto as Exhibit A, (ii) enter a guilty plea to each of the counts charged in the criminal information to be filed by the DOJ pursuant to the final form of plea agreement attached hereto as Exhibit A, and (iii) admit and allocute with respect to the conduct charged therein.

LEGAL02/33338333v2