# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 14-CR-00068 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | JUDGE ZOUHARY |
| BRIDGESTONE CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |

**PLEA AGREEMENT**

The United States of America and Bridgestone Corporation ("the defendant"), a corporation organized and existing under the laws of Japan, hereby enter into the following Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P.").

**RIGHTS OF DEFENDANT**

1. The defendant understands its rights:

    (a) to be represented by an attorney;

    (b) to be charged by Indictment;

    (c) as a corporation organized and existing under the laws of Japan, to decline to accept service of the Summons in this case, and to contest the jurisdiction of the United States to prosecute this case against it in the United States District Court for the Northern District of Ohio;

    (d) to plead not guilty to any criminal charge brought against it;

1

  (e)  to have a trial by jury, at which it would be presumed not guilty of the charge and the United States would have to prove every essential element of the charged offense beyond a reasonable doubt for it to be found guilty;

  (f)  to confront and cross-examine witnesses against it and to subpoena witnesses in its defense at trial;

  (g)  to appeal its conviction if it is found guilty; and

  (h)  to appeal the imposition of sentence against it.

### AGREEMENT TO PLEAD GUILTY AND WAIVE CERTAIN RIGHTS

2.  The defendant knowingly and voluntarily waives the rights set out in Paragraph 1(b)-(g) above. The defendant also knowingly and voluntarily waives the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742, that challenges the sentence imposed by the Court if that sentence is consistent with or below the recommended sentence in Paragraph 9 of this Plea Agreement, regardless of how the sentence is determined by the Court. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b)-(c). Nothing in this paragraph, however, will act as a bar to the defendant perfecting any legal remedies it may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. The defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct. Pursuant to Fed. R. Crim. P. 7(b), the defendant will waive indictment and plead guilty to a one-count Information to be filed in the United States District Court for the Northern District of Ohio. The Information will charge the defendant with participating in a conspiracy to suppress and eliminate

2

competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, raise, and maintain the prices of automotive anti-vibration rubber products sold to Toyota Motor Corporation, Nissan Motor Corporation, Fuji Heavy Industries, Ltd., Suzuki Motor Corporation, Isuzu Motors, Ltd., and certain of their subsidiaries, affiliates and suppliers (collectively, "Automobile and Component Manufacturers") in the United States and elsewhere, from at least as early as January 2001 until at least December 2008, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

3. The defendant will plead guilty to the criminal charge described in Paragraph 2 above pursuant to the terms of this Plea Agreement and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 5 below.

## ELEMENTS OF THE OFFENSE CHARGED

4. The elements of a violation of 15 U.S.C. § 1, to which the defendant will plead guilty, are as follows:

First, that a conspiracy that amounted to an unreasonable restraint of trade or commerce among the several States or with foreign nations was knowingly formed, and existed at or about the time alleged;

Second, that the defendant knowingly entered into the conspiracy; and

Third, that either acts taken in furtherance of the conspiracy were in the flow of interstate or foreign commerce, or the conspirators' general business activities infected by the conspiracy substantially affected interstate or foreign commerce.

## FACTUAL BASIS FOR OFFENSE CHARGED

5. Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts beyond a reasonable doubt:

3

(a)     For the purposes of this Plea Agreement, the "relevant period" is that period from at least as early as January 2001 until at least December 2008. During the relevant period, the defendant was a corporation organized and existing under the laws of Japan. The defendant had its principal place of business in Kyobashi, Tokyo, Japan, and U.S. subsidiaries in various locations, including Findlay, OH. During the relevant period, the defendant was a manufacturer of automotive anti-vibration rubber products, was engaged in the sale of automotive anti-vibration rubber products to Automobile and Component Manufacturers in the United States and elsewhere, and employed 5,000 or more individuals. Automotive anti-vibration rubber products are comprised primarily of rubber and metal, and are installed in automobiles to reduce engine and road vibration.

(b)     During the relevant period, the defendant, through certain of its officers and employees, including high-level personnel of the defendant, participated in a conspiracy with other persons and entities engaged in the manufacture and sale of automotive anti-vibration rubber products, the primary purpose of which was to suppress and eliminate competition by agreeing to allocate sales of, to rig bids for, and to fix, raise, and maintain the prices of automotive anti-vibration rubber products sold to Automobile and Component Manufacturers in the United States and elsewhere. In furtherance of the conspiracy, the defendant, through certain of its officers and employees, engaged in discussions and attended meetings with representatives of other companies involved in the manufacture and sale of automotive anti-vibration rubber products until at least December 2008. During such discussions and meetings, agreements were reached to allocate sales of automotive anti-vibration rubber products sold to Automobile and Component Manufacturers, to rig bids quoted to Automobile and Component

4

Manufacturers for automotive anti-vibration rubber products, and to fix, raise, and maintain the prices, including coordinating price adjustments requested by Automobile and Component Manufacturers, of automotive anti-vibration rubber products sold to Automobile and Component Manufacturers in the United States and elsewhere. The charged conduct affected the defendant's sales of automotive anti-vibration rubber products to Automobile and Component Manufacturers in the United States and elsewhere until at least May 2012, which totaled approximately $750 million.

(c) During the relevant period, automotive anti-vibration rubber products sold by one or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of automotive anti-vibration rubber products, as well as payments for automotive anti-vibration rubber products, traveled in interstate and foreign commerce. The business activities of the defendant and its co-conspirators in connection with the production and sale of automotive anti-vibration rubber products that were the subject of this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

(d) Acts in furtherance of the conspiracy were carried out within the Northern District of Ohio, Western Division, and elsewhere. Automotive anti-vibration rubber products that were the subjects of the conspiracy were sold to Automobile and Component Manufacturers by the defendant in the Northern District of Ohio.

(e) The defendant agrees that the above summary fairly and accurately sets forth the defendant's offense conduct and a factual basis for the guilty plea. The defendant further agrees that the facts set forth above are true and could be established beyond a reasonable doubt if the case were to proceed to trial. The defendant

5

acknowledges that the above summary does not set forth each and every fact that the United States could prove at trial, nor does it necessarily encompass all of the acts which the defendant committed in furtherance of the offense to which the defendant is pleading guilty.

## MAXIMUM SENTENCE

6. The defendant understands that the statutory maximum penalty which may be imposed against it upon conviction for a violation of Section One of the Sherman Antitrust Act is a fine in an amount equal to the greatest of:

(a) $100 million (15 U.S.C. § 1);

(b) twice the gross pecuniary gain the conspirators derived from the crime (18 U.S.C. § 3571(c) and (d)); or

(c) twice the gross pecuniary loss caused to the victims of the crime by the conspirators (18 U.S.C. § 3571(c) and (d)).

7. In addition, the defendant understands that:

(a) pursuant to 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years;

(b) pursuant to U.S.S.G. § 8B1.1 of the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") or 18 U.S.C. § 3563(b)(2) or § 3663(a)(3), the Court may order it to pay restitution to the victims of the offense; and

(c) pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the defendant to pay a $400 special assessment upon conviction for the charged crime.

6

## SENTENCING GUIDELINES

8.  The defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider, in determining and imposing sentence, the Guidelines Manual in effect on the date of sentencing unless that Manual provides for greater punishment than the Manual in effect on the last date that the offense of conviction was committed, in which case the Court must consider the Guidelines Manual in effect on the last date that the offense of conviction was committed. The parties agree that there is no *ex post facto* issue under the November 1, 2013, Guidelines Manual. The Court must also consider the other factors set forth in 18 U.S.C. § 3553(a) in determining and imposing sentence. The defendant understands that the Guidelines determinations will be made by the Court by a preponderance of the evidence standard. The defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

## SENTENCING AGREEMENT

9.  Pursuant to Fed. R. Crim. P. 11(c)(1)(C), and subject to the full, truthful, and continuing cooperation of the defendant and its related entities, as defined in Paragraph 12 of this Plea Agreement, the United States and the defendant agree that the appropriate disposition of this case is, and agree to recommend jointly that the Court impose, a sentence requiring the defendant to pay to the United States a criminal fine of $425 million, pursuant to 18 U.S.C. § 3571(d), payable in full before the thirtieth (30th) day after the date of judgment with interest accruing under 18 U.S.C. § 3612(f)(1)-(2) and no order of restitution ("the recommended sentence"). The parties agree that there exists no aggravating or mitigating circumstance of a kind, or to a degree,

7

not adequately taken into consideration by the U.S. Sentencing Commission in formulating the Sentencing Guidelines justifying a departure pursuant to U.S.S.G. § 5K2.0. The parties agree not to seek at the sentencing hearing any sentence outside of the Guidelines range nor any Guidelines adjustment for any reason that is not set forth in this Plea Agreement. The parties further agree that the recommended sentence set forth in this Plea Agreement is reasonable.

 (a) The defendant understands that the Court will order it to pay a $400 special assessment, pursuant to 18 U.S.C. § 3013(a)(2)(B), in addition to any fine imposed.

 (b) In light of the availability of civil causes of action, which potentially provide for a recovery of a multiple of actual damages, the recommended sentence does not include a restitution order for the offense charged in the Information.

 (c) The United States will recommend, and the defendant will not oppose, that a term of probation be imposed for a period of three years, and, as a condition of probation, that the defendant report once per year to the Probation Office and to the United States regarding all aspects of its antitrust compliance program, beginning no later than one year after the date of conviction. Should the defendant fail to make timely and complete reports regarding its antitrust compliance program, the United States reserves the right to recommend, as a condition of probation, that the Court order the defendant to hire an independent court-appointed monitor at the defendant's expense. The parties understand that the Court's denial of any of the recommendations in this Paragraph will not void this Plea Agreement.

 (d) The United States and the defendant jointly submit that this Plea Agreement, together with the record that will be created by the United States and the

8

defendant at the plea and sentencing hearings, and the further disclosure described in Paragraph 10, will provide sufficient information concerning the defendant, the crime charged in this case, and the defendant's role in the crime to enable the meaningful exercise of sentencing authority by the Court under 18 U.S.C. § 3553. The United States and the defendant agree to request jointly that the Court accept the defendant's guilty plea and impose sentence on an expedited schedule as early as the date of arraignment, based upon the record provided by the defendant and the United States, under the provisions of Fed. R. Crim. P. 32(c)(1)(A)(ii), U.S.S.G. § 6A1.1, and Local Criminal Rule 32.2(b)(5). The Court's denial of the request to impose sentence on an expedited schedule will not void this Plea Agreement.

(e) The United States contends that had this case gone to trial, the United States would have presented evidence to prove that the gain derived from or the loss resulting from the charged offense is sufficient to justify a fine of $425 million, pursuant to 18 U.S.C. § 3571(d). For purposes of this plea and sentencing only, the defendant waives its rights to contest this calculation.

10. Subject to the full, truthful, and continuing cooperation of the defendant and its related entities, as defined in Paragraph 12 of this Plea Agreement, and prior to sentencing in the case, the United States will fully advise the Court of the fact, manner, and extent of the defendant's and its related entities' cooperation, their commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to the defendant's involvement in the charged offense, and all other relevant conduct.

9

11. The United States and the defendant understand that the Court retains complete discretion to accept or reject the recommended sentence provided for in Paragraph 9 of this Plea Agreement.

(a) If the Court does not accept the recommended sentence, the United States and the defendant agree that this Plea Agreement, except for Paragraph 11(b) below, will be rendered void.

(b) If the Court does not accept the recommended sentence, the defendant will be free to withdraw its guilty plea (Fed. R. Crim. P. 11(c)(5) and (d)). If the defendant withdraws its plea of guilty, this Plea Agreement, the guilty plea, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty plea or this Plea Agreement, or made in the course of plea discussions with an attorney for the government will not be admissible against the defendant in any criminal or civil proceeding, except as otherwise provided in Federal Rule of Evidence 410. In addition, the defendant agrees that, if it withdraws its guilty plea pursuant to this subparagraph of the Plea Agreement, the statute of limitations period for any offense referred to in Paragraph 14 of this Plea Agreement will be tolled for the period between the date of signature of this Plea Agreement and the date the defendant withdrew its guilty plea or for a period of sixty (60) days after the date of signature of this Plea Agreement, whichever period is greater.

### DEFENDANT'S COOPERATION

12. The defendant and its related entities (for purposes of this Plea Agreement, the defendant's "related entities" are entities in which the defendant directly or indirectly had a greater than 50% ownership interest as of the date of signature of this Plea Agreement, including,

10

but not limited to Bridgestone APM Company), will cooperate fully and truthfully with the United States in the prosecution of this case; the current federal investigation of violations of federal antitrust and related criminal laws involving the manufacture or sale of automotive anti-vibration rubber products and other rubber automotive parts or components; and any litigation or other proceedings arising or resulting from such investigation to which the United States is a party (collectively, "Federal Proceeding"). Federal Proceeding includes, but is not limited to, an investigation, prosecution, litigation, or other proceeding regarding obstruction of, the making of a false statement or declaration in, the commission of perjury or subornation of perjury in, the commission of contempt in, or conspiracy to commit such offenses in, a Federal Proceeding. The full, truthful, and continuing cooperation of the defendant and its related entities will include, but not be limited to:

 (a) producing to the United States all documents, information, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine, (and with translations into English when requested), in the possession, custody, or control of the defendant or any of its related entities, that are requested by the United States in connection with any Federal Proceeding; and

 (b) using its best efforts to secure the full, truthful, and continuing cooperation, as defined in Paragraph 13 of this Plea Agreement, of the current and former directors, officers and employees of the defendant or any of its related entities as may be requested by the United States, but excluding Yasuo Ryuto, Yusuke Shimasaki, Yoshiyuki Tanaka, and Isao Yoshida (who have been separately charged), including making these persons available in the United States and at other mutually agreed-upon locations, at the defendant's expense, for interviews and the provision of testimony in

11

grand jury, trial, and other judicial proceedings in connection with any Federal Proceeding. Current directors, officers, and employees are defined for purposes of this Plea Agreement as individuals who are directors, officers, or employees of the defendant or any of its related entities as of the date of signature of this Plea Agreement.

13. The full, truthful, and continuing cooperation of each person described in Paragraph 12(b) above, will be subject to the procedures and protections of this paragraph, and will include, but not be limited to:

(a) producing in the United States and at other mutually agreed-upon locations all documents, including claimed personal documents and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine, (and with translations into English), that are requested by attorneys and agents of the United States in connection with any Federal Proceeding;

(b) making himself or herself available for interviews in the United States and at other mutually agreed-upon locations, not at the expense of the United States, upon the request of attorneys and agents of the United States in connection with any Federal Proceeding;

(c) responding fully and truthfully to all inquiries of the United States in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), or conspiracy to commit such offenses;

(d) otherwise voluntarily providing the United States with any material or information not requested in (a) - (c) of this paragraph and not protected under the

attorney-client privilege or work-product doctrine that he or she may have that is related to any Federal Proceeding;

(e) when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the United States fully, truthfully and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making a false statement or declaration in grand jury or court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401-402), and obstruction of justice (18 U.S.C. § 1503, *et seq.*); and

(f) agreeing that, if the agreement not to prosecute him or her in this Plea Agreement is rendered void under Paragraph 15(c), the statute of limitations period for any Relevant Offense as defined in Paragraph 15(a) will be tolled as to him or her for the period between the date of signature of this Plea Agreement and six (6) months after the date that the United States gave notice of its intent to void its obligations to that person under this Plea Agreement.

## GOVERNMENT'S AGREEMENT

14. Subject to the full, truthful, and continuing cooperation of the defendant and its related entities, as defined in Paragraph 12 of this Plea Agreement, and upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence, the United States agrees that it will not bring further criminal charges against the defendant and its related entities for any act or offense committed before the date of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the manufacture or sale of automotive anti-vibration rubber products, or any antitrust conspiracy under investigation by the United States as of the date of signature of this Plea Agreement

involving the manufacture or sale of rubber automotive parts or components by the defendant and its related entities to automobile manufacturers and their subsidiaries, affiliates, and suppliers. The nonprosecution terms of this paragraph do not apply to (a) civil matters of any kind; (b) any violation of the federal tax or securities laws or conspiracy to commit such offenses; (c) any crime of violence; (d) any acts of subornation of perjury (18 U.S.C. § 1622), making a false statement (18 U.S.C. § 1001), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses.

15. The United States agrees to the following:

(a) Upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence, and subject to the exceptions noted in Paragraph 15(c), the United States agrees that it will not bring criminal charges against any current or former director, officer or employee of the defendant or its related entities for any act or offense committed before the date of signature of this Plea Agreement and while that person was acting as a director, officer or employee of the defendant or its related entities that was undertaken in furtherance of an antitrust conspiracy involving the manufacture or sale of automotive anti-vibration rubber products, or any antitrust conspiracy under investigation by the United States as of the date of signature of this Plea Agreement involving the manufacture or sale of rubber automotive parts or components by the defendant and its related entities to automobile manufacturers and their subsidiaries, affiliates, and suppliers ("Relevant Offense"), except that the protections granted in this paragraph do not apply to Yasuo Ryuto, Yusuke Shimasaki, Yoshiyuki Tanaka, and Isao Yoshida;

14

(b)     Should the United States determine that any current or former director, officer, or employee of the defendant or its related entities may have information relevant to any Federal Proceeding, the United States may request that person's cooperation under the terms of this Plea Agreement by written request delivered to counsel for the individual (with a copy to the undersigned counsel for the defendant) or, if the individual is not known by the United States to be represented, to the undersigned counsel for the defendant;

(c)     If any person requested to provide cooperation under Paragraph 15(b) fails to comply fully with his or her obligations under Paragraph 13, then the terms of this Plea Agreement as they pertain to that person, and the agreement not to prosecute that person granted in this Plea Agreement, will be rendered void, and the United States may prosecute such person criminally for any federal crime of which the United States has knowledge, including, but not limited to any Relevant Offense;

(d)     Except as provided in Paragraph 15(e), information provided by a person described in Paragraph 15(b) to the United States under the terms of this Plea Agreement pertaining to any Relevant Offense, or any information directly or indirectly derived from that information, may not be used against that person in a criminal case, except in a prosecution for perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-02), or conspiracy to commit such offenses;

(e)     If any person who provides information to the United States under this Plea Agreement fails to comply fully with his or her obligations under Paragraph 13 of this Plea Agreement, the agreement in Paragraph 15(d) not to use that information or any

15

information directly or indirectly derived from it against that person in a criminal case will be rendered void;

(f) The nonprosecution terms of this paragraph do not apply to civil matters of any kind; any violation of the federal tax or securities laws or conspiracy to commit such offenses; any crime of violence; or perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-02), or conspiracy to commit such offenses; and

(g) Documents provided under Paragraphs 12(a) and 13(a) will be deemed responsive to outstanding grand jury subpoenas issued to the defendant or any of its related entities.

16. The United States agrees that when any person travels to the United States for interviews, grand jury appearances, or court appearances pursuant to this Plea Agreement, or for meetings with counsel in preparation therefor, the United States will take no action, based upon any Relevant Offense, to subject such person to arrest, detention or service of process, or to prevent such person from departing the United States. This paragraph does not apply to an individual's commission of perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses.

17. The defendant understands that it may be subject to suspension or debarment action by state or federal agencies other than the United States Department of Justice, Antitrust Division, based upon the conviction resulting from this Plea Agreement, and that this Plea Agreement in no way controls what action, if any, other agencies may take. However, the

Antitrust Division agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such action of the fact, manner and extent of the cooperation of the defendant and its related entities as a matter for that agency to consider before determining what action, if any, to take. The defendant nevertheless affirms that it wants to plead guilty regardless of the suspension or debarment consequences of its plea.

### REPRESENTATION BY COUNSEL

18. The defendant has been represented by counsel and is fully satisfied that its attorneys have provided competent legal representation. The defendant has thoroughly reviewed this Plea Agreement and acknowledges that counsel has advised it of the nature of the charge, any possible defenses to the charge and the nature and range of possible sentences.

### VOLUNTARY PLEA

19. The defendant's decision to enter into this Plea Agreement and to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement and Attachment A (filed under seal). The United States has made no promises or representations to the defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

### VIOLATION OF PLEA AGREEMENT

20. The defendant agrees that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that the defendant or any of its related entities have failed to provide full, truthful, and continuing cooperation, as defined in Paragraph 12 of this Plea Agreement, or have otherwise violated any provision of this Plea Agreement, the United States will notify counsel for the defendant in writing by personal or

17

overnight delivery, email, or facsimile transmission and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and the defendant and its related entities will be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement. The defendant agrees that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendant or its related entities for any offense referred to in Paragraph 14 of this Plea Agreement, the statute of limitations period for such offense will be tolled for the period between the date of signature of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

21. The defendant understands and agrees that in any further prosecution of it or its related entities resulting from the release of the United States from its obligations under this Plea Agreement, because of the defendant's or any of its related entities' violation of this Plea Agreement, any documents, statements, information, testimony, or evidence provided by it, its related entities, or the current or former directors, officers, or employees of it or its related entities to attorneys or agents of the United States, federal grand juries or courts, and any leads derived therefrom, may be used against it or its related entities. In addition, the defendant unconditionally waives its right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Federal Rule of Evidence 410.

## ENTIRETY OF AGREEMENT

22. This Plea Agreement and Attachment A (filed under seal) constitute the entire agreement between the United States and the defendant concerning the disposition of the

criminal charge in this case. This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

23. The undersigned is authorized to enter this Plea Agreement on behalf of the defendant as evidenced by the Resolution of the Board of Directors of the defendant attached to, and incorporated by reference in, this Plea Agreement.

24. The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

25. A facsimile or PDF signature will be deemed an original signature for the purpose of executing this Plea Agreement. Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

DATED: 4/30/14

BY: *[signature]*
Name: Shingo Kubota
Title: Vice President and Officer
Chief Compliance Officer
Compliance
Bridgestone Corporation

BY: *[signature]*
Steven A. Reiss
Adam C. Hemlock
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Tel.: (212) 310-8174
Counsel for Bridgestone Corporation

*[signature]*
Andre M. Geverola, IL Bar No. 6281457
  Assistant Chief
L. Heidi Manschreck, NY Bar No. 4537585
Robert M. Jacobs, IL Bar No. 6289819
Christine M. O'Neill, IL Bar No. 6300456
  Trial Attorneys
United States Department of Justice
Antitrust Division
209 S. LaSalle St.
Suite 600
Chicago, IL 60604
Tel.: (312) 984-7200

*[filing stamp: CLERK U.S. DISTRICT COURT NORTHERN DISTRICT OF OHIO 2014 APR 30 AM 11:46 FILED]*

19