# EXHIBIT 18

26

FILED

AUG - 5 2013

CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                       Plaintiff,

v.

PANASONIC CORPORATION,

                       Defendant.

Criminal No.: *13-20540*

Filed: *8-5-13*

Violations: 15 U.S.C. § 1

THREE COUNTS

_____/

## PLEA AGREEMENT

The United States of America and Panasonic Corporation ("defendant"), a corporation

organized and existing under the laws of Japan, hereby enter into the following Plea Agreement

pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P.").

### RIGHTS OF DEFENDANT

1.     The defendant understands its rights:

    (a)     to be represented by an attorney;

    (b)     to be charged by Indictment;

    (c)     as a corporation organized and existing under the laws of Japan, to decline

to accept service of the Summons in this case, and to contest the jurisdiction of the

United States to prosecute this case against it in the United States District Court for the

Eastern District of Michigan;

    (d)     to plead not guilty to any criminal charges brought against it;

(e)      to have a trial by jury, at which it would be presumed not guilty of the charges and the United States would have to prove every essential element of the charged offenses beyond a reasonable doubt for it to be found guilty;

(f)      to confront and cross-examine witnesses against it and to subpoena witnesses in its defense at trial;

(g)      to appeal its conviction if it is found guilty; and

(h)      to appeal the imposition of the sentence against it.

## AGREEMENT TO PLEAD GUILTY
## AND WAIVE CERTAIN RIGHTS

2.      The defendant knowingly and voluntarily waives the rights set out in Paragraph 1(b)-(g) above. The defendant also knowingly and voluntarily waives the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742, that challenges the sentence imposed by the Court if that sentence is consistent with or below the recommended sentence in Paragraph 9 of this Plea Agreement, regardless of how the sentence is determined by the Court. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b)-(c). Nothing in this paragraph, however, will act as a bar to the defendant perfecting any legal remedies it may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. The defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct. Pursuant to Fed. R. Crim. P. 7(b), the defendant will waive indictment and plead guilty to a three-count Information to be filed in the United States District Court for the Eastern District of Michigan. Count One of the Information will charge the defendant with participating in a conspiracy to suppress and

2

eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, steering wheel switches, turn switches, wiper switches, combination switches, and door courtesy switches sold to Toyota Motor Corporation ("TMC") and Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") (collectively, "Toyota"), in the United States and elsewhere, from at least as early as September 2003 until at least February 2010, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Count Two of the Information will charge the defendant with participating in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, steering angle sensors ("SAS") sold to Toyota, in the United States and elsewhere, from at least as early as September 2003 until at least February 2010, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Count Three of the Information will charge the defendant with participating in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, automotive high intensity discharge ("HID") ballasts sold to Honda Motor Company, Ltd. ("HMC") and American Honda Motor Company, Inc. ("AHMC") (collectively "Honda"), Mazda Motor Corporation ("MMC") and Mazda Motor of America, Inc. ("MMA") (collectively "Mazda"), Nissan Motor Company Ltd. ("NMC") and Nissan North America, Inc. ("NNA") (collectively, "Nissan"), in the United States and elsewhere, from at least as early as July 1998 until at least February 2010, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

3.     The defendant will plead guilty to the criminal charges described in Paragraph 2 above pursuant to the terms of this Plea Agreement and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below.

## FACTUAL BASIS FOR OFFENSES CHARGED

4.     Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts:

(a)     As to Count One:

(i)     For purposes of this Count, the "relevant period" is that period from at least as early as September 2003 until at least February 2010.  During the relevant period, the defendant was a corporation organized and existing under the laws of Japan. The defendant had its principal place of business in Osaka, Japan. During the relevant period, the defendant, employing more than 5,000 individuals, was engaged in the sale of steering wheel switches, turn switches, wiper switches, combination switches, and door courtesy switches ("the five switches"), in the United States and elsewhere.

A steering wheel switch is a switch installed in the steering wheel of a vehicle, which the driver of the vehicle operates to control various functions within the vehicle.

A turn switch is a lever switch installed behind the steering wheel of a vehicle, which the driver of the vehicle operates to signal a left or right turn and control hi/lo beam selection.

A wiper switch is a lever switch installed behind the steering wheel of a vehicle, which the driver of the vehicle uses to activate the vehicle's windshield wipers.

A combination switch is a combination of the turn and wiper switches as one unit, sold together as a pair.

4

A door courtesy switch is a switch installed in the door frame of a vehicle that activates the courtesy lamp inside the vehicle when the vehicle door opens.

(ii)    During the relevant period, the defendant, through its employees, including general managers and other employees, participated in a conspiracy with other persons and another entity engaged in the manufacture and sale of the five switches, the primary purpose of which was to rig bids for, and to fix, stabilize, and maintain the prices of, the five switches sold to Toyota in the United States and elsewhere. In furtherance of the conspiracy, the defendant, through its employees, engaged in discussions and attended meetings with co-conspirators involved in the manufacture and sale of the five switches. During such meetings and conversations, agreements were reached to allocate the supply of the five switches sold to Toyota, rig bids quoted to Toyota for the five switches, and to fix, stabilize, and maintain the prices, including coordinating price adjustments requested by Toyota, of the five switches sold to Toyota in the United States and elsewhere.

During the relevant period, the defendant's relevant sales of the five switches to Toyota totaled approximately $49.4 million.

(iii)    During the relevant period, the five switches sold by one or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of the five switches, as well as payments for the five switches, traveled in interstate and foreign commerce. The business activities of the defendant and its co-conspirators in connection with the production and sale of

the five switches that were the subjects of this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

      (iv)     Acts in furtherance of this conspiracy were carried out within the Eastern District of Michigan, Southern Division. The conspiratorial meetings and conversations described above took place in the United States and elsewhere, and of the five switches that were the subjects of the conspiracy, steering wheel switches, turn switches, combination switches, and door courtesy switches were sold to TEMA by the defendant's United States subsidiary, which is located in the Eastern District of Michigan.

(b)    As to Count Two:

      (i)     For purposes of this Count, the "relevant period" is that period from at least as early as September 2003 until at least February 2010. During the relevant period, the defendant was a corporation organized and existing under the laws of Japan. The defendant had its principal place of business in Osaka, Japan. During the relevant period, the defendant, employing more than 5,000 individuals, was engaged in the sale of SAS in the United States and elsewhere. A steering angle sensor is installed on the steering column of a vehicle and may be connected to and part of a combination switch; it detects the angle of the vehicle's steer and sends signals to a vehicle computer which in turn controls for vehicle stability during turns.

      (ii)     During the relevant period, the defendant, through its employees, including general managers and other employees, participated in a conspiracy with other persons and another entity engaged in the manufacture and sale of

6

SAS, the primary purpose of which was to rig bids for, and to fix, stabilize, and maintain the prices of, SAS sold to Toyota in the United States and elsewhere.  In furtherance of the conspiracy, the defendant, through its employees, engaged in discussions and attended meetings with co-conspirators involved in the manufacture and sale of SAS.  During such meetings and conversations, agreements were reached to allocate the supply of SAS sold to Toyota, rig bids quoted to Toyota for SAS, and to fix, stabilize, and maintain the prices, including coordinating price adjustments requested by Toyota, of SAS sold to Toyota in the United States and elsewhere.

During the relevant period, the defendant's relevant sales of steering angle sensors to Toyota totaled approximately $58.7 million.

(iii)    During the relevant period, SAS sold by one or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of SAS, as well as payments for SAS, traveled in interstate and foreign commerce.  The business activities of the defendant and its co-conspirators in connection with the production and sale of SAS that were the subjects of this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

(iv)    Acts in furtherance of this conspiracy were carried out within the Eastern District of Michigan, Southern Division.  The conspiratorial meetings and conversations described above took place in the United States and elsewhere, and the SAS that were the subjects of the conspiracy were sold to TEMA by the

7

defendant's United States subsidiary, which is located in the Eastern District of
Michigan.

(c)     As to Count Three:

(i)     For purposes of this Count, the "relevant period" is that period
from at least as early as July 1998 until at least February 2010.  During the
relevant period, the defendant was a corporation organized and existing under the
laws of Japan.  The defendant had its principal place of business in Osaka, Japan.
During the relevant period, the defendant, employing more than 5,000 individuals,
was engaged in the sale of automotive HID ballasts in the United States and
elsewhere.  An automotive HID ballast is an electrical device that limits the
amount of electrical current flowing to an HID headlamp, which would otherwise
rise to destructive levels due to the HID headlamp's negative resistance.

(ii)     During the relevant period, the defendant, through its employees,
including general managers and other employees, participated in a conspiracy
with other persons and entities engaged in the manufacture and sale of automotive
HID ballasts, the primary purpose of which was to rig bids for, and to fix,
stabilize, and maintain the prices of, automotive HID ballasts sold to Honda,
Mazda, and Nissan in the United States and elsewhere.  In furtherance of the
conspiracy, the defendant, through its employees, engaged in discussions and
attended meetings with co-conspirators involved in the manufacture and sale of
automotive HID ballasts.  During such meetings and conversations, agreements
were reached to allocate the supply of automotive HID ballasts, rig bids for
automotive HID ballasts supplied to Honda, Mazda, and Nissan, and to fix,

stabilize, and maintain the prices, including coordinating price adjustments requested by Honda, Mazda, and Nissan, of automotive HID ballasts sold to Honda, Mazda, and Nissan in the United States and elsewhere.

During the relevant period, the defendant's relevant sales of automotive HID ballasts for Honda, Mazda, and Nissan totaled approximately $51.4 million.

(iii)    During the relevant period, automotive HID ballasts sold by one or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of automotive HID ballasts, as well as payments for automotive HID ballasts, traveled in interstate and foreign commerce. The business activities of the defendant and its co-conspirators in connection with the production and sale of automotive HID ballasts that were the subjects of this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

(iv)    Acts in furtherance of this conspiracy were carried out within the Eastern District of Michigan, Southern Division. The conspiratorial meetings and conversations described above took place in Japan, and the automotive HID ballasts that were the subjects of the conspiracy were sold and/or supplied to or for AHMC, MMA, and NNA by the defendant's United States subsidiary, which is located in the Eastern District of Michigan.

## ELEMENTS OF THE OFFENSE

5.    The elements of the charged offense are that:

(a)    the conspiracies described in the Information existed at or about the times alleged;

9

(b)     the defendant knowingly became a member of each conspiracy; and

(c)     the conspiracies described in the Information either affected interstate and foreign commerce in goods or services or occurred within the flow of interstate and foreign commerce in goods and services.

## POSSIBLE MAXIMUM SENTENCE

6.     The defendant understands that the statutory maximum penalty which may be imposed against it upon conviction for a violation of Section One of the Sherman Antitrust Act is a fine in an amount equal to the greatest of:

(a)     $100 million (15 U.S.C. § 1);

(b)     twice the gross pecuniary gain the conspirators derived from the crime (18 U.S.C. § 3571(c) and (d)); or

(c)     twice the gross pecuniary loss caused to the victims of the crime by the conspirators (18 U.S.C. § 3571(c) and (d)).

7.     In addition, the defendant understands that:

(a)     pursuant to 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years;

(b)     pursuant to U.S.S.G. §8B1.1 of the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") or 18 U.S.C. § 3563(b)(2) or 3663(a)(3), the Court may order it to pay restitution to the victims of the offenses charged; and

(c)     pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the defendant to pay a $400 special assessment upon conviction for each of the charged crimes.

## SENTENCING GUIDELINES

8.      The defendant understands that the Sentencing Guidelines are advisory, not

mandatory, but that the Court must consider the Guidelines in effect on the day of sentencing,

along with the other factors set forth in 18 U.S.C. § 3553(a), in determining and imposing

sentence. The defendant understands that the Guidelines determinations will be made by the

Court by a preponderance of the evidence standard. The defendant understands that although the

Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its

sentence must be reasonable based upon consideration of all relevant sentencing factors set forth

in 18 U.S.C. § 3553(a). Pursuant to U.S.S.G. §1B1.8, the United States agrees that self-

incriminating information that the defendant provides to the United States pursuant to this Plea

Agreement will not be used to increase the volume of affected commerce attributable to the

defendant or in determining the defendant's applicable Guidelines range, except to the extent

provided in U.S.S.G. §1B1.8(b).

## SENTENCING AGREEMENT

9.      Pursuant to Fed. R. Crim. P. 11(c)(1)(C), and subject to the full, truthful, and

continuing cooperation of the defendant, the United States and the defendant agree that the

appropriate disposition of this case is, and agree to recommend jointly that the Court impose, a

sentence requiring the defendant to pay to the United States a criminal fine of $45.8 million,

payable in full before the fifteenth (15th) day after the date of judgment, and no order of

restitution ("the recommended sentence"). The parties agree that there exists no aggravating or

mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the

U.S. Sentencing Commission in formulating the Sentencing Guidelines justifying a departure

pursuant to U.S.S.G. §5K2.0. The parties agree not to seek at the sentencing hearing any

11

sentence outside of the Guidelines range nor any Guidelines adjustment for any reason that is not set forth in this Plea Agreement. The parties further agree that the recommended sentence set forth in this Plea Agreement is reasonable.

(a)     The defendant understands that the Court will order it to pay a $400 special assessment for each offense charged in the Information, pursuant to 18 U.S.C. § 3013(a)(2)(B), in addition to any fine imposed.

(b)     In light of the availability of civil causes of action, which potentially provide for a recovery of a multiple of actual damages, the recommended sentence does not include a restitution order for the offenses charged in the Information.

(c)     Both parties will recommend that no term of probation be imposed, but the defendant understands that the Court's denial of this request will not void this Plea Agreement.

(d)     The United States and the defendant jointly submit that this Plea Agreement, together with the record that will be created by the United States and the defendant at the plea and sentencing hearings, and the further disclosure described in Paragraph 11, will provide sufficient information concerning the defendant, the crime charged in this case, and the defendant's role in the crime to enable the meaningful exercise of sentencing authority by the Court under 18 U.S.C. § 3553. The United States and defendant agree to request jointly that the Court accept the defendant's guilty plea and impose sentence on an expedited schedule as early as the date of arraignment, based upon the record provided by the defendant and the United States, under the provisions of Fed. R. Crim. P. 32(c)(1)(A)(ii), U.S.S.G. §6A1.1, and Rule 32.1(h) of the Criminal

Local Rules. The Court's denial of the request to impose sentence on an expedited schedule will not void this Plea Agreement.

10. The United States and the defendant agree that the applicable Guidelines fine range exceeds the fine contained in the recommended sentence set out in Paragraph 9 above. Subject to the full, truthful and continuing cooperation of the defendant, as defined in Paragraph 14 of this Plea Agreement, and prior to sentencing in this case, the United States agrees that it will make a motion, pursuant to U.S.S.G. §8C4.1, for a downward departure from the Guidelines fine range and will request that the Court impose the recommended sentence set out in Paragraph 9 of this Plea Agreement because of the defendant's substantial assistance in the government's investigation and prosecutions of violations of federal criminal law in the automotive parts industry.

11. Subject to the full, truthful and continuing cooperation of the defendant and its subsidiaries as defined in Paragraph 13 of this Plea Agreement, and prior to sentencing in the case, the United States will fully advise the Court of the fact, manner, and extent of the defendant's and its subsidiaries' cooperation, and its/their commitment to prospective cooperation with the United States's investigation and prosecutions, all material facts relating to the defendant's involvement in the charged offenses and all other relevant conduct.

12. The United States and the defendant understand that the Court retains complete discretion to accept or reject the recommended sentence provided for in Paragraph 9 of this Plea Agreement.

(a) If the Court does not accept the recommended sentence, the United States and the defendant agree that this Plea Agreement, except for Paragraph 12(b) below, will be rendered void.

13

(b)     If the Court does not accept the recommended sentence, the defendant will be free to withdraw its guilty pleas (Fed. R. Crim. P. 11(c)(5) and (d)).  If the defendant withdraws its pleas of guilty, this Plea Agreement, the guilty pleas, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty plea or this Plea Agreement, or made in the course of plea discussions with an attorney for the government will not be admissible against the defendant in any criminal or civil proceeding, except as otherwise provided in Federal Rule of Evidence 410.  In addition, the defendant agrees that, if it withdraws its guilty pleas pursuant to this subparagraph of the Plea Agreement, the statute of limitations period for any offense referred to in Paragraph 16 of this Plea Agreement will be tolled for the period between the date of the signing of the Plea Agreement and the date the defendant withdrew its guilty pleas or for a period of sixty (60) days after the date of the signing of the Plea Agreement, whichever period is greater.

## DEFENDANT'S COOPERATION

13.     The defendant and its subsidiaries (for purposes of this Plea Agreement, entities in which the defendant directly or indirectly had a greater than 50% ownership interest as of the date of signature of this Plea Agreement) will cooperate fully and truthfully with the United States in the prosecution of this case, the current federal investigation of violations of federal antitrust and related criminal laws involving the manufacture or sale of the five switches, SAS, and automotive HID ballasts; any other federal investigation resulting therefrom; and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party ("Federal Proceeding").  The full, truthful, and continuing cooperation of the defendant and its subsidiaries will include, but not be limited to:

14

(a)     producing to the United States all non-privileged documents, information, and other materials, wherever located (and with translations into English), in the possession, custody, or control of the defendant or any of its subsidiaries, requested by the United States in connection with any Federal Proceeding; and

(b)     using its best efforts to secure the full, truthful, and continuing cooperation, as defined in Paragraph 14 of this Plea Agreement, of the current and former directors, officers and employees of the defendant or any of its subsidiaries as may be requested by the United States, but excluding the four (4) individuals listed in Attachment A filed under seal, including making these persons available in the United States and at other mutually agreed-upon locations, at the defendant's expense, for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with any Federal Proceeding.  Current directors, officers, and employees are defined for purposes of this Plea Agreement as individuals who are directors, officers, or employees of the defendant or any of its subsidiaries as of the date of signature of this Plea Agreement.

14.     The full, truthful, and continuing cooperation of each person described in Paragraph 13(b) above, will be subject to the procedures and protections of this paragraph, and will include, but not be limited to:

(a)     producing in the United States and at other mutually agreed-upon locations all non-privileged documents, including claimed personal documents and other materials, wherever located (and with translations into English), requested by attorneys and agents of the United States;

(b)     making himself or herself available for interviews in the United States and at other mutually agreed-upon locations, not at the expense of the United States, upon the request of attorneys and agents of the United States;

(c)     responding fully and truthfully to all inquiries of the United States in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making false statements or declarations (18 U.S.C. § 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), or conspiracy to commit such offenses;

(d)     otherwise voluntarily providing the United States with any non-privileged material or information not requested in (a) - (c) of this paragraph that he or she may have that is related to any Federal Proceeding;

(e)     when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the United States fully, truthfully and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401-402) and obstruction of justice (18 U.S.C. § 1503, *et seq.*); and

(f)     agreeing that, if the agreement not to prosecute him or her in this Plea Agreement is rendered void under Paragraph 16(c), the statute of limitations period for any Relevant Offense as defined in Paragraph 16(a) shall be tolled as to him or her for the period between the date of the signing of this Plea Agreement and six (6) months after the date that the United States gave notice of its intent to void its obligations to that person under the Plea Agreement.

16

## GOVERNMENT'S AGREEMENT

15.     Subject to the full, truthful, and continuing cooperation of the defendant and its subsidiaries, as defined in Paragraph 13 of this Plea Agreement, and upon the Court's acceptance of the guilty pleas called for by this Plea Agreement and the imposition of the recommended sentence, the United States agrees that it will not bring further criminal charges against the defendant or its subsidiaries for any act or offense committed before the date of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the manufacture or sale of steering wheel switches, turn switches, wiper switches, combination switches, and door courtesy switches, SAS, automotive HID ballasts, or those products enumerated in section 2 of Attachment B (filed under seal) ("Relevant Offenses").  The nonprosecution terms of this paragraph do not apply to (a) any acts of subornation of perjury (18 U.S.C. § 1622), making a false statement (18 U.S.C. § 1001), obstruction of justice (18 U.S.C. § 1503, *et seq.*), or conspiracy to commit such offenses; (b) civil matters of any kind; (c) any violation of the federal tax or securities laws or conspiracy to commit such offenses; or (d) any crime of violence.

16.     The United States agrees to the following:

(a)     Upon the Court's acceptance of the guilty pleas called for by this Plea Agreement and the imposition of the recommended sentence and subject to the exceptions noted in Paragraph 16(c), the United States will not bring criminal charges against any current or former director, officer or employee of the defendant or its subsidiaries for any act or offense committed before the date of this Plea Agreement and while that person was acting as a director, officer or employee of the defendant or its subsidiaries that was undertaken in furtherance of any Relevant Offense, with the

17

exception that the protections from prosecution for Relevant Offenses granted in this paragraph shall not apply to the four (4) individuals listed in Attachment A (filed under seal);

(b)     Should the United States determine that any current or former director, officer, or employee of the defendant or any of its subsidiaries may have information relevant to any Federal Proceeding, the United States may request that person's cooperation under the terms of this Plea Agreement by written request delivered to counsel for the individual (with a copy to the undersigned counsel for the defendant) or, if the individual is not known by the United States to be represented, to the undersigned counsel for the defendant;

(c)     If any person requested to provide cooperation under Paragraph 16(b) fails to comply with his or her obligations under Paragraph 14, then the terms of this Plea Agreement as they pertain to that person, and the agreement not to prosecute that person granted in this Plea Agreement, will be rendered void, and the United States may prosecute such person criminally for any federal crime of which the United States has knowledge, including, but not limited to any Relevant Offense;

(d)     Except as provided in Paragraph 16(e), information provided by a person described in Paragraph 16(b) to the United States under the terms of this Plea Agreement pertaining to any Relevant Offense, or any information directly or indirectly derived from that information, may not be used against that person in a criminal case, except in a prosecution for perjury or subornation of perjury (18 U.S.C. § 1621-22), making a false statement or declaration (18 U.S.C. § 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), or conspiracy to commit such offenses;

18

     (e)    If any person who provides information to the United States under this Plea Agreement fails to comply fully with his or her obligations under Paragraph 14 of this Plea Agreement, the agreement in Paragraph 16(d) not to use that information or any information directly or indirectly derived from it against that person in a criminal case will be rendered void;

     (f)    The nonprosecution terms of this paragraph do not apply to civil matters of any kind; any violation of the federal tax or securities laws or conspiracy to commit such offenses; any crime of violence; or perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, et seq.), or conspiracy to commit such offenses; and

     (g)    Documents provided under Paragraphs 13(a) and 14(a) will be deemed responsive to outstanding grand jury subpoenas issued to the defendant or any of its subsidiaries.

    17.    The United States agrees that when any person travels to the United States for interviews, grand jury appearances, or court appearances pursuant to this Plea Agreement, or for meetings with counsel in preparation therefor, the United States will take no action, based upon any Relevant Offense, to subject such person to arrest, detention or service of process, or to prevent such person from departing the United States. This paragraph does not apply to an individual's commission of perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making false statements or declarations (18 U.S.C. § 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses in connection with any testimony or information provided or requested in any Federal Proceeding.

18.    The defendant understands that it may be subject to administrative action by federal or state agencies other than the United States Department of Justice, Antitrust Division, based upon the conviction resulting from this Plea Agreement, and that this Plea Agreement in no way controls whatever action, if any, other agencies may take. However, the United States agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such administrative action of the fact, manner and extent of the cooperation of the defendant and its subsidiaries as a matter for that agency to consider before determining what administrative action, if any, to take.

## REPRESENTATION BY COUNSEL

19.    The defendant has been represented by counsel and is fully satisfied that its attorneys have provided competent legal representation. The defendant has thoroughly reviewed this Plea Agreement and acknowledges that counsel has advised it of the nature of the charges, any possible defenses to the charges, and the nature and range of possible sentences.

## VOLUNTARY PLEA

20.    The defendant's decision to enter into this Plea Agreement and to tender pleas of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement and Attachments A and B (filed under seal). The United States has made no promises or representations to the defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

## VIOLATION OF PLEA AGREEMENT

21.    The defendant agrees that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that the defendant or any of its

subsidiaries has failed to provide full, truthful and continuing cooperation, as defined in Paragraph 13 of this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United States will notify counsel for the defendant in writing by personal or overnight delivery, email, or facsimile transmission and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and the defendant and its subsidiaries will be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement. The defendant agrees that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendant or its subsidiaries for any offense referred to in Paragraph 15 of this Plea Agreement, the statute of limitations period for such offense will be tolled for the period between the date of the signing of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

22. The defendant understands and agrees that in any further prosecution of it or its subsidiaries resulting from the release of the United States from its obligations under this Plea Agreement, because of the defendant's or its subsidiaries' violation of this Plea Agreement, any documents, statements, information, testimony, or evidence provided by it, its subsidiaries, or current or former directors, officers, or employees of it or its subsidiaries to attorneys or agents of the United States, federal grand juries or courts, and any leads derived therefrom, may be used against it or its subsidiaries. In addition, the defendant unconditionally waives its right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Federal Rule of Evidence 410.

## ENTIRETY OF AGREEMENT

23.     This Plea Agreement and Attachments A and B constitute the entire agreement between the United States and the defendant concerning the disposition of the criminal charges in this case. This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

24.     The undersigned is authorized to enter this Plea Agreement on behalf of the defendant as evidenced by the Resolution of the Board of Directors of the defendant attached to, and incorporated by reference in, this Plea Agreement.

25.     The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

25.     A facsimile or PDF signature shall be deemed an original signature for the purpose of executing this Plea Agreement. Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

22

DATED: _July 18, 2013_

BY: _____

Masahisa Shibata
Executive Officer
Panasonic Corporation


BY: _____

Jeffrey L. Kessler
A. Paul Victor
Seth C. Farber
Eva W. Cole
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
212-294-4698

BY: _____

Kathryn Hellings
Matthew W. Lunder
Philip Giordano
Eric Meiring
Diana Kane
Trial Attorneys
United States Department of Justice
Antitrust Division
450 Fifth Street, NW
Suite 11300
Washington, D.C. 20530
Tel.: (202) 307-6694

確　認　書

当社取締役会は、2013 年 3 月 28 日に開催された取締役会において、役員　柴田　雅久に、一部自動車部品（ステアリングホイールスイッチ、ワイパースイッチ、コンビネーションスイッチ、ドアカーテシースイッチ、ターンスイッチ、ステアリングアングルセンサー、HID バラスト）に関する、パナソニック株式会社と米国司法省間の司法取引契約へ署名する権限を与えたことを証する。

2013 年 7 月 18 日

パナソニック株式会社

代表取締役　社長　津賀　一宏

Confirmation

The Board of Directors of our company certifies that, at the Board of Directors' meeting convened on March 28, 2013, Executive Officer Masahisa Shibata was given authorization to sign the plea agreement between Panasonic Corporation and the United States Department of Justice, regarding certain automotive components (specifically, steering wheel switches, wiper switches, combination switches, door courtesy switches, turn switches, steering angle sensors, and HID ballasts).

July 18, 2013


[signature]
Representative Director and President, Kazuhiro Tsuga
Panasonic Corporation


TRANSPERFECT

City of New York, State of New York, County of New York

I, Leon Fishman, hereby affirm that the document "Panasonic Auto Parts – Written Confirmation Letter, dated 18 July 2013" is, to the best of my knowledge and belief, a true and accurate translation from Japanese into English.

Leon Fishman

Sworn to before me this
18th of July, 2013

Signature, Notary Public

RYAN ALEXANDER DROST
Notary Public – State of New York
No. 01DR6262048
Qualified in NEW YORK County
My Commission Expires MAY 21, 2016

Stamp, Notary Public
State of New York

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 80 CITIES WORLDWIDE