```
 1                      UNITED  STATES  OF  AMERICA
                     EASTERN  DISTRICT  OF  MICHIGAN
 2                         SOUTHERN  DIVISION

 3                          —    —    —

 4   IN RE:  AUTOMOTIVE PARTS          Master File No. 12-md-02311
     ANTITRUST LITIGATION              Hon. Marianne O. Battani
 5
     _____/
 6

 7             PRELIMINARY  APPROVAL  OF  SETTLEMENTS

 8         BEFORE THE HONORABLE MARIANNE  O.  BATTANI
                  United  States  District  Judge
 9         Theodore  Levin  United  States  Courthouse
                  231  West  Lafayette  Boulevard
10                      Detroit,  Michigan
                     Tuesday,  July  1,  2014
11

12   APPEARANCES:

13   Direct-Purchaser Plaintiffs:

14         DAVID  H.  FINK
           FINK  &  ASSOCIATES  LAW
15         100 West Long Lake Road, Suite 111
           Bloomfield Hills, MI  48304
16         (248) 971-2500

17         GREGORY  P.  HANSEL
           PRETI,  FLAHERTY,  BELIVEAU  &  PACHIOS,  L.L.P.
18         One City Center
           Portland, ME  04112
19         (207) 791-3000

20         STEVEN  A.  KANNER
           FREED,  KANNER,  LONDON  &  MILLEN,  L.L.C.
21         2201 Waukegan Road, Suite 130
           Bannockburn, IL  60015
22         (224) 632-4502

23         JOSEPH  C.  KOHN
           KOHN,  SWIFT  &  GRAF,  P.C.
24         One South Broad Street, Suite 2100
           Philadelphia, PA  19107
25         (215) 238-1700
```

Case 2:12-md-02311-SFC-RSW   ECF No. 758, PageID.10821   Filed 07/16/14   Page 2 of 39
Preliminary Approval of Settlements • July 1, 2014

2

```
 1   APPEARANCES: (Continued)

 2   Direct-Purchaser Plaintiffs:

 3        EUGENE A. SPECTOR
          SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.
 4        1818 Market Street, Suite 2500
          Philadelphia, PA  19103
 5        (215) 496-0300

 6
     End-Payor Plaintiffs:
 7
          BERNARD PERSKY
 8        ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.
          601 Lexington Avenue, Suite 3400
 9        New York, NY  10022
          (212) 980-7404
10
          WILLIAM V. REISS
11        ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.
          601 Lexington Avenue, Suite 3400
12        New York, NY  10022
          (212) 980-7405
13
          ADAM T. SCHNATZ
14        THE MILLER LAW FIRM, P.C.
          950 West University Drive, Suite 300
15        Rochester, MI  48307
          (248) 841-2200
16

17   Dealership Plaintiffs:

18        BRENDAN H. FREY
          MANTESE, HONIGMAN, ROSSMAN & WILLIAMSON, P.C.
19        1361 East Big Beaver Road
          Troy, MI  48083
20        (248) 457-9200

21        SHAWN M. RAITER
          LARSON KING, L.L.P.
22        30 East Seventh Street, Suite 2800
          Saint Paul, MN  55101
23        (651) 312-6500

24

25
```

1   APPEARANCES: (Continued)

2   **For the Defendants:**

3           RICHARD D. BISIO
            **KEMP KLEIN LAW FIRM**
4           201 West Big Beaver Road, Suite 600
            Troy, MI  48084
5           (248) 528-1111

6           PETER M. FALKENSTEIN
            **JAFFE, RAITT, HEUER & WEISS, P.C.**
7           27777 Franklin Road, Suite 2500
            Southfield, MI  48034
8           (248) 351-3000

9           KURT G. KASTORF
            **WILMER, CUTLER, PICKERING, HALE and DORR, L.L.P.**
10          1875 Pennsylvania Avenue, NW
            Washington, D.C.  20006
11          (202) 663-6868

12          PETER KONTIO
            **ALSTON & BIRD, L.L.P.**
13          1201 West Peachtree Street
            Atlanta, GA  30309
14          (404) 881-7000

15          TIFFANY LIPSCOMB-JACKSON
            **JONES DAY**
16          51 Louisiana Avenue NW
            Washington, DC  20001
17          (202) 879-4645

18          ALLYSON M. MALTAS
            **LATHAM & WATKINS, L.L.P.**
19          555 Eleventh Street NW, Suite 1000
            Washington, D.C.  20004
20          (202) 637-2200

21          ANDREW S. MAROVITZ
            **MAYER BROWN, L.L.P.**
22          71 South Wacker Drive
            Chicago, IL  60606
23          (312) 701-7116

24

25

```
 1    APPEARANCES: (Continued)

 2    For the Defendants:

 3            WM. PARKER SANDERS
              SMITH, GAMBRELL & RUSSELL, L.L.P.
 4            1230 Peachtree Street NE
              Promenade Two, Suite 3100
 5            Atlanta, GA  30309
              (404) 815-3684
 6
              ROBERT WIERENGA
 7            SCHIFF HARDIN, L.L.P.
              350 South Main Street, Suite 210
 8            Ann Arbor, MI  48104
              (734) 222-1507
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 2:12-md-02311-SFC-RSW  ECF No. 758, PageID.10824  Filed 07/16/14  Page 5 of 39
Preliminary Approval of Settlements • July 1, 2014

5

TABLE OF CONTENTS

Page

PRELIMINARY APPROVAL OF SETTLEMENT
REGARDING LEAR
    Direct-Purchaser Plaintiffs...........................  5

PRELIMINARY APPROVAL OF SETTLEMENT
REGARDING LEAR AND KYUNGSHIN-LEAR SALES AND ENGINEERING
    Auto Dealer Plaintiffs............................... 17
    End-Payor Plaintiffs................................. 22

PRELIMINARY APPROVAL OF SETTLEMENT
REGARDING AUTOLIV
    Direct-Purchaser Plaintiffs.......................... 25
    Auto Dealer Plaintiffs............................... 32
    End-Payor Plaintiffs................................. 34

1    Detroit, Michigan

2    Tuesday, July 1, 2014

3    at about 10:58 a.m.

4                              –   –   –

5              THE CASE MANAGER:  All rise.

6              The United States District Court for the Eastern

7    District of Michigan is now in session, the Honorable

8    Marianne O. Battani presiding.

9              You may be seated.

10             The Court calls the case of In Re:  Automotive

11   Parts Antitrust Litigation.

12             THE COURT:  Good morning.

13             UNIDENTIFIED ATTORNEYS:  (Collectively) Good

14   morning, Your Honor.

15             THE COURT:  All right.  Rob, I know you got the

16   appearances, but shall we do them formally for the record

17   though?  Let's start with plaintiffs' counsel.

18             MR. SPECTOR:  Eugene Spector on behalf of the

19   direct-purchaser plaintiffs.  Good morning, Your Honor.

20             MR. REISS:  Good morning, Your Honor.  Wil Reiss on

21   behalf of the end-payor plaintiffs.

22             MR. KANNER:  Good morning, Your Honor.

23   Steve Kanner on behalf of the direct-purchaser plaintiffs.

24             MR. PERSKY:  Bernard Persky on behalf of the

25   end-payor plaintiffs.

1          MR. RAITER:  Good morning, Your Honor.

2     Shawn Raiter on behalf of the automobile dealers.

3          MR. FREY:  Good morning, Your Honor.  Brendan Frey

4     on behalf of the automobile dealers.

5          MR. SCHNATZ:  Good morning, Your Honor.

6     Adam Schnatz, S-C-H-N-A-T-Z, on behalf of the end payors.

7          MR. KOHN:  Good morning, Your Honor.  Joseph Kohn

8     for the direct purchasers.

9          MR. HANSEL:  Good morning, Your Honor.  Greg Hansel

10    for the direct purchasers.

11         MR. FINK:  Good morning.  David Fink for the direct

12    purchasers.

13         THE COURT:  Okay.  Defense?

14         MR. MAROVITZ:  Your Honor, Andy Marovitz for Lear

15    Corporation.

16         MR. KONTIO:  Good morning, Your Honor.

17    Peter Kontio for AutoLiv.

18         MR. SANDERS:  Good morning, Your Honor.

19    Parker Sanders for Kyungshin-Lear Sales and Engineering.

20         MR. FALKENSTEIN:  Good morning, Your Honor.

21    Peter Falkenstein for Kyungshin-Lear Sales and Engineering.

22         THE COURT:  Anybody else?  I have a few more names

23    here.  Ladies?

24         MS. MALTAS:  Good morning, Your Honor.

25    Allyson Maltas for Sumitomo.

1          MS. JACKSON:  Good morning, Your Honor.

2    Tiffany Lipscomb Jackson for Yazaki.

3          MR. KASTORF:  Kurt Kastorf for Denso.

4          MR. BISIO:  Richard Bisio on behalf of Furukawa and

5    Nachi.

6          THE COURT:  Wait a minute.  That one I don't have

7    on the list.

8          MR. WIERENGA:  Robert Wierenga on behalf of Takata.

9          THE COURT:  Okay.  Now, as I see it, we have six

10   proposed settlements.  I don't know that we want to go

11   through everything multiple times, but I think we need to at

12   least start with the first, and I'm going to go with the wire

13   harness being the first because it is obviously the oldest.

14   Let's start with the direct purchasers.  Who is going to do

15   that?

16          MR. SPECTOR:  Good morning, Your Honor.

17   Eugene Spector on behalf of the direct-purchaser plaintiffs.

18          THE COURT:  Okay.

19          MR. SPECTOR:  Happy to be here, Your Honor, to talk

20   about a settlement.  Somebody once said that brevity is the

21   soul of wit.  I'm going to try to be very witty and very

22   brief.

23          THE COURT:  Okay.

24          MR. SPECTOR:  First of all, Your Honor, I would

25   like to bring to your attention, I think it already has been

1    but I want to make sure it has, an amendment to the

2    settlement agreements.  It is a letter amendment, and it

3    conforms the settlement agreement to the escrow agreement so

4    as to allow the escrow agent to make investments in insured

5    instruments, not just treasury bonds.

6           THE COURT:  Okay.  Would you explain to me while we

7    are on that in terms of all of these various settlements,

8    they are different funds or banks or financial

9    institutions --

10          MR. SPECTOR:  Yes, the funds are invested for the

11   benefit of the class, that will earn interest, in today's

12   market a very modest amount of interest, that's one of the

13   reasons we did this, it gets us I believe a little bit more

14   interest on the funds.

15          THE COURT:  Okay.

16          MR. SPECTOR:  And those funds will be held until

17   distribution is made at which time the interest that is in

18   that fund would be distributed as part of the settlement

19   distribution to the class.

20          THE COURT:  Thank you.

21          MR. SPECTOR:  I have a copy of the settlement

22   amendment if you would like me to hand that up?

23          THE COURT:  Yes, I would like that.  Please hand

24   that to my clerk right there.

25          MR. SPECTOR:  With regard to the settlement with

1    Lear, our papers fully describe the terms of the settlement,
2    they fully describe the benefits and why we all believe that
3    this is in the best interest of the class and that falls
4    within the ambit of what might well be approved by this Court
5    at a final settlement.
6         Rather than go through all of those things again,
7    if the Court has any questions I'm happy to answer them but I
8    would just like to point out a couple of minor things, they
9    are not so minor.  One, Lear was never indicted.  Lear was
10   never subpoenaed.  This is an icebreaker settlement in this
11   case, and $4.75 million plus cooperation we think is a very
12   fair and reasonable amount for the class under the
13   circumstances.
14        We think that the terms with regard to class
15   certification for preliminary approval purposes, for
16   settlement, are clearly met, and we would ask the Court to
17   enter the order or one similar to it that we have submitted
18   for preliminary approval of this settlement.
19        The one response that was filed was by the
20   defendants asking us and asking the Court to do what's
21   already provided for in the order and the settlement
22   agreement, and that is any order that approves a class here
23   for purposes of settlement will not be binding on anybody in
24   future actions in this case, that won't -- you can't cite it
25   as authority for supportive class certification in the

1    future.

2             THE COURT:  Okay.

3             MR. SPECTOR:  Your Honor, under those

4    circumstances, Your Honor, unless you have some questions --

5             THE COURT:  Well, let's get somebody from Lear.

6    Who is going to speak?  Okay.

7             MR. MAROVITZ:  Your Honor, good morning.

8    Andy Marovitz for Lear Corporation.

9             I really have nothing to add to what is contained

10   in the settlement agreement and to what we mentioned during

11   the last status conference on June 4th.

12            THE COURT:  Okay.  I just want to be very clear

13   that the term in the settlement agreement which preserves

14   your right to contest the class in further -- in future

15   actions, are you satisfied with that agreement?

16            MR. MAROVITZ:  Yes, Your Honor, and let me explain

17   with a little more precision.  So for us we would not be

18   contesting -- for Lear, Lear would not be contesting the

19   class.

20            THE COURT:  Right.

21            MR. MAROVITZ:  When we arranged with plaintiffs to

22   include the language that is now contained about the other

23   defendants being able to contest the class, we modeled that

24   off of previous settlements, and so it seemed to us that what

25   the non-settling defendants wish to have is exactly what is

Preliminary Approval of Settlements • July 1, 2014

12

1    currently contained in the settlement agreement, and I

2    think -- I won't speak for them if they wish to say something

3    else, but I think it was really a prophylactic request to

4    make sure the Court entered the preliminary approval order as

5    drafted by plaintiffs and as accepted by Lear.

6            THE COURT:  Well, I know we went over that before

7    but I just want to make sure that all defendants are in

8    agreement with what is in there; is that correct?

9            MS. MALTAS:  Your Honor, I'm Allyson Maltas from

10   Sumitomo.

11           And as reflected in the response that we filed, we

12   are in agreement with the language that is included and would

13   request that the Court include that in your order.

14           THE COURT:  Okay.  Well, it is in the order, right?

15           MS. MALTAS:  Yes, it's in the proposed order.

16           THE COURT:  When you say request I keep thinking

17   there is something to add.

18           MS. MALTAS:  Well, if you were to change the order

19   in some way to reflect something else, that that language

20   remain in the order that you file.

21           THE COURT:  Thank you.  Got it.  Anything else,

22   Mr. Spector?

23           MR. SPECTOR:  One other thing, Your Honor, that I

24   failed to mention, and that is the schedule for purposes of

25   notice.  We have an order already entered by stipulation that

1    provides that the defendants will give us customer lists by

2    August the 4th, which will be a Monday.  We can then mail

3    notice by August 18th.  We can publish notice in the

4    Wall Street Journal and Automotive News by August 25th.  We

5    would file motions for final approval with the Court on

6    October 7th.  Objections and requests to opt out must be

7    filed by October 17th.  And then we would suggest that a

8    final approval hearing be held anytime after November 18th,

9    and I would like to try to suggest that we do the AutoLiv

10   settlement and the Lear settlement at the same time for final

11   approval as we are doing today with preliminary approval, and

12   I think Mr. Kanner will speak to that, but we were thinking

13   of somewhere in the first two weeks in December, that should

14   give everybody plenty of time to get things done.

15           THE COURT:  Okay.

16           MR. SPECTOR:  Thank you, Your Honor.

17           THE COURT:  All right.  Any comments on the

18   schedule from defendants?

19           MR. MAROVITZ:  No, Your Honor.  Thank you.

20           THE COURT:  Okay.  All right.  The Court has

21   reviewed this matter and certainly under Rule 23(e) the Court

22   has to approve the proposed settlement which must be fair,

23   reasonable and adequate.  The Court has reviewed that

24   settlement.  We know that there are a number of factors

25   favoring settlement, they have been cited and laid out in

1    detail in the plaintiffs' brief so I'm not going to go over
2    all of it except to say certainly here the claims are complex
3    and the issues are numerous, and this settlement -- the
4    cooperation agreement provides an immediate benefit, I think
5    that goes along with the monetary settlement in the case, and
6    that the Court does note as has been put on the record by the
7    defendant that the Department of Justice has not accused Lear
8    of any wrongdoing in the wire harness conspiracy, and has
9    represented -- and Lear has represented that it has never
10   received a DOJ subpoena.  Certainly this is an icebreaker
11   settlement in this litigation and Lear has agreed to
12   cooperate.
13          The Court should, in fact, I believe, provisionally
14   certify regarding the class under Rule 23.  The class has
15   been defined in the papers, I'm not going to -- well, the
16   class here is very narrow so I guess it is not very long,
17   that is all individuals and entities that purchased wire
18   harness products in the United States directly from one or
19   more of the defendants from January 1st, 2000 through the
20   execution date.
21          Clearly the numerosity applies here.  There is a
22   commonality and a question of law, in fact, common to these
23   cases in that the same wrong is allegedly injuring the class
24   as a whole.
25          In terms of the adequacy of the representation, the

1   Court finds that the representative parties will fairly and

2   adequately protect the interest of the class.

3           Counsel here is qualified and able to conduct the

4   litigation, and I think that's one of the factors that is

5   considered by the Court, mentioned in any number of the

6   cases, and the Court certainly knows how important it is, and

7   I find, as I have had before, that counsel is well qualified

8   and able to adequately represent the class and also the class

9   representatives and also help with and understand the various

10  complexities of this case.

11          Clearly the third prerequisite is the typicality

12  and the claims of the respective representative parties must

13  be typical of the class, and they are here.  The typicality

14  requirement is satisfied even if there is a factual

15  distinction between claims of the named plaintiffs.  Common

16  questions predominate, and clearly the class resolution here

17  is the superior method.

18          The proposed timetable appears reasonable to the

19  Court.  I think that that does give enough notice for the

20  time, and if we can schedule it in the December time period

21  hopefully we can get it closed this year; we should be able

22  to do that, I don't see any reason why that wouldn't be able

23  to happen.

24          There is one other issue and that's the expenses

25  that plaintiffs asked, and that was not addressed here this

1    morning but maybe, Mr. Spector, you should comment on that.

2             MR. SPECTOR:  I'll just comment briefly on it, Your

3    Honor.  It is not atypical in this kind of case for the

4    counsel to request expenses -- an award from the settlement

5    funds for expenses.

6             THE COURT:  This is 20 percent?

7             MR. SPECTOR:  This is no more than 20 percent.

8             THE COURT:  And it is not attorney fees?

9             MR. SPECTOR:  It is not attorney fees at all, it

10   will be used for expenses in the wire harness litigation for,

11   for example, expert fees, copying costs, deposition costs,

12   those kinds of things.

13            THE COURT:  Okay.  Thank you.

14            MR. SPECTOR:  Thank you, Your Honor.

15            THE COURT:  The Court approves the 20 percent to be

16   used as expenses, I think that's reasonable, and the expenses

17   in this case I know are quite high, to say the least.

18            All right.  Also, finally, the Court will grant the

19   preliminary approval of the settlement, authorize

20   dissemination of the notice and schedule a fairness hearing

21   on the settlement in due course.  Okay.

22            MR. SPECTOR:  Thank you, Your Honor.

23            THE COURT:  Anything else on that one?

24            (No response.)

25            THE COURT:  Now we have the auto dealers.

1    MR. RAITER:  Good morning, Your Honor.

2    Shawn Raiter on behalf of the automobile dealers.

3    The Lear settlement has many of the same terms as

4    both the direct settlement and the end-payor settlement in

5    terms of the cooperation, the scope of that cooperation, the

6    mechanics of the cooperation, the money to be paid to the

7    automobile dealerships by Lear defendants is $1,032,000.  We

8    believe under the circumstances that is fair, within the

9    range of possible approval and should be granted preliminary

10   approval by the Court.

11   We are not requesting leave to send notice, we have

12   not asked the Court to approve a notice yet.  Our plan, and I

13   believe it is a similar plan of the end payors or a similar

14   idea, is that we are going to aggregate some of these

15   settlements and try to get some efficiencies in the notice

16   that we will need to send to automobile dealers.  If you

17   think about the three different sets of plaintiffs here, you

18   likely have fewer direct purchasers than you are going to

19   have automobile dealers where there are more of those, and

20   then you are going to have consumers where there are even

21   more, and your notice programs need to address those

22   differences, and until we get what we believe are a

23   sufficient number of settlements concluded we don't intend to

24   incur the expense of notice with the Court's approval, so

25   that was part of our motion for us to be granted leave to

1    come back later, present you a notice and a notice plan and

2    seek your approval at that time to disseminate notice, give

3    the class members a chance to comment or opt out, and then

4    come in for final approval sometime thereafter.

5              THE COURT:  All right.

6              MR. RAITER:  Unless the Court has questions, I will

7    sit down?

8              THE COURT:  No.  Thank you.

9              MR. RAITER:  Thank you.

10             THE COURT:  Okay.  Defense?

11             MR. MAROVITZ:  Good morning, Your Honor.

12   Andy Marovitz for Lear.

13             I don't think I have anything to add with respect

14   to the dealers.

15             THE COURT:  Okay.

16             MR. MAROVITZ:  I'm sorry, Your Honor.  I should say

17   Parker Sanders for Kyungshin-Lear also is here because the

18   settlement with respect to the dealers and the end payors is

19   between those plaintiff classes for settlement purposes and

20   Lear and Kyungshin-Lear.

21             THE COURT:  Yes.  Counsel?

22             MR. SANDERS:  Yes, Your Honor.  Parker Sanders for

23   Kyungshin-Lear Sales and Engineering.

24             We are a separate entity from Lear, and the last

25   status conference Mr. Marovitz made some representations

1    about Lear.  I can make similar representations about

2    Kyungshin-Lear; we have never received a subpoena from the

3    Department of Justice, we were never identified as a subject

4    or target of an investigation, we were never indicted, we

5    never pled guilty, and we have never been named or implicated

6    in any of the guilty pleas by any of the others.

7            THE COURT:  Thank you.

8            MR. SANDERS:  Nothing more to add.

9            THE COURT:  The Court has reviewed this, and I am

10   not going to repeat what I said before in terms of the class.

11   All of the statements that I made regarding, first of all,

12   the reasonableness of the settlement, and I think here there

13   is even more complexity because of the bankruptcy, et cetera,

14   and also the provisions under Rule 23 for the class are very

15   similar to what the Court has already stated, so I am going

16   to simply incorporate that, and I don't think I need to

17   repeat it unless somebody feels that I do.  No?  Okay.

18           Yes, I do appreciate that the notice in this

19   particular group will be held off for a while but not

20   indefinitely, so somebody give me some kind of time frame as

21   to what we are talking about.  Mr. Raiter?

22           MR. RAITER:  Your Honor, I think our plan is as we

23   are documenting the other settlements that we've disclosed to

24   the Court, that once those are up and before the Court for

25   preliminary approval and hopefully receive preliminary

1    approval, that sometime thereafter we would come with those

2    settlements that have been approved to date and collectively

3    then ask for leave to send a notice.

4           THE COURT:  How long do you think that would be

5    though?

6           MR. RAITER:  Hopefully within a couple months at

7    the very most.

8           THE COURT:  Okay.  Thank you.

9           MR. RAITER:  The parties are documenting the

10   settlement agreements and getting everything lined up, so I

11   would assume that we would be in here fairly soon.

12          THE COURT:  All right.  One other thing that

13   crosses my mind, and I know this is not a general status

14   conference, but I am thinking when we get to these

15   settlements should we have a web page on the Court?  We don't

16   have that now, and I know it is coming out, but it seems this

17   may be appropriate.

18          MR. SPECTOR:  I know we have -- we will be -- with

19   our notice, one of our parts of our notice plan is to have a

20   web page that the class members can go to to access --

21   anybody can go to to access information about the case and

22   the settlement.

23          I know that there have been times when courts have

24   had a web page for MDL cases.  If that's what the Court is

25   talking about, we can certainly look into trying to put

1    something together with the Court.

2          THE COURT:  Well, I know, you know, you have to

3    have your own web page with everything?

4          MR. SPECTOR:  Yes.

5          THE COURT:  I'm just thinking that maybe it is time

6    to put it on our court to kind of look forward maybe to be

7    ready for our next status conference but to have some

8    connection on our court so if somebody looks in this court

9    and it is -- I'm sorry, I don't remember the specifics, but

10   say they say cases of note or large cases or something, that

11   they can hit on it so that the public can see what's going on

12   with the MDL case.

13         MR. SPECTOR:  Yes.

14         THE COURT:  Or at least refer them to your pages so

15   that they can --

16         MR. SPECTOR:  I would think that we could work with

17   the Court's electronic system to see what can be done to put

18   on the Court's web page access to the MDL case.

19         THE COURT:  Okay.  We will --

20         MR. SPECTOR:  We can look into that.

21         THE COURT:  Okay.  Mr. Marovitz?

22         MR. MAROVITZ:  Thank you, Your Honor.  We would be

23   happy to work with the plaintiffs on that.  The only thing

24   that we would not want, at least for Lear, is we are here

25   today, as plaintiffs' counsel has said, really as an

1    icebreaker settlement, and as has been said to the Court

2    before in sum and substance, you know, we are not being

3    targeted by DOJ, we are not a witness to that, they didn't

4    come to us, so we would hate for this icebreaker settlement

5    to extricate ourselves from the economic harm that's resulted

6    defending the case to get undue prominence.

7           THE COURT:  Well --

8           MR. MAROVITZ:  So if the point is to have a website

9    for the whole case we certainly would be fine with that but

10   we wouldn't want this particular settlement to be spotlighted

11   in it.

12          THE COURT:  Well, on the Court's -- I don't know

13   what's going to happen beyond on your own website, but for

14   the Court it would be the whole case and certainly it would

15   have to be noted that Lear has settled.

16          MR. MAROVITZ:  Sure, sure.

17          THE COURT:  And this would not happen before I

18   present it to the whole group at our next status conference

19   which -- when is it now, October?

20          MR. SPECTOR:  October 8th, I believe, Your Honor.

21          THE COURT:  So it wouldn't happen until

22   October 8th, though we may be calling on you saying what

23   would you like to see.  I have to talk to our people, I

24   haven't done it yet, but it's just come up a couple times and

25   I think now might be a good time to start looking to have

1    something on our site so if anybody wants to click on it just

2    to see the status of the case and what's going on I think it

3    might be time.

4          MR. MAROVITZ:  Thank you, Your Honor.

5          THE COURT:  All right.  Thank you.  Now we have the

6    end-payor plaintiffs.

7          MR. REISS:  Good morning, Your Honor.  Wil Reiss

8    for the end-payor plaintiffs.

9          THE COURT:  Good morning.

10         MR. REISS:  I don't have a whole lot to add because

11   I think most of the relevant facts have been stated.  I think

12   our settlement is similar to the dealers and the direct

13   settlement.

14         One point though I would like to address on notice,

15   I think our class is significantly larger than the

16   direct-purchaser class and the dealer class.  We are talking

17   about potentially millions of members, of class members,

18   these are folks who own automobiles or purchased wire harness

19   systems as replacement products, so the expenses associated

20   with notice are extremely costly, and to have to go through

21   that multiple times would be, we think, a disservice to the

22   class.  So I can't make the same representation that we would

23   move to disseminate notice in a couple of months.  I think it

24   would serve the class better if we waited.

25         We announced at the last status conference we have

1    two additional settlements, we hope to have more, so, I mean,

2    obviously it is in everybody's interest to resolve this as

3    soon as possible but we have negotiated with defendants, they

4    have agreed to permit us to defer notice and we think it is

5    in the best interest of the class to do that.

6              THE COURT:  All right.  The amount of your

7    settlement?

8              MR. REISS:  The amount of the settlement -- again,

9    it is with both Lear Corporation and Kyungshin-Lear, it is

10   $3.04 million from Lear and $228,000 from Kyungshin-Lear.

11             THE COURT:  Okay.

12             MR. REISS:  Unless Your Honor has any other

13   questions?

14             THE COURT:  No.

15             MR. REISS:  Thank you.

16             THE COURT:  Lear or Kyungshin-Lear, do you want to

17   make any comment?

18             MR. MAROVITZ:  Nothing further from Lear, Your

19   Honor.

20             MR. SANDERS:  Nothing further from Kyungshin-Lear.

21             THE COURT:  Very good.  The Court, again, based on

22   everything that has been said before, will incorporate that

23   as to the reasonableness of the settlement and the class and

24   the reasons for our class, and I approve the proposed

25   settlement and the class provisionally.  We have the same

1    counsel, so we have counsel.  And the proceedings against

2    Lear and KL are stayed pursuant to the settlement agreement.

3    And the notice, I agree there is going to be such a large

4    class that it doesn't make any sense to do the notice at this

5    time.  I don't see anything legally that provides, at least

6    that I could find in class, that says we have to do it now.

7    Is there any stumbling block anybody sees?

8             MR. REISS:  Your Honor, there is case law actually

9    and if you want we can provide that to you that actually

10   stands for the proposition that notice can, in fact, be

11   deferred.

12            THE COURT:  No, I have seen it.  Thank you very

13   much.  Okay.

14            All right.  Then we will go to the occupant safety,

15   plaintiff for direct.

16            MR. KANNER:  Good morning, Your Honor, Steve Kanner

17   on behalf of the direct-purchaser plaintiffs.

18            At this latter part of the hearing I have the

19   privilege of asking Your Honor to make a preliminary

20   determination as you did with the previous two cases with

21   respect to a settlement with AutoLiv in the occupant safety

22   case finding that it is fair, reasonable and adequate, that

23   it was negotiated by competent counsel, is sufficiently

24   within the range of reasonableness to justify providing

25   notice, and that a finding on your part that the

1       prerequisites for a class action have been met leading to

2       provisional certification.

3               A bit of history.  The first of the

4       direct-purchaser complaints was filed in OSS in 2012, a

5       consolidated-amended complaint filed in 2013, a second

6       consolidated-amended complaint which expanded the class which

7       now runs from 2003 through 2012 -- I'm sorry, 2011.

8               The settlement with AutoLiv was announced before

9       Your Honor on May 30th, 2014.  I'm not going to repeat what's

10      in the motion and the briefs, but we do detail the history of

11      litigation including a description of the extensive

12      arm's-length negotiation with AutoLiv, we set forth the

13      standards for approval, and cite to a very significant recent

14      opinion in this district, that was the instrument panel

15      cluster determination.

16              THE COURT:  Very recent.

17              MR. KANNER:  A very lauded decision.  In any event,

18      we believe that preliminary approval is necessary, is

19      appropriate and seek that Your Honor would make that

20      determination.  It is the first step in a two-step process,

21      of course, which would authorize the issuance of the

22      preliminary notice.

23              As set forth in the material we submitted to the

24      Court, the class will receive $40 million, which has already

25      been transferred to an escrow account, and depending upon

1    participation by class members that amount may be reduced to

2    a fixed amount but no less than $24 million.

3            For reference, AutoLiv paid a fine of $14

4    and-a-half million in connection with the guilty plea.

5            I would remind this Court that while it is a

6    significant settlement, it is an icebreaker settlement with

7    respect to this particular case, so we are -- we think that's

8    a significant factor.

9            The cooperation component with this particular

10   defendant in this particular settlement is also very

11   significant; it involves a detailed proffer by counsel for

12   AutoLiv discussing the specific allegations of the complaint

13   and the specific references to their guilty plea includes

14   interviews with those that were involved in the investigation

15   and, in fact, with the individual who is currently

16   incarcerated.  It also includes AutoLiv's production of

17   relevant documents including those which were produced to

18   enforcement agencies, and it provides access to multiple

19   witnesses from AutoLiv for both interviews and as deponents

20   and at trial, so we think there is significant value in that

21   sense.

22           I would also notice that Exhibit B -- or note to

23   the Court that Exhibit B to the materials that we presented

24   advises the Court of the material issues with respect to the

25   settlement agreement and seeks the Court's permission to

 1    authorize counsel to use up to $1 million from the settlement

 2    to cover litigation expenses.  Co-counsel have decided not to

 3    seek fees at this time with respect to the AutoLiv

 4    settlement.

 5           Now, with respect to the scheduling, there is an

 6    issue which the Court needs to focus on, and that would be a

 7    stipulated agreement which we filed I believe last Wednesday,

 8    the 26th of June, which relates to a stipulation with

 9    defendants to produce their customer lists.  We would urge

10    the Court to enter that stipulated order today, and the

11    rationale, of course, is because it provides that the

12    defendants, not including AutoLiv, which has its own

13    independent production of the customer lists to us, but the

14    other defendants would need to produce that material within

15    45 days, and that has a lot of influence on our calendar in

16    terms of when we can send out notice.

17           If, in fact, we -- Your Honor issues that order

18    today, we will have that information, the customer lists, by

19    August 15th, and that would allow us to send out summary

20    notice, mail notice, by August 29th.  Publication notice

21    could therefore be made on September 8th in the Wall Street

22    Journal print edition, and we've taken the extra step of

23    publishing it in the Automotive News electronic edition,

24    that's a weekly publication that issues on Monday.  So we are

25    trying to locate -- or lock those into both the print and the

1    electronic notifications on Monday.

2           Based on that calendar, it would allow a motion for

3    final approval and request for payment of litigation expenses

4    I described to be filed on October 17th, and we would mark

5    October 30th as the date by which objections or requests for

6    exclusion must be postmarked.  That is, I believe, 61 days

7    after the notice.

8           And as Mr. Spector indicated earlier, if all of

9    those parts of the puzzle fall into place, we can have the

10   hearing the first or second week of December certainly as

11   appropriate for the Judge's calendar.

12          THE COURT:  Okay.

13          MR. KANNER:  And that allows us to have a little

14   judicial economy with respect to both final approval hearings

15   on the same day.

16          THE COURT:  All right.

17          MR. KANNER:  If there are any questions I would be

18   happy to answer them, Your Honor?

19          THE COURT:  No, and in terms of the order that you

20   submitted, I have it on my desk, I talked about it with my

21   staff, and after this hearing it will be entered.

22          MR. KANNER:  Thank you very much, Your Honor.  In

23   that case, the calendar that I articulated would hold.

24          THE COURT:  Yes, it should be okay.  I don't --

25          MR. KANNER:  It should be fine.

```
 1          THE COURT:  -- foresee any problems with it right
 2   now.
 3          MR. KANNER:  We are well within -- because notice
 4   has already been sent out for counsel for AutoLiv with
 5   respect to CAFA, and we are well within those limits too.
 6          THE COURT:  Okay.
 7          MR. KANNER:  Thank you very much, Your Honor.
 8          THE COURT:  Defense?
 9          MR. KONTIO:  Peter Kontio for the Defendant,
10   AutoLiv, Your Honor.
11          I have nothing to add and will continue to say
12   that, I hope, through the rest of the hearing.
13          THE COURT:  Thank you, Mr. Kontio.  Okay.
14          This is the first one of our occupant safety
15   matters, and it is a settlement with the direct-purchaser
16   plaintiffs, and the Court, again, just briefly will state
17   that certainly here the Court will do a preliminary approval
18   of the settlement.  And in terms of notice, the Court will
19   approve the notice that has been put out so far in terms of
20   the procedure.  Certainly at this stage there is no necessity
21   to determine extent -- to delve extensively into the merits,
22   but we know that 6th Circuit favors settlements and this is,
23   as was indicated, an icebreaker settlement for this part and
24   these parties, so hopefully it will lead to other
25   settlements.  The settlement amount being $40 million, as I
```

1    understand it, unless certain things occur that reduces that

2    to $24 million I believe, and no less than that.

3            Again, the Court looks at this as being one that is

4    fair, that there is competent counsel who have negotiated

5    this arm's-length negotiation, that it is reasonable, the

6    amount, and including the cooperation agreement, which I

7    think is significant, I believe makes this a fair and

8    reasonable settlement.

9            The Court approves the timetable, and with the

10   signing of these orders today that should be good and

11   hopefully will be able to be resolved finally in December

12   with the hearing.

13           The Court, of course, finds that all of the factors

14   in the class necessities are met, and the Court also approves

15   because of the numerosity, commonality, the typicality, and

16   I'm not going into all of the details in those as have

17   already been explained, and the adequacy of the

18   representation clearly the class method is the superior

19   method to resolve this.

20           I believe the final thing is the $1 million that is

21   asked for expenses from plaintiffs' counsel, and the Court

22   will approve the $1 million to be taken out for expenses,

23   again, noting that this is not for attorney fees at this

24   point.

25           I think I've hit all of the points on that.  Is

1    there anything else?

2         MR. KANNER:  Your Honor, I did neglect to mention,

3    and I apologize, we will be submitting a similar amendment to

4    the settlement agreement -- actually to the escrow agreement.

5         THE COURT:  That was mentioned before?

6         MR. KANNER:  As was mentioned with Lear because it

7    provides, as Mr. Spector indicates, the interest rates on

8    T bills are essentially flat, and this provides --

9         THE COURT:  Even on these millions of dollars, huh?

10   So I shouldn't worry too much about mine?

11        MR. KANNER:  This provides with an additional 15 or

12   so basis points that will benefit the class, particularly on

13   a settlement of this size, so we'll be submitting that as

14   soon as possible, Your Honor.

15        THE COURT:  Good.

16        MR. KANNER:  Thank you, Your Honor.

17        THE COURT:  So the Court then does grant the

18   preliminary approval of the settlement, authorizes the

19   dissemination of the notice and will adopt the schedule and

20   will hopefully schedule the hearing in December.  Okay.

21        Let me go on then, if I could find my papers, to

22   the auto dealer plaintiffs.

23        MR. RAITER:  Thank you, Your Honor.  Shawn Raiter,

24   again, on behalf of the auto dealers.

25        The settlement with AutoLiv is a $6 million cash

1    guaranteed payment.  Cooperation terms are basically the same

2    as those with the directs and end payors.  Again, this

3    applies to OSS or occupant safety systems.  We, again,

4    request that the Court allow us to come later and request a

5    notice program and a notice be approved as we discussed with

6    respect to the Lear and KL Sales settlement.

7                With that, Your Honor, I don't have anything

8    further to add unless you have questions?

9                THE COURT:  Okay.

10               MR. RAITER:  Thank you.

11               THE COURT:  Defendant?

12               MR. KONTIO:  Nothing to add, Your Honor.

13               THE COURT:  Okay.  Thank you.  You would be a very

14   good speechmaker, wouldn't you?

15               All right.  The Court again adopts the previous

16   statements regarding the reasonableness of the settlement and

17   the need for class action, and I would also here approve

18   the -- preliminarily approve the proposed settlement and

19   provisionally certify the class, appoints the dealership

20   plaintiffs as representatives -- I didn't say this before but

21   the stay is automatic in all of these, and authorize

22   settlement counsel to defer notice to a later date, hopefully

23   not real late, but to a later date.

24               All right.  Then the last one is the occupant

25   safety end payors.

1    MR. REISS:  Best for last, Your Honor.  I find

2  myself again having very little to add.  The end-payors

3  settlement is for $19 million.  Again, the cooperation

4  provisions are similar, it is an icebreaker settlement as we

5  have discussed.  And then similar to the settlement with

6  Kyungshin-Lear and Lear Corporation, we are seeking to defer

7  notice for the reasons that I mentioned.

8    THE COURT:  Okay.

9    MR. KONTIO:  Nothing to add, Your Honor.

10    THE COURT:  Thank you.  I think I'm going to say I

11  have nothing to add, I incorporate everything I said before.

12  With that, the Court does preliminarily approve the

13  settlement, the class and stay the proceeding.  I will stay

14  that notice and we will see what happens later.

15    How -- what are we talking about in terms of notice

16  for the end-payor class?  Are you looking to -- I'm just

17  curious, the end resolution of this case?

18    MR. REISS:  Not necessarily.  To be honest with

19  you, Your Honor, we are exploring it right now.  I think it

20  depends in part on the settlements that we obtain.  You know,

21  at some point there may be a number that makes it worthwhile

22  for us to do that but it has to be a significant number that

23  justifies the expense that we are going to employ, but maybe

24  we can think about it and come back with a proposal, but at

25  this point we just need a critical mass and we don't have

1    that yet.

2              THE COURT:  Okay.

3              MR. MAROVITZ:  Judge, if I may?

4              THE COURT:  Yes.

5              MR. MAROVITZ:  Andy Marovitz for Lear.

6         What Mr. Reiss said is exactly right.  We had also,

7    at least for Lear, reserved our right to come back to the

8    Court at some point if we thought too much time had passed,

9    but we recognize the difficulties involved in notice for the

10   end payors and so we worked with them to reach the resolution

11   that we did for now.  We are hopping that they can package

12   together enough settlements to make it financially attractive

13   and viable for them to give notice, but I just wanted to make

14   clear that at some point if we think that too much time has

15   passed we will come to the Court and make an appropriate

16   motion, but we hope that obviously that would never be

17   necessary.

18             THE COURT:  Okay.  Just think how lucky we are that

19   we are in this electronic age versus back when I started.  I

20   don't even know what you'd do.  Okay.  Is there anything

21   else?

22             MR. MAROVITZ:  Judge, just one other small thing.

23   Would it be possible to set a date for the December final

24   approval hearing for the directs for Lear and I guess for

25   AutoLiv as well as long as we are here?

1      THE COURT:  Sure.  Let me just take a look at that

2  calendar.  We will do it an afternoon.  Why don't you give me

3  possible suggestions that you would like and I will see if I

4  can do it.  Anybody else?

5      MR. KANNER:  The 3rd of December, Your Honor?

6      THE COURT:  The 3rd of December?  Okay.  The 3rd of

7  December at 2:00?

8      MR. KANNER:  Would that give the Court sufficient

9  time to do both hearings?  I would imagine.

10      THE COURT:  Well, I guess it depends.

11      MR. KANNER:  Well --

12      THE COURT:  It depends.

13      MR. KANNER:  That was my point.

14      THE COURT:  Yes.  I could move that up to 1:00 and

15  that gives us an extra hour.

16      MR. KANNER:  Your Honor, I think that makes -- it

17  is prudent to provide time in the event that other parties

18  wish to be heard, and then it might not have enough time to

19  do both hearings.

20      THE COURT:  I mean, it could be, it could be that

21  we wouldn't have enough time anyway, we don't know this.

22      MR. KANNER:  That's my point, Your Honor, so 1:00 I

23  think makes sense.

24      THE COURT:  Okay.  Let's do it then December 3rd at

25  1:00.  Was there something else?

1        MR. REISS:  Your Honor, I am not sure this is the

2   appropriate venue to raise this, but as you know the

3   end payors and the dealers filed ten consolidated-amendment

4   complaints based on the last status conference, these are the

5   cases that you referenced would be the next tranche of cases,

6   and we are negotiating with certain defendants for a briefing

7   schedule.  Just to inquire, we haven't reached any agreement,

8   but the potential availability of the Court may be the same

9   day as you are going to be hearing final approval on

10  December 3rd, if we try to use it as a potential date to

11  schedule a hearing on that.

12        THE COURT:  I don't have any problem with it, if we

13  can fit it in I would be delighted to do it.

14        MR. REISS:  Okay.

15        THE COURT:  If we couldn't --

16        MR. REISS:  This all, of course, is subject to

17  agreement with the defendants, but the idea would be to try,

18  as you expressed in the last hearing, to try to get this

19  heard in December, and we just want to see if the Court has

20  availability in December.

21        THE COURT:  I mean, I have the availability now to

22  schedule things, I have a big trial in December but it is

23  1:00 to 9:00, so I can do it in the afternoon.  Do you want

24  it the same day you think for travel purposes?

25        MR. REISS:  Again, I would have to talk to

1    defendants, I don't want to speak out of turn, but I just

2    wanted while we were here to get an idea of the Court's

3    availability to potentially propose that date.

4          THE COURT:  Yes, and I have no problem with doing

5    it the same day if we can fit it in.  Obviously these

6    hearings will -- the settlement hearings take precedence over

7    anything else.

8          MR. REISS:  Understood.

9          THE COURT:  Okay.  Anything else?

10         (No response.)

11         THE COURT:  Okay.  Thank you very much.  We

12    appreciate it.

13         THE CASE MANAGER:  Court is adjourned.

14         (Proceedings concluded at 11:46 a.m.)

15                        _    _    _

16

17

18

19

20

21

22

23

24

25

1            *CERTIFICATION*

2

3            I, Robert L. Smith, Official Court Reporter of

4    the United States District Court, Eastern District of

5    Michigan, appointed pursuant to the provisions of Title 28,

6    United States Code, Section 753, do hereby certify that the

7    foregoing pages comprise a full, true and correct transcript

8    taken in the matter of In Re:  Automotive Parts Antitrust

9    Litigation, Case No. 12-02311, on Tuesday, July 1, 2014.

10

11

12                        *s/Robert L. Smith*
                         Robert L. Smith, RPR, CSR 5098
13                       Federal Official Court Reporter
                         United States District Court
14                       Eastern District of Michigan

15

16

17   Date:  07/16/2014

18   Detroit, Michigan

19

20

21

22

23

24

25