# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311<br>Honorable Marianne O. Battani |
| In Re: Bearings | Case No. 2:12-cv-00500 |
| This Document Relates to:<br>All Cases | |

## BEARINGS DEFENDANTS' OPPOSITION TO CERTAIN PLAINTIFFS' MOTION FOR UNIFORM DEPOSITION PROTOCOL ORDER

## **STATEMENT OF THE ISSUE PRESENTED**

1. Whether the Special Master should order entry of a uniform deposition protocol that would govern thirty of the thirty-one product tracks and all future cases coordinated as part of this MDL when there exists no demonstrable reason for imposing a uniform protocol and the parties in other parts cases have thus far been able to negotiate similar protocols that are adapted to particular factual circumstances existing in each case.

   Answer: No

# INTRODUCTION

End-Payor Plaintiffs and Direct Purchaser Plaintiffs ("Moving Plaintiffs") are again attempting to take a one-size-fits-all approach to discovery in the separate and distinct cases they filed that comprise thirty of the thirty-one part tracks in this MDL.[1] Although they assert that their request for a global deposition protocol is made in the name of efficiency, Moving Plaintiffs cannot hide from the fact that each case presents distinct discovery issues that cannot be effectively addressed in a single order. In fact, Moving Plaintiffs' approach would require the parties to make "footnoted" modifications to many provisions or to make multiple motions to the Special Master to address the different circumstances in each case. This result is anything but efficient. The Special Master reached this same conclusion last week in denying Plaintiffs' request for global discovery orders governing ESI, experts, and preservation:

> Having…Global Orders that each contain 20 pages of footnotes or appendixes would be much harder to negotiate and much harder to work with on a going forward basis in this Multidistrict Litigation than having a set of…Global Orders entered in each class of cases specifying and addressing the distinct issues and characteristics of that class of case that sets it apart from all other classes of cases.

Special Master's Order Denying Plaintiffs' Motion for Submission of Global Orders at 3-4 (*In re Automotive Lamps*, 13-cv-01200, Dkt. 44) ("Order"). The same rationale applies to the instant Motion. Accordingly, it should be denied.

The Bearings cases well illustrate that the relief sought in Moving Plaintiffs' Motion is unnecessary. And the Bearings Defendants[2] are willing—as they have done with discovery

---

[1] Plaintiffs concede that the Wire Harness track should remain subject to an individual protocol, negotiated with the individual Wire Harness defendants, that accounts for unique discovery issues presented in the Wire Harness cases. *See* Pls.' Br. at 9.

[2] The Bearings Defendants are Nachi-Fujikoshi Corp. and Nachi America, Inc.; JTEKT Corp. and JTEKT North America Corp.; SKF USA Inc. (only in Case Nos. 2:12-cv-00502 and 2:12-cv-00503); NTN Corp. and NTN USA Corp.; NSK Ltd. and NSK Americas, Inc.; and Schaeffler Group USA Inc.

1

orders in the past—to negotiate a stipulated order with Moving Plaintiffs based at least in part on the Wire Harness order.  In fact, had Moving Plaintiffs conferred with the Bearings Defendants before they filed their motion, as required by E.D. Mich. L.R. 7.1(f), the parties likely would have been able to come to an agreement on the terms of a Bearings deposition protocol.  Instead, Moving Plaintiffs have caused the precise inefficiency they claim to abhor by circumventing their meet and confer obligations.  For these reasons, the Bearings Defendants respectfully request that the Special Master deny Moving Plaintiffs' request for a uniform deposition protocol.

## ARGUMENT

### I. A ONE-SIZE-FITS-ALL DEPOSITION PROTOCOL IS NOT APPROPRIATE FOR THE SEPARATE AND DISTINCT CASES PLAINTIFFS HAVE FILED.

Moving Plaintiffs' proposed deposition protocol ignores the differences between the Bearings cases and other tracks.  Despite Moving Plaintiffs' attempts to tie the various cases they have filed together based on an "overlap in factual issues, parties, and claims," Pls.' Br. at 10, these are "*separate* and distinct cases," Order at 2.  None of the allegations made against the Bearings Defendants reference another part.  And to the best of the Bearings Defendants' knowledge, none of the allegations in the other parts cases reference bearings.  There is simply no need to bog down discovery in the Bearings case by requiring that all depositions in Bearings be coordinated with all defendants in all other cases within the MDL.[3]

---

[3] *See, e.g.,* Proposed Uniform Protocol at IV.A. (requiring notice to all parties in all parts cases); *id*. at IV.C. (permitting any defendant from any track to participate in a deposition noticed by a Bearings Defendant); *id.* at IV.G. (requiring maintenance of a deposition schedule covering all depositions in all tracks).  The requirement that any defendant from any parts case is allowed to sit in on a deposition noticed by another defendant in any parts case is unnecessary.  The parties in the Wire Harness cases, in fact, negotiated a more specifically tailored mechanism to allow for coordination of depositions where a witness receives a notice in multiple cases.  *See* Stipulation

2

Moving Plaintiffs' proposed protocol is based on the protocol in Wire Harness, a protocol that was the subject of "much compromise, [and] discussion…unique to" the Wire Harness cases. Although this may be a good starting point for negotiations regarding a protocol in Bearings, it does not address the unique issues in the Bearings cases. For example, there is no reason to think that it is reasonable to let plaintiffs take 15 depositions and 21 hours of 30(b)(6) depositions for each defendant group. Even the Wire Harness protocol had exceptions, with plaintiffs agreeing to take only 7 depositions of Leoni. *See* Stipulation and Order Regarding Deposition Protocol at III.A.1 (*In re Wire Harness Cases,* 12-cv-00100, Dkt. 269). The same individual negotiations would be required in the Bearings cases, where some defendant groups consist of more defendants than others and some defendants are named in some class cases and not others.

The same is true of the deposition locations, which should be negotiated based on the specific location of deponents in each case. *See* Proposed Uniform Deposition Protocol at IV.B. (setting specific cities inside and outside the United States where a majority of the depositions are to take place). In fact, the parties in the Bearings case (including Moving Plaintiffs) had already submitted their proposed discovery plans to the Court, which provided that depositions would take place "in the deponent's country of residence (or state of residence if inside the United States)"—a provision different from Moving Plaintiffs' current proposal. *See* Joint Memorandum of Plaintiffs and Defendants Regarding Discovery Submissions, Exhibit 6 at ¶¶ 6-7 (*In re Bearings*, 12-cv-00500, Dkt. 82). These examples show that Moving Plaintiffs' proposed uniform protocol is hopelessly flawed because it fails to account for the unique circumstances of the separate and distinct cases plaintiffs have filed.

---

and Order Regarding Deposition Protocol at IV.H (*In re Wire Harness Cases*, 12-cv-00100, Dkt. 269).

The proposed global protocol also limits all defendants in thirty parts cases to a total of three depositions and 18 hours of 30(b)(6) deposition testimony from Direct Purchaser Plaintiffs. Proposed Uniform Protocol at III.A.4. and V.B. Moving Plaintiffs have offered no reason to suggest why all auto parts defendants should be forced to share 3 depositions and 18 hours of 30(b)(6) depositions for each Direct Purchaser Plaintiff. Unlike the Auto Dealer and End Payors Plaintiffs, the Direct Purchaser Plaintiffs each allegedly purchased different products from different defendants. The prejudice to defendants under such a framework is clear. For example, if Direct Purchaser Plaintiffs are parties to three existing parts cases (which may be a conservative estimate), each part case would get only a single deposition and 6 hours of 30(b)(6) testimony if divided evenly, despite the fact that the depositions in different parts cases relate to completely different purchases. There is no reason to believe that the proposed time—which becomes even less per case if a Direct Purchaser Plaintiff joins other part cases or files new ones—is a reasonable limitation. Furthermore, even if all of the specified time were devoted to Bearings issues (an exceedingly remote possibility), there is no reason to assume that three is even the appropriate number of depositions or 18 hours the appropriate amount of time to address those issues. . The appropriate number of depositions will depend, for example, on the number of Direct Purchaser Plaintiffs' employees involved in the procurement of the various types of automotive bearings.

More fundamentally, artificially restricting the Bearings Defendants' ability to defend themselves by limiting the number and duration of Direct Purchaser Plaintiff depositions in this manner would deny Bearings Defendants the constitutional due process guarantee of a "full and fair opportunity to litigate" their case. *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008); *see also Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) ("In almost every setting where important decisions

4

turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."). Courts have an obligation to give the parties sufficient time to depose witnesses. *See Dow Chemical Co. v. Reinhard,* No. 07-12012-BC, 2008 WL 1735295, at *3 (E.D. Mich. Apr. 14, 2008 ("[T]he Court has an obligation to permit additional time, if the circumstances require that a fair examination of the deponent run longer."). Here, the Bearings Defendants' due process rights to put on an adequate defense might be compromised not only by the arbitrary time and number limits specified in the Moving Plaintiffs' proposal, but by the potential conflicts among automotive parts defense counsel to allocate the limited time provided for the depositions. Simply put, the Bearings Defendants' substantive rights should not be denied because of the number of entirely separate litigations that plaintiffs have brought against other defendants, involving other automotive parts.

Thus, to permit the Bearings Defendants to fully and fairly defend themselves, the provisions of any deposition protocol—including the number of depositions and duration of depositions of Direct Purchaser Plaintiffs—must reflect the factual circumstances of the Bearings cases and afford the Bearings Defendants a full and fair opportunity to defend against plaintiffs' respective claims. Moving Plaintiffs' proposed global order does not provide that opportunity. For this reason as well, the Special Master should deny Moving Plaintiffs' Motion.

## II. THE PARTIES CAN NEGOTIATE A BEARINGS DEPOSITION PROTOCOL JUST AS THEY HAVE NEGOTIATED OTHER BEARINGS DISCOVERY ORDERS.

Moving Plaintiffs essentially concede that there will be unique circumstances that need to be addressed in each parts by providing a provision to modify the order. But their solution— providing for after-the-fact negotiations or requiring the parties to move for modification "upon a showing of good cause," Proposed Uniform Order at XII—is more inefficient than simply having the parties negotiate a case-specific protocol in the first place. As practical matter, having a

5

global order with "20 pages of footnotes or appendixes would be much harder to negotiate and much harder to work with on a going forward basis in this Multidistrict Litigation than having [an order] entered in each class of cases specifying and addressing the distinct issues and characteristics of that class of case that sets it apart from all other classes of cases." Order at 3-4. And there is nothing burdensome or inefficient about negotiating a track-specific order. The parties have shown themselves capable of doing so time and time again. In the Bearings track alone there are already four discovery orders in place that were negotiated amongst and stipulated to by the parties.[4] As such, it is almost certainly the case that had Moving Plaintiffs followed that procedure and not flouted their Rule 7.1(f) obligations, the parties likely would have been able to come to an agreement on the terms of a Bearings deposition protocol, using the Wire Harness protocol as a starting point, without the need for motion practice.

## CONCLUSION

Moving Plaintiffs' proposed uniform deposition protocol does not resolve the case-specific discovery issues that exist in the various parts' cases, including Bearings. Instead, it merely creates an inefficient means of addressing those differences. As with prior discovery orders, the most efficient means of addressing them is to allow the parties to negotiated parts' specific orders that incorporate the unique circumstances of those cases. For the foregoing reasons, the Bearings Defendants respectfully request that the Special Master deny Plaintiffs' Motion for Uniform Deposition Protocol.

---

[4] *See* Stipulation and Protective Order Governing the Production and Exchange of Confidential Information (*In re Bearings Cases,* 12-cv-00500-MOB-MKM, Dkt. 85); Stipulation and Order Regarding Non-Discoverability of Certain Expert Materials and Communications (*id.* at Dkt. 86); Stipulation and Order Regarding Production of Electronically Stored Information and Hard Copy Documents (*id.* at Dkt. 87); Stipulated Agreement and Order Regarding Preservation of Documents, Electronically Stored Information, and other Tangible Items (*id.* at Dkt. 118).

Dated: July 24, 2015                               Respectfully submitted,

                                                **REED SMITH LLP**
Debra H. Dermody
Michelle Mantine
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222-2716
(412) 288-3302
(412) 288-3063 (facsimile)
ddermody@reedsmith.com
mmantine@reedsmith.com

**DYKEMA GOSSETT PLLC**
/s/ Howard B. Iwrey
Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48304
(248) 203-0700
hiwrey@dykema.com
bmoore@dykema.com

*Attorneys for Defendant SKF USA Inc.*
*(in actions 2:13-cv-00502 and -00503)*

**WINSTON & STRAWN LLP**
/s/ Jeffrey J. Amato
A. Paul Victor
Jeffrey L. Kessler
Jeffrey J. Amato
Molly M. Donovan
Elizabeth A. Cate
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
pvictor@winston.com
jkessler@winston.com
mmdonovan@winston.com
jamato@winston.com
ecate@winston.com

**KERR, RUSSELL AND WEBER, PLC**
Fred K. Herrmann (P49519)
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Tel. (313) 961-0200
fherrmann@kerr-russell.com

*Attorneys for Defendants NTN Corporation*
*and NTN USA Corporation*

7

**LANE POWELL PC**
/s/ Kenneth R. Davis II
Craig D. Bachman
Kenneth R. Davis II
Darin M. Sands
Masayuki Yamaguchi
601 SW Second Avenue, Suite 2100
Portland, OR 97204-3158
Telephone: 503.778.2100
bachmanc@lanepowell.com
davisk@lanepowell.com
sandsd@lanepowell.com
yamaguchim@lanepowell.com

**LANE POWELL PC**
Larry S. Gangnes
Ryan McBride
1420 Fifth Avenue, Suite 4100
P.O. Box 91302 Seattle, WA 98111-9402
Telephone: 206.223.7000
gangnesl@lanepowell.com
mcbrider@lanepowell.com

**KEMP KLEIN LAW FIRM**
Richard D. Bisio (P30246)
Ronald S. Nixon (P57117)
201 W. Big Beaver, Suite 600
Troy, MI 48084
Telephone: 248.528.1111
richard.bisio@kkue.com
ron.nixon@kkue.com

*Attorneys for Defendants Nachi-Fujikoshi Corp. and Nachi America, Inc.*

**SHEARMAN & STERLING LLP**
/s/ Heather L. Kafele
Heather L. Kafele
Keith R. Palfin
801 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20004
(202) 508-8097
(202) 508-8100 (facsimile)
heather.kafele@shearman.com
keith.palfin@shearman.com

**PAESANO AKKASHIAN, PC**
Brian M. Akkashian
132 N. Old Woodward Avenue
Birmingham, MI 48009
(248) 792-6886
bakkashian@paesanoakkashian.com

*Attorneys for Defendants JTEKT*

8

*Corporation and JTEKT North America Corp. (formerly d/b/a Koyo Corporation of U.S.A.)*

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
/s/ Jeremy J. Calsyn
Jeremy J. Calsyn
Teale Toweill
2000 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 974-1522
(202) 974-1587
jcalsyn@cgsh.com
ttoweill@cgsh.com

**HONIGMAN, MILLER, SCHWARTZ AND COHN LLP**
David A. Ettinger
660 Woodward Avenue Suite 2290
Detroit, MI 48226-3506
(313) 465-7368
dettinger@honigman.com

*Attorneys for Defendants NSK Ltd. and NSK Americas, Inc.*

**WILMER CUTLER PICKERING HALE AND DORR LLP**
/s/ Eric J. Mahr
Eric J. Mahr
Stacy E. Frazier
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6446
eric.mahr@wilmerhale.com
stacy.frazier@wilmerhale.com

*Attorneys for Defendant Schaeffler Group USA Inc.*

9

**CERTIFICATE OF SERVICE**

    I hereby certify that on July 24, 2015, I caused the foregoing Bearings Defendants' Opposition to Plaintiffs' Motion for Uniform Deposition Protocol Order to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notifications of such filings to all counsel of record.

By:   /s/ Howard B. Iwrey
        Howard B. Iwrey
        DYKEMA GOSSETT PLLC
        39577 Woodward Avenue, Suite 300
        Bloomfield Hills, MI 48304
        (248) 203-0700
        hiwrey@dykema.com