REDACTED

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | ) ) ) | Master File NO. 12-md-02311 |
| In Re: WIRE HARNESS SYSTEMS | ) ) ) | Honorable Marianne O. Battani |
| THIS DOCUMENT RELATED TO: | ) ) | 2:12-cv-00101-MOB-MKM |
| All Direct Purchaser Actions | ) ) ) ) | JURY TRIAL DEMANDED **[FILED UNDER SEAL - HIGHLY CONFIDENTIAL]** |

## ANSWER AND AFFIRMATIVE DEFENSES OF CHIYODA MANUFACTURING CORPORATION TO DIRECT PURCHASER PLAINTIFFS' THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

Pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure, Defendant Chiyoda Manufacturing Corporation ("Chiyoda") by and through its attorneys, hereby answers and submits affirmative defenses to the Direct Purchaser Plaintiffs' Third Consolidated Amended Class Action Complaint ("Complaint") as set forth below.

Chiyoda denies the allegations in the Complaint except as specifically admitted, denies any allegations as to which there is no specific response, denies all titles, headings, footnotes, subheadings, and any other material not contained in numbered paragraphs, and denies that it violated the antitrust laws in any way. Chiyoda further states that this Answer is solely on behalf of Chiyoda and Chiyoda is answering allegations only as to them. Chiyoda lacks knowledge or information to form a belief about the truth of the allegations in the Complaint that are directed toward other defendants and on that basis denies all such allegations.

REDACTED

## RESPONSES TO ALLEGATIONS OF THE COMPLAINT

1.     Plaintiffs, individually and on behalf of the Class described below, bring this class action against Defendants for damages and injunctive relief under the antitrust laws of the United States on behalf of direct purchasers who, during the Class Period, purchased Wire Harness Products, as defined below, in the United States from one or more of the Defendants. Defendants are manufacturers or sellers of Wire Harness Products that are manufactured or sold in the United States.

**ANSWER:**     Chiyoda admits that Plaintiffs purport to bring this lawsuit as a proposed class action against the Defendants named in the Complaint, but denies that this action may be maintained as a class action and denies all other allegations in this Paragraph.

2.     Plaintiffs allege that Defendants conspired to rig bids for, and to raise fix, maintain, or stabilize the prices of, Wire Harness Products sold in the United States from at least as early as January 1, 2000 until at least February 28, 2010 in violation of Section 1 of the Sherman Act. Plaintiffs further allege that Defendants fraudulently concealed their conspiracy.

**ANSWER:**     Chiyoda admits that Plaintiffs purport to allege various charges against the named Defendants in the Complaint, but denies all other allegations in this Complaint.

3.     As a result of Defendants' unlawful conduct, Plaintiffs and members of the Class paid higher prices for Wire Harness Products than they would have paid in a competitive market.

**ANSWER:**     Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

4.     Plaintiffs bring this action to obtain injunctive relief and to recover damages, including treble damages, costs of suit and reasonable attorneys' fees, as a result of Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

**ANSWER:**     Chiyoda admits that this Paragraph consists of Plaintiffs' characterizations of their purported claims. Chiyoda denies Plaintiffs have stated a claim or are entitled to any relief under

REDACTED

Section 1 of the Sherman Act (15 U.S.C. § 1) and denies all other allegations in this Paragraph in all other respects.

5.      The Court has jurisdiction over the subject matter of this action pursuant to Sections 4(a) and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and 28 U.S.C. §§ 1331 and 1337. Venue is proper in this District pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b), (c) and (d) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce has been carried out in this District, and one or more of the Defendants reside in this District.

**ANSWER:**     The allegations in this Paragraph set forth conclusions of law to which no response is required.  To the extent this Paragraph is interpreted to require a response, Chiyoda admits that Plaintiffs have alleged some claims which give rise to subject matter jurisdiction. Chiyoda denies the remaining allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

6.      This Court has personal jurisdiction over each of the Defendants because each Defendant, either directly or through the ownership or control of its United States subsidiaries: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of Wire Harness Products throughout the United States, including in this District; (c) had substantial aggregate contacts with the United States as a whole, including in this District; or (d) was engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District. Defendants conduct business throughout the United States, including in this District, and they have purposefully availed themselves of the laws of the United States.

**ANSWER:**     The allegations in this Paragraph set forth conclusions of law to which no response is required.  To the extent this Paragraph is interpreted to require a response, Chiyoda does not dispute personal jurisdiction before this Court in this action.  Chiyoda denies the remaining allegations in this Paragraph to the extent those allegations are directed at Chiyoda or alleges wrongdoing by Chiyoda, and denies the remaining allegations in this Paragraph for lack

REDACTED

of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

7.      Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial and reasonably foreseeable and intended anti-competitive effects upon interstate commerce within the United States.

**ANSWER:**    The allegations in this Paragraph set forth conclusions of law to which no response is required.  To the extent this Paragraph is interpreted to require a response, Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

8.      Alternatively, there is jurisdiction over foreign Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2).

**ANSWER:**    The allegations in this Paragraph set forth conclusions of law to which no response is required.  To the extent this Paragraph is interpreted to require a response, Chiyoda does not dispute jurisdiction before this Court in this action.   Chiyoda denies the remaining allegations in this Paragraph to the extent those allegations are directed at Chiyoda or alleges wrongdoing by Chiyoda, and denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda

## DEFINITIONS

9.      The "Class Period" is from January 1, 2000 through the present.

**ANSWER:**    Chiyoda admits that this Paragraph consists only of Plaintiffs' definition of a term "Class Period," but denies that this action is appropriate for class certification.

REDACTED

10.     The term "Wire Harness Products", as used in this Complaint, refers to wire harnesses and the following related products: automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, high voltage wiring, electronic control units, fuse boxes, relay boxes, junction blocks, power distributors, and speed sensor wire assemblies used in motor vehicles.

**ANSWER:**     Chiyoda admits that this Paragraph consists of Plaintiffs' definition of a term "Wire Harness Products" created by Plaintiffs for purposes of their Complaint, but denies all remaining allegations of this Paragraph.

11.     Wire harnesses are electrical distribution systems used to direct and control electronic components, wiring, and circuit boards in motor vehicles.

**ANSWER:**     Chiyoda admits that this Paragraph describes with general accuracy certain features and components of wire harnesses.  Chiyoda denies the remaining allegations contained in this Paragraph.

12.     "Defendant" or "Defendants" as used herein, includes all of the named Defendants' predecessors during the Class Period.

**ANSWER:**     Chiyoda admits that this Paragraph consists of Plaintiffs' definition of the terms "Defendant" and "Defendants" created by Plaintiffs for purposes of their Complaint, but denies all remaining allegations of this Paragraph.

## TRADE AND COMMERCE

13.     During the Class Period each Defendant sold Wire Harness Products in the United States, in a continuous and uninterrupted flow of interstate commerce.

**ANSWER:**     Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

14.     During the Class Period, Defendants collectively controlled a majority of the market for Wire Harness Products, both globally and in the United States.

REDACTED

**ANSWER:**    Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

15.    The business activities of the Defendants substantially affected interstate trade and commerce in the United States.

**ANSWER:**    The allegations in this Paragraph set forth legal conclusions of law to which no response is required.  To the extent this Paragraph is interpreted to require a response, Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

16.    Plaintiff Mexican Industries in Michigan, Inc. by and through Timothy Miller, its Trustee in Bankruptcy ("Mexican Industries") is a Michigan corporation with its principal place of business in Detroit, Michigan. Plaintiff Mexican Industries purchased Wire Harness Products directly from one or more of the Defendants during the Class Period.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

17.    Plaintiff Paesano Connecting Systems, Inc. ("Paesano") is a Pennsylvania corporation with its principal place of business in Ridgway, Pennsylvania. Plaintiff Paesano purchased Wire Harness Products directly from one or more of the Defendants during the Class Period.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

18.    Plaintiff Craft-Co Enterprises, Inc. ("Craft-Co") is a Mississippi corporation with its principal place of business in Brandon, Mississippi. Plaintiff Craft-Co purchased Wire Harness Products directly from one or more of the Defendants during the Class Period.

REDACTED

**ANSWER:** Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

19.  Plaintiff Findlay Industries, Inc. ("Findlay") is an Ohio corporation with its principal place of business in Findlay, Ohio. Plaintiff Findlay purchased Wire Harness Products directly from one or more of the Defendants during the Class Period.

**ANSWER:** Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

20.  Plaintiff Cesar-Scott, Inc. ("Cesar-Scott") is a Texas corporation with its principal place of business in El Paso, Texas. Plaintiff Cesar-Scott purchased Wire Harness Products directly from one or more of the Defendants during the Class Period.

**ANSWER:** Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

21.  Plaintiff Martinez Manufacturing, Inc. ("Martinez") is an Illinois corporation with its principal place of business in Cary, Illinois. Plaintiff Martinez purchased Wire Harness Products directly from one or more of the Defendants during the Class Period.

**ANSWER:** Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

22.  Plaintiff South Star Corporation ("South Star") is a Virginia corporation with its principal place of business in Elliston, Virginia. Plaintiff South Star purchased Wire Harness Products directly from one or more of the Defendants during the Class Period.

**ANSWER:** Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

23.  Plaintiff ACAP, L.L.C., f/k/a Aguirre, Collins & Aikman Plastics, LLC ("ACAP") is a Michigan limited liability company with its principal place of business in the State of Michigan. ACAP purchased Wire Harnesses directly from one or more of Defendants during the Class Period.

**ANSWER:** Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

24.  Defendant Chiyoda Manufacturing Corporation is a Japanese corporation. Defendant Chiyoda Manufacturing Corporation — directly or through its subsidiaries, which it wholly

REDACTED

owned or controlled — manufactured, marketed and/or sold Wire Harness Products during the Class Period. ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

**ANSWER:**   Chiyoda admits that Chiyoda Manufacturing Corporation is a Japanese corporation.  Chiyoda admits that Chiyoda Manufacturing Corporation manufactures, markets and sells certain automotive wire harness products.  Chiyoda denies the remaining allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

25.     Defendant Denso Corporation is a Japanese corporation. Defendant Denso Corporation — directly or through its subsidiaries, which it wholly owned or controlled — manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

26.     Defendant Denso International America, Inc. is a Delaware corporation with its principal place of business in Southfield, Michigan. It is a subsidiary of and wholly owned or controlled by its parent, Denso Corporation. Defendant Denso International America, Inc. manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period. During the Class Period, its activities in the United States were under the control and direction of Denso Corporation.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

27.     Defendants Denso Corporation and Denso International America, Inc. shall collectively be referred to herein as the "Denso Defendants" or "Denso."

**ANSWER:**   Chiyoda admits that this Paragraph consists only of Plaintiffs' definition of terminology.

**REDACTED**

28.     Defendant Fujikura Ltd. is a Japanese corporation. Defendant Fujikura Ltd. — directly or through its subsidiaries, which it wholly owned or controlled — manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

**ANSWER:**     Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

29.     Defendant Fujikura Automotive America LLC is a Limited Liability Company with its principal place of business in Novi, Michigan. It is a subsidiary of and wholly owned or controlled by its parent, Fujikura Ltd. Defendant Fujikura Automotive America LLC manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period. During the Class Period, its activities in the United States were under the control and direction of Fujikura Ltd.

**ANSWER:**     Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

30.     Defendants Fujikura Ltd. and Fujikura Automotive America LLC shall collectively be referred to herein as the "Fujikura Defendants" or "Fujikura." The Furukawa Defendants

**ANSWER:**     Chiyoda admits that this Paragraph consists only of Plaintiffs' definition of terminology.

31.     Defendant Furukawa Electric Co., Ltd. is a Japanese corporation.  Defendant Furukawa Electric Co., Ltd. — directly or through its subsidiaries, which it wholly owned or controlled — manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

**ANSWER:**     Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

32.     Defendant American Furukawa, Inc. is a Delaware corporation with its principal place of business in Plymouth, Michigan. It is a subsidiary of and wholly owned or controlled by its parent, Furukawa Electric Co. Ltd. Defendant American Furukawa, Inc. manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period. During the Class Period, its activities in the United States were under the control and direction of Furukawa Electric Co., Ltd.

**ANSWER:**     Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

REDACTED

33.     Defendant Furukawa Wiring Systems America, Inc. f/k/a Furukawa Lear Corporation and Lear Furukawa Corporation is a Delaware corporation with its principal place of business in El Paso, Texas. Defendant Furukawa Wiring Systems America, Inc. is 60% owned by Furukawa Electric Co., Ltd. and 40% owned by American Furukawa, Inc. During the Class Period, Furukawa Wiring Systems America, Inc. operated as a joint venture between Lear Corporation and Furukawa Electric Co., Ltd. that manufactured, distributed or sold Wire Harness Products that were purchased throughout United States, including in this District. In June 2010, Furukawa Electric Co., Ltd. purchased all of Lear Corporation's remaining interest.

**ANSWER:**     Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

34.     Defendants Furukawa Electric Co., Ltd. American Furukawa, Inc. and Furukawa Wiring Systems America, Inc. shall collectively be referred to herein as the "Furukawa Defendants" or "Furukawa."

**ANSWER:**     Chiyoda admits that this Paragraph consists only of Plaintiffs' definition of terminology.

35.     Defendant G.S. Electech, Inc. is a Japanese corporation. Defendant G.S. Electech, Inc. — directly or through its subsidiaries, which it wholly-owned or controlled — manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

**ANSWER:**     Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

36.     Defendant G.S. Wiring Systems Inc. is an Ohio corporation with its principal place of business in Findlay, Ohio. It is a subsidiary of and wholly-owned or controlled by its parent, G.S. Electech, Inc. Defendant G.S. Wiring Systems Inc. manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period. During the Class Period, its activities in the United States were under the control and direction of G.S. Electech, Inc.

**ANSWER:**     Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

37.     Defendant G.S.W. Manufacturing Inc. is an Ohio corporation with its principal place of business in Findlay, Ohio. It is a subsidiary of and wholly-owned or controlled by its parent, G.S. Electech, Inc. Defendant G.S.W. Manufacturing Inc. manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District,

REDACTED

during the Class Period. During the Class Period, its activities in the United States were under the control and direction of G.S. Electech, Inc.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

38.   Defendants G.S. Electech, Inc, G.S. Wiring Systems Inc., and G.S.W. Manufacturing Inc. shall collectively be referred to herein as "G.S. Electech."

**ANSWER:**   Chiyoda admits that this Paragraph consists only of Plaintiffs' definition of terminology.

39.   Defendant Lear Corporation ("Lear") is a Delaware corporation with its principal place of business in Southfield, Michigan. Defendant Lear — directly or through its subsidiaries, which it wholly owned or controlled — manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

40.   Lear filed for Chapter 11 bankruptcy protection on July 7, 2009. After its emergence from Chapter 11 bankruptcy proceedings on November 9, 2009, Lear continued to sell Wire Harness Products pursuant to and as part of its participation in furtherance of the conspiracy. From and after November 2009, Lear had significant Wire Harness Products sales in the United States at supra-competitive prices. In 2010 alone, Lear had $2.56 billion in total sales in its electric power and management systems, which includes significant sales of Wire Harness Products in the United States pursuant to the conspiracy.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

41.   Defendant Mitsubishi Electric Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan. Mitsubishi Electric Corporation — directly and/or through its subsidiaries, which it wholly owned and/or controlled — manufactured, marketed and/or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

42.   Defendant Mitsubishi Electric US Holdings, Inc. is a Delaware corporation with its principal place of business in Cypress, California. It is a subsidiary of and wholly owned and/or

REDACTED

controlled by its parent, Mitsubishi Electric Corporation. Defendant Mitsubishi Electric US Holdings, Inc. — directly and/or through its subsidiaries, which it wholly owned and/or controlled — manufactured, marketed and/or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period. During the Class Period, its activities in the United States were under the control and direction of Mitsubishi Electric Corporation.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

43.     Defendant Mitsubishi Electric Automotive America, Inc. is a Delaware corporation with its principal place of business in Mason, Ohio. It is a subsidiary of and wholly owned and/or control by its parent, Mitsubishi Electric US Holdings. Mitsubishi Electric Automotive America, Inc. manufactured, marketed and/or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period. During the Class Period, its activities in the United States were under the control and direction of Mitsubishi Electric US Holdings.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

44.     Defendants Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc. shall collectively be referred to herein as "the Mitsubishi Defendants" or "Mitsubishi."

**ANSWER:**   Chiyoda admits that this Paragraph consists only of Plaintiffs' definition of terminology.

45.     Defendant Sumitomo Electric Industries, Ltd. is a Japanese corporation. Defendant Sumitomo Electric Industries, Ltd. — directly or through its subsidiaries, which it wholly owned or controlled — manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

46.     Defendant Sumitomo Wiring Systems, Ltd. is a Japanese corporation. Defendant Sumitomo Wiring Systems, Ltd. — directly or through its subsidiaries, which it wholly owned or controlled — manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

REDACTED

**ANSWER:** Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

47. Defendant Sumitomo Electric Wiring Systems, Inc. is a Delaware corporation with its principal place of business in Bowling Green, Kentucky. It is a joint venture between Defendants Sumitomo Electric Industries, Ltd. and Sumitomo Wiring Systems, Ltd. Defendant Sumitomo Electric Wiring Systems, Inc. manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period. During the Class Period, its activities in the United States were under the control and direction of Sumitomo Electric Industries, Ltd. and Sumitomo Wiring Systems, Ltd.

**ANSWER:** Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

48. Defendant K&S Wiring Systems, Inc. is a Delaware corporation with its principal place of business in La Vergne, Tennessee. It is a subsidiary of and wholly owned or controlled by its parent, Sumitomo Electric Industries, Ltd. Defendant K&S Wiring Systems, Inc. manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period. During the Class Period, its activities in the United States were under the control and direction of Sumitomo Electric Industries, Ltd.

**ANSWER:** Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

49. Defendant Sumitomo Wiring Systems (U.S.A.) Inc. is a Michigan corporation with its principal place of business in Novi, Michigan. It is a joint venture between Defendants Sumitomo Electric Industries, Ltd. and Sumitomo Wiring Systems, Ltd. Defendant Sumitomo Wiring Systems (U.S.A.) Inc. manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period. During the Class Period, its activities in the United States were under the control and direction of Sumitomo Electric Industries, Ltd. and Sumitomo Wiring Systems, Ltd.

**ANSWER:** Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

50. Defendants Sumitomo Electric Industries, Ltd., Sumitomo Wiring Systems, Ltd., Sumitomo Electric Wiring Systems, Inc., K&S Wiring Systems, Inc., and Sumitomo Wiring Systems (U.S.A.) Inc., shall collectively be referred to herein as the "Sumitomo Defendants" or "Sumitomo."

REDACTED

**ANSWER:**    Chiyoda admits that this Paragraph consists only of Plaintiffs' definition of

terminology.

51.    Defendant Yazaki Corporation is a Japanese corporation. Defendant Yazaki Corporation
— directly or through its subsidiaries, which it wholly owned or controlled — manufactured,
marketed or sold Wire Harness Products that were purchased throughout the United States,
including in this District, during the Class Period.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth.

52.    Defendant Yazaki North America, Inc. is an Illinois corporation with its principal place
of business in Canton Township, Michigan. It is a subsidiary of and wholly owned or controlled
by its parent, Yazaki Corporation. Defendant Yazaki North America Inc. manufactured,
marketed or sold Wire Harness Products that were purchased throughout the United States,
including in this District, during the Class Period. During the Class Period, its activities in the
United States were under the control and direction of Yazaki Corporation.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth.

53.    Yazaki Corporation and Yazaki North America, Inc. shall collectively be referred to
herein as the "Yazaki Defendants" or "Yazaki."

**ANSWER:**    Chiyoda admits that this Paragraph consists only of Plaintiffs' definition of

terminology.

54.    Defendant Tokai Rika Co., Ltd. is a Japanese corporation. Defendant Tokai Rika Co.,
Ltd. manufactured, marked or sold Wire Harness Products that were purchased throughout the
United States, including in this District, during the Class Period.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth.

55.    Defendant TRAM, Inc. ("TRAM") is a Michigan corporation with its principal place of
business in Plymouth, Michigan. TRAM is a wholly-owned and controlled subsidiary of
Defendant Tokai Rika Co., Ltd. Defendant TRAM manufactured, marketed or sold Wire Harness
Products that were purchased throughout the United States, including in this District, during the
Class Period. During the Class Period, its activities in the United States were under the control
and direction of Tokai Rika Co., Ltd.

REDACTED

**ANSWER:**    Chiyoda denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth.

56.    Defendants Tokai Rika Co., Ltd. and TRAM, Inc. are collectively referred to herein as
"Tokai Rika."

**ANSWER:**    Chiyoda admits that this Paragraph consists only of Plaintiffs' definition of

terminology.

57.    Various persons or firms not named as Defendants herein have participated as co-
conspirators in the violations alleged herein and have performed acts and made statements in
furtherance thereof. The Defendants are jointly and severally liable for the acts of their co-
conspirators whether named or not named as Defendants in this Complaint.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph to the extent those allegations are

directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth to the extent they are directed at

Defendants or entities other than Chiyoda.

58.    Each Defendant acted as the agent or joint venturer of or for other Defendants with
respect to the acts, violations and common course of conduct alleged by Plaintiffs.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph to the extent those allegations are

directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth to the extent they are directed at

Defendants or entities other than Chiyoda.

59.    Plaintiffs bring this action both on behalf of themselves and all others similarly situated
(the "Class") pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and (b)(3). The Class
is defined as follows:

>    All individuals and entities that purchased Wire Harness Products
>    in the United States directly from one or more Defendants or co-
>    conspirators from January 1, 2000 through the present.

REDACTED

**ANSWER:**   Chiyoda admits that this Paragraph consists of Plaintiffs' characterization of their purported claims and the putative Class.  Chiyoda denies that this action is appropriate for class certification.  Chiyoda denies the remaining allegations in this Paragraph.

60.   Plaintiffs do not know the exact number of Class members, such information being in the exclusive control of Defendants. Due to the nature of the trade and commerce involved, however, Plaintiffs believe that the Class is so numerous and geographically dispersed throughout the United States that joinder of all Class members are impracticable.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph.

61.   There are questions of law or fact common to the class:

   a.   Whether Defendants engaged in a contract, combination, or conspiracy to rig bids for, or to raise, fix, maintain, or stabilize prices of Wire Harness Products sold in the United States;

   b.   Whether Defendants agreed to allocate the supply of Wire Harness Products sold to certain direct purchasers in the United States on a model-by-model basis;

   c.   Whether Defendants' conduct caused Wire Harness Products to be sold in the United States at artificially high prices;

   d.   Whether Plaintiffs and other members of the Class were injured by Defendants' conduct, and, if so, the appropriate class-wide measure of damages for Class members; and

   e.   Whether Plaintiffs and other members of the Class are entitled to injunctive relief and, if so, the nature and extent of such relief.

**ANSWER:**   Chiyoda denies that this action is appropriate for class certification and denies all allegations in this Paragraph.

62.   These questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members.

**ANSWER:**   Chiyoda denies that this action is appropriate for class certification and denies all allegations in this Paragraph.

63.   Plaintiffs' claims are typical of the claims of the Class because Plaintiffs directly purchased Wire Harness Products from one or more of the Defendants, all Class members were damaged by the same conspiracy alleged herein, and the relief sought by Plaintiffs is common to the Class.

REDACTED

**ANSWER:**     Chiyoda denies that this action is appropriate for class certification and denies all

allegations in this Paragraph.

64.     Plaintiffs will fairly and adequately represent the interests of the Class in that Plaintiffs are direct purchasers of Wire Harness Products and have no conflict with any other members of the Class. Furthermore, Plaintiffs have retained competent counsel experienced in antitrust, class action, and other complex litigation.

**ANSWER:**     Chiyoda denies that this action is appropriate for class certification and denies all

allegations in this Paragraph.

65.     Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

**ANSWER:**     Chiyoda denies that this action is appropriate for class certification and denies all

allegations in this Paragraph.

66.     A class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy. Prosecution of this matter as a class action will eliminate the possibility of repetitive litigation and there are no inherent barriers to managing the case as a class action.

**ANSWER:**     Chiyoda denies that this action is appropriate for class certification and denies all

allegations in this Paragraph.

67.     The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying outcomes.

**ANSWER:**     Chiyoda denies that this action is appropriate for class certification and denies all

allegations in this Paragraph.

68.     The Class is also readily definable and is one for which records likely exist in the files of Defendants and their co-conspirators.

**ANSWER:**     Chiyoda denies that this action is appropriate for class certification and denies all

allegations in this Paragraph.

69.     Wire harnesses are systems of electrical and electronic cables, wires and connectors used to transmit informational signals or operating currents to electronic control units, wiring, circuit boards, and other components in motor vehicles.

**REDACTED**

**ANSWER:**   Chiyoda admits that this Paragraph describes with general accuracy certain features and components of wire harnesses.  Chiyoda denies all other allegations contained in this Paragraph.

70.   Wire harness assemblies consist of raw, coiled wire, which is cut to length and terminated. Individual circuits are assembled together on a jig or table, inserted into connectors and wrapped or taped to form wire harness assemblies.

**ANSWER:**   Chiyoda admits that this Paragraph describes with general accuracy certain features and components of wire harnesses.  Chiyoda denies all other allegations contained in this Paragraph.

71.   Wire harnesses have color coded wires that are designed to support specific electrical and electronic motor vehicle features. Most, if not all, electrical and electronic devices in a vehicle rely on a wire harness to provide electric current and data transmission for operation.

**ANSWER:**   Chiyoda admits that this Paragraph describes with general accuracy certain features and components of wire harnesses.  Chiyoda denies all other allegations contained in this Paragraph.

72.   Motor vehicles contain masses of wires that can amount to several kilometers in length. A motor vehicle's wiring system is organized into multiple wire harnesses. Wire harnesses provide organized connection points for multiple wiring configurations. The harness feature binds wires and cables into a bundle, which provides protection against deterioration or damage from vibration, abrasions, and moisture.

**ANSWER:**   Chiyoda admits that this Paragraph describes with general accuracy certain features and components of wire harnesses.  Chiyoda denies all other allegations contained in this Paragraph.

73.   Wire Harness Products are installed by manufacturers in new vehicles as part of the manufacturing process. Also, Wire Harness Products are installed in vehicles to replace worn out, defective or damaged parts.

REDACTED

**ANSWER:**    Chiyoda admits on information and belief that certain wire harness products are installed by manufacturers in new vehicles.  Chiyoda denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

74.    Automotive electrical wiring is the wiring that runs throughout the vehicle.

**ANSWER:**    Chiyoda admits that this Paragraph describes with general accuracy certain features and components of wire harnesses.  Chiyoda denies all other allegations contained in this Paragraph.

75.    High voltage wiring is integral to vehicles equipped with hybrid, fuel cell or electric-powered powertrains.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

76.    Lead wire assemblies connect a wire carrying electrical current from the power source to an electrode holder or a group clamp.

**ANSWER:**    Chiyoda admits that this Paragraph describes with general accuracy certain features and components of lead wire assemblies.  Chiyoda denies all other allegations contained in this Paragraph.

77.    Cable bonds are the electrical connection between the armor or sheath of one cable and that of an adjacent cable or across a wire in the armor.

**ANSWER:**    Chiyoda admits that this Paragraph describes with general accuracy certain features and components of cable bonds.  Chiyoda denies all other allegations contained in this Paragraph.

78.    Automotive wiring connectors connect various types of wires in a motor vehicle.

**ANSWER:**    Chiyoda admits that this Paragraph describes with general accuracy certain features and components of automotive wiring connectors.  Chiyoda denies all other allegations contained in this Paragraph.

**REDACTED**

79.     Automotive wiring terminals are the ends of a wire that provide a point of connection to external circuits.

**ANSWER:**     Chiyoda admits that this Paragraph describes with general accuracy certain features and components of automotive wiring terminals.  Chiyoda denies all other allegations contained in this Paragraph.

80.     Electronic control units ("ECUs") are embedded modules or systems that control one or more of the electrical systems or subsystems in a motor vehicle. Motor vehicles are equipped with a large number of ECUs that operate various motor vehicle functions and exchange large volumes of data with one another.

**ANSWER:**     Chiyoda admits that this Paragraph describes with general accuracy certain features and components of ECUs.  Chiyoda denies all other allegations contained in this Paragraph.

81.     Fuse boxes are modules that hold the fuses for the various electrical circuits, all of which are routed through the fuse box. The primary purpose of an electrical fuse is to help protect components on a circuit from damage in the event of a short circuit or a current spike or overload.

**ANSWER:**     Chiyoda admits on information and belief that fuse boxes are modules that hold fuses for the various electrical circuits.  Chiyoda denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

82.     Relay boxes are modules that hold the electrical switches that transmit impulses from one component to another, and can be used to connect or break the flow of the current in a circuit. Once a relay is activated it connects an electrical or other data supply to a particular component or accessory.

**ANSWER:**     Chiyoda admits that this Paragraph describes with general accuracy certain features and components of relay boxes.  Chiyoda denies all other allegations contained in this Paragraph.

83.     Junction blocks are used as electrical connection points for the distribution power or distribution of a ground.

**REDACTED**

**ANSWER:**   Chiyoda admits that this Paragraph describes with general accuracy certain features and components of junction blocks.  Chiyoda denies all other allegations contained in this Paragraph.

84.     Power distributors serve to distribute power at varying levels to various electrical components.

**ANSWER:**   Chiyoda admits that this Paragraph describes with general accuracy certain features and components of power distributors.  Chiyoda denies all other allegations contained in this Paragraph.

85.     Speed sensor wire assemblies are installed in automobiles with an Antilock Brake System ("ABS"). The speed sensor wire assemblies connect a sensor on each tire to the ABS and carry electrical signals from the sensors to the ABS to instruct it when to engage.

**ANSWER:**   Chiyoda admits that this Paragraph describes with general accuracy certain features and components of speed sensor wire assemblies.  Chiyoda denies all other allegations contained in this Paragraph.

86.     Motor vehicle Original Equipment Manufacturers ("OEMs") require multiple sources for motor vehicle parts. As part of their supply chain and procurement process, OEMs issue Requests for Quotation ("RFQs") to parts suppliers on a model-by-model basis for model specific Wire Harness Products.

**ANSWER:**   Chiyoda states on information and belief that there is no general rule as to the procedures that OEMs follow when awarding business.  Chiyoda denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

87.     RFQs are a standard business practice that allow parts suppliers to submit price quotations or bids on specific products or services.

**ANSWER:**   Chiyoda admits that RFQs allow parts suppliers to submit price quotations or bids on specific products or services.  Chiyoda denies all other allegations contained in this Paragraph.

**REDACTED**

88.     Foreign OEMs participate in RFQs to procure parts for U.S. manufactured vehicles both abroad and in the United States.

**ANSWER:**     Chiyoda states on information and belief that there is no general rule as to the procedures that OEMs follow when awarding business. Chiyoda denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

89.     Generally, OEMs issue Wire Harness Products RFQs to begin the bidding process approximately three years prior to production of a motor vehicle.

**ANSWER:**     Chiyoda states on information and belief that there is no general rule as to the procedures that OEMs follow when awarding business. Chiyoda denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

90.     OEMs' RFQs typically include specifications and other relevant information for each motor vehicle product. In response to RFQs, parts suppliers submit price quotations, or bids, to OEMs to be considered for an award.

**ANSWER:**     Chiyoda states on information and belief that there is no general rule as to the procedures that OEMs follow when awarding business. Chiyoda denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

91.     After receiving responses to RFQs from each respective bidder, OEMs then award the business to the selected parts suppliers generally for the life of the vehicle model and further confirmed with annual purchase orders.

**ANSWER:**     Chiyoda states on information and belief that there is no general rule as to the procedures that OEMs follow when awarding business. Chiyoda denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

**REDACTED**

92.    Suppliers to OEMs have been required to directly purchase Wire Harness Products from Defendants at prices established by the OEMs and Defendants in the bidding process.

**ANSWER:**    Chiyoda states on information and belief that there is no general rule as to the procedures that OEMs follow when awarding business.    Chiyoda denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

93.    It was important to the success of the cartel alleged herein that its members control and manipulate the prices paid by OEMs in order to control the prices paid by all other direct purchasers of Wire Harness Products.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph.

94.    The Wire Harness Products industry is heavily concentrated. Wire Harness Products manufacturers are all capable of producing Wire Harness Products for use in any motor vehicle.

**ANSWER:**    Chiyoda denies that the wire harness industry is heavily concentrated.    Chiyoda denies the remaining allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

95.    During the Class Period the top four automotive Wire Harness Products manufacturers controlled 76.95% of the global market, and the top seven, the majority of which are Defendants, controlled 87.95% of the global market. See Figure 1.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

96.    According to Research in China, an international market research and market data firm, the global automotive wiring harness market reached U.S. $25.3 billion in 2009, and grew by 6.6% to $26.9 billion in 2010. By 2013, the global automotive wiring harness market is projected to increase to almost U.S. $33 billion.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

REDACTED

97.     There are high barriers to entry in the Wire Harness Products market due to high capital investment in plant and machinery and technical expertise. It is critically important for parts suppliers to maintain minimum viable scale in order to efficiently produce parts within the price and quantity parameters established by the OEMs. As such, loss of one's position as a supplier of choice could have severe consequences to the business models of Defendants and their co-conspirators.

**ANSWER:**     The allegations in this Paragraph are hypothetical and speculative in nature and include economic conclusions to which no response is required.  To the extent a response is deemed required, Chiyoda denies the allegations in this Paragraph.

98.     In a competitive market, economies of scale and decreasing costs would lead to lower prices because manufacturers typically will reduce pricing rather than lose market share. In a market subject to a conspiracy to fix prices, however, competitors do not have the same incentive to lower prices despite steady or decreasing input costs because, based on a conspiratorial agreement, there is a smaller risk of losing sales to lower-priced competitors.

**ANSWER:**     The allegations in this Paragraph are hypothetical and speculative in nature and include economic conclusions to which no response is required.  To the extent a response is deemed required, Chiyoda denies the allegations in this Paragraph.

99.     During the Class Period, the prices of Wire Harness Products increased, while the primary manufacturing input costs remained steady. In fact, Lear and the Yazaki, Sumitomo, Furukawa, and Fujikura Defendants have extensive experience in wire production and are able to control associated input costs.

**ANSWER:**     The allegations in this Paragraph are hypothetical and speculative in nature and include economic conclusions to which no response is required.  To the extent a response is deemed required, Chiyoda denies the allegations the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

100.     Defendants and their co-conspirators attended industry events that provided the opportunity to meet, disguise their improper discussions, and perform acts in furtherance of the conspiracy. For example, Defendants and their co-conspirators have regularly attended the

REDACTED

annual North American International Auto Show ("NAIAS") in Detroit, Michigan and the Automotive Aftermarket Products Expo in Las Vegas, Nevada.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

101.    During the Class Period, Defendants and their co-conspirators formed an international cartel to suppress and eliminate competition for Wire Harness Products by agreeing to rig bids for, and to raise, fix, stabilize, or maintain the prices of, Wire Harness Products.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

102.    Defendants and their co-conspirators participated in meetings, conversations, and communications in the United States and abroad to discuss bids and price quotations for Wire Harness Products to be submitted to automobile manufacturers in the United States.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

103.    Defendants and their co-conspirators agreed during those meetings, conversations, and communications to allocate the supply of Wire Harness Products sold to automobile manufacturers in the United States on a model-by-model basis.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

REDACTED

104.    Defendants and their co-conspirators also agreed during meetings, conversations, and communications to coordinate price adjustments requested by automobile manufacturers in the United States.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

105.    Defendants and their co-conspirators submitted bids, price quotations, and price adjustments to automobile manufacturers in the United States in accordance with their conspiratorial agreements.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

106.    Defendants' pricing actions regarding their sales of Wire Harness Products to automobile manufacturers had an impact on prices for Wire Harness Products for all direct purchasers of Wire Harness Products throughout the United States.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

107.    Defendants and their co-conspirators held meetings and conversations in the United States to monitor and police the agreed-upon bid-rigging and price fixing conspiracy.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

REDACTED

108.    Defendants and their co-conspirators undertook measures to maintain the secretive nature of their unlawful conduct, including but not limited to, using code names and meeting at private residences or remote locations.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph to the extent those allegations are

directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth to the extent they are directed at

Defendants or entities other than Chiyoda.

109.    Various U.S. and international governmental authorities, including the U.S. Department of Justice ("DOJ") via its Antitrust Division, are currently investigating anticompetitive conduct in connection with the Wire Harness Products industry.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth.

110.    On February 23, 2010, the Federal Bureau of Investigation's ("FBI") Detroit division and the DOJ raided the U.S. offices of Denso, Yazaki, and TRAM. DOJ spokeswoman Gina Talamona said that "[t]he antitrust division is investigating the possibility of anticompetitive cartel conduct.... We are coordinating with the European Commission and other foreign competition authorities."

**ANSWER:**    Chiyoda admits that this Paragraph purports to quote a statement from the DOJ.

Chiyoda otherwise denies the allegations in this Paragraph for lack of knowledge or information

sufficient to form a belief as to their truth.

111.    On February 24, 2010, officials from the Competition Directorate of the European Commission ("EC") raided the offices of Wire Harness Products manufacturers and a February 25, 2010 EC press release disclosed that the "Commission confirms investigation into suspected cartel in the sector of automotive electrical and electronic components suppliers.... The Commission has reason to believe that the companies concerned may have violated EU antitrust rules that prohibit cartels and restrictive business practices." Reports indicated that the EU's investigation included Lear Automotive France, Yazaki and others.

**ANSWER:**    Chiyoda admits that this Paragraph purports to quote a statement from an EC

press release.  Chiyoda otherwise denies the allegations in this Paragraph for lack of knowledge

or information sufficient to form a belief as to their truth.

REDACTED

112.    Also on February 24, 2010, it was reported that the Japanese Fair Trade Commission ("JFTC") raided three Japanese wire harness manufacturers suspected of participating in a price-fixing cartel: Yazaki Corporation, Sumitomo Electric Industries, Ltd., and Furukawa Electric Co., Ltd. The three manufacturers have a combined 90% share of the Japanese wire harness market.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

113.    On June 30, 2011, Defendant Fujikura Ltd. announced that it received an advance notice of disciplinary action against the company from the JFTC for violating antitrust laws regarding the trading of wiring harnesses. Fujikura Ltd. was ordered to pay 1.2 billion yen (U.S. $14.8 million).

**ANSWER:**   Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

114.    On July 20, 2011, the JFTC raided seven Japanese auto parts makers, including Defendant Denso Corporation and its wholly-owned subsidiary Asmo.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

115.    The Japan Times reported that the JFTC "suspects the parts manufacturers had meetings from 2002 or earlier to set parts prices and decided which companies would win contracts before bidding for orders from automakers."

**ANSWER:**   Chiyoda admits that this Paragraph purports to quote a statement from The Japan Times.  Chiyoda otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

116.    On September 29, 2011, the DOJ charged Defendant Furukawa Electric Co., Ltd. and three of its executives with participating in a "combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of automotive wire harnesses and related products" in violation of the Sherman Antitrust Act.

**ANSWER:**   Chiyoda admits that this Paragraph purports to quote a statement from the DOJ. Chiyoda otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

REDACTED

117. Also on September 29, 2011, Defendant Furukawa Electric Co., Ltd. and its three executives agreed to plead guilty for their involvement in a criminal price-fixing and bid-rigging conspiracy in connection with the sale of Wire Harness Products. Furukawa Electric Co., Ltd. agreed to pay a $200 million fine while three of its executives agreed to serve prison time in the United States ranging from a year and a day to eighteen months.

**ANSWER:** Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

118. The DOJ described these as the "first charges as a result of its ongoing international cartel investigation of price fixing and bid rigging in the auto parts industry."

**ANSWER:** Chiyoda admits that this Paragraph purports to quote a statement from the DOJ. Chiyoda otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

119. In a September 29, 2011 DOJ press release, Sharis A. Pozen, the former Acting Assistant Attorney General of the DOJ's Antitrust Division stated that "[t]his cartel harmed an important industry in our nation's economy, and the Antitrust Division with the Federal Bureau of Investigation will continue to work together to ensure that these kinds of conspiracies are stopped."

**ANSWER:** Chiyoda admits that this Paragraph purports to quote a statement from a DOJ press release. Chiyoda otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

120. FBI Special Agent in Charge Andrew G. Arena also said that "[w]hen companies partner to control and price fix bids or contracts, it undermines the foundation of the United States' economic system." "The FBI is committed to aggressively pursuing any company involved in antitrust crimes."

**ANSWER:** Chiyoda admits that this Paragraph purports to quote a statement from an FBI Special Agent. Chiyoda otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

121. According to the DOJ, Defendant Furukawa Electric Co., Ltd. and its co-conspirators manufactured automotive Wire Harness Products (a) in the United States for installation in vehicles manufactured and sold in the United States, (b) in Japan for export to the United States

REDACTED

and installation in vehicles manufactured and sold in the United States, and (c) in Japan for installation in vehicles manufactured in Japan for export to and sale in the United States.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth.

122.   The DOJ alleged that Furukawa Electric Co., Ltd. and its co-conspirators: (a) had meetings and communications in the United States and Japan to discuss bids and price quotations to be submitted to automobile manufacturers in the United States, (b) agreed on bids and price quotations to be submitted to automobile manufacturers in the United States, (c) agreed to allocate the supply of automotive wire harnesses and related products sold in the United States on a model-by-model basis, (d) agreed to coordinate price adjustments requested by automobile manufacturers in the United States, (e) submitted bids, price quotations, and price adjustments to automobile manufacturers in the United States in accordance with the agreements reached, (f) sold Wire Harness Products to automobile manufacturers in the United States at collusive and noncompetitive prices, and (g) participated in meetings and communications to monitor the conspiracy and conceal their unlawful conduct, including but not limited to using code names and meeting at private residences or remote locations.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth.

123.   On October 24, 2011, Hirotsugu Nagata pleaded guilty to a conspiracy to restrain trade in the market for Wire Harness Products in violation of the Sherman Act before Judge George Steeh of the U.S. District Court for the Eastern District of Michigan. Nagata was employed at Furukawa America in Plymouth, Michigan as General Manager of Sales from January 2004 to November 2007, Chief Financial Officer from January 2004 until March 2009, and Marketing Manager for a related joint venture from January 2004 until June 2009. Nagata admitted in his guilty plea that during meetings and conversations with co-conspirators, "agreements were reached to allocate the supply of automotive wire harnesses and related products sold to automobile manufacturers on a model-by-model basis, rig bids quoted to automobile manufacturers for automotive wire harnesses and related products, and to fix, stabilize, and maintain the prices" for Wire Harness Products sold in the United States.

**ANSWER:**   Chiyoda admits that this Paragraph purports to quote a statement from Nagata's

guilty plea.  Chiyoda otherwise denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth.

124.   On October 24, 2011, Junichi Funo pleaded guilty to a conspiracy to restrain trade in the market for Wire Harness Products in violation of the Sherman Act before Judge George Steeh of the U.S. District Court for the Eastern District of Michigan. Funo worked at Furukawa Electric Co., Ltd. in Japan as a Honda Sales Division representative from April 2003 to August 2003,

REDACTED

then as Assistant General Manager for Honda Sales at Furukawa America from August 2003 to March 2009, and also as Manager of the Honda Sales Division in Japan from March 2009 until at least July 2009. Funo admitted in his guilty plea that during meetings and conversations with co-conspirators, "agreements were reached to allocate the supply of automotive wire harnesses and related products sold to automobile manufacturers on a model-by-model basis, rig bids quoted to automobile manufacturers for automotive wire harnesses and related products, and to fix, stabilize, and maintain the prices" for Wire Harness Products sold in the United States.

**ANSWER:**    Chiyoda admits that this Paragraph purports to quote a statement from Funo's

guilty plea.  Chiyoda otherwise denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth.

125.    On November 10, 2011, Tetsuya Ukai pleaded guilty to a conspiracy to restrain trade in the market for Wire Harness Products in violation of the Sherman Act before Judge George Steeh of the U.S. District Court for the Eastern District of Michigan. Ukai worked at Furukawa Electric Co., Ltd. in Japan as a Manager in the Honda Sales Division from April 2003 to July 2005, Unit Chief in the Honda Sales Division from July 2005 to April 2007, and then General Manager of the Honda Sales Division from April 2007 until at least July 2009. Ukai admitted in his guilty plea that during meetings and conversations with co-conspirators, "agreements were reached to allocate the supply of automotive wire harnesses and related products sold to automobile manufacturers on a model-by-model basis, rig bids quoted to automobile manufacturers for automotive wire harnesses and related products, and to fix, stabilize, and maintain the prices" for Wire Harness Products sold in the United States.

**ANSWER:**    Chiyoda admits that this Paragraph purports to quote a statement from Ukai's

guilty plea.  Chiyoda otherwise denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth.

126.    On November 14, 2011, Defendant Furukawa Electric Co., Ltd. pleaded guilty for its involvement in a criminal price-fixing and bid-rigging conspiracy in connection with the sale of Wire Harness Products. Furukawa Electric Co., Ltd. admitted in its guilty plea that during the relevant period, "agreements were reached to allocate the supply of automotive wire harnesses and related products sold to automobile manufacturers on a model-by-model basis, rig bids quoted to automobile manufacturers for automotive wire harnesses and related products, and to fix, stabilize, and maintain the prices" for Wire Harness Products sold in the United States. Furukawa Electric Co., Ltd. agreed to pay a $200 million fine.

**ANSWER:**    Chiyoda admits that this Paragraph purports to quote a statement from Furukawa

Electric Co., Ltd.'s guilty plea.  Chiyoda otherwise denies the allegations in this Paragraph for

lack of knowledge or information sufficient to form a belief as to their truth.

**REDACTED**

127. On January 19, 2012, the JFTC issued cease and desist orders to Defendants Yazaki Corporation and Fujikura Ltd. The JFTC also fined Yazaki Corporation, Sumitomo Electric Industries Ltd. and Fujikura Ltd. The JFTC's cease and desist orders and fines against these Defendants were based on their involvement in a price-fixing and bid-rigging conspiracy in connection with the sale of Wire Harness Products in violation of Article 3 of the Japanese Antimonopoly Act. According to a JFTC press release, Yazaki Corporation, Sumitomo Electric Industries Ltd., Fujikura Ltd., and Furukawa Electric Co., Ltd. "substantially restrained competition … [by] appointing the designated successful bidder and managing to have the designated successful bidder win the bidding." The JFTC fined Yazaki Corporation approximately $125.8 million, Sumitomo Electric Industries Ltd. $27.5 million, and Fujikura Ltd. $14.4 million. Furukawa Electric Co., Ltd. admitted to its participation in a price-fixing and bid-rigging conspiracy, but was not fined because it provided information to the JFTC that led to the investigation.

**ANSWER:** Chiyoda admits that this Paragraph purports to quote a statement from a JFTC press release. Chiyoda otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

128. On January 30, 2012, the DOJ announced that Defendant Yazaki Corporation had agreed to pay a $470 million fine and to plead guilty to a three-count criminal information charging Yazaki Corporation with, among other things, participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, Wire Harness Products sold to certain automobile manufacturers in the United States and elsewhere from at least as early as January 2000 and continuing until at least February 2010 in violation of Section 1 of the Sherman Act. On March 1, 2012, Defendant Yazaki Corporation pleaded guilty to this charge.

**ANSWER:** Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

129. In addition to Yazaki Corporation, four Yazaki executives, Tsuneaki Hanamura, Ryoji Kawai, Shigeru Ogawa, and Hisamitsu Takada, have pleaded guilty to antitrust violations arising from their participation in a conspiracy to suppress and eliminate competition by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of Wire Harness Products sold to certain automobile manufacturers in the United States and elsewhere. The four executives of Yazaki Corporation agreed to serve prison time ranging from 15 months to two years. The two-year sentences would be the longest term of imprisonment imposed on a foreign national voluntarily submitting to U.S. jurisdiction for a Sherman Act violation.

**ANSWER:** Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

REDACTED

130.    On January 30, 2012, the DOJ also announced that Defendant Denso Corporation agreed to plead guilty and pay a total of $78 million in criminal fines to a two-count criminal information charging Denso Corporation with, among other things, participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of certain ECUs sold to an automobile manufacturer in the United States and elsewhere from at least as early as January 2000 and continuing until at least February 2010 in violation of Section 1 of the Sherman Act. ECUs are Wire Harness Products as alleged in this Complaint and are "essential to the wiring, circuit boards, gauges and fuel tanks of automobiles." On March 5, 2012, Denso Corporation pleaded guilty to this charge.

**ANSWER:**    Chiyoda admits that this Paragraph purports to quote a statement from the DOJ.

Chiyoda otherwise denies the allegations in this Paragraph for lack of knowledge or information

sufficient to form a belief as to their truth.

131.    On April 3, 2012, the DOJ announced that Defendant G.S. Electech, Inc. agreed to plead guilty and pay a $2.75 million criminal fine to a one-count criminal information charging G.S. Electech, Inc. with participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix stabilize, and maintain the prices of speed sensor wire assemblies sold to an automobile manufacturer in the United States and elsewhere from at least as early as January 2003 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1. Speed sensor wire assemblies are Wire Harness Products as alleged in this Complaint. In pleading guilty to this charge on May 16, 2012, G.S. Electech, Inc. and its subsidiaries agreed to cooperate with the DOJ by producing "documents [and] information ... in the possession, custody or control of [G.S. Electech, Inc.] or its subsidiaries" and by providing "current and former directors, officers, and employees of [G.S. Electech, Inc.] or its subsidiaries ... for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings."

**ANSWER:**    Chiyoda admits that this Paragraph purports to quote a statement from G.S.

Electech, Inc.'s guilty plea.  Chiyoda otherwise denies the allegations in this Paragraph for lack

of knowledge or information sufficient to form a belief as to their truth.

132.    On April 23, 2012, the DOJ announced that Defendant Fujikura Ltd. had agreed to plead guilty and pay a $20 million criminal fine to a one-count criminal information charging it with participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of Wire Harness Products sold to an automobile manufacturer in the United States and elsewhere from at least as early as January 2006 and continuing until at least February 2010 in violation of Section 1 of the Sherman Act. On June 21, 2012, Fujikura Ltd. pleaded guilty to this charge.

REDACTED

**ANSWER:** Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

133. On September 26, 2013, Mitsubishi Electric Corporation agreed to plead guilty and to pay a $190 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of automotive parts, including starter motors, alternators and ignition coils, sold to automobile manufacturers in the United States and elsewhere. In pleading guilty to this charge on November 6, 2013, Mitsubishi and its subsidiaries agreed to cooperate with the DOJ by producing "documents [and] information ... in the possession, custody, or control of [Mitsubishi] or any of its subsidiaries" and by providing "current and former directors, officers, and employees of [Mitsubishi] or any of its subsidiaries .. . for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings" in connection with any federal investigation relating to the manufacture or sale of automotive parts, including ECUs.

**ANSWER:** Chiyoda admits that this Paragraph purports to quote a statement from Mitsubishi's guilty plea. Chiyoda otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

134. ████████████████████████████████████████████████████

**ANSWER:** Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

135. On August 19, 2014, it was reported that the China National Development and Reform Commission levied fines against several auto parts makers, including Mitsubishi, for colluding to fix the prices of automotive parts, including wire harnesses, in violation of anti-monopoly laws. Mitsubishi was ordered to pay 44.88 million yuan (U.S. $7.3 million).

**ANSWER:** Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

136. On August 20, 2014, Mitsubishi issued a press release stating that it "takes this matter very seriously" and would "reconfirm that compliance measures are thoroughly implemented as part of its efforts to recover public trust."

**ANSWER:** Chiyoda admits that this Paragraph purports to quote a statement from a Mitsubishi press release. Chiyoda otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

REDACTED

137. 

**ANSWER:**   Chiyoda denies the allegations in this Paragraph.

138.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

139.   Defendants affirmatively and wrongfully concealed their anti-competitive conduct from Plaintiffs and the Class from at least January 1, 2000 through at least February 2010, when the antitrust investigations of the Wire Harness Products manufacturers became public. During that time, Plaintiffs and the Class did not learn or discover the operative facts giving rise to their claims, despite due diligence. Thus, Defendants' fraudulent concealment tolled the statute of limitations through at least February 2010.

**ANSWER:**   The allegations in this Paragraph constitute a legal conclusion to which no response is required.  To the extent a response is required, Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

140.   Defendants represented publicly, both to customers and otherwise, that their pricing and bidding activities were unilateral. In making those false representations, Defendants misled Plaintiffs and members of the Class as to the true, collusive, and coordinated nature of their bid-rigging, customer allocation, and price-fixing activities.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or

REDACTED

information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

141.    Defendants' wrongful conduct was carried out in part through means and methods that were designed to avoid detection, and which, in fact, successfully precluded detection.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

142.    In particular, Defendants participated in meetings, conversations, and communications to discuss the bids and price quotations to be submitted to customers in the United States and elsewhere.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

143.    During these meetings, conversations, and communications, Defendants agreed upon bids and price quotations to be submitted to customers in the United States and elsewhere.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

144.    Defendants likewise agreed to allocate the supply of Wire Harness Products sold to customers in the United States and elsewhere.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or

**REDACTED**

information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

145.   Defendants also agreed to coordinate price adjustments requested by customers in the United States and elsewhere.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

146.   In accordance with the agreements reached by Defendants, they submitted collusive bids, price quotations, and price adjustments to customers in the United States and elsewhere.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

147.   As a result of such coordinated actions, and unbeknownst to Plaintiffs, Defendants sold Wire Harness Products to purchasers in the United States at collusive and noncompetitive prices.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

148.   To keep the sale of Wire Harness Products at collusive and noncompetitive prices a secret, Defendants employed certain measures, including but not limited to, using code names and meeting at private residences or remote locations.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or

**REDACTED**

information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

149.   Moreover, Defendants' successful contract, combination, or conspiracy was by its nature inherently self-concealing.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

150.   Despite due diligence, Plaintiffs had no knowledge of Defendants' unlawful contract, combination, or conspiracy.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

151.   In the course of purchasing Wire Harness Products, Plaintiffs studied prices of the specific products involved.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

152.   Plaintiffs received from one or more Defendants various pricing information. Plaintiffs had no way to know that Defendants' prices were higher than they should have been due to the conspiracy alleged herein.

**ANSWER:**   Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

REDACTED

153.    Plaintiffs did not and could not have discovered Defendants' unlawful contract, combination, or conspiracy at any earlier date, despite due diligence. Defendants undertook affirmative acts of concealment of their contract, combination, or conspiracy, including their attendance at secret meetings, making misrepresentations to Plaintiffs and the Class of the reasons for the prices charged, and engaging in secret conversations concerning the allocation of customers, bid rigging, and price-fixing of Wire Harness Products.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

154.    Defendants' conspiracy caused injury to Plaintiffs and members of the Class by suppressing price competition among Wire Harness Products manufacturers, thereby depriving purchasers of Wire Harness Products of the benefits of a competitive market and setting prices of Wire Harness Products at artificially high levels.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph.

155.    As a direct result of Defendants' conspiracy, Plaintiffs and members of the Class have been injured in their business or property in that they paid more for Wire Harness Products than otherwise would have been the case in a competitive market.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph.

156.    Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

**ANSWER:**    Chiyoda incorporates by reference and restates the response to each of the Paragraphs 1 to 155 as set forth above.

157.    During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, combination or conspiracy in restraint of trade to artificially raise, fix, maintain, or stabilize prices for Wire Harness Products sold in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

REDACTED

158.    The contract, combination or conspiracy resulted in an agreement, understanding or concerted action between and among the Defendants and their co-conspirators in furtherance of which the Defendants and their co-conspirators fixed, raised, maintained, or stabilized prices for Wire Harness Products sold in the United States. Such contract, combination, or conspiracy constitutes a per se violation of the federal antitrust laws.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

159.    Defendants succeeded in rigging bids, fixing, raising, maintaining and stabilizing the prices of Wire Harness Products sold in the United States during the Class Period.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

160.    For purposes of formulating and effectuating their conspiracy, Defendants and their co-conspirators did those things they conspired to do, including:

   a.    Participating in meetings and conversations in the United States and elsewhere to discuss the bids and price quotations of Wire Harness Products to be submitted to direct purchasers in the United States;

   b.    Agreeing on bids and price quotations to be submitted to direct purchasers in the United States;

   c.    Agreeing to manipulate prices and allocate supply of Wire Harness Products sold in the United States in a manner that deprived direct purchasers of free and open competition;

   d.    Agreeing to coordinate price adjustments in the United States;

   e.    Submitting bids, price quotations, and price adjustments to direct purchasers of Wire Harness Products in accordance with the agreements reached;

   f.    Selling Wire Harness Products to direct purchasers in the United States at noncompetitive prices; and

REDACTED

      g.      Employing measures to conceal the true nature of their unlawful conduct from Plaintiffs and other members of the Class in furtherance of the conspiracy.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph to the extent those allegations are directed at Chiyoda, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth to the extent they are directed at Defendants or entities other than Chiyoda.

161.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the other members of the Class have been injured in their businesses or property in that they have paid more for Wire Harness Products than they otherwise would have paid in a competitive market.

**ANSWER:**    Chiyoda denies the allegations in this Paragraph.

## ADDITIONAL OR AFFIRMATIVE DEFENSES

Chiyoda asserts the following affirmative defenses without assuming the burden of proof on such defenses that would otherwise rest on Plaintiffs.

### FIRST AFFIRMATIVE DEFENSE

#### (Failure to State a Claim)

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

#### (Statute of Limitations)

The Statute of Limitations bars, in whole or in part, the claims of Plaintiffs and the members of the putative Class set forth in the Complaint.

### THIRD AFFIRMATIVE DEFENSE

#### (Failure to Plead Fraud and/or Fraudulent Concealment with Particularity)

Plaintiffs have failed to allege fraud and/or fraudulent concealment with particularity.

### FOURTH AFFIRMATIVE DEFENSE

#### (Lack of Standing)

**REDACTED**

      Lack of standing bars the claims of Plaintiffs and the members of the putative Class set forth in the Complaint.

<h3 style="text-align:center"><u>FIFTH AFFIRMATIVE DEFENSE</u></h3>

<b>(Lack of Antitrust Injury)</b>

      Plaintiffs' claims or causes of action are barred because no plaintiff has suffered an antitrust injury due to Chiyoda's conduct.

<h3 style="text-align:center"><u>SIXTH AFFIRMATIVE DEFENSE</u></h3>

<b>(Lack of Actual Injury or Damages)</b>

      The Complaint is barred, in whole or in part, because Plaintiffs have not suffered an actual injury or damages due to Chiyoda's conduct.

<h3 style="text-align:center"><u>SEVENTH AFFIRMATIVE DEFENSE</u></h3>

<b>(Failure to Mitigate)</b>

      Plaintiffs and any putative Class members are barred from recovery of any damages because of and to the extent of their failure to mitigate damages.

<h3 style="text-align:center"><u>EIGHTH AFFIRMATIVE DEFENSE</u></h3>

<b>(Uncertainty of Damages)</b>

      Plaintiffs' claims and claims of any putative Class members for damages are barred because the alleged damages, if any, are speculative and because of the impossibility of ascertaining and allocating those alleged damages.

<h3 style="text-align:center"><u>NINTH AFFIRMATIVE DEFENSE</u></h3>

<b>(Lack of Proximate Cause)</b>

      Any injuries or damages Plaintiffs and any putative Class members may have suffered were caused solely and proximately by the acts and omissions of others.

**REDACTED**

## TENTH AFFIRMATIVE DEFENSE

### (Waiver, Estoppel, Unclean Hands, and Laches)

Plaintiffs' claims and claims of any putative Class members are barred, in whole or in part, by the doctrines of waiver, estoppel, unclean hands, and/or laches.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Ultra Vires)

To the extent that any actionable conduct occurred, Plaintiffs' claims and claims of any putative Class members are barred because all such conduct would have been committed by individuals acting ultra vires.

## TWELFTH AFFIRMATIVE DEFENSE

### (Improper Class Action)

Plaintiffs' claims and claims of any putative Class members are barred, in whole or in part, because they cannot be maintained as a class action.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Ratification, Acquiescence, Agreement or Consent)

Plaintiffs' claims are barred, in whole or in part, by reason of Plaintiffs' ratification of, or acquiescence, agreement, or consent to Chiyoda's conduct.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Accord and Satisfaction, Release and Settlement)

Plaintiffs' claims are barred, in whole or in part, by the doctrines of accord and satisfaction, release and settlement.

REDACTED

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Failure to Join Indispensable Parties)

Plaintiffs' claims should be dismissed to the extent that they are barred, in whole or in part, for failure to join indispensable parties.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Failure to Define a Market)

Plaintiffs and any putative Class members are barred from recovery of any damages because the Complaint fails to allege sufficiently or properly define any market for the purpose of asserting a claim against Chiyoda.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Competition Not Harmed)

Plaintiffs' claims should be dismissed to the extent that they are barred, in whole or in part, because Chiyoda's actions did not lessen competition in the relevant market.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Injury or Damages Offset by Benefits Received)

Plaintiffs' claims should be dismissed to the extent that they are barred, in whole or in part, because any claimed injury or damage has been offset by benefits Plaintiffs received with respect to the challenged conduct.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Pass Through)

Plaintiffs' claims for an illegal overcharge are barred, in whole or in part, to the extent that such overcharge, the existence of which Chiyoda expressly denies, was not passed through

REDACTED

to Plaintiffs or was passed on by Plaintiffs to, or absorbed or incurred, by others, including indirect purchasers of Wire Harness Products.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Available Remedy at Law)

Plaintiffs' claims for injunction or other equitable relief are barred, in whole or in part, because Plaintiffs have available an adequate remedy at law.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim for Injunctive Relief)

Plaintiffs' claims for injunctive relief are barred, in whole or in part, insofar as Plaintiffs seek to enjoin alleged events that have already transpired without the requisite showing of threatened future harm or continuing harm.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Comparative Fault)

Plaintiffs' claims are barred, in whole or in part, to the extent the injuries alleged in the Complaint, the fact and extent of which are expressly denied by Chiyoda, were directly and proximately caused by or contributed to by the statements, acts or omissions of Plaintiffs or third persons or entities unaffiliated with Chiyoda.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Failure to Arbitrate/Improper Forum)

Plaintiffs' claims and claims of any putative Class members are barred to the extent that they have agreed to arbitration or agreed to a different forum for the resolution of their claims.

**REDACTED**

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Improper Joinder)

Plaintiffs' claims are improperly joined within the meaning of Rule 20 of the Federal Rules of Civil Procedure because they did not arise out of the same transaction, occurrence or series of transactions or occurrences and/or do not involve questions of law or fact common to all defendants.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Failure to Exhaust Remedies)

Plaintiffs' claims for unjust enrichment are barred, in whole or in part, because Plaintiffs failed to exhaust all remedies against the parties with whom each plaintiff is in privity.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (No Multiple Recoveries)

Plaintiffs' claims are barred, in whole or in part, to the extent that Plaintiffs seek damages that are duplicative of damages sought in other actions.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Set-Off)

Without admitting the existence of any contract, combination or conspiracy in restraint of trade, Chiyoda avers that it is entitled to set off any amounts paid to Plaintiffs by any other defendants who have settled, or do settle, Plaintiffs' claims against them in this matter.

**REDACTED**

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Waiver of Certain Remedies)

Plaintiffs' claims to certain remedies are barred, in whole or in part, to the extent that Plaintiffs have waived, under any applicable contract or otherwise, their rights to those remedies, including but not limited to treble damages and attorneys' fees.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (Incorporation of Defenses of Others)

Chiyoda incorporates by reference and asserts to the extent applicable all other affirmative defenses set forth in the answers to the Complaint of each of the Defendants or entities other than Chiyoda.

## THIRTIETH AFFIRMATIVE DEFENSE

### (Reservation of Other Defenses)

Chiyoda reserves the right to assert other defenses as this action proceeds up to and including the time of trial.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

### (Benefit of the Bargain)

Plaintiffs' claims and those of the putative Class are barred, in whole or in part, because they accepted the benefit of the bargain.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

### (Not Efficient Enforcers)

Plaintiffs are not efficient enforcers of the antitrust laws at issue.

REDACTED

## THIRTY-THIRD AFFIRMATIVE DEFENSE

### (Economic Loss Doctrine)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, by the economic loss doctrine, because Plaintiffs did not suffer any personal injury or property damage.

### PRAYER FOR RELIEF

Accordingly, Chiyoda respectfully requests that the Court determine:

A.      That this action may not be maintained as a class action under Rule 23(a), (b)(2) or (b)(3) of the Federal Rules of Civil Procedure, and, therefore, that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, should not be given to all members of the Classes;

B.      That the conduct alleged in the Complaint is:

(a)      Not an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)      Not a *per se* violation of Section 1 of the Sherman Act;

(c)      Not cause for a finding of fraudulent concealment;

C.      That Plaintiffs are not entitled to recover any damages;

D.      That Plaintiffs are not entitled to recover any damages in the form of restitution and/or disgorgement of profits;

E.      That no injunction should be issued against Chiyoda, its affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, or any other persons acting or claiming to act on its behalf or in concert with it;

F.      That Plaintiffs should not be awarded restitution;

G.      That Plaintiffs should not be awarded pre- or post- judgment interest;

**REDACTED**

H.  That Chiyoda should recover its costs of suit, including reasonable attorneys'

fees, as provided by law; and

I.  That Chiyoda is entitled to any other further relief as the case may require and the

Court may deem just and proper.

Dated March 9, 2016                                     Respectfully submitted,

                                                        */s/ Michael Brady*
                                                        Michael Martinez
                                                        Steven Kowal
                                                        Lauren Norris
                                                        Lauren Salins
                                                        **K&L Gates LLP**
                                                        70 W. Madison St., Suite 3100
                                                        Chicago, IL 60602
                                                        Phone: 312-807-4404
                                                        Fax: 312-827-8116
                                                        michael.martinez@klgates.com
                                                        steven.kowal@klgates.com
                                                        lauren.norris@klgates.com
                                                        lauren.salins@klgates.com

                                                        William R. Jansen (P36688)
                                                        Michael G. Brady (P57331)
                                                        Amanda M. Fielder (P70180)
                                                        **WARNER NORCROSS & JUDD LLP**
                                                        2000 Town Center, Suite 2700
                                                        Southfield, MI 48075-1318
                                                        Phone: 248-784-5000
                                                        wjansen@wnj.com
                                                        mbrady@wnj .com
                                                        afielder@wnj.com

                                                        *Counsel for Chiyoda Manufacturing*
                                                        *Corporation and Chiyoda USA Corporation*

**REDACTED**

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2016, I caused the foregoing:

ANSWER AND AFFIRMATIVE DEFENSES OF CHIYODA MANUFACTURING
CORPORATION TO DIRECT PURCHASER PLAINTIFFS'
THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to all counsel of record.

*/s/ Michael G. Brady*
Michael G. Brady