Steven F. Helfand
1400 SW 137th Avenue, Unit F112
Hollywood, FL 33027
Telephone:   415.596.5611
Email:        sh4078@gmail.com

*In Propria Persona*

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Case No.: 12-md-02311<br><br>**OBJECTION AND NOTICE TO APPEAR FOR STEVEN F. HELFAND**<br><br>May 11, 2016<br>Room 272<br>Hon.   Marianne O. Battani |
|---|---|



FILED
APR - 6 2016
CLERK'S OFFICE
U.S. DISTRICT COURT

Steven F. Helfand, in *pro se*, objects as follows:

## I. OBJECTIONS

### A. The Settlement is Unfair and Unreasonable.

#### 1. The settlement contains a warning sign of an unfair deal: a "clear sailing" agreement.

A clear sailing clause stipulates that attorney awards will not be contested by opposing parties. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

"Such a clause by its very nature deprives the court of the advantages of the adversary process." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991). The clause "suggests, strongly," that its associated fee request should go "under the microscope of judicial scrutiny." *Id.* at 518, 525; *Childs v. United Life Ins. Co.*, No. 10-CV-23-PJC, 2012 U.S. Dist. LEXIS 70113, at *13-*14 & n.6 (N.D. Okla. May 21, 2012). The clear sailing clause lays the groundwork for lawyers to "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *Weinberger*, 925 F.2d at 524; accord *Bluetooth*, 654 F.3d at 948. *Gooch v. Life Investors Ins. Co. of Am.* found that a clear-sailing agreement that awarded class counsel disproportionate fees could be evidence of settlement unfairness. 672 F.3d 402, 425 (6th Cir. 2012) (finding potentially problematic clear-sailing clause acceptable because class counsel received only 2.3% of settlement value; reversing on other grounds). The multiple

individual Settlement Agreements generally provide that the releasing party shall not have an interest in the fee award. See, e.g., ¶ 29 (d) [Autoliv, Inc. Settlement Agreement]. By stipulating that the releasing defendant does not have an "interest;" *to wit*, standing in the fee award, this amounts to a de facto "clear sailing arrangement."

This is compounded by the fact there is no way to ascertain how the settlement shall benefit particular class members, let alone, who is a class member. Are all cars involved? Are all manufacturers involved? The class definition seems inclusive while at the same time under-inclusive. It is overbroad but narrow. The claims rate may suffer simply because it is inherently difficult to gauge if one is a class member. If, for example, a class member purchased a switch or alternator and had it installed by a dealer or mechanic, it is unlikely they would ever know or remember who manufactured the part, if they even knew the part was installed in the first place. The same is true with radiators or anything else. The Notice is hopelessly vague; the settlement class is undefinable and unclear.

There is no meaningful formula or computation to assess the recovery on either an aggregate or individualized basis; no analysis of damages or potential recoveries to square with the value of class claims. The Notice is understandably lengthy but glosses over these salient points; what will the class members obtain, if anything? The notice seems to indicate the potentiality for a cy pres award, in

some or in part. If the claims administrator is overwhelmed with claims and ten percent of the class submit claims; there is no evaluation or estimation as to what this shall amount to on a pro-rata or computational basis. Unfortunately, this settlement segregates the distribution from the settlement; and this should not be allowed. Obviously, how much a class member is to receive has a bearing on the fairness of the settlement. The settling parties instead seem to request that the Court render a fairness determination as to the aggregate value of the settlement; saving the details as to how class members are to be compensated for later. This puts aside the fact that the amount may be insufficient and inadequate. In the meantime, Class counsel wish to be paid first. The lawyers get paid right away while they then pay themselves for further work as to how to distribute proceeds to the class. This is not right. Payment should be at or around the same time. The lawyers should get paid when the class gets paid, not a moment sooner or later.

Making matters even worse, there is no meaningful information concerning the size of the class which is likely massive. If there is a potential for one billion claims; which is not so far fetched, given the class period spans from 1998 to 2015 and involves an enormous number of persons, vehicles and separate parts, individual recoveries could be a pittance.

Moreover, the Notice fails to meaningfully set forth pertinent facts from which a class member should determine whether to remain in the class, object or

seek exclusion. There does not seem to be a process for claims at this juncture (or at least one that Class counsel is ready to divulge); no way, to assess fairness, other than rote reliance on a global number; albeit a fairly large one relatively speaking as to individual claims. The Court needs a lot more information.

How many cars are involved? How many parts? How much was paid to the Defendants? What is the maximum value of the antitrust claims taking into account treble damages and the like? This settlement may be totally inadequate without useful information being provided from which a genuine analysis of this proposed settlement can be made. It seems the claims process is to be structured later. But, depending on how the claims process is structured; this may render the settlement, as proposed, unfair and inadequate. The Court should not approve this settlement without first evaluating the claims process. Splitting the determination would be inconsistent with a fairness determination. While it may be convenient to do so and parse the fairness analysis; Objector submits that a less than complete fairness analysis precludes any fee or cost award. In other words, the Court can perhaps reach a conclusion that the amount is fair and this would be the law of the case. However, Objector submits that the analysis must be far more rigorous; and focus on individualized recoveries. Splitting the distribution from fairness may lead to a fait accompli or cram-down; as the distribution may lead to a conclusion

that the amount is inadequate. But in light of a prior inconsistent order; it would be too late!

The claims process must be determined concurrently with the determination of fairness. The court cannot simply conclude in a vacuum, the settlement should be approved as fair, when it has not analyzed how the claims shall be handled. Even if the Court were to make a singular determination that the gross amount obtained is reasonable; this does not necessarily mean, the settlement as proposed is fair, adequate and reasonable. Objector submits that absent a stated claims process so as to allow class members to analyze their participation in a settlement such as this one, it is simply unfair to approve this settlement structure as proposed. The parties need a distribution plan and it cannot be separated from the settlement. In sum, not enough information has been provided either to the Court or the Class. The Court should decline to grant final approval under such circumstances.

**B. Attorneys Fees are excessive**

The attorneys for the Class are obviously highly professional. There is no question that the attorneys for the Class are absolutely entitled to a very large fee. Objector fully supports the cost application **for all incurred costs to date**. However, this is prefaced as follows: To the extent $11.5 million is set aside for future costs; this obviously has a bearing on the contingency risk multiplier on further fee applications. Objector also questions whether this set aside is

appropriate under Class counsel's retainer agreement with the named representatives. In effect, the Class is now removing a piece of the contingent risk associated with this case. The costs are enormous; no question. Class counsel should shed light as to whether or not this sort of arrangement is appropriate. Indeed, by seeking such a "set aside" it appears there may be a conflict of interest. For instance, why should a class member for a radiator purchase have to set aside funds for ongoing litigation not involving radiators? Indeed, the Notice specifically breaks out the settlement calculations; and for the purpose of objections; asks class members to designate the particular products and vehicles involved. It stands to reason that a member of this settlement class may not be a member of future settlements that are structured. Yet, this settlement class is being asked to fund the case when they may not be eligible to submit a claim on future recoveries and may have no future stake in the outcome. Class counsel perhaps should explain how the payments for future costs is to be structured and how this squares with class members who may be paying for costs in the case that they now have no further interest in light of this settlement.

As to the fee award, Objector's concern is not with the work product of counsel; which appears exemplary. Rather, the attorneys for the class have indicated in the Notice that they intend to seek fees in an amount equal to 30%.

Consideration of fee petitions submitted by counsel representing a plaintiff class requires the utmost judicial scrutiny and discretion.  It is at this stage that counsel for the class is transformed from the champion of the class to a competing claimant against the fund intended to recompense the wrong suffered by the class. REPORT OF THE THIRD CIRCUIT TASK FORCE, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 251 (Oct. 8, 1985) (hereinafter "*Task Force Report*").  The amount sought here is suggestive of collusion.

In essence, the district court assumes the fiduciary role for the class that its counsel filed during the litigation, but vacated upon submission of the fee petition. *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 253 (7th Cir. 1988), *cert. denied*, 493 U.S. 810 (1989); *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1099 (2d Cir. 1977) ("*Grinnell II*"); *Task Force Report* at 255.  Because objections by class members are rare and defendants, having made their contribution to the settlement, are uninterested in the distribution, the district court must act with moderation and a jealous regard for the rights of the class members in determining a reasonable attorney fee. *See, e.g., Rothfarb v. Hambrecht*, 649 F. Supp. 183, 237 (N.D. Cal. 1986) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir. 1974) ("*Grinnell I*")); Deborah A. Klar, *Attorney's Fees in Securities Class Actions: Recent Developments Under the Common Fund Doctrine*, SECURITIES LITIGATION (1991); *Task Force Report* at 251; *In re Equity Funding Corp. Sec.*

*Litig.*, 438 F. Supp. 1303, 1325 (C.D. Cal. 1977) (not only must the courts avoid awarding windfall fees, but they must avoid every appearance of having done so).

### 1. The need to cross-check a contingent fee against counsel's lodestar is particularly important in a "mega-fund" case such as the one at bar.

Notably, this is not a typical class action. Rather, it is a *"mega-fund"* case. See *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 106 F. Supp. 2d 721, 735-36 (D.N.J. 2000) (noting that percentage awards in mega-fund cases range from 4.1 percent to 17.92 percent of fund and awarding 4.8 percent of fund.); *see also In re Baldwin-United Corp. Litig.*, 1986 WL 12195 (S.D.N.Y.) (attorneys' fees constituted 4.1% of the $183.8 million settlement fund); *In re Washington Public Power Supply Sys. Sec. Litig.*, 779 F.Supp. 1063 (D.Ariz.1990); *In re Corrugated Container Antitrust Litig.*, 1983-2 Trade Cas (CCH) ¶ 65,628 (S.D.Tex. September 1, 1983) (awarding fee of 9 percent of $366, million fund); *In re Agent Orange Prod. Liab. Litig.*, 611 F.Supp. 1296 (E.D.N.Y.1985), (fee award constituted 5.5 percent fee of the $180 million settlement fund); *In re MGM Grand Hotel Fire Litig.*, 660 F.Supp. 522 (D.Nev.1987), (fee award constituted 7 percent fee of the $205 million settlement fund.); *In re Washington Public Power Supply Sys. Sec. Litig. ("WPSS")*, 19 F.3d 1291, 1297, 1301 (9th Cir.1994) ($687 million settlement fund; 4.658 percent fee award reversed and remanded because

district court abused its discretion in *refusing* to award a risk multiplier; court indicated that a greater award was appropriate); *In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245 (N.D.Ill.1979) ($200 million settlement fund; 6.6 percent fee award); *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998) (awarding fees and expenses of 14.4 percent of the common fund); *Bowling v. Pfizer*, 922 F.Supp. 1261, 1283-84 (S.D. Ohio 1996) ($102.5 million settlement fund; 10 percent fee award plus separate award of up to 10 percent of all future contributions to settlement fund); *Sioux Nation of Indians v. United States*, 227 Ct.Cl. 404, 650 F.2d 244, 247 (1981) ($106 million settlement fund; 10 percent fee award); *Stender v. Lucky Stores, Inc.*, No. 88-cv-1467 (N.D.Cal. Apr. 20, 1994) ($107 million settlement; fees *and costs* consumed 12.8% of recovery) (reported in 18 *Class Action Reports* 338 (May-June 1995)); *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D.La.1993) ($170 million settlement fund; 17.92 percent fee award).

Accordingly, a "*declining percentage*" approach is certainly warranted here. The rationale for this approach is to account for economies of scale: "*In many instances the increase [in fund size] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel.*" See, In re Nasdaq, 187 F.R.D. at 486.

The fee sought by lead counsel far exceeds what is customarily awarded when applying the "percentage of fund" method in cases of this magnitude.

**2. It is not an abuse of discretion for this Court to apply the lodestar method simply because class counsel prefer that the Court follow the percentage of recovery approach.**

The only fee award that could be considered reasonable under the circumstances is one that compensates class counsel for work that benefited the class without negating such benefit in the process or creating a windfall for counsel. *Detroit v. Grinnell Corp*, 560 F.2d 1093, 1098 (2nd Cir. 1977) ("Courts and commentators have repeatedly warned that too little judicial regard for the interests of the benefited class can easily result in lesser recoveries for intended beneficiaries because of massive fees for enterprising attorneys."); *In re Superior Beverage/Glass Container*, 133 F.R.D. 119, 126 (N.D. Ill. 1990) (in no case should a fee award consume an untoward portion of the class recovery; what is left for the class after fees have been awarded is always of paramount consideration) ("*Superior Beverage*"); *see also Grunin v. Intl. House of Pancakes*, 513 F.2d 114, 127 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975) (the primary concern is to ensure that such awards reasonably compensate the attorneys for their services, and are not excessive, arbitrary or detrimental to the class).

### 3. Even if the Court employs the percentage of recovery method to compute fees, it should cross check the reasonableness of such an award under the lodestar/multiplier method.

To avoid a several million-dollar windfall to counsel and confirm the overall reasonableness of any percentage of recovery award, the court must necessarily employ the lodestar approach to determine attorney fees. Indeed, "District Courts often use the lodestar method as a cross-check on the percentage method in order to ensure a fair and reasonable result. *See, e.g., Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1301 (W.D. Wash. 2001). *See also Coordinated Pretrial,* 109 F.3d at 607; *Fischel v. Equitable Life Assurance Society*, 307 F.3d 997, 1007 (9th Cir. 2002). In order to ensure that all necessary data is before the court, attorneys are generally required to submit detailed affidavits which itemize and explain their fee claims. Also, many courts have required that an evidentiary hearing be held at which each claimant is subject to cross-examination. *Grunin v. Intl. House of Pancakes,* 513 F.2d 114, 127 (8th Cir. 1975). This Court should apply such scrutiny to this case in order to ensure that the compensation of damaged class members is not improperly reduced by an unreasonable windfall for class counsel. **Attorneys' fees are excessive** – Class counsel in this case anticipate applying for fees in the proximity of 30%. Attorneys fees in this type of case is not intended to

be a boon to class counsel. The class members are the ones who are to benefit from a class action.

There is a distinct body of law addressing fee awards to class counsel in mega-fund cases (those over $50 million). Although courts generally apply a percentage method in class action settlements, many courts have suggested that the commonly-used 25% fee is only a "benchmark" for an award of fees in class action cases, since in some events such is not appropriate as it would amount to a windfall to counsel. Many courts have now become accustomed to using a sliding scale with the percentage decreasing as the magnitude of the fund increases.

The Manual of Complex Litigation, 3rd, speaks to this issue:

An award of attorneys' fees in a common fund case is committed to the sound discretion of the trial court, considering the unique factors in the case. The court awarding such a fee should articulate reasons for the selection of the given percentage sufficient to enable a reviewing court to determine whether the percentage selected is reasonable. The factors used in making the award will vary, but may include one or more of the following:

- the size of the fund created and the number of persons benefited;
- the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;
- the skill and efficiency of the attorneys involved;

- the complexity and duration of the litigation;
- the risk of non-payment
- the amount of time devoted to the case by plaintiffs' counsel; and
- the awards in similar cases.

While the trend has been toward the percentage method, courts continue to award attorneys' fees in some common fund cases based on the lodestar or a combination of the two methods. **<u>Use of the lodestar may be more appropriate than the percentage of the fund method where the fund is extraordinarily large.</u>** As with percentage fees, an award of attorneys' fees under the lodestar method should fairly compensate the attorney for the reasonable value of the services beneficially rendered, based on the circumstances of the particular case, (emphasis added) Manual for Complex Litigation, 3rd, pp. 197-201, §24.121 & §24.122.

Thus, there is sound basis for awarding class counsels' fee based purely on counsels' lodestar. Regardless, should the Court be inclined to award fees based on the percentage approach, counsel should at the least be required to fully substantiate their fees by reference to the above factors listed in the Manual for Complex Litigation.

Also on point is *In re: NASDAQ Market – Makers Antitrust Litigation*, U.S.D.C., So. Dist. NY, 187 F.R.D. 465; 1998 U.S. Dist. LEXIS 17557; 1998-2 Trade Cas. (CCH) P72, 337 (Decided 11/9/98) – In this landmark case, U.S.

District Judge Robert W. Sweet did an exhaustive analysis of attorneys' fees in mega-fund cases. The Court reasoned that the beginning point in any class action settlement is assessing fees from a common fund is to determine the true value of the settlement, and then it stated, "25% . . . is not the benchmark for circumstances, the percentage will decrease as the size of the fund increases." *NASDAQ* at p. 21.

The *NASDAQ* Court went on to state, "where the fund is unusually large, some Courts have used a 'sliding scale, with the percentage decreasing as the magnitude of the fund increased . . . ' citing <u>Manual for Complex Litigation</u>, 3rd, §24.12 at 189, Fed. Jud. Ctr. (1995) (citations omitted); *See, e.g., Branch v. FDIC,* 1998 U.S. Dist. LEXIS 7815, 1998 WL 151249 (March 23, 1998) (applying 14% to $22 million; 12% of the next $10 million, and 5% over and above $32 million)."

The *NASDAQ* Court continued, "this sliding scale is explained in part by economics of scale . . . it is generally not 150 times more difficult to prepare, try and settle a $150 million case than it is to try a $1 million case. As noted in *In re: First Fidelity Securities Litigation,* 750 F. Supp. 160 (D.N.J. 1990), 'there is considerable merit to reducing the percentage as the size of the fund increases. In many instances, the increase is merely a factor of the size of the class and has no direct relationship to the efforts of counsel,' *Id.,* at 164 n.1."

This procedure was adopted in the Third Circuit in <u>In re: Prudential Insurance Company America Sales Practice Litigation Agent Actions; et al.</u> U.S.

Ct. App., 3rd Cir., 148 F. 3d 283; 1998 U.S. App. LEXIS 17057; 41 Fed. R. Serv. 3d (Callaghan) 596 (1998); Cert. Den. 1/1999, where the court, in a mega-fund case awarded a fee of 6.7%.

The fee request by class counsel in the present case represents an extraordinary windfall to class counsel. The Court is urged to scrutinize the fee application of class counsel and, applying sound judgment, disallow such a ;arge fee award and instead carve out a substantial portion of the fee request and add it to the benefits accruing to the class.

## II. CONCLUSION

The Court should decline to grant final approval to the proposed settlement. Assuming, arguendo, the proposed settlement is approved, attorneys fees should be dramatically reduced.

Dated: March 30, 2016

Steven Franklyn Helfand
1400 SW 137th Avenue, Apt. F112
Hollywood, FL 33027
Telephone:   415.397.0007
Email:       sh4078@gmail.com

## DECLARATION OF STEVEN F. HELFAND

I, Steven F. Helfand, declare:

1. According to the class settlement notice, I am a class member.

2. I leased many vehicles in San Francisco, California, including a 2009 Mercedes-Benz SL, a BMW Z4 and a BMW 335i convertible. During the class period, I had a Mercury Capri and other cars as well. I do not have the dates of ownership or control; only for 2009; in that I recall I had a 2009 SL. It was a memorable car. Unfortunately, it required many parts.

3. A variety of parts included on the list were replaced on the subject vehicles. This was years ago and I do not retain the underlying documents. I do not have the documents from so long ago and the requirement that I somehow track them down is patently ridiculous. I do not retain lists of cars, plate numbers, etc. that I had over the entirety of the class period. I do not recall the prices that were paid. I do not have records going back to when I leased any particular car but, I, in fact, did so. The notice is burdensome and unduly complex. Based on normal construction, I am a class member since the parts list is consistent with parts that I purchased. I don't have the receipts. Who knew I should keep them?

4. My name, address and telephone number is in the caption and will not be repeated.

5. I have no documents. I returned my last leased vehicle in 2014 or so. I did not retain any materials associated with that vehicle or any others.

6. I object to this settlement. Many parts are involved and the listing of parts in non-specific and generalized.

7. I do not know what is meant by "automotive part case." This seems to be one case. One notice. One award of fees. Not separate ones. The notice is incomprehensible.

8. My signature is below.

I make this declaration under penalty of perjury pursuant to the laws of the United States of America. This declaration is executed in Hollywood, Florida on March 30, 2016.

_____
Steven F. Helfand

## PROOF OF SERVICE

ON MARCH 30, 2016, I CAUSED TO BE SERVED, VIA FIRST CLASS MAIL, POSTAGE PREPAID, THE ATTACHED DOCUMENT

US DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
CLERK'S OFFICE
THEODORE LEVIN US COURTHOUSE
231 W. LAFAYETTE BLVD, ROOM 564
DETROIT, MI 48226

AUTO PARTS SETTLEMENTS OBJECTIONS
P.O. BOX 10163
DUBLIN, OH 43017-3163

This declaration is made under penalty of perjury under the laws of the United States of America. This declaration is executed in Hollywood, Florida on March 30, 2016.

Steven Franklyn Helfand
*In propria persona*
1400 SW 137th Avenue, Apt. F112
Hollywood, FL 33027
Telephone:  415.397.0007
Email:      sh4078@gmail.com

Steven F. Hoffund
7401 SW 137th Ave
F112
Hollywood, FL 33027

US District Court - Eastern District Michigan
Clerk's Office
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd., Room 564
Detroit, MI 48226



U.S. POSTAGE PAID
PEMBROKE PINES, FL
33027
MAR 31 16
AMOUNT
$2.74
R2303S100643-12

1023
48226

USPS TRACKING NUMBER
9500 1150 2269 6091 0214 92