SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP

SUITE 950

1901 AVENUE OF THE STARS

LOS ANGELES, CALIFORNIA 90067-6029

(310) 789-3100

FAX (310) 789-3150

WWW.SUSMANGODFREY.COM

| SUITE 5100 | SUITE 3800 | 32ND FLOOR |
| 1000 LOUISIANA STREET | 1201 THIRD AVENUE | 1301 AVENUE OF THE AMERICAS |
| HOUSTON, TEXAS 77002-5096 | SEATTLE, WASHINGTON 98101-3000 | NEW YORK, NEW YORK 10019-6022 |
| (713) 651-9366 | (206) 516-3880 | (212) 336-8330 |

MARC M. SELTZER
DIRECT DIAL (310) 789-3102

E-MAIL MSELTZER@SUSMANGODFREY.COM

November 11, 2016


Hon. Marianne O. Battani
United States District Judge
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd., Room 277
Detroit, MI  48226

> Re:  *In re Automotive Parts Antitrust Litigation*,
> Master File No. 12-md-02311 (E.D. Mich.)

Dear Judge Battani:

All Class Plaintiffs' Counsel respectfully submit this joint response to Your Honor's request for suggestions concerning the Court's desire to obtain expert advice on the subject of class counsel's compensation.

We have researched the law concerning the use of such an expert, as described further below.  We have employed this research to prepare the attached proposed Order for the Court's consideration.

Plaintiffs have conferred and respectfully submit the name of Professor Charles Silver at the School of Law of the University of Texas at Austin to act as the Court's technical advisor.  *See* Professor Silver's *curriculum vitae*, also attached hereto.

## I.     The Court Has Inherent Authority to Appoint a Technical Advisor.

The Court has inherent authority to appoint a technical advisor to assist the Court.  *See TechSearch L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002) (affirming district court's appointment of technical advisor to "assist with evaluation of . . . technical matters" in patent case); *see also Reed v. Cleveland Bd. of Ed.*, 607 F.2d 737, 746 (6th Cir. 1979) (affirming district court's exercise

November 11, 2016
Page 2

of its "inherent power" to appoint non-testifying "expert advisor" on the subject of school management, in a school-desegregation case).  District courts have used this inherent power in various types of cases with some frequency.[1]

Rather than providing testimony and evidence, as an expert witness would, a technical advisor's role instead is to "act as a sounding board for the judge—helping the jurist to educate himself in the jargon and theory disclosed by the testimony and to think through the critical technical problems."  *Reilly v. United States*, 863 F.2d 149, 158 (1st Cir. 1988) (affirming district court's appointment of technical advisor to assist in understanding calculation of damages, in medical malpractice case involving an infant severely injured at birth).  A technical advisor's role resembles that "of a law clerk"—he or she is "someone with whom the judge [may] engage in 'freewheeling discussion.'"  *Id.*  Like law clerks, technical advisors "largely function behind the scenes and provide information in an ex parte basis, typically off-the-record."  *Cable Commc'ns, LLC v. Sprint Commc'ns Co., LP,* No. CIV.A. 12-859, 2014 WL 1329063, at *1 (E.D. Pa. Apr. 2, 2014) (collecting orders appointing technical experts); *see also Reilly,* 863 F.2d at 160 n.8 ("The essence of [a technical advisor's] engagement requires that the judge and the advisor be able to communicate informally, in a frank and open fashion.").

## II.     A Technical Advisor May Not Give Legal Advice.

The Sixth Circuit held in the *Reed* case cited above, that a technical advisor may not give legal advice to the Court.  *Reed* was a school-desegregation case.   The district court appointed two technical advisors: an education-administration expert, in the field of school management; and a law professor, in the field of constitutional law.  The Sixth Circuit approved the appointment of the education administrator, but *disapproved* the appointment of the law professor.  The Sixth Circuit held:  "[W]e do not approve the practice of appointing legal advisors to a master or the court. . . .  [T]o the extent that [the judge] relied on advice received in chambers from a 'legal expert' there was a partial abdication of

---

[1] In one recent antitrust class action, a district court appointed a law professor as a technical advisor to assist the court in determining whether a proposed settlement was fair.  *In re Am. Exp. Anti-Steering Rules Antitrust Litig.,* No. 11-MD-2221 NGG RER, 2015 WL 4645240, at *6 (E.D.N.Y. Aug. 4, 2015).  Other recent appointments of technical advisors include a computer expert, who assisted in a class action to interpret the parties' competing computer models of defendants' payments to class members, *Sibley v. Sprint Nextel Corp.,* No. 08-CV-2063-KHV, 2016 WL 4679274, at *2 (D. Kan. July 29, 2016), and a scientist, who assisted a court with claim construction in a patent case.  *Cable Commc'ns,* 2014 WL 1329063, at *1.

November 11, 2016
Page 3

his role." *Reed*, 607 F.2d at 747-48.  The First Circuit has agreed with the Sixth Circuit on this issue.  *Reilly*, 863 F.2d at 158 ("[A] judge may not . . . appoint a legal advisor to brief him on legal issues, since 'determination of purely legal questions is the responsibility of the court itself.'" (quoting *Reed*, 607 F.2d at 747)).

Appointing a technical advisor in this litigation would not violate the Sixth Circuit's guidance in *Reed*, because advice about the methodologies used to calculate class counsels' compensation would not be impermissible "legal advice."  This is demonstrated by the many cases in which courts have accepted and considered evidence from expert witnesses on this subject—a practice that would be impermissible if this kind of information were deemed to be "legal advice."  *See Chavez v. Carranza,* 559 F.3d 486, 498 (6th Cir. 2009) ("[a]n expert opinion on a question of law is inadmissible").  In some cases, expert witnesses have provided sworn testimony regarding the reasonableness of attorneys' fees.[2]  In other cases, experts have provided written declarations on this subject, submitted through class counsel.[3]  Whatever the mechanism used, all of these

_____

[2] *See, e.g., Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, No. 1:11-CV-851, 2015 WL 3505793, at *16 (S.D. Ohio June 3, 2015) (expert witness may give testimony "as to: 1) the considerations that go into deciding to undertake, and negotiating, a contingency-fee representation; and 2) whether a contingency-fee agreement is reasonable under the circumstances"); *Yowell v. Seneca Specialty Ins. Co.*, 117 F. Supp. 3d 904, 910 (E.D. Tex. 2015) (attorney may give testimony as expert witness, having "given expert opinions concerning the reasonableness of attorney's fees in other cases for approximately twelve years"); *In re Holocaust Victim Assets Litig.*, 270 F. Supp. 2d 313, 320 (E.D.N.Y. 2002) (qualifying law professor as expert witness to give testimony on whether Court should award "a risk adjusted enhancement of the lodestar" for plaintiff class's counsel); *see also* Joe S. Cecil & Thomas E. Willging, *Court-Appointed Experts: Defining the Role of Experts Appointed Under Federal Rule of Evidence 706*, at 11 (Fed. Jud. Ctr. 1993), *available at* http://www.fjc.gov/library/fjc_catalog.nsf/DPublication?openform&parentunid=416B95653F789CBF85256CA3006768BF (noting that one judge reported having appointed an "attorney" as an expert witness to "address the reasonableness of a request for attorneys' fees").

[3] *See, e.g.*, *Asghari v. Volkswagen Group of America, Inc., et al.*, CASE NO. CV 13-02529 MMM (VBKx), Dkt. No. 185, at 85 (C.D. Cal. May 29, 2015), *available at* http://oilconsumptionsettlement.com/Portals/0/Documents/Asghari%20Doc.%20No.%20185.pdf (awarding fees to class counsel, and relying on declaration submitted by Professor William Rubenstein of Harvard Law School); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 773-76 (S.D. Tex.

November 11, 2016
Page 4

cases indicate that expert assistance on the topic of class counsel's compensation does not constitute an impermissible opinion on a "question of law." *See Chavez*, 559 F.3d at 498.

### III.   Guidelines for Appointing a Technical Advisor Have Been Established in Judge Tashima's Opinion in *AME v. California*.

Plaintiffs respectfully recommend that the Court appoint the technical advisor according to the guidelines set out in Ninth Circuit Judge A. Wallace Tashima's dissenting opinion in *Association of Mexican-American Educators v. California*, 231 F.3d 572, 609 (9th Cir. 2000) (Tashima, J., dissenting) ("*AME*"). Judge Tashima summarized his suggested guidelines as follows:

> Although we need not require strict adherence to any specific procedures, I would hold that a district court minimally must: (1) utilize a fair and open procedure for appointing a neutral technical advisor; (2) address any allegations of bias, partiality, or lack of qualification; (3) clearly define and limit the technical advisor's duties; (4) make clear to the technical advisor that any advice he gives to the court cannot be based on any extra-record information; and (5) make explicit, either through an expert's report or a record of ex parte communications, the nature and content of the technical advisor's advice. By adopting these minimal safeguards, the parties can be assured that the technical advisor appointment process is fair and that the technical advisor does not exercise undue influence on the district court.

*Id.*   [footnote omitted].   Numerous courts have cited and relied upon Judge Tashima's guidelines.[4]

---

2008) (awarding fees to class counsel, and relying on declaration submitted by Professor John C. Coffee of Columbia Law School); *In re DPL Inc., Sec. Litig.*, 307 F. Supp. 2d 947, 951-52 (S.D. Ohio 2004) (awarding fees to class counsel, and relying on declaration submitted by Professor Samuel Issacharoff, then at Columbia Law School).

[4]   *See, e.g., TechSearch,* 286 F.3d at 1378-80 (affirming district court's appointment of technical advisor, where appointment complied with Judge Tashima's guidelines); *Fed. Trade Comm'n v. Enforma Nat. Prod., Inc.,* 362 F.3d 1204, 1214 (9th Cir. 2004) ("[W]e take this opportunity to join a number of courts that have endorsed Judge Tashima's recommendations."); *Conservation Law Found. v. Evans*, 203 F. Supp. 2d 27, 31 n.3 (D.D.C. 2002) ("The Court has been guided in large part by the extremely thoughtful and oft-cited dissent of Judge Tashima in [*AME*].").

November 11, 2016
Page 5

Plaintiffs' proposed Order is drafted in order to implement Judge Tashima's guidelines, and is also drafted to be consistent with similar orders that other district courts have used when appointing technical advisors.[5]

For the foregoing reasons, Plaintiffs respectfully recommend that the Court enter the proposed Order, and appoint Professor Silver as the technical advisor.

Sincerely,

Marc Seltzer

Marc M. Seltzer
on behalf of Plaintiffs' Interim Class
Counsel for the End-Payor, Direct
Purchaser, Automobile Dealership, and
Truck and Equipment Dealer Class Plaintiffs

encl:   Exhibit 1 (Proposed Appointment Order)
        Exhibit 2 (Professor Silver's *curriculum vitae*)
cc:     All counsel of record via ECF

---

[5] *See In re American Express Anti-Steering Rules Antitrust Litigation*, Dkt. No. 1:11-md-02221-NGG-RER, ECF No. 344 (E.D.N.Y. Feb. 28, 2014) (Garaufis, J., appointing Scott Hemphill as technical advisor in determining fairness of proposed class settlement); *Comcast Cable Commc'ns*, 2014 WL 1329063; *Boston Sci. Corp. v. Micrus Corp.*, No. C 04-04072JW, 2007 WL 1518435, at *2 (N.D. Cal. May 22, 2007).

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In Re:   AUTOMOTIVE PARTS<br>            ANTITRUST LITIGATION | No. 12-md-02311<br>Honorable Marianne O. Battani<br>Special Master Gene J. Esshaki |
| PRODUCTS:<br>       ALL PARTS | |
| THIS DOCUMENT RELATES TO:<br>        ALL DIRECT PURCHASER ACTIONS<br>        ALL AUTOMOBILE DEALERSHIP<br>            ACTIONS<br>        ALL END-PAYOR ACTIONS<br>        ALL TRUCK AND EQUIPMENT<br>            DEALER ACTIONS | |

**[PROPOSED] ORDER APPOINTING COURT'S TECHNICAL ADVISOR**
**REGARDING COMPENSATION OF PLAINTIFFS' CLASS COUNSEL**

WHEREAS, the Court has considered, and expects to consider additional, applications for awards of attorneys' fees by Plaintiffs' Class Counsel from class action settlements reached in the above-entitled litigation;

WHEREAS, at the Status Conference on September 14, 2016, the Court stated its intention of appointing an expert to assist the Court with its consideration of pending and future applications for attorneys' fees;

WHEREAS, Plaintiffs' Class Counsel have since had the opportunity to discuss possible candidates for the position of expert who will act as a technical advisor to the Court, and have suggested a candidate; and

After reviewing Plaintiffs Class Counsels' submission and the files herein, and being otherwise fully advised in the premises, and good cause appearing therefor,

IT IS HEREBY ORDERED as follows:

1.        _____  ("Technical Advisor") is conditionally appointed, subject to compliance with Paragraph 3, below, as a non-testifying expert technical advisor to the Court on attorneys' fees.

2.        The Technical Advisor's fees shall be borne equally by the following Plaintiff groups: Direct Purchaser Plaintiffs, End-Payor Plaintiffs, Automobile Dealer Plaintiffs and Truck and Equipment Dealer Plaintiffs.

3.        The Technical Advisor shall confirm to the Court in writing that he is not currently retained, and has not previously been retained, by any party in connection with the above-entitled litigation.

1

4.      The Technical Advisor shall serve as the Court may request as a consultant to the Court regarding the reasonableness of applications for awards of attorneys' fees submitted by Plaintiffs' Class Counsel.  The Technical Advisor shall not provide legal advice to the Court.

5.      The Technical Advisor shall not have any *ex parte* communications with any of the parties or counsel for the parties related to this litigation, other than administrative communications relating to scheduling matters or the payment of the Technical Advisor's fees.

6.      At a time to be determined by the Court, the Technical Advisor shall submit to the Court a written record of the nature and substance of the Technical Advisor's communications with the Court.  This written record shall specifically reference all authorities cited to the Court and shall be made part of the public record.

IT IS SO ORDERED.

Dated:                                                    _____
                                                           Marianne O. Battani
                                                           UNITED STATES DISTRICT JUDGE

4630822v1/013283

# Exhibit 2

# CHARLES SILVER

csilver@mail.law.utexas.edu (preferred contact method)
Papers on SSRN at: http://ssrn.com/author=164490

## CONTACT INFORMATION

Co-Director, Center on Lawyers, Civil Justice and the Media
School of Law
University of Texas
727 East Dean Keeton Street
Austin, Texas 78705

(512) 232-1337 (voice)

## ACADEMIC EMPLOYMENTS

School of Law, University of Texas at Austin, 1987-2015
    Roy W. and Eugenia C. McDonald Endowed Chair in Civil Procedure
    W. James Kronzer Chair in Trial & Appellate Advocacy
    Cecil D. Redford Professor
    Robert W. Calvert Faculty Fellow
    Graves, Dougherty, Hearon & Moody Centennial Faculty Fellow
    Assistant Professor

Harvard Law School, Fall 2011
    Visiting Professor

Vanderbilt University Law School, Fall 2003
    Visiting Professor

University of Michigan Law School, Fall 1994
    Visiting Professor

University of Chicago, 1983-1984
    Managing Editor, Ethics: A Journal of Social, Political and Legal Philosophy

## EDUCATION

Yale Law School, JD (1987)
University of Chicago, MA (Political Science) (1981)
University of Florida BA (Political Science) 1979

## PUBLICATIONS

### SPECIAL PROJECTS

Associate Reporter, American Law Institute, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION, (2010) (with Samuel Issacharoff, Reporter, and Robert Klonoff and Richard Nagareda, Associate Reporters).

# CHARLES SILVER

csilver@mail.law.utexas.edu (preferred contact method)
Papers on SSRN at: http://ssrn.com/author=164490

Invited Academic Member, ABA/Tort Trial & Insurance Practice Section, Task Force on Contingent Fees, REPORT ON CONTINGENT FEES IN CLASS ACTION LITIGATION, 25 Rev. Litig. 459 (2006).

Invited Academic Member, ABA/Tort Trial & Insurance Practice Section, Task Force on Contingent Fees, REPORT ON CONTINGENT FEES IN MASS TORT LITIGATION, 42 Tort Trial & Insurance Practice Law Journal 105 (2006), available at http://www.jstor.org/stable/25763828

Invited Academic Member, ABA/Tort Trial & Insurance Practice Section, Task Force on Contingent Fees, REPORT ON CONTINGENT FEES IN MEDICAL MALPRACTICE LITIGATION (2004) available at http://apps.americanbar.org/tips/contingent/MedMalReport092004DCW2.pdf; published at 25 Rev. Litig. 459 (2006).

Co-Reporter, International Association of Defense Counsel PRACTICAL GUIDE FOR INSURANCE DEFENSE LAWYERS (2002) (with Ellen S. Pryor and Kent D. Syverud, Co-Reporters); published on the IADC website (2003); revised and distributed to all IADC members as a supplement to the Defense Counsel J. (2004).

## BOOKS

EXPENSIVE BY DESIGN: WHY AMERICAN HEALTHCARE COSTS TOO MUCH AND DELIVERS TOO LITTLE (with David A. Hyman) (in progress)

TO SUE IS HUMAN: MEDICAL MALPRACTICE LITIGATION IN TEXAS 1988-2010 (with Bernard S. Black, David A. Hyman, Myungho Paik, and William M. Sage) (in progress).

HEALTH LAW AND ECONOMICS, Vols. I and II (Edward Elgar 2016) (coedited with Ronen Avraham and David A. Hyman).

LAW OF CLASS ACTIONS AND OTHER AGGREGATE LITIGATION, 2nd Edition (2012) (with Richard Nagareda, Robert Bone, Elizabeth Burch and Patrick Woolley) (updated annually).

PROFESSIONAL RESPONSIBILITIES OF INSURANCE DEFENSE COUNSEL (2012) (with William T. Barker) (updated annually).

### ARTICLES BY SUBJECT AREA (* INDICATES PEER REVIEWED)

### Health Care Law & Policy

1.  "It Was on Fire When I Lay Down on It: Defensive Medicine, Tort Reform, and Healthcare Spending," in I. Glenn Cohen, Allison Hoffman, and William M. Sage, eds., OXFORD HANDBOOK OF AMERICAN HEALTH LAW (forthcoming 2016) (with David A. Hyman).*

2.  "Compensating Persons Injured by Medical Malpractice and Other tortious behavior for Future Medical Expenses Under the Affordable Care Act," 25 Annals of Health Law 35 (2016) (with Maxwell J. Mehlman, Jay Angoff, Patrick A. Malone, and Peter H. Weinberger).

# CHARLES SILVER

csilver@mail.law.utexas.edu (preferred contact method)
Papers on SSRN at: http://ssrn.com/author=164490

3.   "Double, Double, Toil and Trouble: Justice-Talk and the Future of Medical Malpractice Litigation," 63 DePaul L. Rev. 574 (2014) (with David A. Hyman) (invited symposium).

4.   "Five Myths of Medical Malpractice," 143:1 Chest 222-227 (2013) (with David A. Hyman).*

5.   "Health Care Quality, Patient Safety and the Culture of Medicine: 'Denial Ain't Just A River in Egypt,'" (coauthored with David A. Hyman), 46 New England L. Rev. 101 (2012) (invited symposium).

6.   "Medical Malpractice and Compensation in Global Perspective: How Does the U.S. Do It?" in Ken Oliphant & Richard W. Wright, eds., MEDICAL MALPRACTICE AND COMPENSATION IN GLOBAL PERSPECTIVE (2013) (coauthored with David A. Hyman)*; originally published in 87 Chicago-Kent L. Rev. 163 (2012).

7.   "Justice Has (Almost) Nothing to Do With It: Medical Malpractice and Tort Reform," in Rosamond Rhodes, Margaret P. Battin, and Anita Silvers, eds., MEDICINE AND SOCIAL JUSTICE, Oxford University Press 531-542 (2012) (with David A. Hyman).*

8.   "Medical Malpractice Litigation and Tort Reform: It's the Incentives, Stupid," 59 Vanderbilt L. Rev. 1085 (2006) (with David A. Hyman) (invited symposium).

9.   "Medical Malpractice Reform Redux: Déjà Vu All Over Again?" XII Widener L. J. 121 (2005) (with David A. Hyman) (invited symposium).

10.   "Speak Not of Error, Regulation (Spring 2005) (with David A. Hyman).

11.   "The Poor State of Health Care Quality in the U.S.: Is Malpractice Liability Part of the Problem or Part of the Solution?" 90 Cornell L. Rev. 893 (2005) (with David A. Hyman).

12.   "Believing Six Improbable Things: Medical Malpractice and 'Legal Fear,'" 28 Harv. J. L. and Pub. Pol. 107 (2004) (with David A. Hyman) (invited symposium).

13.   "You Get What You Pay For: Result-Based Compensation for Health Care," 58 Wash. & Lee L. Rev. 1427 (2001) (with David A. Hyman).

14.   "The Case for Result-Based Compensation in Health Care," 29 J. L. Med. & Ethics 170 (2001) (with David A. Hyman).*

## Empirical Studies of Medical Malpractice

15.   "Insurance Crisis or Liability Crisis? Medical Malpractice Claiming in Illinois, 1980-2010," 13 J. Empirical Legal Stud. 183 (2016) (with Bernard S. Black, David A. Hyman, and Mohammad H. Rahmati).

**CHARLES SILVER**

csilver@mail.law.utexas.edu (preferred contact method)
Papers on SSRN at: http://ssrn.com/author=164490

16.    "Policy Limits, Payouts, and Blood Money: Medical Malpractice Settlements in the Shadow of Insurance," 5 U.C. Irvine L. Rev. 559 (2015) (with Bernard S. Black, David A. Hyman, and Myungho Paik) (invited symposium).

17.    "Does Tort Reform Affect Physician Supply? Evidence from Texas," Int'l Rev. of L. & Econ. (2015) (with Bernard S. Black, David A. Hyman, and Myungho Paik), available at http://dx.doi.org/10.1016/j.irle.2015.02.002.*

18.    "How do the Elderly Fare in Medical Malpractice Litigation, Before and After Tort Reform? Evidence From Texas" (with Bernard S. Black, David A. Hyman, Myungho Paik, and William M. Sage), Amer. L. & Econ. Rev. (2012), doi: 10.1093/aler/ahs017.*

19.    "Will Tort Reform Bend the Cost Curve? Evidence from Texas" (with Bernard S. Black, David A. Hyman, Myungho Paik), 9 J. Empirical Legal Stud. 173-216 (2012).*

20.    "O'Connell Early Settlement Offers: Toward Realistic Numbers and Two-Sided Offers," 7 J. Empirical Legal Stud. 379 (2010) (with Bernard S. Black and David A. Hyman).*

21.    "The Effects of 'Early Offers' on Settlement: Evidence From Texas Medical Malpractice Cases, 6 J. Empirical Legal Stud. 723 (2009) (with David A. Hyman and Bernard S. Black).*

22.    "Estimating the Effect of Damage Caps in Medical Malpractice Cases: Evidence from Texas," 1 J. Legal Analysis 355 (2009) (with David A. Hyman, Bernard S. Black, and William M. Sage) (inaugural issue).*

23.    "The Impact of the 2003 Texas Medical Malpractice Damages Cap on Physician Supply and Insurer Payouts: Separating Facts from Rhetoric," 44 The Advocate (Texas) 25 (2008) (with Bernard S. Black and David A. Hyman) (invited symposium).

24.    "Malpractice Payouts and Malpractice Insurance: Evidence from Texas Closed Claims, 1990-2003," 3neva Papers on Risk and Insurance: Issues and Practice 177-192 (2008) (with Bernard S. Black, David A. Hyman, William M. Sage and Kathryn Zeiler).*

25.    "Physicians' Insurance Limits and Malpractice Payments: Evidence from Texas Closed Claims 1990-2003," 36 J. Legal Stud. S9 (2007) (with Bernard S. Black, David A. Hyman, William M. Sage, and Kathryn Zeiler).*

26.    "Do Defendants Pay What Juries Award? Post-Verdict Haircuts in Texas Medical Malpractice Cases, 1988-2003," J. Empirical Legal Stud. 3-68 (2007) (with Bernard S. Black, David A. Hyman, William M. Sage, and Kathryn Zeiler).*

27.    "Stability, Not Crisis: Medical Malpractice Claim Outcomes in Texas, 1988-2002," 2 J. Empirical Legal Stud. 207–259 (July 2005) (with Bernard S. Black, David A. Hyman, and William S. Sage).*

# CHARLES SILVER

csilver@mail.law.utexas.edu (preferred contact method)
Papers on SSRN at: http://ssrn.com/author=164490

## Empirical Studies of the Law Firms and Legal Services

28. "Medical Malpractice Litigation and the Market for Plaintiff-Side Representation: Evidence from Illinois," 13 J. Empirical Stud. 1 (forthcoming 2016) (with David A. Hyman, Mohammad Rahmati, Bernard S. Black)*

29. "The Economics of Plaintiff-Side Personal Injury Practice," U. Ill. L. Rev. 1563 (2015) (with Bernard S. Black and David A. Hyman).

30. "Access to Justice in a World without Lawyers: Evidence from Texas Bodily Injury Claims," 37 Fordham Urb. L. J. 357 (2010) (with David A. Hyman) (invited symposium).

31. "Defense Costs and Insurer Reserves in Medical Malpractice and Other Personal Injury Cases: Evidence from Texas, 1988-2004," 10 Amer. Law & Econ. Rev. 185 (2008) (with Bernard S. Black, David A. Hyman, and William M. Sage).*

## Attorneys' Fees—Empirical Studies and Policy Analyses

32. "The Mimic-the-Market Method of Regulating Common Fund Fee Awards: A Status Report on Securities Fraud Class Actions," RESEARCH HANDBOOK ON REPRESENTATIVE SHAREHOLDER LITIGATION, Sean Griffith, Jessica Erickson, David H. Webber, and Verity Winship, Eds. (forthcoming 2017).

33. "Is the Price Right? An Empirical Study of Fee-Setting in Securities Class Actions," 115 Columbia L. Rev. 1371 (2015) (with Lynn A. Baker and Michael A. Perino).

34. "Regulation of Fee Awards in the Fifth Circuit," 67 The Advocate (Texas) 36 (2014) (invited submission).

35. "Setting Attorneys' Fees In Securities Class Actions: An Empirical Assessment," 66 Vanderbilt L. Rev. 1677 (2013) (with Lynn A. Baker and Michael A. Perino).

36. "The Quasi-Class Action Method of Managing Multi-District Litigations: Problems and a Proposal," 63 Vanderbilt L. Rev. 107 (2010) (with Geoffrey P. Miller).

37. "Incentivizing Institutional Investors to Serve as Lead Plaintiffs in Securities Fraud Class Actions," 57 DePaul L. Rev. 471 (2008) (with Sam Dinkin) (invited symposium), reprinted in L. Padmavathi, Ed., SECURITIES FRAUD: REGULATORY DIMENSIONS (2009).

38. "Reasonable Attorneys' Fees in Securities Class Actions: A Reply to Mr. Schneider," 20 The NAPPA Report 7 (Aug. 2006).

39. "Dissent from Recommendation to Set Fees Ex Post," 25 Rev. of Litig. 497 (2006).

40. "Due Process and the Lodestar Method: You Can't Get There From Here," 74 Tul. L. Rev. 1809 (2000) (invited symposium).

41.  "Incoherence and Irrationality in the Law of Attorneys' Fees," 12 Tex. Rev. of Litig. 301 (1993).

42.  "Unloading the Lodestar: Toward a New Fee Award Procedure," 70 Tex. L. Rev. 865 (1992).

43.  "A Restitutionary Theory of Attorneys' Fees in Class Actions," 76 Cornell L. Rev. 656 (1991).

### Liability Insurance and Insurance Defense Ethics

44.  "The Treatment of Insurers' Defense-Related Responsibilities in the Principles of the Law of Liability Insurance: A Critique," 68 Rutgers U. L. Rev. 83 (2015) (with William T. Barker) (symposium issue).

45.  "The Basic Economics of the Duty to Defend," in D. Schwarcz and P. Siegelman, eds., RESEARCH HANDBOOK IN THE LAW & ECONOMICS OF INSURANCE 438-460 (2015).*

46.  "Insurer Rights to Limit Costs of Independent Counsel," ABA/TIPS Insurance Coverage Litigation Section Newsletter 1 (Aug. 2014) (with William T. Barker).

47.  "Litigation Funding Versus Liability Insurance: What's the Difference?," 63 DePaul L. Rev. 617 (2014) (invited symposium).

48.  "Ethical Obligations of Independent Defense Counsel," 22:4 Insurance Coverage (July-August 2012) (with William T. Barker), available at http://apps.americanbar.org/litigation/committees/insurance/articles/julyaug2012-ethical-obligations-defense-counsel2.html.

49.  "The Impact of the Duty to Settle on Settlement: Evidence From Texas," 8 J. Empirical Leg. Stud. 48-84 (2011) (with Bernard S. Black and David A. Hyman).*

50.  "When Should Government Regulate Lawyer-Client Relationships? The Campaign to Prevent Insurers from Managing Defense Costs," 44 Ariz. L. Rev. 787 (2002) (invited symposium).

51.  "Defense Lawyers' Professional Responsibilities: Part II—Contested Coverage Cases," 15 G'town J. Legal Ethics 29 (2001) (with Ellen S. Pryor).

52.  "Defense Lawyers' Professional Responsibilities: Part I—Excess Exposure Cases," 78 Tex. L. Rev. 599 (2000) (with Ellen S. Pryor).

53.  "Flat Fees and Staff Attorneys: Unnecessary Casualties in the Battle over the Law Governing Insurance Defense Lawyers," 4 Conn. Ins. L. J. 205 (1998) (invited symposium).

## CHARLES SILVER

csilver@mail.law.utexas.edu (preferred contact method)
Papers on SSRN at: http://ssrn.com/author=164490

54.    "The Lost World: Of Politics and Getting the Law Right," 26 Hofstra L. Rev. 773 (1998) (invited symposium).

55.    "Professional Liability Insurance as Insurance and as Lawyer Regulation: A Comment on Davis, Institutional Choices in the Regulation of Lawyers," 65 Fordham L. Rev. 233 (1996) (invited symposium).

56.    "All Clients are Equal, But Some are More Equal than Others: A Reply to Morgan and Wolfram," 6 Coverage 47 (1996) (with Michael Sean Quinn).

57.    "Are Liability Carriers Second-Class Clients? No, But They May Be Soon-A Call to Arms against the Restatement of the Law Governing Lawyers," 6 Coverage 21 (1996) (with Michael Sean Quinn).

58.    "The Professional Responsibilities of Insurance Defense Lawyers," 45 Duke L. J. 255 (1995) (with Kent D. Syverud); reprinted in IX INS. L. ANTHOL. (1996) and 64 Def. L. J. 1 (Spring 1997).

59.    "Wrong Turns on the Three Way Street: Dispelling Nonsense about Insurance Defense Lawyers," 5-6 Coverage 1 (Nov./Dec.1995) (with Michael Sean Quinn).

60.    "Introduction to the Symposium on Bad Faith in the Law of Contract and Insurance," 72 Tex. L. Rev. 1203 (1994) (with Ellen Smith Pryor).

61.    "Does Insurance Defense Counsel Represent the Company or the Insured?" 72 Tex. L. Rev. 1583 (1994); reprinted in Practicing Law Institute, INSURANCE LAW: WHAT EVERY LAWYER AND BUSINESSPERSON NEEDS TO KNOW (1998).

62.    "A Missed Misalignment of Interests: A Comment on *Syverud, The Duty to Settle*," 77 Va. L. Rev. 1585 (1991); reprinted in VI INS. L. ANTHOL. 857 (1992).

### Class Actions, Mass Actions, and Multi-District Litigations

63.    "What Can We Learn by Studying Lawyers' Involvement in Multidistrict Litigation?  A Comment on *Williams, Lee, and Borden, Repeat Players in Federal Multidistrict Litigation*," 5 J. of Tort L. 181 (2014), DOI: 10.1515/jtl-2014-0010 (invited symposium).

64.    "The Responsibilities of Lead Lawyers and Judges in Multi-District Litigations," 79 Fordham L. Rev. 1985 (2011) (invited symposium).

65.    "The Allocation Problem in Multiple-Claimant Representations," 14 S. Ct. Econ. Rev. 95 (2006) (with Paul Edelman and Richard Nagareda).*

66.    "A Rejoinder to *Lester Brickman, On the Theory Class's Theories of Asbestos Litigation,"* 32 Pepperdine L. Rev. 765 (2005).

## CHARLES SILVER
csilver@mail.law.utexas.edu (preferred contact method)
Papers on SSRN at: http://ssrn.com/author=164490

67. "Merging Roles: Mass Tort Lawyers as Agents and Trustees," 31 Pepp. L. Rev. 301 (2004) (invited symposium).

68. "We're Scared To Death: Class Certification and Blackmail," 78 N.Y.U. L. Rev. 1357 (2003).

69. "The Aggregate Settlement Rule and Ideals of Client Service," 41 S. Tex. L. Rev. 227 (1999) (with Lynn A. Baker) (invited symposium).

70. "Representative Lawsuits & Class Actions," in B. Bouckaert & G. De Geest, eds., INT'L ENCY. OF L. & ECON. (1999).*

71. "I Cut, You Choose: The Role of Plaintiffs' Counsel in Allocating Settlement Proceeds," 84 Va. L. Rev. 1465 (1998) (with Lynn A. Baker) (invited symposium).

72. "Mass Lawsuits and the Aggregate Settlement Rule," 32 Wake Forest L. Rev. 733 (1997) (with Lynn A. Baker) (invited symposium).

73. "Comparing Class Actions and Consolidations," 10 Tex. Rev. of Litig. 496 (1991).

74. "Justice in Settlements," 4 Soc. Phil. & Pol. 102 (1986) (with Jules L. Coleman).*

### General Legal Ethics and Civil Litigation

75. "A Private Law Defense of the Ethic of Zeal" (in progress), available at http://ssrn.com/abstract=2728326.

76. "The DOMA Sideshow" (in progress), available at http://ssrn.com/abstract=2584709.

77. "Fiduciaries and Fees," 79 Fordham L. Rev. 1833 (2011) (with Lynn A. Baker) (invited symposium).

78. "Ethics and Innovation," 79 George Washington L. Rev. 754 (2011) (invited symposium).

79. "In Texas, Life is Cheap," 59 Vanderbilt L. Rev. 1875 (2006) (with Frank Cross) (invited symposium).

80. "Introduction: Civil Justice Fact and Fiction," 80 Tex. L. Rev. 1537 (2002) (with Lynn A. Baker).

81. "Does Civil Justice Cost Too Much?" 80 Tex. L. Rev. 2073 (2002).

82. "A Critique of *Burrow v. Arce*," 26 Wm. & Mary Envir. L. & Policy Rev. 323 (2001) (invited symposium).

## CHARLES SILVER

csilver@mail.law.utexas.edu (preferred contact method)

Papers on SSRN at: http://ssrn.com/author=164490

83. "What's Not To Like About Being A Lawyer?" 109 <u>Yale L. J.</u> 1443 (2000) (with Frank B. Cross) (review essay).

84. "Preliminary Thoughts on the Economics of Witness Preparation," 30 <u>Tex. Tech L. Rev.</u> 1383 (1999) (invited symposium).

85. "And Such Small Portions: Limited Performance Agreements and the Cost-Quality/Access Trade-Off," 11 <u>G'town J. Legal Ethics</u> 959 (1998) (with David A. Hyman) (invited symposium).

86. "Bargaining Impediments and Settlement Behavior," in D.A. Anderson, ed., DISPUTE RESOLUTION: BRIDGING THE SETTLEMENT GAP (1996) (with Samuel Issacharoff and Kent D. Syverud).

87. "The Legal Establishment Meets the Republican Revolution," 37 <u>S. Tex. L. Rev.</u> 1247 (1996) (invited symposium).

88. "Do We Know Enough about Legal Norms?" in D. Braybrooke, ed., SOCIAL RULES: ORIGIN; CHARACTER; LOGIC: CHANGE (1996) (invited contribution).

89. "Integrating Theory and Practice into the Professional Responsibility Curriculum at the University of Texas," 58 <u>Law and Contemporary Problems</u> 213 (1995) (with Amon Burton, John S. Dzienkowski, and Sanford Levinson,).

90. "Thoughts on Procedural Issues in Insurance Litigation," VII INS. L. ANTHOL. (1994).

### Legal and Moral Philosophy

91. "Elmer's Case: A Legal Positivist Replies to Dworkin," 6 <u>L. & Phil.</u> 381 (1987).*

92. "Negative Positivism and the Hard Facts of Life," 68 <u>The Monist</u> 347 (1985).*

93. "Utilitarian Participation," 23 <u>Soc. Sci. Info.</u> 701 (1984).*

### Practice-Oriented Publications

94. "Your Role in a Law Firm: Responsibilities of Senior, Junior, and Supervisory Attorneys," in F.W. Newton, ed., A GUIDE TO THE BASICS OF LAW PRACTICE (3D) (Texas Center for Legal Ethics and Professionalism 1996).

95. "Getting and Keeping Clients," in F.W. Newton, ed., A GUIDE TO THE BASICS OF LAW PRACTICE (3D) (Texas Center for Legal Ethics and Professionalism 1996) (with James M. McCormack and Mitchel L. Winick).

96. "Advertising and Marketing Legal Services," in F.W. Newton, ed., A GUIDE TO THE BASICS OF LAW PRACTICE (Texas Center for Legal Ethics and Professionalism 1994).

## CHARLES SILVER
csilver@mail.law.utexas.edu (preferred contact method)
Papers on SSRN at: http://ssrn.com/author=164490

97.    "Responsibilities of Senior and Junior Attorneys," in F.W. Newton, ed., A GUIDE TO THE BASICS OF LAW PRACTICE (Texas Center for Legal Ethics and Professionalism 1994).

98.    "A Model Retainer Agreement for Legal Services Programs: Mandatory Attorney's Fees Provisions," 28 Clearinghouse Rev. 114 (June 1994) (with Stephen Yelenosky).

### Miscellaneous

99.    "Public Opinion and the Federal Judiciary: Crime, Punishment, and Demographic Constraints," 3 Pop. Res. & Pol. Rev. 255 (1984) (with Robert Y. Shapiro).*

## PERSONAL

Married to Cynthia Eppolito, PA; Daughter, Katherine; Step-son, Mabon.

Consults with attorneys and serves as an expert witness on subjects in his areas of expertise.

First generation of family to attend college.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 14, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

<u>*/s/ Marc M. Seltzer*</u>
Marc M. Seltzer
**SUSMAN GODFREY L.L.P.**