## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : |
| _____ | : Case No.: 12-MD-02311 |
| | : Honorable Marianne O. Battani |
| ALL PARTS | : |
| _____ | : <u>2:12-MD-02311-MOB-MKM</u> |
| | : |
| THIS RELATES TO: ALL CASES | : **Oral Argument Requested** |
| _____ | : |

**CERTAIN NON-PARTY ORIGINAL EQUIPMENT MANUFACTURERS' OBJECTION TO ORDER REGARDING THE PARTIES' RENEWED MOTION TO COMPEL DISCOVERY FROM CERTAIN NON-PARTY ORIGINAL EQUIPMENT MANUFACTURERS AND THEIR AFFILIATED ENTITIES**

1

## <u>ISSUES PRESENTED</u>

1.    Whether the Court should award non-party subpoena recipients attorney fees and costs associated with their efforts to narrow a monumentally broad subpoena, when the Serving Parties failed to use reasonable efforts to avoid imposing undue burden and expense.

2.    Whether the Court should include non-attorney costs associated with post-deposition follow-up questions as part of the cost-shifting ordered.

3.    Whether the Court should order that attorneys' fees and costs associated with document collection and production be shifted to the Serving Parties.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 26

Fed. R. Civ. P. 45

*American Federation of Musicians of the United States and Canada v. Skodam Films, LLC,* 313 F.R.D. 39 (N.D. Tex. 2015).

*Straight Path IP Group, Inc. v. Blackberry Limited, et al.*, No. C 14-80150, 2014 WL 3401723 (N.D. Cal. July 8, 2014).

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................2

II.   THE SUBPOENA'S PRE-SERVICE JOURNEY THROUGH THE COURT .................3

III.  THE Subpoenaed entities EXPENDED EXTENSIVE EFFORTS TO ADVANCE THEIR 'VITAL INTEREST' IN MINIMIZING THE BURDEN AND EXPENSE OF PRODUCTION ......................................................................................................5

IV.   THE subpoenaed entities' request for relief under Rule 45 ...............................8

V.    LEGAL STANDARD GOVERNING REVIEW OF SPECIAL MASTERS' ORDERS....8

VI.   THE COURT SHOULD AWARD THE subpoenaed entities ATTORNEY FEES ASSOCIATED WITH NARROWING THE SCOPE OF THE MONUMENTALLY BROAD SUBPOENA .....................................................................................9

VII.  THE COURT SHOULD INCLUDE NON-ATTORNEY COSTS RELATED TO POST-DEPOSITION FOLLOW-UP QUESTIONS AS PART OF THE COST-SHIFTING ORDERED..........................................................................................................13

VIII. THE COURT SHOULD ORDER THAT ATTORNEYS' FEES RELATED TO DOCUMENT COLLECTION AND PRODUCTION BE SHIFTED TO THE SERVING PARTIES .......................................................................................................15

IX.   CONCLUSION ................................................................................................17

## TABLE OF AUTHORITIES

**CASES**                                                       **Page(s)**

*American Federation of Musicians of the United States and Canada v. Skodam Films, LLC*,
313 F.R.D. 39 (N.D. Tex. 2015) ............................................................................ 10, 11

*Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ................................................. 9

*In re Am. Hous. Found.*, No. 09-20232-RLJ-11, 2013 WL 2422706, at *2 (N.D. Tex. 2013) ..... 16

*In re Am. Nurses Assn.*, No. 15-1481, 2016 WL 1381352, at *2 (4th Cir. 2016) ......................... 16

*In re Subpoena to Schrader-Bridgeport Int'l, Inc.*, Misc. Case No. 16-50611, 2016 WL
6662471, *1 (E.D. Mich. Aug. 26, 2016) ......................................................................... 9

*Kisser v. Coalition for Religious Freedom*, No. 95-MC-0174, 1995 WL 590169 (E.D. Pa.
1995) ................................................................................................................................ 16

*MSC Software Corp. v. Altair Eng'g, Inc.*, No. 07-12807, 2016 WL 6677936, at *2
(E.D. Mich. Nov. 14, 2016) ............................................................................................. 9

*Pac. Gas & Elec. Co. v. Lynch*, No. C-01-3023 VRW, 2002 WL 32812098, at *3 (N.D. Cal.
2002) ................................................................................................................................ 16

*Straight Path IP Group, Inc. v. Blackberry Limited, et al.*, No. C 14-80150,
2014 WL 3401723 (N.D. Cal. July 8, 2014) .................................................................. 12

*United States v. Blue Cross Blue Shield of Michigan*, No. 10-CV-14155, 2012 WL 4513600,
at *7 (E.D. Mich. Oct. 1, 2012) ...................................................................................... 16

*United States v. Blue Cross Blue Shield of Michigan*, No. 10-CV-14155, 2012 WL 4838987,
at *2 (E.D. Mich. Oct. 11, 2012) .................................................................................... 16

**STATUTES**                                                       Page(s)

Fed. R. Civ. P. 26 ........................................................................................................... 2, 3, 17

Fed. R. Civ. P. 45 ...................................................................................................... *Passim*

Fed. R. Civ. P. 53 ................................................................................................................ 8, 9

iv

I.   **INTRODUCTION**

On July 20, 2015, certain parties to MDL 2311 ("Serving Parties") served a number of nonparty automobile original equipment manufacturers ("OEM") with what the Special Master later described as likely the largest document production subpoena in the history of the United States federal court system. The subpoena in its original form ("Subpoena") – which contained 36 requests in the body, 18 in Attachment B, and more than 100 subparts – sought detailed information and data on 56 specific automotive parts and all vehicles manufactured from 1992-2014. As the Special Master noted, "[t]he original subpoena directed to the OEMs was all encompassing and breathtaking in the scope." (Dec. 9, 2016 Hrg. Tr. at 27 (ECF 1572)).

Rule 45 provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." (Fed. R. Civ. P. 45(d)(1)). The Subpoena clearly did not comply. As the Special Master noted, it has taken the Parties and the OEMs engaged numerous meet and confer sessions over more than a year of effort to narrow the "breathtaking" Subpoena. (Dec. 9, 2016 Hrg. Tr. at 27-28 (ECF 1572)).

The "breathtaking" scope of the Subpoena necessitated "discovery on discovery" 30(b)(6) depositions, two motions to compel, the retention of experts, and three days of mediation. Through that time, the subpoenaed entities ("SSE") have been forced to retain outside counsel and divert the time and attention of employees with multiple non-legal job functions to narrow the scope of a subpoena that should have never been served in its existing form.

While the Special Master's General Order provides for 60% cost shifting on the "discovery on discovery" 30(b)(6) depositions and other cost shifting for document collection and production, it did not require the Serving Parties to pay for any of the expert costs, employee time, and attorneys' fees necessitated by the Serving Parties' failure to comply with Rules 26 and

45. The undersigned SSEs ("Objecting SSEs") respectfully request that the Court right this wrong by reversing the Special Master's refusal to afford them relief under Rule 45(d)(1). Specifically, the Objecting SSEs request that – in light of the Serving Parties' failure to take reasonable efforts to avoid imposing undue burden or expense – the Court award the SSEs a portion of their attorney fees and costs (including employee time) associated with their attempts to narrow the Subpoena to comport with Rules 26 and 45.

## II.   THE SUBPOENA'S PRE-SERVICE JOURNEY THROUGH THE COURT

Before the Serving Parties even served the Subpoena on the SSEs, the Serving Parties were aware that its breadth and scope were controversial, highly contested, and would inevitably result in self-protective arguments (and litigation if necessary) by the intended non-party recipients. Although the Objecting SSEs were not involved in the litigation until they received the Subpoena in July 2015, the record reflects the following:

At the Status Conference held on January 28, 2015, the Court directed that the Direct Purchaser Plaintiffs ("DPP") be allowed to comment on a subpoena to OEMs being drafted by the Defendants and Indirect Purchaser Plaintiffs ("IPP"). *See Direct Purchaser Plaintiffs' Motion to Limit Subpoena to OEMs* (ECF 967 p. 7). On April 14, 2015, DPPs received a copy of the proposed Uniform OEM Subpoena (*id.*, Ex. 1) which was substantively identical to the subpoena eventually served on the SSEs. The DPPs submitted comments to Special Master Esshaki on April 28, 2015, detailing "multiple concerns regarding the Subpoena's relevance, scope, and burden." *Id.* Ex. 2, p. 1. On May 13, 2015, the DPPs filed a motion to limit the proposed subpoena (ECF 967), arguing, among other things, that the subpoena was facially overbroad and unduly burdensome. The DPPs stated that the OEMs would face a "monumental task" in identifying, reviewing, and producing responsive information. *Id.* p. 17. DPPs also argued that many of the requests were vague and ambiguous, "which directly contradicts this Court's

guidance for ESI discovery …. Indeed, it is even difficult to discern the discovery actually sought by many vague and ambiguous requests in the Uniform OEM subpoena, which seek data or documents 'sufficient to show' or 'sufficient to identify' particular information." *Id.* Such uncertainty "invites disputes that will require the intervention of lawyers, and law firms, and the time and expense invariably associated with both." *Id.*

Ford Motor Company, then the only OEM that was a party to the MDL, also responded in opposition to the proposed uniform OEM subpoena, seeking to use its own anticipated experience "to assist the Court and the Special Master in understanding the enormous and extremely unfair burden that the proposed OEM Subpoena would impose and the significant disruption it would cause the automotive industry." (ECF 977 pp. 2-3).

Various Parties responded in opposition to the DPPs' motion, arguing in essence that they were complying with the Court's mandate to minimize burden on the OEMs by serving a single subpoena demanding a massive swath of information, as opposed to several subpoenas collectively demanding the same massive swath of information. For example, the IPPs argued:

> In an effort to streamline third-party discovery in a case with such a massive scope, and to minimize the burden on third-party [OEMs] such as Toyota, Honda, Nissan, and Subaru, who were the focus of the Defendants' conspiratorial conduct, the Court directed the various groups of plaintiffs in the indirect purchaser actions … and defendants in all indirect purchaser actions … (collectively the 'Serving Parties') to coordinate to draft one, comprehensive subpoena … to be served on the OEMs. The Serving Parties did just that – they spent substantial time and effort, working together in a collegial manner to confer and *consolidate their requests into one comprehensive document* …. OEMs will benefit by receiving a subpoena that includes the requests of all Serving Parties in one document, by having the opportunity to meet and confer with all Serving Parties at one time, and by only having to search for and produce responsive information one time for all indirect purchaser actions.

(ECF 979 pp. 6-7 (emphasis added)). Similarly, the Defendants argued that "many of DPPs' objections ironically target aspects of the Subpoenas that were designed to minimize the burdens on OEMs. For example, DPPs now complain that the Subpoenas seek information relating to

every auto part at issue in the MDL … but ignore that the Subpoenas were crafted to be comprehensive, consistent with the Court's clear guidance that coordinated and comprehensive requests are preferable to piecemeal requests." (ECF 984 p. 28). At their core, however, these objections spoke only to the *procedural* aspects of presenting their collective requests: one subpoena, or several; one large group with which to negotiate, or several smaller groups. The objections did not demonstrate or even speak to any commitment by the Serving Parties to curate their requests to minimize the associated *substantive* burden. And that, surely, was what the Court intended.

The Special Master issued an order on June 4, 2015, declining to analyze the parties' various positions and instead determining that the objections were premature and the DPPs lacked standing to assert them. (ECF 992). Rather than ruling on Subpoena's breadth and burden and enforcing the Serving Parties' affirmative Rule 45(d)(1) obligation to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," the Special Master flipped the duty, prospectively requiring the nonparty SSEs to "object to the offending portions of the subpoena," and negotiate as necessary with the Serving Parties to "narrow the scope" and reach an agreement "for the production of highly critical and relevant documents in this litigation." *Id.* at 5. The Special Master rightly anticipated that the OEMs would be forced to engage in-house and outside counsel to protect their "vital interest" in limiting the burden and expense of compliance. *Id.* Undeterred by this spot-on preview of the eighteen months to come, the Serving Parties served the Subpoena on the SSEs shortly thereafter.

## III. THE SUBPOENAED ENTITIES EXPENDED EXTENSIVE EFFORTS TO ADVANCE THEIR 'VITAL INTEREST' IN MINIMIZING THE BURDEN AND EXPENSE OF PRODUCTION

The SSEs expended significant time and resources after service attempting to narrow the scope of the Subpoena to bring it into compliance with the Federal Rules: proportional to the

needs of the case, and not unduly burdensome or expensive for the nonparty recipients. The SSEs were wrongly forced to assume this burden and carry it for nearly a year and a half. To be sure, the Serving Parties' responsibility to serve only proportional discovery that does not unduly burden the recipient exists no matter the size and scope of the case.

The SSEs drove the meet-and-confer process from the outset by proposing, coordinating, and leading a global summit conference in October 2015 to detail common concerns, describe each SSE with particularity, and provide the bases for the Serving Parties to begin to narrow the Subpoena. *Id*. at 6. The Court recognized the superiority of this approach by noting, in response to the Serving Parties, that the SSEs' coordination "probably [was] very smart." (Jan. 20, 2016 Hrg. Tr. at 70 (ECF 1204)). The SSEs attempted to focus the Serving Parties on foundational issues such as the information already in their possession, the gaps in the record they reasonably believed they need the SSEs to fill, the efforts they have undertaken with each other to address these issues, and the relative importance of the information. (ECF 1227 Ex. 5, p. 2). The Serving Parties declined to modify the Subpoena as to the "Core SSEs" (including the Objecting SSEs) or to address the information already in their possession. *Id*. Ex. 8, p. 4 (demanding a complete or phased production of all responsive information).

In light of this failure to respond, the SSEs again contacted the Serving Parties and described how the information sought was overbroad, irrelevant, and largely duplicative. *Id*. Ex. 9. Waiting almost four weeks, the Parties responded the day before Thanksgiving with an offer they claimed "substantially narrow[]" the Subpoena's scope. *Id*. Ex. 10. The purported concessions did nothing to reduce the burden or expense associated with compliance: although the number of subparts decreased, the substance did not. The remaining requests duplicated 24 "eliminated" requests and substantially duplicated 13 more. *Id*. Ex. 3 (depicting the cosmetic-

only changes to the "narrowed" Subpoena). Other eliminated requests were so far removed from the case that the Serving Parties never attempted to justify them.

Several of the smaller SSEs proposed that the Serving Parties hold the Subpoena in abeyance as to them because the larger OEM SSEs offered to produce certain reasonably-accessible transactional data for up to the last ten (10) years, and omitting the smaller SSEs' data would not impact any statistical or regression models relevant to any issue in this case. *Id*. Ex. 11. The Serving Parties offered no meaningful response, and just noted that the smaller SSEs have recognizable names. *Id*. Exs. 11, 12. The Serving Parties responded to this proposal with a short declaration of "impasse" on Christmas Eve. *Id*. Ex. 12. The SSEs tried again to engage the Serving Parties (*id*. Ex. 13), who responded two weeks later by reaffirming their refusal to negotiate further. *Id*. Ex. 14. The Serving Parties' original motion to compel compliance with the Subpoena followed on January 19, 2016. (ECF 1185).

The Special Master conducted a mediation and hearing on the original motion, during which he stated that "there simply isn't sufficient information before me today to make a reasonable decision" (March 24, 2016 Hrg. Tr. at 15 (ECF 1270)). In other words, the parties failed to satisfy their burden of persuasion. Instead of denying the motion, however, the Special Master ordered certain of the SSEs to provide deposition testimony, limited to the availability and burden of producing information in response to the Subpoena. *Id*. These SSEs (including the Objecting SSEs) produced company witnesses for deposition over the following months, and communicated with the Serving Parties after their respective depositions.

Following the depositions, the Serving Parties sent the SSEs a "narrowed list" of the types of transactional data and documents the Serving Parties sought from the SSEs. Notably, the purportedly narrowed lists simply recited each type of data or document that was referenced

during the depositions. The SSEs and the Serving Parties continued to engage in additional communications before the Serving Parties filed their renewed motion to compel on November 7, 2016.

## IV.   THE SUBPOENAED ENTITIES' REQUEST FOR RELIEF UNDER RULE 45

In their oppositions to the Serving Parties' renewed motion to compel, the SSEs requested that the Court order the Serving Parties to pay the SSEs attorney fees and costs (including employee time) associated with its efforts to narrow the Subpoena. While the Special Master did order the Serving Parties to pay 60% of the OEMs' costs associated with the Rule 30(b)(6) depositions (ECF 1584 pp. 6-7), he orally denied SIA's request for relief under Rule 45(d) at the December 9, 2016 hearing ("Ms. Metzger, please, you can bring it up with Judge Battani on appeal …. It is not – those costs are not going to be allocated or shifted in any manner to the moving parties, the legal fees incurred in connection with the attempt to narrow down the subpoena."). (Dec. 9, 2016 Hrg. Tr. at 60 (ECF 1572)). The Court's subsequent general order on the renewed motion to compel, entered January 4, 2017, addressed the SSEs' fees and costs only with respect to the 30(b)(6) depositions, and the costs of compliance with the General Order and the OEM-specific orders. *Special Master's Order Regarding the Parties' Renewed Motion to Compel Discovery From Certain Non-Party Original Equipment Manufacturers and Their Affiliated Entities* (ECF 1584 pp. 7-8) (the "General Order"). The General Order also excluded attorneys' fees and costs related to the forthcoming document collection and production by the SSEs.

## V.   LEGAL STANDARD GOVERNING REVIEW OF SPECIAL MASTERS' ORDERS

Federal Rule of Civil Procedure 53 "establishes the standard of review for a district court in reviewing findings of fact and conclusions of law made or recommended by a Special

Master." *MSC. Software Corp. v. Altair Eng'g, Inc.*, 2016 WL 6677936, at *2 (E.D. Mich. Nov. 14, 2016) (citing Rule 53(f)(3)). That rule provides that "[t]he court must decide de novo all objections to findings of fact made or recommended by a master" (Fed. R. Civ. P. 53(f)(3)), and that "[t]he court must decide de novo all objections to conclusions of law made or recommended by a master" (Fed. R. Civ. P. 53(f)(4)). Accordingly, with the exception of procedural rules (Fed. R. Civ. P. 53(f)(5)), the Court owes no deference to the Special Master. Here, where the Special Master not only made erroneous conclusions of law but also failed to make the necessary findings of fact to support his ruling, the Special Master's determination should be overruled on a de novo basis.

## VI. THE COURT SHOULD AWARD THE SUBPOENAED ENTITIES ATTORNEY FEES ASSOCIATED WITH NARROWING THE SCOPE OF THE MONUMENTALLY BROAD SUBPOENA

Nonparties are entitled to special consideration when assessing burden. *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("parties to a law suit must accept [discovery's] travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations"). As Magistrate Stafford of the Southern Division recently noted in recommending denial of a motion to compel compliance with a document production subpoena:

> Rule 45 requires a party serving a subpoena on a nonparty to 'take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. This court is required to enforce that duty, and must quash or modify a subpoena that would subject the nonparty to an undue burden. [Recipient's] nonparty status is a relevant factor, as Rule 45 is intended to prohibit parties from shifting their significant litigation expenses to nonparties.

*In re Subpoena to Schrader-Bridgeport Int'l, Inc.*, Misc. Case No. 16-50611, Case No. 3:14-cv-01226-MAD-DEP, 2016 WL 6662471, *1 (E.D. Mich. Aug. 26, 2016) (internal citations and quotations omitted).

The *Schrader-Bridgeport* subpoena sought only fifteen categories of documents over a five-year time period (*id.*), considerably fewer documents and a substantially shorter time period than those at issue here. Further, the subpoena proponent "somewhat narrowed" the requests after an attorney conference. *Id.* Nonetheless, the court found the subpoena was "still exhaustive" and therefore would impose an undue burden on the nonparty recipient. *Id.* Addressing breadth, the court noted that the recipient "would have to comb through its electronic and physical files for the fifteen separate categories of broadly defined 'documents.'" *Id.* at *2. The court also found the five-year time period relevant to burden. *Id.* Significantly, the court reasoned that "instead of describing documents with particularity ... [the proponent] casted [sic] an unacceptably wide net." *Id.* In sum, the court found the proponent had "altogether failed" to fulfill its duty to avoid imposing undue burden or expense on the non-party recipient. *Id.*

The District Court for the Northern District of Texas recently held that a nonparty subpoena recipient was entitled to recover attorney fees associated with responding to a motion to compel production pursuant to a facially overbroad and unduly burdensome subpoena. *American Federation of Musicians of the United States and Canada v. Skodam Films, LLC,* 313 F.R.D. 39 (N.D. Tex. 2015). In that case, the subpoena recipient – like the SSEs here – argued that the 46-page subpoena commanded production "of any and all documents and written communications, including emails, related in any way [to the subject matter of the litigation]," effectively seeking "every single document" the nonparty recipient had within its custody or control. *Id.* at *47. The *American Federation* litigation involved a movie, and the nonparty subpoena sought, for example, "[a]ll documents relating to" development, preproduction, and production of the movie; "[a]ll documents relating to" the scoring, casting, directing, distribution, and financing of the movie; "[a]ll documents relating to the copyright" for the movie, "including,

but not limited to," applications, registrations, transfer agreements, and assignments; and "[a]ll invoices, bills, receipts, or expense reimbursement forms relating to the production or scoring of" the movie. *Id.* The requests in the instant Subpoena mirror the tenor, breadth, and scope of the contested *American Federation* requests.

Despite serving a nonparty subpoena of this breadth and moving to compel the nonparty recipient's compliance, the *American Federation* serving party "candidly" admitted during briefing that "while most documents within the Subpoena's specifications are of central relevance … the relevance of other documents may be more attenuated." *Id.* at *53. In essence, the serving party narrowed its request, but only after engaging the nonparty in litigation.  The court agreed with serving party's "modified position," and determined the subpoena was facially overbroad to the extent it was not limited to this curated set of topics or categories of documents. *Id.*

As in the instant case, the *American Federation* subpoena recipient asked the court to require the serving party to pay its costs, under Rule 45(d), associated narrowing the scope of the subpoena – there, responding to the serving party's motion to compel production. *Id.* at *57. While the court determined that *cost-shifting* was not appropriate because the nonparty had an interest in the case and could bear the costs of production, and because the case was not of public importance, it nonetheless held that *"some fee shifting is warranted under Rule 45(d)(1)."* *Id.* at *58 (emphasis added). In so holding, the court emphasized the serving party's "duty" to avoid imposing undue burden or expense on a subpoena recipient. *Id.* The court expressly rejected the serving party's arguments that it made "repeated efforts" to avoid imposing burden, that the nonparty recipient did not respond to the serving party's invitation for it to articulate "*any* burden hindering its compliance," and that the nonparty steadfastly refused to provide any date by which it would comply with any portion of the subpoena. *Id.* Rather, it focused on the fact that an

11

award of reasonable attorney fees is "mandated" when the serving party fails to take reasonable steps to avoid imposing undue burden or expense. *Id*. The court determined that the serving party did not comply with Rule 45 based on the breadth of the documents sought and that the serving party did not offer to narrow the requests before engaging the recipient in motion practice. *Id*. Finally, the court emphasized that the serving party's "serving and pressing for an order requiring full compliance with an order that requests essentially every document related to the [subject movie] that [the nonparty] has does not comply with Rule 45(d)(1)'s requirements." *Id*. Accordingly, the court ordered the serving party to pay the nonparty recipient's reasonable attorney fees incurred in responding to the motion to compel, including preparing for and participating in oral argument. *Id*. at 58-59. The court further ordered the serving party and nonparty recipient to meet and confer on the amount of reasonable attorney fees. *Id*. at 59.

The District Court for the Northern District of California recently ordered a serving party to pay the recipient non-party's attorney fees and expenses associated with a motion to compel compliance with an unduly burdensome document production subpoena. *Straight Path IP Group, Inc. v. Blackberry Limited, et al.*, No. C 14-80150, 2014 WL 3401723 (N.D. Cal. July 8, 2014). In this case, the parties' meet-and-confer efforts failed and the serving party moved to compel on a "series of so-called 'narrowed' discovery requests" that the court still found to be oppressive. *Id*. at *6. After finding that the serving party "failed to make a good-faith effort to take reasonable steps to serve a subpoena that avoids imposing undue burden and expense on" the nonparty, the court ordered the serving party to pay the nonparty's attorney fees and expenses associated with the motion to compel. *Id*. at 7.

There are factual differences in the *Straight Path* case that perhaps make a more obvious case for Rule 45(d)(1) relief.  Regardless, however, the *Straight Path* court makes an important

point that is equally applicable to the instant Subpoena: litigants should not be encouraged to "demand the moon thinking they can always fall back on something reasonable. They should be reasonable from the start." *Id.* at *5. The Special Master's refusal to order the Serving Parties to pay the SSEs' reasonable attorney fees and other costs (including employees' time) in working to narrow the scope of the Subpoena would do just that – encourage litigants to shoot for the moon at a nonparty's expense. In this case, the Serving Parties knew – or at least were on notice – that the Subpoena would invite expensive and time-consuming efforts to protect the recipients' "vital interest" in appropriately-limited discovery. They nonetheless served it on the SSEs, inviting (and, it can fairly be said, assuming the risk of) a request to be reimbursed fairly for the associated costs. The Special Master abused his discretion in refusing to order the Serving Parties to pay these costs as Rule 45(d)(1) requires. Even if it were proper for the Special Master to refuse to shift all of these costs to the Serving Parties, it was error to not include these costs as part of the 60% of costs to be borne by the Serving Parties for time relating to the deposition process.

## VII. THE COURT SHOULD INCLUDE NON-ATTORNEY COSTS RELATED TO POST-DEPOSITION FOLLOW-UP QUESTIONS AS PART OF THE COST-SHIFTING ORDERED

The Special Master's order provides that the Serving Parties shall pay 60% of the SSEs' costs relating to the 30(b)(6) depositions, including "employee time for preparing and participating in the depositions," as well as outside counsel attorneys' fees. General Order at 7-8. At the December 9 hearing, the Special Master described the General Order as covering "the employee time for participating" in the 30(b)(6) deposition process. (Tr. of Dec. 9, 2016 hearing at 62:5-6). This is consistent with this Court's comment directed at Plaintiffs' counsel regarding expenses for employee time at the depositions that "I think you are going to end up paying for it so you should keep that in mind." (June 23, 2016 Hrg. Tr. at 66 (ECF 1405)). The 60% share of

costs that the Serving Parties will bear should also apply to the substantial employee time spent researching and responding to additional questions posed by the Serving Parties after the depositions.

The Special Master ordered that the 30(b)(6) depositions were to last up to fourteen hours, twice the standard length of a deposition under the Federal Rules. *Special Master's Order Regarding the Parties' Motion to Compel Discovery From Non-Party OEMs and Order Non-Party OEM Rule 30(b)(6) Depositions*. (ECF 1294 p. 6). The SSEs made their witnesses available for questioning on the five topics contained in the order for fourteen hours. Nonetheless, the Serving Parties chose to ask a number of additional questions in a series of communications with the SSEs after the depositions. Many of these questions could have been asked of the witnesses at the depositions, but the Serving Parties chose not to do so, instead asking a number of substantive questions outside the scope of the Court-ordered discovery. *See, e.g.*, *Toyota's Response to the Parties' Renewed Motion to Compel* (ECF 1526 p.5 and n.5) (filed under seal). Other follow-up requests from the Serving Parties were complicated questions requiring extensive additional research in order to respond. Those questions perhaps would have been suited to a procedure of depositions by written questions, but the Serving Parties rejected the SSEs' suggestion to proceed in that manner. Thus, responding to additional questions from the Serving Parties required employees of the SSEs to devote significant additional time on top of the significant time already spent preparing for and attending the depositions, and in essence substantially extended the time of the depositions.

The General Order is silent on cost-shifting for time spent by employees in responding to these additional questions, though a fair interpretation of the Special Master's comment that the Order should cover "the employee time for participating" is that the additional time would be

included. For the avoidance of doubt, the SSEs respectfully request that the Court modify the General Order to make explicit that the 60% of SSEs' costs relating to the 30(b)(6) depositions shifted to the Serving Parties will include the time spent by SSE employees in preparing for and responding to additional questions from the Serving Parties after the depositions. The rationale for sharing the cost of the depositions themselves is at least equally as strong for sharing the costs in responding to these questions; if anything, these costs are even more suited to being borne in part by the Serving Parties as they largely resulted from the Serving Parties' decision to ask or not ask certain questions during the course of the fourteen hours of depositions.

## VIII. THE COURT SHOULD ORDER THAT ATTORNEYS' FEES RELATED TO DOCUMENT COLLECTION AND PRODUCTION BE SHIFTED TO THE SERVING PARTIES

The General Order provides that outside counsel attorneys' fees will be included in the 60% of the SSEs' costs relating to the 30(b)(6) depositions borne by the Serving Parties, but excluded from the 70% of the SSEs' costs relating to document collection, review and production. (General Order at 6-7). There is no logical basis for excluding attorneys' fees for collection, review and production of documents – and the Special Master did not provide a rationale for that ruling. Further, excluding attorneys' fees for collection, review and production of documents is inconsistent with the Court's comment at the June 23 hearing that "the party asking for the information is the one who pays." (June 23, 2016 Hrg. Tr. at 103 (ECF 1405)). The SSEs respectfully request that the Court modify the General Order to include attorneys' fees among the costs shifted to the Serving Parties for document collection, review and production.

Third parties subject to Rule 45 subpoenas are entitled to recover their costs of compliance, including attorneys' fees. Federal Rule of Civil Procedure 45(d) provides that serving parties "must take reasonable steps to avoid imposing undue burden or expense" and that courts "must enforce this duty and impose an appropriate sanction-which may include lost

15

earnings and reasonable attorneys' fees-on a party or attorney who fails to comply." Fed. R. Civ. Proc. 45(d)(1); *see also United States v. Blue Cross Blue Shield of Michigan*, No. 10-CV-14155, 2012 WL 4513600, at *7 (E.D. Mich. Oct. 1, 2012); *United States v. Blue Cross Blue Shield of Michigan*, No. 10-CV-14155, 2012 WL 4838987, at *2 (E.D. Mich. Oct. 11, 2012) ("the court must protect the nonparty by requiring the party seeking discovery to bear at least enough of the expense to render the remainder non-significant."). Courts around the country have recognized that attorneys' fees are part of the costs of compliance in responding to a non-party subpoena. *See, e.g., In re Am. Nurses Assn.*, No. 15-1481, 2016 WL 1381352, at *2 (4th Cir. 2016) ("[W]e conclude that attorney's fees incurred by the non-party that are necessary to a discovery proceeding under Rule 45 are expenses that may be shifted to the discovery-seeking party."); *Pac. Gas & Elec. Co. v. Lynch*, No. C-01-3023 VRW, 2002 WL 32812098, at *3 (N.D. Cal. 2002) ("legal work done to facilitate compliance may also be considered a cost of compliance reimbursable under FRCP 45(c)(2)(B)"); *Kisser v. Coalition for Religious Freedom*, No. 95-MC-0174, 1995 WL 590169 (E.D. Pa. 1995) ("In complying with the subpoena, it is understandable that [the non- party] would seek the assistance of counsel [and] to disallow reimbursement would frustrate the policy of Rule 45 – protecting non-parties …."); *In re Am. Hous. Found.*, No. 15-1481, 2013 WL 2422706, at *2 (N.D. Tex. 2013) ("it is apparent that reimbursable legal fees are simply a component of the expenses incurred by the non-party in complying with the dictates of the subpoena").

Here, given the size and breadth of the subpoena and the expected SSE productions (even after the lengthy process driven by the SSEs to narrow the subpoena requests to a still-significant but manageable scope), there is no basis for excluding attorneys' fees from the cost-shifting related to document collection, review and production.

16

## IX.    <u>CONCLUSION</u>

For these reasons, the SSEs request that the Court reverse that portion of the Special Master's January 4, 2017 order denying the SSE's request for relief under Rule 45(d)(1); order the Serving Parties to pay all or at least a portion of the SSE's reasonable attorney fees and costs associated with attempting to narrow the Subpoena to comply with Rules 26 and 45, according to a formula to be determined; order that employee costs associated with responding to follow-up questions from the Serving Parties' be shifted 60% to the Serving Parties; order the Serving Parties to pay 70% of attorney fees and costs associated with document collection and production; and all other just and proper relief.

Respectfully submitted,

/s/ Kimberly C. Metzger
Kimberly C. Metzger
Thomas E. Mixdorf
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN  46282-0200
Kimberly.Metzger@icemiller.com
Thomas.Mixdorf@icemiller.com
Telephone:  (317) 236-5832
Facsimile:  (317) 592-4708

*Attorneys for Subaru of Indiana Automotive, Inc.*

17

*/s/* Michael Schaper
Michael Schaper
David B. Noland
DEBEVOISE & PLIMPTON LLP
919 Third Ave
New York, NY 10022
Tel: 212-909-6000
mschaper@debevoise.com

Thomas P. Branigan (P41774)
BOWMAN & BROOKE LLP
41000 Woodward Avenue, Ste. 200 East
Bloomfield Hills, MI  48304
Tel: 248-205-3300
tom.branigan@bowmanandbrooke.com

*Attorneys for Toyota Motor Sales USA, Inc. and
Toyota Motor Engineering & Manufacturing North
America, Inc.*

NISSAN NORTH AMERICA, INC.

By:   */s/E. Paul Cauley, Jr.*
          *One of Its Attorneys*

    */s/Anthony J. Anscombe*
        *One of Its Attorneys*

**SEDGWICK LLP**
E. Paul Cauley, Jr.
paul.cauley@sedgwicklaw.com
1717 Main Street, Suite 5400
Dallas, Texas 75201
Telephone:  469-227-8200
Facsimile:   469-227-8004

Anthony Anscombe
anthony.anscombe@sedgwicklaw.com
One North Wacker Drive, Suite 4200
Chicago, IL 60606-2841
Telephone: 312-641-9050
Facsimile: 312-641-9530

/s/ *Colin R. Kass*
Colin R. Kass
Scott M. Abeles
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 416.6800
ckass@proskauer.com
sabeles@proskauer.com

David A. Munkittrick
PROSKAUER ROSE LLP
11 Times Square
New York, New York 10036
(212) 969.3000
dmunkittrick@proskauer.com

and

/s/ *Cheryl A. Bush*
Cheryl A. Bush (P37031)
Susan McKeever (P73533)
BUSH SEYFERTH & PAIGE PLLC
3001 W. Big Beaver Road, Suite 600
Troy, MI 48084
(248) 822.7800
bush@bsplaw.com

*Attorneys for FCA US LLC*

/s/ Daniel Purcell
Daniel Purcell
Justina Sessions
Ian Kanig
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188
dpurcell@kvn.com
jsessions@kvn.com
ikanig@kvn.com

*Attorneys for Non-Party*
*HONDA*

19

By: _/s/ Adam B. Wolfson_
Adam B. Wolfson

**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
865 S. Figueroa St., 10th Floor
Los Angeles, CA  90017
Tel:  213-443-3000
Fax:  213-443-3100
adamwolfson@quinnemanuel.com

*Attorney for General Motors LLC, General Motors Company,
General Motors Financial Company, Inc., and
General Motors Holdings LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 18, 2017, I caused a copy of the foregoing *Certain Non-Party Original Equipment Manufacturers' Objection To Order Regarding the Parties' Renewed Motion To Compel Discovery from Certain Non-Party Original Equipment Manufacturers and Their Affiliated Entities,* to be electronically filed via the Court's ECF system, which will serve notification of such filing to all counsel of record for the Parties.

<u>/s/ Kimberly C. Metzger</u>
Kimberly C. Metzger