```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION
                             - - -
_____
                                  )
IN RE:   AUTOMOTIVE PARTS         )   Master File No. 12-2311
ANTITRUST LITIGATION              )   Hon. Marianne O. Battani
_____)
                                  )
IN RE: All Auto Parts Cases       )
_____)
                                  )
THIS RELATES TO:                  )
All Auto Parts Cases              )
_____)


                       TELEPHONE CONFERENCE

         BEFORE THE HONORABLE MARIANNE O. BATTANI
                 United States District Judge
           Theodore Levin United States Courthouse
               231 West Lafayette Boulevard
                     Detroit, Michigan
                   Tuesday, July 25, 2017
```

APPEARANCES:

    SHAWN M. RAITER
    **LARSON KING, L.L.P.**
        Appearing on behalf of Dealership Plaintiffs

    DAVID P. DONOVAN
    **WILMER HALE**
        Appearing on behalf of Defendants

*To obtain a copy of this official transcript, contact:*
*Robert L. Smith, Official Court Reporter*
*(313) 964-3303 • rob_smith@mied.uscourts.gov*

| | | |
|---|---|---|
| *1* | <u>TABLE OF CONTENTS</u> | |
| *2* | <u>MATTER</u> | <u>PAGE</u> |
| *3* | Telephone Conference...................................3 | |

```
 1    Detroit, Michigan
 2    Tuesday, July 25, 2017
 3    at about 1:03 p.m.
 4                         -  -  -
 5           (Court and Counsel present via telephone.)
 6           THE COURT:  Hello.  This is Judge Battani.
 7           MR. RAITER:  Good afternoon, Your Honor.
 8    Shawn Raiter for the auto dealers.  And then we have a whole
 9    host of defense counsel, in-direct purchasers and
10    direct-purchaser counsel on as well.
11           THE COURT:  Okay.  A whole host, how many?
12           MR. RAITER:  That's a good question.  It sounded
13    like -- we didn't do a rollcall but I'm guessing 25 or so.
14           THE COURT:  Okay.  Well, let's just leave it, we
15    don't need the names unless they speak.  Okay.
16           MR. RAITER:  Sure.
17           THE COURT:  So if any of these other individuals,
18    if you can hear me -- I'm hoping you can hear me, please if
19    you wish to speak, just indicate by starting with your name.
20           I asked for this conference because I had a
21    question and I didn't exactly know how to do it without
22    notifying everybody because I didn't want to have any
23    ex parte communications, but I do have a question on this
24    unopposed motion concerning the claims of the -- excuse me,
25    the allocution plan for the auto dealers.
```

```
 1                My question is this, the -- it deals with the
 2    groups of dealerships and if you have a dealership group with
 3    a headquarter in the repealer state, then as I understand it,
 4    you are asking to draw in all of the dealerships which may be
 5    in non-repealer states, is that correct, in terms of --
 6                MR. RAITER:  Yes, assuming that the dealership
 7    group operates in the way that we described in the papers and
 8    that is that they have a centralized management vehicle
 9    acquisition structure financing structure, that is correct.
10                THE COURT:  Right.  Okay.  I think you defined them
11    in your papers as they provided direct financing, they
12    maintained the liability for the non-payments to the OEMs,
13    they controlled many aspects of the dealership operation, and
14    headquarters were liable for their losses; is that right?
15                MR. RAITER:  That's correct.
16                THE COURT:  Okay.  And I can understand that.  The
17    difficult part I'm having is there is -- it is the opposite,
18    let's say the headquarter is in a non-repealer state and
19    let's say it has two dealerships that are in repealer states,
20    are those dealerships going to get -- can they file claims?
21                MR. RAITER:  Again, it depends on a claim-by-claim
22    basis, Your Honor.  Some dealership groups have done it that
23    way and they have taken the view that the dealerships that
24    are in the non -- that are in the repealer states can submit
25    a claim for only those vehicles in the repealer states, and
```

1  again the claims administrator, the special consultant, the
2  allocution consultant that you approved, would look at those
3  on a claim-by-claim basis, but in theory, yes, those
4  dealerships in a group that is headquartered in a
5  non-repealer state that acquired vehicles in a repealer state
6  could submit claims for the repealer state dealerships.
7         THE COURT:  Well, aren't those two things contrary?
8  I mean, if you have headquarters in a repealer state, you are
9  saying basically the injury took place, and I think you
10 argued that in your pleading -- excuse me, in your motion
11 that it had to do with the place of injury and the injury
12 took place where the headquarters was.  Well, how can it be
13 the opposite for the headquarter in the non-repealer state?
14 I mean --
15         MR. RAITER:  It would be -- yeah, if they were
16 apples to apples in terms of how they acquire finance and run
17 their business, it would be inconsistent, but I think as I
18 tried to indicate and I may not have done so clearly, not
19 every dealership group operates that way.  So some of them
20 operate essentially on an individual dealership-by-dealership
21 basis even though there is a parent umbrella of some kind of
22 a group, so it would really be a claim-by-claim basis.  If
23 they say, you know, we acquired these vehicles in a repealer
24 state and we, the repealer state dealership, had the
25 liability, had the financing, then we would view that to be a

```
 1   valid claim.
 2             THE COURT:  Okay.  So --
 3             MR. RAITER:  But --
 4             THE COURT:  There are dealership groups, you are
 5   saying, that may -- the headquarters may be in a repealer
 6   state -- let's see, in a repealer state, and they may not
 7   bring in their dealerships in non-repealer states if those
 8   dealers kind of operate independently?
 9             MR. RAITER:  Exactly.  So what we did because this
10   was a kind of concern, we want to be fair, we want to make
11   sure people who are legitimate claimants here make the claim
12   and get paid and those that aren't don't, so we did ask some
13   of the larger dealership groups that are headquartered in
14   repealer states who would like to make a claim for
15   non-repealer state dealerships, we asked them for information
16   about their operation, we followed up and said can you tell
17   us how do you finance, how do you acquire, how do you do
18   this, how do you do that, so the claim administrator and the
19   allocution consultant had enough information to basically say
20   yes or no on a claim-by-claim basis.
21             THE COURT:  And that makes a lot of sense to me.
22   I'm a little bit concerned because I don't think that's
23   explained in the order that you are looking at, these --
24   individually, it sounds in the order just that they would all
25   be under the headquarters and --
```

```
 1            MR. RAITER:  Yeah, well --
 2            THE COURT:  Let me tell you why I'm concerned if
 3   that were the case, which you are telling me that it is not,
 4   that there may be a conflict of interest amongst -- for you
 5   amongst the plaintiffs because obviously the more claimants
 6   you have, the less money for each individual claimant, you
 7   see what I am saying?
 8            MR. RAITER:  Yes, I understand what you are saying.
 9   So if you look at the revised order that we provided
10   following input from defense counsel, or at least Mr. Cherry
11   and some of the other lawyers for the defendants where they
12   added some language and we agreed on some things --
13            THE COURT:  Okay.
14            MR. RAITER:  -- we did add a paragraph that would
15   obviously allow the claim administrator to communicate with
16   claimants who had made a timely claim and communicate with
17   them and basically set out this process to say if you fall
18   into one of these categories potentially and you did not make
19   a claim, please provide us this information and we can then
20   assess whether your claim should be altered in some way.
21            THE COURT:  Okay.
22            MR. RAITER:  The idea is that we would communicate
23   with them.
24            THE COURT:  You are talking about paragraph 4?
25            MR. RAITER:  Yes.
```

*1*     THE COURT: And basically you're saying if they
*2* have not already done so, such dealership would be allowed
*3* 30 days to provide information about new vehicle acquisitions
*4* or sales in non-repealer states, that's the paragraph that
*5* you are relying on; is that right?

*6*     MR. RAITER: Yes, and what we would do then is
*7* Gilardi & Company would send out essentially a notice saying
*8* this is the order of the Court, in order -- if you are
*9* interested in making such a claim -- there aren't a lot of
*10* dealerships in this situation by the way, you know, we are
*11* kind of dealing with a very minority of the potential
*12* claimants here, but we want to be fair to everyone and we
*13* want to make sure that money is allocated appropriately so we
*14* would send that out and be very specific with them about what
*15* we are looking for and what the claim administrator and the
*16* allocution consultant would want to see in order to make that
*17* determination for those particular dealerships.

*18*     MR. DONOVAN: Your Honor, this is David Donovan at
*19* Wilmer Hale on behalf of Denso. Mr. Cherry couldn't be on
*20* the call today.

*21*     I wanted it to be clear that our comments on the
*22* proposed order on behalf of Denso and as far as I know on
*23* behalf of any other settling defendants were not with respect
*24* to the allocation plan at all. The only comment we made was
*25* to make it clear that whatever allocation plan was agreed on

*1* here would not be precedent for allocation to any auto dealer
*2* in a non-repealer state in any other matter.
*3*     THE COURT:  Okay.
*4*     MR. DONOVAN:  We don't have a position on how the
*5* auto dealers allocate these funds.
*6*     THE COURT:  So your comment to the order had to do
*7* with that next paragraph, 5, about the other parts, right --
*8* or other settlements?
*9*     MR. DONOVAN:  Correct, Your Honor.  We didn't make
*10* any comment about information that shouldn't be provided to
*11* their experts or consultants to determine who should or
*12* should not get this money, we did not have any comment in
*13* that regard.
*14*     MR. RAITER:  And I'm not suggesting that you did,
*15* but we provided the order, the proposed order to defense
*16* counsel and took the edits that they proposed to us and
*17* incorporated them.
*18*     THE COURT:  Okay.  I really wasn't concerned about
*19* defense counsel because I know this didn't affect them in
*20* terms of the amount of the settlement, but I was concerned
*21* about any conflict that might exist between plaintiffs but I
*22* think you have explained it pretty clearly.
*23*     Just hold on for a second, please.  Okay.
*24*     I was pulling out this order and in looking at this
*25* the question is if you have headquarters in a repealer

```
 1   state -- in a non-repealer state, okay, and then you have --
 2   you have dealerships in repealer states, are those
 3   dealerships automatically able to file claims?  I mean, what
 4   if they had the same -- the same protocol as your other
 5   headquarters that are in these repealer states?  Did I make
 6   that clear?  I know this gets confusing.
 7             MR. RAITER:  I think I know what you are saying.
 8   You are saying if, in fact, the dealership group acquires
 9   vehicles centrally and the place of injury is in a
10   non-repealer state, I believe the claim determination would
11   be that even though dealerships in the repealer states in
12   that group would not have a valid claim because --
13             THE COURT:  Okay.
14             MR. RAITER:  -- the liability and risk of injury
15   resides elsewhere.
16             THE COURT:  That's exactly what I wanted to be sure
17   of.  All right.  So I understand that.  I think I would like
18   some -- something in writing about how this is done,
19   something a little more, either a -- I know the declaration
20   from Gilardi goes only to the repealer state, but could you
21   clarify that declaration with what you just told me?
22             MR. RAITER:  Sure.  In terms of how we expect the
23   claims to be handled?
24             THE COURT:  Right, right, you know, or you could do
25   a separate -- just a little separate document.  I think it is
```

```
 1   probably a good thing for this to be on the record publicly.
 2            MR. RAITER:  Sure, sure.
 3            THE COURT:  Your explanations are exactly what I
 4   hoped to hear, but it is not clear just from this order, so
 5   if we had a supplement in the motion, that would be good.
 6            MR. RAITER:  Okay.  We can do that.
 7            THE COURT:  Okay.  If you would do that and then
 8   let me know and I will sign the order.
 9            MR. RAITER:  Great.  Thank you, Your Honor.
10            THE COURT:  Okay.  Is there -- Mr. Donovan, do you
11   have anything else that you want to say?
12            MR. DONOVAN:  No, Your Honor.
13            THE COURT:  Okay.  Anybody else?
14            (No response.)
15            THE COURT:  No.  Okay.  All right.  Thank you very
16   much.  I appreciate it.
17            MR. RAITER:  Thank you.
18            THE COURT:  Bye-bye.
19            (Proceedings concluded at 1:18 p.m.)
20                            -   -   -
21
22
23
24
25
```

*1*  *CERTIFICATION*

*3*  I, Robert L. Smith, Official Court Reporter of
*4* the United States District Court, Eastern District of
*5* Michigan, appointed pursuant to the provisions of Title 28,
*6* United States Code, Section 753, do hereby certify that the
*7* foregoing pages comprise a full, true and correct transcript
*8* taken in the matter of In Re: Automotive Parts Antitrust
*9* Litigation, Case No. 12-02311, on Tuesday, July 25, 2017.

*12*  *s/Robert L. Smith*
      Robert L. Smith, RPR, CSR 5098
*13*  Federal Official Court Reporter
      United States District Court
*14*  Eastern District of Michigan

*17* Date: 08/02/2017
*18* Detroit, Michigan