```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3                          _   _   _

    _____
 4                                           )
    IN RE:  AUTOMOTIVE PARTS                 )    Master File No. 12-2311
 5  ANTITRUST LITIGATION                     )    Hon. Marianne O. Battani
    _____)
 6                                           )
    IN RE: OCCUPANT SAFETY SYSTEMS           )
 7  _____)

 8      FAIRNESS HEARING and MOTION FOR AWARD OF ATTORNEY FEES

 9           BEFORE THE HONORABLE MARIANNE O. BATTANI
                   United States District Judge
10           Theodore Levin United States Courthouse
                   231 West Lafayette Boulevard
11                       Detroit, Michigan
                    Tuesday, July 14, 2015
12
    APPEARANCES:
13
    DIRECT PURCHASER PLAINTIFFS:
14
            DAVID H. FINK
15          FINK & ASSOCIATES LAW

16
            JOSEPH C. KOHN
17          KOHN, SWIFT & GRAF, P.C.

18
            GREGORY P. HANSEL
19          PRETI, FLAHERTY, BELIVEAU & PACHIOS, L.L.P.

20
            EUGENE A. SPECTOR
21          SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.

22
            STEVEN A. KANNER
23          FREED, KANNER, LONDON & MILLEN, L.L.C.

24
        To obtain a copy of this official transcript, contact:
25            Robert L. Smith, Official Court Reporter
                  (313) 964-3303 • rob_smith@mied.uscourts.gov
```

1    APPEARANCES:  (Continued)

2    **END PAYOR PLAINTIFFS:**

3         DEVON ALLARD
          **THE MILLER LAW FIRM, P.C.**
4

5
     **DEFENDANTS:**
6

7         HOWARD B. IWREY
          **DYKEMA GOSSETT, P.L.L.C.**
8

9         JOANNE GEHA SWANSON
          **KERR, RUSSELL & WEBER, P.L.C.**

10

11        ROBERT WIERENGA
          **SCHIFF HARDIN, L.L.P.**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

TABLE OF CONTENTS

                                                     Page

Fairness Hearing..................................5

Motion for Attorney Fees.........................14

1   Detroit, Michigan

2   Tuesday, July 14, 2015

3   at about 1:33 p.m.

4                             —   —   —

5               (Court and Counsel present.)

6               THE LAW CLERK:  Please rise.

7               The United States District Court for the Eastern

8   District of Michigan is now in session, the Honorable

9   Marianne O. Battani presiding.

10              You may be seated.

11              THE COURT:  Good afternoon.

12              THE ATTORNEYS:  Good afternoon, Your Honor.

13              THE COURT:  This is a much more manageable crowd,

14  isn't it?

15              Okay.  I'd like to put the appearances on the

16  record first.  Plaintiffs.

17              MR. FINK:  Your Honor, David Fink, on behalf of

18  direct purchaser plaintiffs.

19              MR. KOHN:  Joseph Kohn on behalf of direct

20  purchasers.

21              MR. HANSEL:  Greg Hansel, for direct purchasers

22  Your Honor.

23              MR. SPECTOR:  Good afternoon, Your Honor.

24  Gene Spector for direct purchasers.

25              MR. KANNER:  Good afternoon, Judge.  Steve Kanner

1    on behalf of direct purchasers.

2            THE COURT:  Okay.  Are you lonesome?

3            MR. IWREY:  Hello.  Howard Iwrey for the TRW

4    defendants, now known as ZF TRW.

5            THE COURT:  Okay.  Anybody else for defendants?  I

6    have a couple names here.  Devon Allard?

7            MR. ALLARD:  Devon Allard for end payors.

8            MR. SWANSON:  And Joanne Swanson, Your Honor,

9    observing on behalf of a number of our clients today;

10   AutoLiv, Fujikura --

11           THE COURT:  Okay.  So you are basically observing?

12           MS. SWANSON:  Observing.

13           THE COURT:  Okay.  All right.  We have two motions.

14           MR. WIERENGA:  Robert Wierenga observing on behalf

15   of Takata and TKTA Motors.

16           THE COURT:  Takata.  Okay.  Thank you.

17           All right.  Two motions, the first motion I think

18   we should do is the motion for final approval of the TRW

19   settlement.  Who's doing that one there?

20           MR. KOHN:  Thank you, Your Honor.  May it please

21   the Court, Joseph Kohn for direct purchasers, in support of

22   the motion for approval of the settlement.  We also as part

23   of that motion have requested a separate order with respect

24   to approval of the plan of distribution, and then there is

25   the other related motion with respect to the request of

1    attorneys for fees and costs.

2          We are in our view, and we don't want to go

3    overboard with some of these, but at another milestone in the

4    sense of another final approval, a second final approval in

5    one of the product cases, and a point where as class counsel

6    we can propose a distribution to the class members, and the

7    claim form was previously approved by Your Honor in April,

8    and was attached to the notice that was sent to the class

9    members.

10         We are also happy --

11         THE COURT:  I do have a question on that.

12         MR. KOHN:  Sure.

13         THE COURT:  So on this distribution, so they would

14   be able to -- I take it there's going to be multiple

15   distributions to the same people; is that right?

16         MR. KOHN:  We certainly hope so, yes.

17         THE COURT:  Yes.

18         MR. KOHN:  At this point we would distribute --

19   yes.

20         THE COURT:  Okay.  But you are going to distribute

21   this one now is what you're saying?

22         MR. KOHN:  Yes.  We think we have reached, if you

23   will, a critical mass such that between the two settlements

24   in the occupant safety case, the first with AutoLiv and

25   subject to Your Honor's approval with TRW, that it is

1   efficient and appropriate to take the next step which is to

2   get the money to the parties that we contend were the injured

3   ones.

4           Now, if the occupant safety case may continue

5   through trial in which case -- or additional settlements, if

6   we had additional settlements in occupant safety of a

7   sufficient magnitude we would request authorization to

8   distribute in that case, and then the other parts would sort

9   of stand on their own as we reach that kind of threshold

10  number.

11          And as I said, we are happy to report, and we

12  checked as recently as of today, that there have been no

13  objections from any of the class members to any of the

14  proposals.  We always like to see our class member clients

15  and talk to them, but this is one day where we are just as

16  happy we do not see them as objectors.

17          THE COURT:  I take it you have received no mailings

18  or anything from them?

19          MR. KOHN:  There were none that were submitted by

20  the deadline, and the report we filed earlier in July

21  reported that, and again we do check up to the last minute in

22  case they would be out of time under the order and notice at

23  this point.

24          Your Honor, with respect to the TRW settlement, net

25  of the amount that was returned to the settling defendant

1    pursuant to the negotiated agreement on the opt-out

2    reductions, there is a total amount of $6.5 million.  The

3    settlement also provides for the kind of extensive and

4    detailed cooperation that previously approved settlements in

5    the other parts as well as AutoLiv have provided for in

6    exchange for the release of the claims against TRW by the

7    direct purchasers.

8              THE COURT:  Okay.  And this is the -- the

9    6.5 million is the new reduction, the new amount; is that

10   correct?

11             MR. KOHN:  Right.  The original face amount, if you

12   will, was 8 million.  There were three opt-outs and the

13   opt-outs have been different across the different

14   settlements, so the OEMs do seem to be making informed and

15   independent judgments as to each case.  Ford is in a separate

16   category, they have consistently opted out and they have

17   their own case, at least in the wire harness.

18             THE COURT:  Who opted out in the wire harness?

19             MR. KOHN:  Pardon?

20             THE COURT:  Who opted out?

21             MR. KOHN:  I think just Ford also with the Lear

22   settlement, I believe.  There may have been another one.

23   The -- as to this settlement it was BMW, which had previously

24   remained in the other settlements, Chrysler, which had

25   previously remained in the other settlements, and Ford.  So,

1    again, in terms of those that have remained in the class, the

2    GMs, the Toyotas, Honda, Nissan, Hyundai, Mercedes are all in

3    this class, and we think that is probably the most

4    significant of the various factors that the Court applies in

5    approving the settlement and, you know, we have briefed this

6    and Your Honor is familiar with those factors in terms of the

7    risk of the case, et cetera, but the reaction of the class

8    members we think is a critical one here where you have

9    sophisticated class members of that kind and description with

10    their own in-house legal staff, their own sub-antitrust

11    departments in their own in-house legal staff, their own

12    outside antitrust counsel, et cetera.

13        We note in terms of this settlement that it is

14    larger than the guilty plea payment, the guilty plea fine

15    that was paid by TRW, and it is the largest of the private

16    settlements that TRW has reached vis-a-vis the other classes

17    in the case, so the direct purchaser amount is larger.

18        The stipulated judgment order we recently updated

19    and filed electronically, but I do have paper copies of these

20    various orders if that is also helpful to the Court. We had

21    updated it because the attachment to the proposed order does

22    list the opt-out entities, and while there are more than

23    simply three names, they are within those groups of companies

24    that I mentioned; Ford, BMW and Chrysler.

25        And, Your Honor, with respect to the plan of

1    distribution, we did submit a separate order and, again, we

2    have a paper copy as well as the ones that have been

3    electronically filed, and we discussed the plan of

4    distribution at pages 17 and 18 of our brief in support of

5    the settlement, and it is a relatively simple plan, and it is

6    kind of, you know, ain't broke, don't fix it. There is a pro

7    rata distribution based on the purchases that are reported by

8    the claimants from any of the alleged co-conspirators, so it

9    is not simply if you purchased from TRW, you received funds

10   from the TRW settlement, or if you simply purchased from

11   AutoLiv, but because of the theories of joint and several

12   liability, any purchaser can claim from any of this fund, and

13   that is a tried and true method of distribution in antitrust

14   cases, we do cite a number of them. It was the way the

15   distribution was calculated in the Packaged Iced case, it was

16   in the big Vitamins case, et cetera, et cetera. And I, for

17   one, am not aware of any kind of more elaborate or involved

18   distribution --

19        THE COURT: And you have a limited number, right,

20   there was about -- I can't remember what the number is.

21        MR. KOHN: There were -- about 1,300 notices were

22   mailed. There still were about -- after they did a further

23   check on the addresses, we had about 240 that were still

24   unreturned or returned as undeliverable, probably from some

25   entities that may have gone out of business or frequently

1  they just have changed names or there is a certain amount of

2  duplication in some of those mailings that do go out.  So

3  that those claims will be received, some have come in

4  already, the claims period is extended.  We generally provide

5  a longer period to prepare and file the claim than you do for

6  the opt-out or objection.  That expires August 10th, I

7  believe.  Claims administrators are on board and they review

8  them, and they sometimes will contact some of the claimants

9  with questions or ask for further backup.  They do audit both

10  randomly and audit large claims as a matter of course.  And

11  then, again, subject to Your Honor's approval and orders, we

12  would be ready to mail out checks soon after that deadline as

13  soon as the claims administrator finishes their work as soon

14  as possible.

15       So with respect again to the settlement, Your

16  Honor, and the plan of distribution, we would request the

17  Court to enter those two orders, and I would also be prepared

18  to address the request of counsel for fees and costs when

19  Your Honor is ready.

20       THE COURT:  Okay.  Anything else, Mr. Iwrey?

21       MR. IWREY:  Nothing to add for TRW, Your Honor.

22       THE COURT:  Okay.  All right.  This settlement with

23  TRW now with the opt-outs is $6.5 million.  The Court notes,

24  as was indicated here in court, that there were some 1,300, I

25  think 1,342 to be exact, notices mailed out, which there were

1   a couple hundred that came back, but the Court is satisfied

2   that there was a sufficient notification sent both by mail,

3   publishing in the Automotive News and in the Wall Street

4   Journal.

5          The settlement the Court finds is fair, reasonable,

6   and adequate, and there are a number of factors that the

7   Court has to consider in determining that under

8   Rule 23(e)(2), and I'm going to just briefly touch on them.

9          One is the likelihood of success, and clearly here

10  the plaintiffs, though optimistic about their chance of

11  success because of the pleas that were entered in this case,

12  there was a difference in the amount of time -- the period

13  the plea covered and what is asked for, and there is always

14  much risk in litigation particularly weighed against the

15  $6.5 million that is being offered, and also the result

16  appears to the Court to be one that is fair.

17         I also look at the complexity, expense, and likely

18  duration.  I don't think I need to go on with the likely

19  duration because we are already seeing what that duration is

20  in this case being some three years old, and as to other

21  parts -- other -- well, other parts and other defendants,

22  doesn't appear to be anywhere near the middle -- should I say

23  nearer to the beginning?  I don't know.  So clearly -- and

24  the complexity, just in the antitrust cases, extremely

25  complex, but this one seems to be extremely complex given the

1   expansive nature.

2          The Court is aware also of the competency of

3   counsel.  Counsel is very experienced.  And, again, I think

4   this was mentioned here, there is counsel for the defendants

5   individually and counsel for plaintiffs, and the Court knows

6   that defendants have competent counsel as is the plaintiffs'

7   counsel, so I have no question but that this was negotiated

8   with great knowledge and wisdom of the collective counsel.

9          The discovery, of course, was extensive and would

10  be even more extensive if this case were to go on.  There has

11  been no objections raised by any of the class members.  The

12  negotiations were taken at arm's length as these attorneys

13  are experienced in litigating antitrust and other complex

14  cases.

15         The public interest is served because these suits

16  are notoriously difficult and unpredictable.  The Court, in

17  sum, finds that it is a fair and reasonable resolution.

18         The notice was proper.  The Court did a preliminary

19  approval of the notice, and the Court finds that that was

20  proper, and I think that's a -- if you've heard from over

21  1,000 of the 1,300 and some -- or if the notices went out to

22  over 1,000 of the 1,300 and some without return, I think

23  that's particularly good.  The Court has a list of the

24  opt-outs which was attached to the order, we discussed some

25  of those here today.

1           The Court -- also there has been a request for the

2    distribution and the pro rata distribution plan has been

3    approved by other courts, and I see no reason not to apply it

4    in this case.  It appears from the pleadings anyway that it

5    would be a fair resolution.  In fact, I don't know how

6    else -- much else you could do it.

7           All right.  The class should be certified at this

8    point for purposes of effectuating the judgment.  We have

9    gone over these factors in the preliminary approval and the

10   Court will just briefly repeat them.  There's numerosity and

11   commonality in this case, we have adequacy of representation,

12   and there is a common question that predominates.

13          So for purposes of the settlement, the Court finds

14   that the prerequisite for class actions pursuant to Rule 23

15   have been met and certifies the settlement class for direct

16   purchaser plaintiffs.  So the Court approves the settlement

17   and it approves the distribution that has been proposed.

18          Now, we need to go on to I think another more

19   difficult issue.  You're going to tackle this one too, huh,

20   Mr. Kohn?

21          MR. KOHN:  Again, thank you, Your Honor.

22          Your Honor, with respect to the motion request for

23   attorneys' fees and reimbursement of expenses, we take the

24   view that, you know, why are we doing it here but not in the

25   IPC case where there is a settlement?

1       THE COURT:  That's exactly what I was going to ask.

2       MR. KOHN:  And our feeling among our group of

3   counsel is that the time is right.  When you can make a

4   distribution to the class members, then it is appropriate for

5   class counsel to request the Court to make a distribution to

6   the lawyers for the class, and it is also appropriate and,

7   indeed, necessary to have at least some determination because

8   you need to determine what is the net amount of the fund that

9   is available for the distribution.

10      So rather than have some sort of a reserve and a

11  second distribution of some partial, we think it is

12  appropriate for the Court to look at it as one package

13  completes the fund.  We are not seeking to reserve some

14  portion of this fund to ask for additional fees later if we

15  work on the case for another X amount of time and don't

16  produce additional results.  So we think that is a fairness

17  to the class, it is appropriate when the clients are making

18  their claims that the Court consider this issue.

19      Your Honor, we asked under the percentage of the

20  recovery method, and we briefed that extensively, and the

21  Sixth Circuit is aligned with the vast majority of the

22  circuits that favors a percentage of the recovery method over

23  the lodestar multiplier method, although you still have the

24  right of the crosscheck as they call it, and we have

25  requested 28.5 percent of the settlement fund.  Now with the

1     reduction from the $8 million figure to the $6.5 million

2     figure, because of the opt-outs for TRW, the net settlement

3     fund now is $42.1 million and the fee request at 28.5 percent

4     is $11,998,500, and that is the amount that we would

5     respectfully request the Court to award.

6          We did cite many, many cases that have found, and

7     studies, 30 to 33 percent is approved, it is approved in big

8     cases over $100 million, it was found to be the average in

9     some studies.  You know, we like the think the law is on our

10    side in most of the arguments we make, but we cited in

11    footnotes and string cites of case after case from all across

12    the country and as, coincidentally, two from right on this

13    very floor of this courtroom, from Judge Hood and Judge Cox,

14    who had approved I think it was a 29 percent and a 30 percent

15    fee in the Refrigerant Compressors case and the recent

16    Blue Cross case.

17         Why do we come up with 28.5?  Where does that

18    number -- why aren't we asking for 30 or 33?  Again, I think

19    we are informed by a number of factors.  The right of

20    attorneys to request a fee from a common fund is a root and

21    equitable doctrine, and we believe that it should be infused

22    with a fairness to the clients to the class, a fairness to

23    the class counsel.  The courts of equity do not like

24    windfalls and they do not like forfeitures and we try to look

25    for an appropriate balance.  Again, we could have filed a

```
 1    brief that listed all of the 30 and 33 percent cases, but
 2    given everything that has happened in this case, given the
 3    relations we have with the class members, given the work and
 4    the time that has been expended on this particular piece of
 5    the broader litigation, we did not see any need to push the
 6    limit, if you will.
 7            We placed a series of caps really on our request.
 8    In the notice that was sent out.  We said any such request
 9    would not exceed 30 percent of the recovery, we wanted to be
10    below that cap.  We -- when you look at some of these
11    percentages, we thought it was appropriate that the initial
12    fee request with the $8 million total amount would have come
13    to $12,426,000.  We think it was appropriate that a fee not
14    be than more that 12 and a half million, we wanted to come in
15    a little -- 28.5 instead of 29 or 29.5.
16            The total multiplier when you use the lodestar
17    crosscheck, there was over $5 million of attorneys' time in
18    the three years separated out into OSS.  We have been
19    recording and requesting the time separately on all of the
20    different cases.  We thought that multiplier should be less
21    than 2.5, so that was a 2.47 multiplier.
22            When you have -- you know, at the 11,998,500
23    number, the multiplier is down to 2.3, 2.38.  Our work is
24    continuing on the case so that that multiplier is slowly
25    going down as we continue to do the work as we will go
```

1    forward with the cooperation, et cetera.

2         So we think for all of those reasons, if we were

3    negotiating with a major business client, if we were trustees

4    of a trust, we think this is an appropriate and fair

5    resolution, and we don't ever think it is appropriate to put

6    some number out as a negotiating number and negotiate with

7    the Court or negotiate with the class members.  We try to

8    present a number that we believe is an appropriate, fair and

9    equitable number.

10        Each of these cases may be a little different.  I

11   think there is certainly a relationship and a tradeoff

12   between the amount of the recovery and the percentage fee

13   award, between that percentage and this multiplier lodestar

14   crosscheck, so that if there is a case where there would only

15   have been $500,000 of work and this would translate to a

16   multiplier of eight or ten, it wouldn't be appropriate to ask

17   for that kind of percentage.

18        Conversely, if, you know, you're going to have a

19   multiplier of one, you are basically just getting your time,

20   perhaps the percentage would be appropriate to request

21   something at a higher percentage.  So we think each of these

22   cases do stand on their own facts and their own issues, and

23   we are not asking the Court to enter some sort of a ruling

24   that would be cast in stone that in every case there should

25   be a multiplier of 2.38 or there should be a percentage of X.

1         One other additional matter, Your Honor, with

2   respect to the request for reimbursement of costs, as we

3   tried to make clear in the brief, you had granted approval to

4   reserve a fund forward for additional expenses.  Prior to

5   that time there was out-of-pocket expenses by the various

6   lawyers, not just the lead firms but the others who have

7   helped as well, totalling $145,044.  We did disclose in the

8   notice to the class members that that would be a request

9   separate and additional to the fee request.  The total of the

10  fees and the costs requested is $12,143,544, and that comes

11  to 29 percent of the recovery, and we are pleased that

12  between the fees and the costs, we are below that 30 percent

13  cap that we voluntarily placed only the notice amount.

14        So, Your Honor, I'm happy to answer, of course, the

15  Court's questions.  Again, we do also have a paper copy of

16  the order as well as we filed an updated version

17  electronically yesterday to reflect the revised total amount

18  of the settlement amount because of the return to TRW.

19        THE COURT:  Right.

20        MR. KOHN:  We respectfully request approval of this

21  matter as well.

22        THE COURT:  Thank you.

23        MR. KOHN:  Thank you, Your Honor.

24        THE COURT:  I don't know, Mr. Iwrey, that you would

25  have any comment or objections?

1      MR. IWREY:  Nothing additional from TRW.

2      THE COURT:  Okay.

3      MR. IWREY:  Thank you, Your Honor.

4      THE COURT:  I think the attorney fees are, of

5  course, the more difficult aspect of this.  The Court looks

6  at a number of factors in determining what to do.  We all

7  know that it has to be a reasonable attorney fee, I think

8  that goes without saying, and the case law holds that and it

9  is very clear.  The total settlement -- well, that changed.

10  I was just trying to find my notes on that.

11      MR. KOHN:  $42.1 million, Your Honor.

12      THE COURT:  42.1?

13      MR. KOHN:  Yes.

14      THE COURT:  I'm going to have to excuse myself for

15  a minute because I don't have the second part of this motion.

16      THE LAW CLERK:  All rise.

17      (At 1:59 p.m. court recessed.)

18                  —   —   —

19      (At 2:01 p.m. Court reconvenes; Court, counsel and

20      all parties present.)

21      THE LAW CLERK:  All rise.  You may be seated.

22      THE COURT:  All right.  42.1 is the total.  Okay.

23  The Court notes that there is two ways which we will refer

24  here today.  One is the percentage of the fund way and the

25  other one is the lodestar multiplier.  I think that in

1    looking at the lodestar multipliers, it is my experience that

2    this is always the more difficult one to apply.  First of

3    all, you have the attorney fees, and as you know, I have been

4    watching these attorney fees as they grew throughout this

5    litigation, and looking at the hourly rates and the number of

6    hours put in.  And I would say, as I understand it, for this

7    particular piece of the litigation, there is like 9,373 and a

8    half hours put in.  And that lodestar factor, originally it

9    was 2.47, and now you said it was a little bit lower than

10   that because of the reduction.

11       MR. KOHN:  2.38, Your Honor, is our -- my

12   arithmetic.

13       THE COURT:  Okay.  The Court also notes in looking

14   at the lodestar factor, I don't think that a court can say,

15   one, your hours are too much unless there's some obvious

16   glaring thing.  I mean, I look at each individual entry, each

17   individual entry is fine.  But what I do know is that you

18   charge on the hourly rate in this billing system, which so

19   many attorneys hate where you have to keep track of every

20   minute, that you do charge for every minute that you put into

21   a litigation in a case such as this.

22       So the Court notes that what makes the lodestar --

23   the lodestar, period, interesting in this case is that I

24   believe that counsel fairly and adequately recorded their

25   time so that they knew exactly how many hours in total

1    because I know you are getting a lot of this information from

2    other lawyers that you are working with on this case, but

3    that the Court assumes it's been adequately recorded and that

4    it comes, as I said, to that 9,373 hours.

5         The Court notes that in the percentage of fund

6    cases, the courts have approved various amounts up to 33 and

7    a third, although I do think there was one case that was

8    above that if I recall correctly, but these amounts differ

9    depending on various factors, and frequently the lodestar

10   multiplier in the end result is looked at as a crosscheck to

11   see is the fee reasonable even using that particular factor.

12        The Court looks at the benefit to the class that

13   plaintiffs' counsel secured, and here we know that there was

14   a substantial sum of money that was secured and will be

15   distributed amongst class members without any further risk or

16   cost to any of them.

17        There is the lodestar crosscheck which the Court

18   will address in just a minute.  We know that there was risk

19   involved in this case and we know that the plaintiffs

20   undertake the case with the understanding that if they are

21   not successful in getting any money, they will not be paid,

22   which is a significant risk with the number of hours that

23   goes into even getting the case started in the first place.

24        Society has an important stake in this lawsuit

25   because it benefits from the resolution of the antitrust

Case 2:12-md-02311-SFC-RSW  ECF No. 1791, PageID.33147  Filed 08/07/17  Page 23 of 28

Fairness Hearing & Motion for Award of Attorney Fees • July 14, 2015

23

1    suits, they benefit from the discovery of the antitrust and

2    the resolution of the antitrust.

3        Another factor is the complexity of the case, and

4    the Court is well aware of the complexity, I think we've

5    talked about that before.  It is not only an antitrust case,

6    which is in any event a complex case, but it is a multitude

7    of antitrust cases involving great difficulty, it involves

8    even language difficulties with so much of the discovery

9    coming out of Japan and other European countries, and it

10   involves numerous members of the class, in this case some

11   1,300 class members.

12       The Court also looks at the skill and experience of

13   counsel.  I had a note here as to quality and quantity of

14   counsel.  Certainly we have an abundance of counsel on this

15   case.  The Court has said before and I will say again, it has

16   been my experience that counsel are very well qualified, very

17   professional, and are doing a very good job for all of -- for

18   their clients.

19       I do want to know one thing as I looked at this,

20   and this was part of the costs actually, and a number of the

21   firms have this, and it is an assessment payment.  What is an

22   assessment payment?  Is that to see if you are going take the

23   case or not or what?

24       MR. KOHN:  Your Honor, that is a payment that

25   counsel make into a fund once the case is up and operating

1    that is then used to pay common case expenses.  So we are

2    not -- it is not used to pay a firm's individual travel time

3    or your own in-house photocopying.

4             THE COURT:  I knew you had a fund but I didn't know

5    this is what you meant.

6             MR. KOHN:  Yes, for the expert witnesses, for those

7    kind of costs.

8             THE COURT:  Thank you very much.

9             MR. KOHN:  Okay.

10             THE COURT:  Thank you.  All right.  So in looking

11    at that, the Court notes that plaintiffs are asking for --

12    your percentage again is --

13             MR. KOHN:  28.5 percent.

14             THE COURT:  Yeah.  I didn't want to use the one

15    from the older.  28.5 percent of a $43.6 million -- well,

16    which is now $42.1 million settlement, and that comes to

17    $12,426,000.

18             MR. KOHN:  Your Honor, please, that would have been

19    under the 43 --

20             THE COURT:  The 28.5 percent factor, right?

21             MR. KOHN:  The 28.5 percent of the 42.1 million

22    which remains in the fund is $11,998,500.

23             THE COURT:  And, Counsel, you've spent time trying

24    to determine -- tell the Court why it was 28.5 percent versus

25    30 percent versus 20 percent.

1    MR. KOHN:  As I said, a series of caps we proposed.

2   We didn't want to have the clients or the Court feel that we

3   were trying to squeeze every conceivable dollar that could be

4   approved under the case law.  This actually now brings the

5   fee under $12 million, brings that multiplier, as we said,

6   under the 2.4 number, and under all the circumstances we

7   think it is a fair and reasonable application of that

8   percentage, which is well within the range of the approved

9   percentage, is well below many of the recent cases, and while

10  it doesn't produce a round number fee of $12 million, it

11  comes in a few dollars below that.

12   THE COURT:  Well, it seems to me that what would be

13  fair -- first of all, with the costs, the Court approves the

14  costs that you have submitted, I don't have any difficulty

15  with any of those costs.

16   MR. KOHN:  Thank you, Your Honor.

17   THE COURT:  I do have a little difficulty with the

18  percentage, and the reason is I looked at your crosscheck,

19  the lodestar method, and it seems to me, since I believe you

20  billed for every hour and every minute, that twice the amount

21  of lodestar would be a fair and reasonable attorney fees as

22  to anything, and the Court therefore is going to award a

23  25 percent of the total award as attorney fees.  I have that

24  as $10,525,000.  I would note on my calculation, and you can

25  double-check this, it is basically a 2.09 lodestar factor.

1          MR. KOHN:  Multiplier factor.

2          THE COURT:  Multiplier.  And the Court feels that

3   at this point, given the magnitude of this litigation -- and

4   I don't want this to be any precursor of things to come.  I

5   don't know where we are going with attorney fees in the

6   future.  Okay.  I just tried to figure out what would be

7   reasonable, what would you start with, and it just seems to

8   me if I was confident that you accurately kept your hours,

9   and I do, that twice the payment would be sufficient, and

10  that comes to roughly 25 percent, and I think that that is a

11  fair factor in this case.

12          So if you would present an order with that and the

13  costs that have been asked and the Court will award it.  I

14  would say this.  I do agree it is a time for distribution,

15  and the reason I do agree is because now the plaintiffs are

16  getting money.  I don't think it is fair to give money to the

17  attorneys, even though I know you have to continue the case,

18  so that's certainly a factor towards fairness, but it just

19  smells bad to give attorneys the money and not give the

20  litigants something, and since you have this settlement that

21  is final, I think it is a great opportunity to give the

22  attorneys some fees because I know you are going to -- you

23  put in the time and you are going to put in more time, so --

24          MR. KOHN:  Thank you very much, Your Honor.

25          THE COURT:  Thank you.  Anybody else have anything

1   they want to say?

2             (No response.)

3             THE COURT:  All right.  Thank you very much.  See

4   you then in September.  Okay.

5             MR. KOHN:  Thank you, Your Honor.

6             MR. IWREY:  Thank you, Your Honor.

7             THE LAW CLERK:  Court is adjourned.

8             (Proceedings concluded at 2:12 p.m.)

9                          _    _    _

```
 1                              CERTIFICATION

 2

 3              I, Robert L. Smith, Official Court Reporter of

 4    the United States District Court, Eastern District of

 5    Michigan, appointed pursuant to the provisions of Title 28,

 6    United States Code, Section 753, do hereby certify that the

 7    foregoing pages comprise a full, true and correct transcript

 8    taken in the matter of In re Automotive Parts Antitrust

 9    Litigation, Case No. 12-02311, on Tuesday, July 14, 2015.

10

11

12                            s/Robert L. Smith
                              Robert L. Smith, RPR, CSR 5098
13                            Federal Official Court Reporter
                              United States District Court
14                            Eastern District of Michigan

15

16

17    Date:  08/07/2017

18    Detroit, Michigan

19

20

21

22

23

24

25
```