## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| | ) |
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | ) No. 12-md-02311 |
| | ) Hon. Marianne O. Battani |

This document relates to:

In re: Spark Plugs                    Case No. 2:15-cv-03003

### OBJECTION

Class Member Caitlin Ahearn, 401 N. Genesee Ave. 208, Los Angeles CA 90036, tel. # 908-721-7262, hereby objects to this settlement and the plan of allocation and request for attorney's fees.  Ms. Ahearn leased a new Hyundai Tucson 4DR SUV on February 20, 2016.  *See* Documentation attached hereto as *Exhibit A*.  Ms. Ahearn objects to the settlements reached in the Spark Plugs cases, No. 2:15-cv-03003, the settlements with Bosch and NGK Spark Plugs, as well as to the settlements reached in every other auto parts case, since her objections apply equally to all of the settlements and the overall request for a megafund fee award.

**I.      The Settlement Classes May Not Be Certified Because The Court Has Failed to Analyze the Comparative Strengths of Each State's Antitrust Laws, and Predominance is Lacking.**

Recently, the Ninth Circuit reversed the approval of a multi-state class action settlement on the grounds that the district court had failed to adequately assess the relative strength of each state's relevant consumer protection laws.  *Espinosa v. Ahearn*, 881 F.3d 679 (9th Cir. 2018).  Here, there are material differences between the various states' Illinois Brick Repealer statutes that render the uniform treatment of all class

members reversible error. The Notice states that payments will be determined on a

pro rata basis, with no reference to the specific laws that give rise to each class

members' claims. This is unfair to those class members' whose states provide greater

potential damages, or where the obstacles to indirect purchaser recoveries are lower.

Federal courts have recognized that the states of Hawaii and California have very

strong consumer protection statutes as well as *Illinois Brick* repealer statutes that

permit their residents to recover a higher percentage of their damages than residents

of other "weak" *Illinois Brick* repealer states. *See, e.g., In re Relafen Antitrust Litig.*,

231 F.R.D. 52, 65 (D. Mass. 2005)(Hawaiians received 90% reimbursement of Relafen

purchases, Californians received 82.5% of Relafen purchases, Florida, Maine,

Michigan, Minnesota New York and North Carolina residents received 60% or less of

their Relafen purchases). The allocation of the Settlement Fund in this case should

have followed a grid similar to the one set forth in *Relafen, supra*, which tracked the

differences among the various states' antitrust and consumer protection laws.

 A settlement must account for the greater rights afforded by California law.

*See e.g., In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, *37-38 (C.D. Cal.

2005)(reasonableness of settlement depends on whether it allocates "more of the

settlement to class members with stronger claims on the merits"); *In re Bankamerica

Corp. Sec. Litig.*, 210 F.R.D. 694, 712 (E.D. Mo. 2002)(denying settlement approval

because plan of allocation failed to account for "strength of [class members'] claims

under California law"); *In re Oracle Sec. Litig.*, 1994 U.S. Dist. LEXIS 21593, *3-4

(N.D. Cal. 1994)(reasonable to allocate more to class members with stronger claims).

As a California resident, Ms. Ahearn is entitled to a greater percentage of the damages recovered than, for example, residents of Florida, Maine and New York.  The differences among the various states' antitrust laws defeat predominance, and this case may not be certified as a class action.

## II.    Class Counsel Violated Rule 23(h), and Their Requested 25% Fee on this Billion Dollar Megafund is Grossly Excessive.

Class Counsel have failed to file their motion for attorney's fees and post it on the settlement website prior to the objection deadline, in violation of FRCP 23(h), *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) and *Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014).  As the Seventh Circuit held, "[Objectors] were handicapped in objecting because the details of class counsel's hours and expenses were submitted later, with the fee motion, and so they did not have all the information they needed to justify their objections. The objectors were also handicapped by not knowing the rationale that would be offered for the fee request, a matter of particular significance in this case because of the invocation of administrative costs as a factor warranting increased fees. There was no excuse for permitting so irregular, indeed unlawful, a procedure." *Id.*

This Court similarly permitted an unlawful procedure for noticing and objecting to attorney's fees in this settlement.

This is the third group of settlements in this multi-district consolidated litigation, bringing the total amount of the aggregate settlements to $1.035 billion, a megafund by any measure.  In the previous two groups of settlements, this Court awarded Class

Counsel 20% of the funds, or $120.8 million, as fees, an amount that represented a 1.11 multiplier of Class Counsel's lodestar.  As this third round of settlements comes less than a year after the last fee award, all of the fees requested this time around represent a bonus over lodestar for Class Counsel.

Despite failing to file their fee motion prior to the deadline for fee objections, in violation of Rule 23(h) and decisions of two federal circuits, Class Counsel indicate in the Notice that they intend to request a fee of 25% of the $432 million of latest settlements, an increase in the fees they have received to date, rather than a decrease as every other Circuit has required as the amount of recovery increases.  *See e.g. Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 959 (7th Cir. 2014).  A 25% fee award for the third group of settlements would result in an overall fee award of more than 22%, rather than the 15% or lower fee mandated by prior fee awards in megafund settlements and the median and mean fees as found by prominent scholars who have studied the relation of percentage fee awards to the amount of recovery across a large database of cases.  A 10% fee award on the latest $432 million of recovery would result in a total fee of $164 million, or 15.8% of the total $1.035 billion settlement, which is at the upper limit of fees awarded in previous billion dollar megafund cases.

Failing to consider the settlements together would conceal the full magnitude of the megafund recovery in this litigation and lead to an excessive overall fee.  As a $1.035 billion megafund, the appropriate fee in this case should be in the range of 5%-15%, as demonstrated in several prominent fee studies.  *See e.g.*, Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. of Empirical Legal Studies 811, 839 (mean of 13.7%, median of 9.5%); Eisenberg & Miller, *Attorney's*

*Fees and Expenses in Class Action Settlements*, 7 J. Empirical Law Stud. 248, 260 (2010),

Table 7 (median fee in settlements over $175 million is 10%).   If the settlements are

instead considered separately and a fee is awarded in each case based on the size of each

settlement, Class Counsel will be overcompensated and receive an excessive overall fee.

The Court should not permit the piecemeal "structuring" of the settlements but instead

consider all of them together as a billion dollar megafund, and award a fee

commensurate with the market rate reflected in the Fitzpatrick and Eisenberg & Miller

studies.

In the eleven class actions that settled prior to 2013 for more than one billion

dollars, the average fee awarded is ***7.0%***, as demonstrated in the following chart:

| Case | Settlement Amount | Fee % |
|------|-------------------|-------|
| Enron[1] | $7.27 billion | 9.52 |
| World Com[2] | $6.13 billion | 5.48 |
| Vioxx[3] | $4.85 billion | 6.49 |
| Cobell[4] | $3.4 billion | 3.40 |
| Tyco[5] | $3.2 billion | 14.50 |
| Cendant[6] | $3.16 billion | 1.73 |
| AOL Time Warner[7] | $2.5 billion | 5.90 |
| Visa[8] | $3.3 billion | 6.50 |
| Nortel I[9] | $1.14 billion | 3.00 |

[1] *Newby v. Enron*, 586 F. Supp. 2d 732, 741 (S.D. Tex. 2008).

[2] *In re Worldcom, Inc. Sec. Litig.*, 388 F.Supp.2d 319 (S.D.N.Y.2005).

[3] *In re Vioxx Prod. Liab. Litig.*, 760 F. Supp. 2d 640 (E.D. La. 2010).

[4] *Cobell v. Salazar*, 2011 U.S. Dist. LEXIS 157393 (D.D.C., July 27, 2011).

[5] *In re Tyco Int'l Ltd. MDL Litig.*, 535 F. Supp. 2d 249 (D. NH 2007).

[6] *In re Cendant Corp.*, 243 F. Supp. 2d 166 (D. NJ 2003).

[7] *In re AOL Time Warner, Inc. Sec. and 'ERISA' Litig.*, 2006 U.S. Dist. LEXIS 78035 (SDNY 2006).

[8] *In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503 (EDNY 2003).

[9] *See In re Nortel Networks Corp. Sec. Litig.*, 2010 U.S. Dist. LEXIS 87447 (SDNY 2010).

| | | |
|---|---|---|
| Royal Ahold[10] | $1.1 billion | 11.88 |
| Nortel II[11] | $1.07 billion | 7.74 |
| McKesson[12] | $1.04 billion | 7.64 |
| **Average** | | **6.98** |

Clearly, a fee award of 25% of the $432 million third settlement in this case, or a 22% overall fee, would be far out of line for settlements of this size. Even a fee of 10% of the latest settlement will result in a fee that is higher than the highest fee awarded in the billion-dollar plus settlements listed above. In any event, it would be an abuse of discretion for this Court to award Class Counsel more than 10% of the most recent settlement, especially since prior fee awards completely compensated Class Counsel for all of their time expended in this case, thus eliminating any risk of non-payment. Because the fee award in this settlement will represent a pure premium for Class Counsel over and above their lodestar, the principles of moderation that underly fee awards in the highest megafund cases mandate a lower fee award at this stage of the case.

---

[10] *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383 (D. Md. 2006).
[11] *In re Nortel Networks Corp. Sec. Litig.*, No. 05-MD-1659 (LAP) (S.D.N.Y. Dec. 26, 2006).
[12] *In re McKesson HBOC Inc. Sec. Litig.*, No. 99-CV-20743 (N.D. CA, Feb. 24, 2006).

## CONCLUSION

For the foregoing reasons, this Court should DENY class certification to the settlement class, require an allocation plan that more closely tracks respective state laws, and limit Class Counsel's fee award to an appropriate percentage for a billion dollar megafund.

_____
Caitlyn Ahearn

Caitlin Ahearn,
By her attorney,

/s/ Edward W. Cochran
Edward W. Cochran (0032942)
20030 Marchmont Rd.
Cleveland Ohio 44122
(216) 751-5546
edwardcochran@wowway.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed via the ECF filing system of the USDC for the ED MI on July 12, 2018, and that as a result electronic notice of the filing was served upon all attorneys of record.

/s/ Edward W. Cochran
Edward W. Cochran

Caitlin Ahearn,
By her attorney,

*/s/ Edward W. Cochran*
Edward W. Cochran (0032942)
20030 Marchmont Rd.
Cleveland Ohio 44122
(216) 751-5546
edwardcochran@wowway.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed via the ECF filing system of the USDC for the ED MI on July 12, 2018, and that as a result electronic notice of the filing was served upon all attorneys of record.

*/s/ Edward W. Cochran*
Edward W. Cochran

Lease Date: FEB 20TH 2016

**LEASE AGREEMENT**

[ ] Business, Commercial, or Agricultural Purpose Lease.

| Lessor Name and Business Address | Lessee(s) Name(s) and Residence Address(es) |
|---|---|
| WOODLAND HILLS HYUNDAI<br>20539 VENTURA BLVD<br>WOODLAND HILLS        CA 91364 | CAITLIN MOIRA AHEARN<br>401 N GENESEE AVE 208<br>LOS ANGELES           CA 90036<br>County: LOS ANGELES |

**1. Parties and Agreement to Lease.** In this Lease, "you" and "your" mean the lessee. "We," "us" and "our" mean the original lessor and the party to whom the original lessor intends to assign the Lease. These terms, conditions and disclosures govern your Lease with us and after assignment, with the party to whom we have assigned the Lease (the "Assignee"). Disclosures in this Lease are made on behalf of the lessor, and after assignment, on behalf of the Assignee shown below. Each of you who signs the Lease is individually liable to us for all Lease obligations. You are leasing the Vehicle described below (the "Vehicle") from us. You agree to pay all amounts due under the Lease and fulfill all your obligations under the Lease. You intend to use the Vehicle primarily for personal, family or household purposes unless the "Business, Commercial or Agricultural Purpose Lease" box above is checked. In this Lease, "e" means an estimate. The Consumer Leasing Act Disclosures shown below are also terms of this Lease.

**2. Description of the Leased Property (The "Vehicle")**

| New/Used | Year | Make | Model | Body Style | Vehicle ID # | License No. | Odometer |
|---|---|---|---|---|---|---|---|
| NEW | 2016 | HYUNDAI | TUCSON | 4DR SUV | KM8J23A44GU159202 | N/A | 15 |

**3. CONSUMER LEASING ACT DISCLOSURES**

| Amount Due at Lease Signing or Delivery | Monthly Payments | Other Charges (not part of your monthly payment) | Total of Payments (The amount you will have paid by the end of the Lease) |
|---|---|---|---|
| (Itemized below)*<br><br>$ 3,250.00 | Your first monthly payment of $ 359.85 is due on FEB 20TH 2016 followed by 47 payments of $ 359.85 due on the 20TH of each month. The total of your monthly payments is $ 17,272.80. | Disposition fee (if you do not purchase the Vehicle) $ 400.00<br>N/A $ N/A<br>N/A $ N/A<br>Total $ 400.00 | $ 20,562.95 |

***Itemization of Amount Due at Lease Signing or Delivery**

| Amount Due at Lease Signing or Delivery | | How the Amount Due at Lease Signing or Delivery will be paid: | |
|---|---|---|---|
| Capitalized cost reduction | $ 2,460.06 | | |
| First monthly payment | $ 359.85 | | |
| Refundable security deposit | $ N/A | Net trade-in** allowance | $ 0 |
| Title fees | $ 102.00 | | |
| Registration fees | $ 157.00 | Rebates and noncash credits | $ 2,250.00 |
| California tire fees | $ 7.00 | | |
| Electronic vehicle registration or transfer charge (not a governmental fee) | $ 29.00 | Amount to be paid in cash | $ 1,000.00 |
| Lease acquisition fee | $ N/A | | |
| Document processing charge (Not a governmental fee) | $ 80.00 | Total | $ 3,250.00 |
| SALES TAX ON DOC PROC CHARGE | $ 7.20 | | |
| TAX ON CAPITALIZED COST REDUCTION | $ 47.89 | | |
| N/A | $ N/A | | |
| N/A | $ N/A | | |
| Total | $ 3,250.00 | | |

**Your monthly payment is determined as shown below:**

| | | |
|---|---|---|
| **Gross capitalized cost.** The agreed upon value of the Vehicle ($ 24,141.67 ) and any items you pay over the Lease term such as service contracts, insurance, and any outstanding prior credit or lease balance). | $ | 27,328.67 |
| **Capitalized cost reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost. | − $ | 2,460.06 |
| **Adjusted capitalized cost.** The amount used in calculating your base monthly payment. | = $ | 24,868.61 |
| **Residual value.** The value of the Vehicle at the end of the Lease used in calculating your base monthly payment. | − $ | 11,092.90 |
| **Depreciation and any amortized amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease term. | = $ | 13,775.71 |
| **Rent charge.** The amount charged in addition to the depreciation and any amortized amounts. | + $ | 2,071.01 |
| **Total of base monthly payments.** The depreciation and any amortized amounts plus the rent charge. | = $ | 15,846.72 |
| **Lease payments.** The number of payments in your Lease (This is also the number of months in your Lease). | ÷ | 48 |
| **Base monthly payment.** | = $ | 330.14 |
| Monthly sales/use tax. | + $ | 29.71 |
| N/A | + $ | N/A |
| N/A | + $ | N/A |
| **Total monthly payment.** | = $ | 359.85 |

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. <u>The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.</u>

**Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 10000 miles per year at the rate of 20 ¢ per mile.

**Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the Lease term for $ 11,092.90 and a purchase option fee of $ 150.00. The purchase option price does not include official fees such as those for taxes, tags, licenses and registration.

**Other Important Terms.** See your lease documents for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

**4. Itemization of Gross Capitalized Cost**

| | | | | |
|---|---|---|---|---|
| Agreed upon value of the Vehicle as equipped at the time lessee and lessor sign this Lease: | $ 24,141.67 | Prior credit or lease balance on trade-in vehicle being capitalized | $ | 1,928.00 ‡ |
| Accessories and optional equipment Lessor agrees to add to the Vehicle after Lease signing: | | Optional Products and Services: | | |
| (Describe) N/A | $ N/A | Mechanical Breakdown Protection | $ | N/A |
| (Describe) N/A | $ N/A | Amount for Service Contract | $ | N/A |
| (Describe) N/A | $ N/A | Gap Contract or Coverage or Gap Waiver | $ | N/A |
| (Describe) N/A | $ N/A | Amount of Premium for Insurance Policy | $ | N/A |
| Total agreed upon value of Vehicle: | $ 24,141.67 | Amount of Premium for Insurance Policy | $ | N/A |
| Other amounts included in the gross capitalized cost: | | Electronic vehicle registration or transfer charge (not a governmental fee) | $ | N/A |
| Taxes | $ N/A | N/A | $ | N/A |
| Title and registration fees | $ N/A | KEY REPLACEMENT | $ | 664.00 |
| California tire fees | $ N/A | N/A | $ | N/A |
| Lease acquisition fee | $ 595.00 | N/A | $ | N/A |
| Document processing charge (Not a governmental fee) | $ N/A | N/A | $ | N/A |
| N/A | $ N/A | **Total Gross Capitalized Cost:** | $ | 27,328.67 |
| | | ‡ No add permitted unless lessor has paid prior credit or lease balance. | | |

Year _2012_

Make _HYUNDAI_     Model _TUCSON_

| | | | |
|---|---|---|---|
| ‡ No add permitted unless lessor has paid prior credit or lease balance. | | | |
| Gross Agreed-Upon Value of Trade-In | $ | | 10,000.00 |
| Prior Credit or Lease Balance on Trade-In | − $ | | 11,928.00 |
| Net Trade-In Allowance (If less than 0 then enter 0) | = $ | | 0 |

This box for use by original lessor and lessee to memorialize vehicle trade-in, turn-in, or other individualized agreements. If none, enter "none" or "N/A". Assignee shall not be obligated for agreements disclosed here.

-THIS LEASE IS SUBJECT TO ASSIGNEE APPROVAL WITHIN 10 DAYS OF EXECUTION. OTHERWISE, DEALER SHALL HAVE THE RIGHT TO RESCIND (CANCEL) THIS LEASE AND REQUIRE YOU TO RETURN THE VEHICLE ON DEMAND.
-THE INSURANCE VERIFICATION AND GAP WAIVER ARE INCORPORATED BY REFERENCE AS IF SET FORTH HEREIN.
-IF PAY-OFF BALANCE ON ANY VEHICLE TRADED-IN IS IN EXCESS OF $11928.00, I WILL PAY THE ADDITIONAL AMOUNT TO YOU ON DEMAND.

**6. Estimated Official Fees and Taxes.** The total estimated amount you will pay for official and license fees, registration, title and taxes over the term of your Lease, whether included with your

monthly payments or assessed otherwise: $ _2,682.77_ (e)The actual total of fees and taxes may be higher or lower depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed.

**7. Warranties.** The Vehicle is subject to the following express warranties: If the Vehicle is new, the Vehicle is subject to the manufacturer's standard new car warranty. ☐ If this box is checked, the Vehicle is subject to the following express warranty or guarantee:

_N/A_
_N/A_

If the Vehicle is not new, and no warranty is identified in the previous sentence, there is no express warranty on the Vehicle. TO THE EXTENT PERMITTED BY LAW, WE DISCLAIM ANY WARRANTIES IMPLIED BY LAW, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE. If no express warranty applies, THE

VEHICLE IS BEING LEASED "AS IS," AND "WITH ALL FAULTS," AND THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE VEHICLE IS WITH YOU. SHOULD THE VEHICLE PROVE DEFECTIVE FOLLOWING DELIVERY PURSUANT TO THIS LEASE, YOU, NOT THE LESSOR, ASSUME THE ENTIRE COST OF ALL NECESSARY SERVICING OR REPAIR. If we make a written warranty covering the Vehicle or, within 90 days of the Lease Date we extend a service contract covering the Vehicle, nothing in this Item 7 will affect any implied warranties during the term of the warranty or service contract.

**8. Late Payments.** The charge for late payments is LESSER OF $20 OR 10% for any payment not received within 10 days of the date it is due.

**9. Disposition Fee** (See "Return of the Vehicle" on the other side of this Lease): $ _400.00_

**10. Early Termination Fee** (See "Terms Concerning Your Early Termination Liability" on the other side of this Lease): $ _400.00_ (may not exceed Disposition Fee shown in Item 9).

## 11. Optional Products and Services

*You are not required to buy any of the following optional products and services to enter into the Lease. The term of any product or service will be the Lease term, unless a different term is shown below. If you decide you want to buy an optional product or service, review the terms of the contract for the product or service before you initial below. A completed copy of the contract will be given to you as soon as practicable.* **By initialing below, you indicate that you want to purchase the optional products and services indicated. If the cost shown below is not shown as part of the Itemization of Amount Due at Lease Signing above, it has been added to the Gross Capitalized Cost (see itemization above).**

| Optional Product or Service | Amount or Period | Price | Term | Name of Provider | Approval |
|---|---|---|---|---|---|
| Optional Mechanical Breakdown Protection or Service Contract | N/A | N/A | N/A | N/A | Lessee Initials _N/A_ |
| Optional Gap Contract or Coverage, or Gap Waiver | N/A | N/A | N/A | | Lessee Initials _N/A_ |

## 12. NOTICES

**NOTICE TO THE LESSEE: YOU HAVE NO OWNERSHIP RIGHTS IN THE VEHICLE UNLESS AND UNTIL YOU EXERCISE YOUR OPTION TO PURCHASE THE VEHICLE.**

## 13. CALIFORNIA NOTICES

**NOTICE - THERE IS NO COOLING-OFF PERIOD.** California law does not provide for a "cooling-off" or other cancellation period for vehicle leases. Therefore, you cannot later cancel this lease simply because you change your mind, decided the vehicle costs too much, or wish you had acquired a different vehicle. You may cancel this lease only with the agreement of the lessor or for legal cause, such as fraud.

**NOTICE - You have the right to return the vehicle, and receive a refund of any payments made if the credit application is not approved, unless nonapproval results from an incomplete application or from incorrect information provided by you.**

**GAP LIABILITY NOTICE - In the event of theft or damage to the vehicle that results in a total loss, there may be a GAP between the amount due upon early termination and the proceeds of your insurance settlement and deductible. THIS LEASE PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT.** Optional coverage for the GAP amount may be offered for an additional price.

(1) Do not sign this lease before you read it or if it contains any blank spaces to be filled in; (2) You are entitled to a completely filled in copy of this lease; (3) Warning-Unless a charge is included in this lease for public liability or property damage insurance, payment for that coverage is not provided by this lease.

**BY SIGNING THE LEASE, YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED AND READ A COMPLETED COPY OF THIS LEASE BEFORE SIGNING IT.**

### LESSEE SIGNATURES
(check if other than individual(s)) ☐ Corporation ☐ Partnership ☐ LLC or LLP ☐ Sole Proprietorship

| | |
|---|---|
| Lessee Signature _Caitlin Ahearn_ | Lessee Signature _N/A_ |
| Type/Print Lessee Name _CAITLIN MOIRA AHEARN_ | Type/Print Lessee Name _N/A_ |

### LESSOR'S ACCEPTANCE AND ASSIGNMENT
The Lessor's authorized signature indicates the Lessor has accepted the terms, conditions and obligations of the Lease and that the Lessor agrees to the "Lessor's Assignment" provision on the other side of this Lease.

Lessor Name: _WOODLAND HILLS HYUNDAI_

By: _____

Assignee Name: _HYUNDAI LEASE TITLING TRUST_

Type/Print Name: _VALIZADEH, MEHRDAD_

Type/Print Title: _FINANCE MANAGER_

FORM NO. HCA-LAW-100-CA (REV. 09/10)
©2015 The Reynolds and Reynolds Company  ©2015 Hyundai Capital America
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

**LESSEE COPY**