

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

— — —

IN RE:  AUTOMOTIVE WIRE HARNESS
SYSTEMS ANTITRUST

MDL NO. 2311
_____/

STATUS CONFERENCE / MOTION HEARING

BEFORE THE HONORABLE MARIANNE O. BATTANI
United States District Judge
Theodore Levin United States Courthouse
231 West Lafayette Boulevard
Detroit, Michigan
Wednesday, June 5, 2019

APPEARANCES:

Direct Purchaser Plaintiffs:

SOLOMON B. CERA
**GOLD, BENNET, CERA & SIDENER, L.L.P.**
595 Market Street, Suite 2300
San Francisco, CA  94105
(415) 777-2230

MANUEL J. DOMINGUEZ
**COHEN MILSTEIN**
3507 Kyoto Gardens Drive, Suite 200
Palm Beach Gardens, FL  33410
(561) 578-6850

DAVID H. FINK
**FINK & ASSOCIATES LAW**
100 West Long Lake Road, Suite 111
Bloomfield Hills, MI  48304
(248) 971-2500

1    APPEARANCES:

2    <u>Direct Purchaser Plaintiffs:</u>

3    NATHAN FINK
     **FINK & ASSOCIATES LAW**
4    100 West Long Lake Road, Suite 111
     Bloomfield Hills, MI  48304
5    (248) 971-2500

6    GREGORY P. HANSEL
     **PRETI, FLAHERTY, BELIVEAU &**
7    **PACHIOS, L.L.P.**
     One City Center
8    Portland, ME  04112
     (207) 791-3000
9
     WILLIAM E. HOESE
10   **KOHN, SWIFT & GRAF, P.C.**
     One South Broad Street, Suite 2100
11   Philadelphia, PA  19107
     (215) 238-1700
12
     STEVEN A. KANNER
13   **FREED, KANNER, LONDON & MILLEN, L.L.C.**
     2201 Waukegan Road, Suite 130
14   Bannockburn, IL  60015
     (224) 632-4502
15
     EUGENE A. SPECTOR
16   **SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.**
     1818 Market Street, Suite 2500
17   Philadelphia, PA  19103
     (215) 496-0300
18
     RANDALL B. WEILL
19   **PRETI, FLAHERTY, BELIVEAU & PACHIOS, L.L.P.**
     One City Center
20   Portland, ME  04112
     (207) 791-3000
21
     <u>End-Payor Plaintiffs:</u>
22
     Mahde Abdallah
23   **THE MILLER LAW FIRM, P.C.**
     950 West University Drive, Suite 300
24   Rochester, MI  48307
     (248) 841-2200
25

```
 1    APPEARANCES:

 2    End-Payor Plaintiffs:

 3    DEVON ALLARD
      THE MILLER LAW FIRM, P.C.
 4    950 West University Drive, Suite 300
      Rochester, MI  48307
 5    (248) 841-2200

 6    DAN GOLDFINE
      LEWIS ROCA
 7
      LUCAS ISSACHAROFF
 8    SUSMAN GODFREY, L.L.P.
      1000 Louisiana, Suite 5100
 9    Houston, TX 77002-5096
      (713) 651-9366
10
      CHANLER A. LANGHAM
11    SUSMAN GODFREY, L.L.P.
      1000 Louisiana, Suite 5100
12    Houston, TX 77002-5096
      (713) 651-9366
13
      E. POWELL MILLER
14    THE MILLER LAW FIRM, P.C.
      950 West University Drive, Suite 300
15    Rochester, MI  48307
      (248) 841-2200
16
      WILLIAM V. REISS
17    ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.
      601 Lexington Avenue, Suite 3400
18    New York, NY  10022
      (212) 980-7405
19
      HOLLIS L. SALZMAN
20    ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.
      601 Lexington Avenue, Suite 3400
21    New York, NY  10022
      (212) 980-7405
22
      ELIZABETH T. TRAN
23    COTCHETT, PITRE & McCARTHY, L.L.P.
      840 Malcolm Road
24    Burlingame, CA  94010
      (650) 697-6000
25
```

```
1   APPEARANCES:

2   Dealership Plaintiffs:

3   DON BARRETT
    BARRETT LAW OFFICES
4   P.O. Drawer 927
    Lexington, MS  39095
5   (601) 834-2376

6

7   JONATHAN W. CUNEO
    CUNEO, GILBERT & LaDUCA, L.L.P.
    507 C Street NE
8   Washington, D.C.  20002
    (202) 789-3960
9

10  WILLIAM SHOTZBARGER
    DUANE MORRIS, L.L.P.
11  30 South 17th Street
    Philadelphia, PA  19103
12  (215) 979-7385

13  For the Defendants:

14  RACHEL ADCOX
    AXINN, VELTROP & HARKRIDER
15  950 F Street, NW
    Washington, D.C. 20004
16  (202) 912-4700

17  JEFFREY J. AMATO
    WINSTON & STRAWN, L.L.P.
18  200 Park Avenue
    New York, NY  10166
19  (212) 294-4685

20  ALDEN L. ATKINS
    VINSON & ELKINS, L.L.P.
21  2200 Pennsylvania Avenue NW, Suite 500 West
    Washington, D.C.  20037
22  (202) 639-6613

23  DONALD M. BARNES
    PORTER, WRIGHT, MORRIS & ARTHUR, L.L.P.
24  1919 Pennsylvania Avenue, NW, Suite 500
    Washington, D.C.  20006
25  (202) 778-.3056
```

```
 1    APPEARANCES:

 2    For the Defendants:

 3    JEREMY CALSYN
      CLEARY, GOTTLIEB, STEEN & HAMILTON, L.L.P.
 4    2000 Pennsylvania Avenue NW
      Washington, D.C.  20006
 5    (202) 974-1500

 6    STEVEN F. CHERRY
      WILMER HALE
 7    1875 Pennsylvania Avenue NW
      Washington, D.C.  20006
 8    (202) 663-6321

 9    EILEEN M. COLE
      WHITE & CASE, L.L.P.
10    701 Thirteenth Street NW
      Washington, D.C.  20005
11    (202) 626-3642

12    KENNETH R. DAVIS, II
      LANE POWELL, P.C.
13    601 SW Second Avenue, Suite 2100
      Portland, OR  97204
14    (503) 778-2100

15    DEBRA H. DERMODY
      REED SMITH, L.L.P.
16    225 Fifth Avenue, Suite 1200
      Pittsburgh, PA  15222
17    (412) 288-3302

18    ABRAM ELLIS
      SIMPSON, THACHER & BARTLETT, L.L.P.
19    1155 F Street, N.W.
      Washington, D.C. 20004
20    (202) 636-5579

21    J. CLAYTON EVERETT, JR.
      MORGAN, LEWIS & BOCKIUS, L.L.P.
22    1111 Pennsylvania Avenue NW
      Washington, D.C.  20004
23    (202) 739-5860

24

25
```

```
 1  APPEARANCES:

 2  For the Defendants:

 3  DAVID C. GIARDINA
    SIDLEY AUSTIN, L.L.P.
 4  One South Dearborn Street
    Chicago, IL  60603
 5  (312) 853-4155

 6  FRED K. HERRMANN
    KERR, RUSSELL & WEBER, P.L.C.
 7  500 Woodward Avenue, Suite 2500
    Detroit, MI  48226
 8  (313) 961-0200

 9  ELLEN MAXWELL-HOFFMAN
    BOWLES RICE
10  600 Quarrier Street
    Charleston, WV 25325
11  (304) 343-2867

12  HOWARD B. IWREY
    DYKEMA GOSSETT, P.L.L.C.
13  39577 Woodward Avenue, Suite 300
    Bloomfield Hills, MI  48304
14  (248) 203-0526

15  HEATHER LAMBERG KAFELE
    SHEARMAN & STERLING, L.L.P.
16  801 Pennsylvania Avenue, NW
    Washington, D.C.  20004
17  (202) 508-8097

18  MICHELLE A. MANTINE
    REED SMITH, L.L.P.
19  225 Fifth Avenue, Suite 1200
    Pittsburgh, PA  15222
20  (412) 288-4268

21  STEFAN M. MEISNER
    MCDERMOTT WILL & EMERY
22  500 North Capitol Street, NW
    Washington, D.C. 20001
23  (202) 756-8000

24

25
```

1    APPEARANCES:

2    <u>For the Defendants:</u>

3    GARY MOUW
     **VARNUM, L.L.P.**
4    333 Bridge Street NW
     Grand Rapids, MI 49504
5    (616) 336-7000

6    ADAM PERGAMONT
     **ARNOLD & PORTER, L.L.P.**
7    555 Twelfth Street NW
     Washington, D.C.  20004
8    (202) 942-5000

9    SONIA KUESTER PFAFFENROTH
     **ARNOLD & PORTER, L.L.P.**
10   555 Twelfth Street NW
     Washington, D.C.  20004
11   (202) 942-5094

12   ALEXANDER B. REICH
     **CALFEE, HALTER & GRISWOLD, L.L.P.**
13   1405 East Sixth Street
     Cleveland, OH  44114
14   (216) 622-8621

15   STEVEN REISS
     **WEIL, GOTSHAL & MANGAS L.L.P.**
16   767 Fifth Avenue
     New York, NY 10153
17   (212) 310-8174

18   LARRY J. SAYLOR
     **MILLER, CANFIELD, PADDOCK & STONE, P.L.C.**
19   150 West Jefferson Avenue, Suite 2500
     Detroit, MI  48226
20   (313) 496-7986

21   SCOTT T. SEABOLT
     **SEABOLT LAW FIRM**
22   17199 N. Laurel Park Drive, Suite 215
     Livonia, MI  48152
23   (248) 717-1302

24

25

1    APPEARANCES:

2    <u>For the Defendants:</u>

3    JOANNE GEHA SWANSON
     **KERR, RUSSELL & WEBER, P.L.C.**
4    500 Woodward Avenue, Suite 2500
     Detroit, MI  48226
5    (313) 961-0200

6    MATTHEW TABAS
     **ARNOLD & PORTER, L.L.P.**
7    555 Twelfth Street NW
     Washington, D.C.  20004
8    (202) 942-5000

9    MICHAEL F. TUBACH
     **O'MELVENY & MYERS, L.L.P.**
10   Two Embarcadero Center, 28th Floor
     San Francisco, CA  94111
11   (415) 984-8700

12   LINDSEY ROBINSON VAALA
     **VINSON & ELKINS, L.L.P.**
13   2200 Pennsylvania Avenue NW, Suite 500 West
     Washington, D.C.  20037
14   (202) 639-6585

15

16

17

18

19

20

21

22

23

24

25

TABLE OF CONTENTS

Page

Status Conference...................................11

End-Payor Plaintiffs' Unopposed Motion for
  Authorization to Disseminate May 2019 Notice to
  the End-Payor Plaintiffs Settlement Class........38

_

| | |
|---|---|
| 1 | Detroit, Michigan |
| 2 | Wednesday, June 5th, 2019 |
| 3 | at about 10:01 a.m. |
| 4 | — — — |
| 5 | (Court and Counsel present.) |
| 6 | THE CASE MANAGER:  Please rise. |
| 7 | The United States District Court for the Eastern |
| 8 | District of Michigan is now in session.  The Honorable |
| 9 | Marianne O. Battani presiding. |
| 10 | Please be seated. |
| 11 | All persons having business therein, draw near, |
| 12 | give attention, you shall be heard. |
| 13 | God save these United States and this Honorable |
| 14 | Court. |
| 15 | You may be seated. |
| 16 | The Court calls Case No. 12-md-02311, In |
| 17 | Re: Automotive Parts Antitrust Litigation. |
| 18 | THE COURT:  Good morning, everybody. |
| 19 | THE ATTORNEYS:  (Collectively)  Good morning. |
| 20 | THE COURT:  We have a relatively short agenda |
| 21 | today, so we will try to proceed as quickly as we can. |
| 22 | Mr. Esshaki is not here today.  Evidently there |
| 23 | hasn't been much for him to do recently, so he really has no |
| 24 | report to add.  /so I told him he didn't have to be here. |
| 25 | Is there anybody who has any questions for the |

1  Master or any problems, situations?

2      (No response.)

3      THE COURT:  No.  Okay.  Status report, the direct

4  purchasers' status.  Let's talk about A.

5      MR. HANSEL:  Good morning, Your Honor.

6  Greg Hansel, for the direct purchasers.  May it please the

7  Court.

8      I have two things I wanted to say this morning.

9      THE COURT:  Okay.

10      MR. HANSEL:  First is a quick update on the

11  settlement status from a big picture point of view from the

12  direct purchasers, and, second, I wanted to ask the Court

13  about scheduling some final approval hearings in four parts.

14      THE COURT:  Okay.

15      MR. HANSEL:  So on the first one, I am pleased to

16  report that the direct purchasers have been working very hard

17  to resolve these cases.  Since the last status conference, on

18  September 26th of last year, we have reached 33 new

19  settlements, defining a settlement as a settlement with one

20  defendant in one part, so 33 new settlements.  We have filed

21  complaints in 24 parts, and we have completely settled 11 of

22  those parts, at least in principle, with some settlement

23  agreements remaining to be signed. Out of the 24 cases, 22

24  have at least one settling defendant, and 9 out of the 24

25  have only one defendant remaining.  We have now settled with

1    27 families of defendants total.

2          So we find those statistics to be encouraging, and

3    we are going to keep at it with an eye to resolving

4    everything.  As the Court is aware, some matters remain in

5    litigation and we are litigating those.

6          THE COURT:  Okay.

7          MR. HANSEL:  So as far as --

8          THE COURT:  What is the status -- while we are

9    talking about this -- of the arbitration in the spark plugs

10   case?

11         MR. HANSEL:  No arbitrations have been filed by

12   anyone.

13         THE COURT:  Okay.  Interesting.  So what's going on

14   then?  There's what, Bosch, NTK and NGK I think?

15         MR. HANSEL:  Yes, that's correct.  Well, there is

16   not currently pending a case against Bosch, against

17   Robert Bosch in spark plugs or oxygen sensors, but there are

18   cases pending against NGK and NTK in both of those parts.

19   Those two companies are affiliated.

20         THE COURT:  Okay.

21         MR. HANSEL:  And we are also engaging with the

22   mediators in connection with those.

23         THE COURT:  And Bosch was dismissed from the oxygen

24   sensors; do you know that?

25         MR. HANSEL:  I believe that's right, yes, yes.

```
 1              THE COURT:  Okay.  And the other one I wanted to
 2   check on was the exhaust system, Bosal, and what's going on
 3   with --
 4              MR. HANSEL:  So Bosal, after the Court's recent
 5   order denying the direct purchasers' motion for
 6   reconsideration of the dismissal of Boysen, Bosal is the only
 7   remaining non-settling defendant in the direct purchasers'
 8   exhaust system cases.  We are still, you know, litigating
 9   against Bosal, but we are also engaging the mediators with
10   respect to Bosal.
11              THE COURT:  Is there a mediation scheduled?
12              MR. HANSEL:  Umm --
13              THE COURT:  I didn't see one on the --
14              MR. KANNER:  Good morning, Your Honor.
15   Steve Kanner.
16              Most recently, in fact, today I heard from the
17   mediator who has indicated that a conference call has been
18   scheduled.
19              THE COURT:  A conference call.
20              MR. KANNER:  I don't know where that call will lead
21   us, but there is some progress in terms of moving.
22              THE COURT:  We are really looking for progress.  We
23   look at the conference call as the be-all, end-all.  When is
24   that scheduled for, do you have any idea?
25              MR. KANNER:  Well, this afternoon, the conference
```

1    call.

2              THE COURT:  Okay.

3              MR. KANNER:  If there is going to be a meeting, I

4    suspect that will be derived from the conference call.

5              THE COURT:  All right.  I guess I want to know if

6    it is not going to progress to a resolution.  Then we need to

7    move forward and take the next steps in these cases, so

8    that's what I'm starting to look at to push -- not to force

9    anybody to settle, but if you are not settling, then I want

10   to move forward.

11             MR. HANSEL:  So do we.

12             THE COURT:  So whatever we need, we need to do it.

13             MR. KANNER:  I understand, Your Honor.  And I

14   believe the mediator will report to you at the conclusion of

15   the current set of activities.

16             THE COURT:  Right.  Okay.  Thank you.

17             Mr. Hansel, you may continue, if you have anything

18   else?

19             MR. HANSEL:  Yes.  Thank you.  So we would like to

20   ask the Court today to schedule a final approval hearing in

21   four parts, and we have some proposed dates.

22             THE COURT:  Okay.

23             MR. HANSEL:  The four parts are alternators,

24   starters, fuel injection systems, and radiators.  There are

25   multiple settlements in each of those parts.  If -- and we

1   have some suggested dates --

2        THE COURT:  Let me pull up the calendar.

3        MR. HANSEL:  -- that would work for the direct

4   purchasers, and also avoid the Jewish holidays.

5        THE COURT:  All right.

6        MR. HANSEL:  So the dates are in October.

7   October 2nd -- you want me to wait for your response before

8   going to the next one?

9        THE COURT:  Okay.  October 2nd, I've got it.  Okay.

10        MR. HANSEL:  October 3rd.

11        THE COURT:  I think October 2nd, just to tell you,

12   I was looking at that for our next conference date, so it may

13   work out very well to do it the same day.

14        MR. HANSEL:  Good idea.

15        THE COURT:  Would you like that?

16        MR. HANSEL:  Sure.

17        THE COURT:  Why don't we put it October 7th then --

18   2nd.  Is that for all four?

19        MR. HANSEL:  Yes.  So what we suggest respectfully,

20   Your Honor, that today we can submit by ECF utility the

21   proposed order on the notice motions that are pending for

22   those four parts, and the order will contain the October 2nd

23   date.  That's what we were waiting for was to get that date

24   set.

25        THE COURT:  Right.

```
 1            MR. HANSEL:  Now that that is set for October 2nd,
 2   the Fink Bressack law firm will submit by ECF utility today
 3   proposed orders granting the notice motions in those four
 4   parts for the direct purchasers, and setting October 2nd as
 5   the date for the fairness hearing.
 6            THE COURT:  All right.  Sounds good to me.
 7            MR. HANSEL:  Great.  That's all I have, Your Honor.
 8   Thank you.
 9            THE COURT:  Thank you.  Good morning.
10            MS. SALZMAN:  Good morning, Your Honor.  Just with
11   regard to October 2nd as a potential date for the status
12   conference, I just want to bring to the Court's attention
13   that traveling the day before, it is the second day of
14   Rosh Hashanah, and whether that impacts people coming in for
15   the hearing.  Maybe the hearing could be the following day on
16   October 3rd so people don't have to travel on that date if
17   they observe the holiday.
18            THE COURT:  Okay.
19            MS. SALZMAN:  Sorry to throw a wrench into that.
20            THE COURT:  No.  I'm glad you did.  That's why we
21   suggest these dates at trial (sic).  Let's look at the next
22   Wednesday, that would be the 9th.
23            MS. SALZMAN:  That's Yom Kippur I'm told from my
24   backup group.
25            THE COURT:  You enjoy the longest holiday.
```

*STATUS CONFERENCE / MOTION HEARING*

**17**

1    MR. HANSEL:  The other dates we had looked at were
2    the afternoon on the 10th or anytime on the 11th.
3    MS. SALZMAN:  Or the 3rd, if that works.
4    THE COURT:  We can do October 3rd for the fairness
5    hearing and the status conference.  Let me just check.  It is
6    a Thursday, so it is a little off of our regular date, but I
7    don't see any conflict with that.  Okay.  Molly, do you see
8    any conflict in that date, the 3rd?
9    THE CASE MANAGER:  We have sentencings.
10   THE COURT:  We can change that.  We have a jury
11   trial too, and we will change that.
12   MR. HANSEL:  So October 3rd?
13   THE COURT:  October 3rd it is.
14   MR. HANSEL:  So would the status be at 10:00?  And
15   what time would Your Honor like to set the approval hearing?
16   THE COURT:  We will do it right after that.  I
17   would say for your notice to put it at 11:00, because I don't
18   know what else is going to be on, but if we don't have
19   motions, many, like today, it would be very short.
20   MS. SALZMAN:  Hollis Salzman, for the end payors.
21   Sorry for not introducing myself earlier.
22   Your Honor, we are happy to tell the Court we have
23   settled with all of the defendants except for one, and that
24   is Bosal.  We have other settlements that we are unable to
25   disclose at this time because we have agreements in

1  principle, but we are still negotiating the terms of those

2  settlements, but we hope to have those to Your Honor shortly.

3        We have one pending approval motion with Sanoh in

4  the steel tubes case, and that's pending before Your Honor.

5  So that is the only motion in the end payors' case that

6  requires your attention.  And then hopefully we will get the

7  other settlements wrapped up, and get you preliminary

8  approval papers on those settlements.

9        THE COURT:  Do I have that steel tubes?

10       MS. SALZMAN:  If not, we can resubmit it, but I

11  believe it has been filed.

12       THE COURT:  If it has been submitted, I have it.  I

13  just haven't had it come across my desk yet.  So that's all

14  defendants?

15       MS. SALZMAN:  Except for one.

16       THE COURT:  Except for Bosal.

17       MS. SALZMAN:  And that's in the exhaust systems

18  case.  We had one failed mediation with Bosal.

19       THE COURT:  Right.

20       MS. SALZMAN:  We continue to have discussions with

21  them.  I too have spoken to Mr. Poza, the mediator, and we

22  are still working to that end.  However, we also -- given

23  that we have uncertainty as to whether or not we can settle

24  with that defendant, we have scheduled the meet and confer on

25  discovery for early next week, and we will be moving forward

1    with the case if we can't reach a resolution with them.  That

2    will probably be done in tandem.

3              THE COURT:  Is Bosal, in terms of settlement,

4    wanting to do the direct and the indirects in one?

5              MS. SALZMAN:  Maybe that's a better question for

6    them.  I don't know.

7              THE COURT:  I mean, is that what's holding up --

8              MR. HANSEL:  Your Honor, as with the end payors,

9    the direct purchasers have already had one failed mediation

10   with Bosal.  And Rocky Posa is the mediator, he's still

11   engaged.  I guess we are a little more optimistic that there

12   might be a resolution that's possible, but we agree that if

13   we can't resolve it, we do want to move forward with the

14   litigation.

15             THE COURT:  And Mr. Posa is doing both of the

16   mediations?

17             MS. SALZMAN:  Yes.  And I don't want to steal

18   Mr. Barrett's thunder, but he has a report on Bosal that he

19   can give himself.

20             THE COURT:  All right.  Thank you very much,

21   Ms. Salzman.

22             MR. BARRETT:  Good morning.

23             THE COURT:  Mr. Barrett, go ahead.

24             MR. BARRETT:  Good morning, Your Honor.

25             THE COURT:  Good morning.

1          MR. BARRETT:  Your Honor, the auto dealers are

2   pleased to announce that we have settled with everybody

3   including Bosal.

4          THE COURT:  Okay.

5          MR. BARRETT:  And we have -- it's been over eight

6   years.  We filed these cases --

7          THE COURT:  Can we have a round of applause?  We

8   have one group that's all done.

9          MR. BARRETT:  I was a young man when we filed these

10  cases.

11         Today we will be filing a motion for approval of

12  the round-three allocation plan.  We've got about four

13  preliminary approval motions yet to file.  We will file those

14  this month.  And we will -- and we will be seeking a final

15  approval date from Your Honor sometime this year.  We can do

16  it in this calendar year, and we intend to hope to do that.

17         THE COURT:  Good.

18         MR. BARRETT:  We thank the Court for its many

19  courtesies over the years.

20         THE COURT:  Wonderful.  The first group in eight

21  years.  Okay.  When I started this, I was naive enough to

22  think in a couple years we will get this resolved.

23         MR. SHOTZBERGER:  Good morning, Your Honor.

24  William Shotzberger on behalf of the truck and equipment

25  dealer plaintiffs.

1          THE COURT:  Okay.

2          MR. SHOTZBERGER:  I have no new settlements to

3    report because we also are settled with all active defendants

4    in our cases.  On our to-do list we still need to file a

5    motion for preliminary approval of our settlement with the

6    trustee for TK Holdings, that's Takata American entity, and

7    we are going to file that motion in two weeks along with a

8    motion for approval of a plan of distribution for all

9    settlements -- all parts where a plan is not yet in place.

10          THE COURT:  When do you think you are going to do

11   the distribution in the trucks?

12          MR. SHOTZBERGER:  I believe we anticipate filing

13   our motion within two weeks, so I would expect, depending on

14   when that is ruled upon, I would think probably late this

15   year.

16          THE COURT:  Okay.  Thank you.

17          MR. SHOTZBERGER:  Thank you.

18          THE COURT:  All right.  Status of scheduling

19   orders.  Is anybody speaking to that?  I don't know who put

20   that on?  Is there any problem with scheduling orders?  Let

21   me ask you that.

22          MR. SPECTOR:  Good morning, Your Honor.

23          THE COURT:  Good morning.

24          MR. SPECTOR:  Eugene Spector, on behalf of the

25   direct purchasers.

```
 1              The only scheduling order we had, we submitted last
 2    night on ECF, and I have copies here if you would like.  It
 3    is a stipulated order on the class -- the revised class
 4    certification briefing schedule in the bearings case, and so
 5    that's now set for your approval.
 6              And with regard to the Dalc case, which is the
 7    remaining case, we are in discussions with defendants, trying
 8    to figure out the best way to streamline the bearings cases
 9    so that they hopefully move in coordination and get resolved
10    at the same time.
11              THE COURT:  I'm trying to remember the telephone
12    conference we had on that.  Was there some discovery --
13              MR. SPECTOR:  Yes.
14              THE COURT:  Is this you too or is that just the
15    scheduling?
16              MR. SPECTOR:  That's all part of the discussions.
17    There is some discovery that we are still owed.  We are
18    trying to get that part of it resolved without having to come
19    to the Court again.  There was already a motion to compel
20    that was granted.  If we can get those things -- I think we
21    can get those things resolved, but that's what we are working
22    on in discussions.
23              THE COURT:  Okay.  Good.  Thank you.
24              MR. LANGHAM:  Chanler Langham for the end payors.
25              As you heard, Your Honor, Bosal is the last
```

 1  remaining non-settling defendant with the end payors.  We
 2  sent them a discovery plan with a fairly aggressive schedule
 3  because they are the last defendant.  They declined to meet
 4  with us in person today while we are all here, but they have
 5  now told us that we will discuss the scheduling plan on
 6  Tuesday of next week.  That's our report.  Thank you.
 7          THE COURT:  You are going to meet in person or are
 8  you going to do it by telephone?
 9          MR. LANGHAM:  It sounds like we will be doing it on
10  the telephone because they didn't want to meet in person.
11          THE COURT:  They don't want to look at you?  What's
12  going on?
13          MR. LANGHAM:  I don't know.  They said they were
14  busy traveling for this hearing and could not meet.  But
15  if -- if Your Honor thinks it would be more efficient, like I
16  do, to actually meet in person while we are all here, I'm
17  sure you might be able to convince them to do so.
18          THE COURT:  Are they all here?  Just a minute.  Who
19  else is here?
20          MR. MOUW:  Gary Mouw on behalf of Bosal.
21          My partner is traveling and was unable to meet
22  today in person.  I'm happy to have a conversation, but we
23  just received it late last week, the request, and we
24  explained that we needed to confer with our client about it,
25  and we were able to schedule a time to have a telephone

 1    conference to go through this proposed scheduling order early

 2    next week.

 3              I'm happy to start the conversations today, but

 4    given the -- my partner's absence and our chance to speak

 5    with our clients about it, we found the earliest convenient

 6    time to do it, and that's Tuesday of next week.

 7              THE COURT:  Okay.  I guess it will be Tuesday of

 8    next week though you could have a little chat here and --

 9              MR. MOUW:  Happy to, of course.  And as for the

10    discussions as for the settlement, since there was a lot of

11    discussion as to Bosal, as Mr. Barrett noted, we did settle

12    with the auto dealers, and have been in conversations with

13    both the end payors and direct purchasers.  We are providing

14    the end payors information as to our position.  They

15    requested follow-up for the supporting information, we

16    provided that.  So we have been certainly participating in

17    good faith and laid out our position quite clearly as to

18    where we are in settlement, and reasonable minds obviously

19    prevailed with Mr. Barrett and we were able to secure a

20    settlement there.  And we are willing to -- we will have

21    continuing conversations with both the directs and end payors

22    in the short run.

23              THE COURT:  I think I would like to keep better

24    contact with you on what's going on with Bosal.  I would like

25    to know, you know, if -- I trust your settlement mediations

1    will go on with -- your conversations with Mr. Posa will go

2    on, but I like to see the schedule, I like to see that it is

3    moving along so that if this does not resolve, we don't have

4    another eight years for you to get to trial.

5            MR. MOUW:  Certainly.

6            THE COURT:  So you have to know that we are going

7    to push this along.  I would like a report back.  You are

8    going to meet on Tuesday, and that would be to set up the

9    schedule; is that right?

10            MR. MOUW:  Yes, that's the purpose.

11            THE COURT:  What I would like you to do is to send

12    to me after Tuesday, if you have it finalized, send me a

13    little e-mail -- just send off an e-mail or something that

14    you have worked it out.  If you have not worked it out, then

15    I want to see you.  I want you to come in here, and I will

16    set a date when I hear from you.  I'm going to assume that

17    you can work it out, but just in case.

18            And I want you to understand, I'm not trying to say

19    you have to settle, I'm saying you have to move this case

20    along.

21            MR. MOUW:  Yes.

22            THE COURT:  I will do whatever I can, and you can

23    let me know what I can do, to push this a little faster.

24            MR. MOUW:  All right.

25            MR. LANGHAM:  Absolutely.  Thank you, Your Honor.

1          THE COURT:  Okay.  Before we do the date for the

2    next conference -- well, I think we did it.  It is going to

3    be October 9th.

4          MR. SPECTOR:  Excuse me?  The 3rd, Your Honor.

5          THE COURT:  October 3rd.  Thank you.  October 3rd

6    at 9:00.  Is that date all right even within the Jewish

7    holiday?

8          MR. HANSEL:  Is it 9:00 or 10:00?

9          THE COURT:  I'm sorry.  10:00, 10:00, October 3rd,

10   10:00.  Got that.  Okay.

11          In terms of the next status conference, we will

12   talk about it next time, but I'm thinking probably in

13   February of 2020, so just keep that in mind when you come

14   back so we can look at dates.

15          Is there any other matter?  I guess that's it

16   except for our motion.  Yes.

17          MR. WEILL:  Yes.

18          THE COURT:  Mr. Weill.

19          MR. WEILL:  Your Honor, Randall Weill with the

20   direct purchaser plaintiffs.

21          THE COURT:  Good morning.

22          MR. WEILL:  Good morning.  Your Honor, I would like

23   to resume a conversation we had last fall related to

24   anti-vibration rubber parts.

25          THE COURT:  All right.

 1          MR. WEILL:  Just to summarize, the direct

 2   purchasers were trying to get the defendants who pled guilty

 3   to produce the documents they produced to the Department of

 4   Justice pursuant to a court order that you issued.  Mr. Reiss

 5   came up and explained that there was a petition for 1292(b)

 6   appeal, and your decision was to wait to see what happened.

 7   So that petition -- the ability to submit that petition was

 8   granted.  It went to the Sixth Circuit, and the Sixth Circuit

 9   refused to consider the appeal.  So on -- this came up -- all

10   of this sort of came up since the submission of the

11   information for the preparation for the agenda, so my

12   apologies for sort of springing this on the Court.

13          So on May 10th, I wrote to the AVRP defendants and

14   said please produce the DOJ documents within 30 days, and

15   also we would like to discuss your producing to the direct

16   purchasers the discovery that was taken in the case that was

17   pursued by the end payors.  There was considerable discovery

18   taken, and we feel that we would like see what that is so we

19   don't replicate discovery.  I think that's in the spirit of

20   trying to be efficient here.

21          So most recently we did get an e-mail from

22   Mr. Reiss that says as far as he's concerned, the plaintiffs

23   in this case have settled their claims because he asserts

24   they were part of the settlement of the end payor case,

25   according to his, as I understand it, his assertion that the

 1    end payor definition included our plaintiffs, even though you

 2    and the Sixth Circuit indirectly have indicated at this stage

 3    they are direct purchasers.

 4         I understand that yesterday the defendants filed a

 5    motion to enforce judgment in the end payor case.  I haven't

 6    seen it, I am not party to the end payor cases, so I'm not

 7    quite sure why that was filed there.  But apparently it is

 8    directed to -- the effect of it is to say there is no direct

 9    purchaser case because as far as we are concerned we have

10    settled the case, our plaintiffs did not object, they are

11    part of the settling class, ergo the judgment affects them.

12         This is a considerable surprise to us.  We have had

13    no indication or direction that this negotiation somehow

14    affected our clients.  And from our point of view, we don't

15    think it is -- it has the impact on our clients.  And given

16    the fact that this case is to proceed, we would like the

17    production of the Department of Justice documents from the

18    guilty-plea defendants in accordance with the Court's order.

19         And we would also like -- we asked for a meet and

20    confer, but I will just say we would like the AVRP defendants

21    to give us all the documents they produced to the end payor

22    plaintiffs, and to the extent there is a problem with access

23    to the 53 depositions that were taken by the end payor

24    plaintiffs and defendants in that case, we would like to see

25    those as well.  So we can determine if there is the need for

 1 | any further discovery so we can proceed with the case.

 2 | THE COURT:  Okay.  Let's hear.

 3 | MR. REISS:  Good morning, Your Honor.

 4 | THE COURT:  Good morning, Mr. Reiss.

 5 | MR. REISS:  A little bit of background.  So we

 6 | have -- we being -- and I'm here on behalf of Bridgestone,

 7 | but I think I'm also speaking on behalf of all of the other

 8 | three AVRP defendants, so I'm speaking on behalf of the four

 9 | defendants in the AVRP case.

10 | All four of the defendants in the AVRP case have

11 | entered into settlements that this Court has approved and

12 | issued final judgments, including an injunction, in all four

13 | cases for all four defendants that bars any commencement or

14 | continuation of litigation by anyone in the end payor class.

15 | The end payor class is defined in the Court's order

16 | to include anyone who purchased a replacement part from a

17 | subsidiary of any of the defendants.  So those people are in

18 | the class.  They are barred by the injunction from proceeding

19 | with any litigation.

20 | The so-called named direct purchasers in this case,

21 | by their own allegations, Your Honor, and by their own

22 | admissions in this courtroom, purchased replacement parts

23 | from at best a fourth-tier subsidiary, who is not a

24 | defendant, and is not an antitrust violator, of one of the

25 | named defendants.  So at best their three named plaintiffs,

 1    Anderson, LaRue and Lee, are purchasers of replacement parts,

 2    not from any defendant, not from any subsidiary defendant,

 3    not from any subsidiary of any subsidiary of any defendant,

 4    but from at best a fourth-tier subsidiary.  That, Your Honor,

 5    makes them indisputably by their own allegations an indirect

 6    purchaser.

 7            And if that was not clear enough on the pleadings,

 8    the Supreme Court's decision in Apple last week says, "A

 9    direct purchaser is someone who purchases directly from the

10    antitrust violator.  It is not someone who purchases from

11    a -- from a company that is at least two levels down from the

12    violator."

13            Here, by their own allegations, their three named

14    individual plaintiffs who purchased replacement parts

15    purchased at best from a fourth-tier subsidiary, not from an

16    antitrust violator, not even from a direct subsidiary of an

17    antitrust violator.  They are indisputably indirect

18    purchasers of replacement parts.  They indisputably did not

19    opt out of any of the EPP settlements, and they are,

20    therefore, Your Honor, barred by the injunction that this

21    Court issued against all members of the indirect purchaser

22    class for all four AVRP defendants.

23            Now, Your Honor, this -- the final settlement with

24    the Court's approval in the AVRP case was not final until

25    December of last year, December 2018.  We filed our motion to

 1    dismiss the direct purchaser AVRP case on the grounds that
 2    they didn't have either constitutional or antitrust standing
 3    in April of 2017.  This Court ruled on that motion in March
 4    of 2018.  We immediately filed a motion for interlocutory
 5    appeal, which this Court granted in March of 2019, and the
 6    Sixth Circuit decided not to take the case.

 7          While that litigation was pending, Your Honor, we
 8    did not think it appropriate to burden the Court with yet
 9    another motion, which would not have been ripe until December
10    of last year, when the final AVRP EPP settlement was
11    approved.  But now that it is approved, all four AVRP
12    defendants are entitled to the benefit of that injunction.

13          And, by the way, the four AVRP defendants paid a
14    total of over $81 million to settle those EPP cases and to
15    get finality.  And we got an e-mail a couple weeks ago from
16    the plaintiffs in the supposed direct purchaser case saying
17    we want all of your documents.  We said you are part of the
18    EPP class, by definition you are enjoined, you can't proceed.
19    I sent that e-mail last week and said please let us know if
20    you are going to dismiss your case.  No response.

21          So, Your Honor, yes, yesterday we filed a motion to
22    enjoin any further activity on the part of the so-called
23    direct purchasers.  By the way, I will remind the Court, that
24    these four supposed -- they purport to be direct purchasers,
25    filed this complaint on the last day before the statute of

1  limitations was going to expire, and by their own admissions

2  they used these three plaintiffs, Anderson, LaRue and Lee,

3  because they could not find a real direct purchaser.

4          They are indirect purchasers.  They are barred by

5  this Court's injunction.  They cannot proceed with the

6  litigation.  And we told them that, and when we got no

7  response in a week or more, we did file our motion to enforce

8  the injunction.

9          Now, I know it is premature to argue this.  They

10 haven't responded, but I just wanted to give the Court a

11 sense of where we are.

12         THE COURT:  Wow, I get the sense.  Okay.

13         MR. WEILL:  Your Honor, I have to say -- I don't

14 know how to put this --

15         THE COURT:  I like you to be prepared, although I

16 see this is a last minute.  Although yours will come up --

17 obviously when the Court considers your motion, this answer

18 thing or discovery issue will also come up.

19         MR. REISS:  We have moved -- Your Honor, pending

20 disposition of the motion, we moved that the discovery stay

21 in force because arguably they are enjoined and they are

22 clearly enjoined.

23         THE COURT:  Okay.

24         MR. WEILL:  Your Honor, I would have to say -- let

25 me try to put this delicately.  I'm quite surprised by the

 1   approach that the defendants have taken since, as I
 2   indicated, we had no contact with them regarding this
 3   apparent negotiation with the end payor plaintiffs in a way
 4   that apparently negotiated our clients out of our case.  So
 5   this is something of an unusual tactic that I suggest maybe
 6   should be looked at more carefully.
 7          Also, it is something that we feel that is not
 8   appropriate because the Court itself and the Sixth Circuit
 9   has already made a ruling at this stage of the proceedings
10   that our plaintiffs are direct purchasers.
11          So for the defendants to say, aha, I will do a
12   settlement with the end payors, I will define these people
13   that we don't like into the end payor class.  We will submit
14   this to the Court, and then the Court naturally approved the
15   settlement and the injunction.  But then to have the
16   defendants say you can't -- Your Honor, you have issued
17   orders enjoining this process for these plaintiffs to go
18   forward.  I suggest, yes, it is a court order, but it was a
19   court order submitted in good faith on part of the end payor
20   plaintiffs and not on the part of the direct purchaser
21   plaintiffs, whose clients we think are entitled to pursue
22   their claims against these defendants.
23          I'm very surprised at this approach the defendants
24   have taken.  They have simply ignored what the Court has done
25   so far.  They have bypassed the direct purchasers and their

 1  counsel with respect to saying you've got no claim.  I'm very

 2  surprised.

 3          MS. SALZMAN:  Your Honor, Hollis Salzman for

 4  end payors.

 5          We are in a bit of an awkward position because we

 6  are not -- first of all, I haven't had an opportunity to

 7  study the filings that were made last time.  We certainly

 8  will, and we can respond to the extent we have anything to

 9  respond to, but I think just generally from the end payor

10  position, if someone falls within the definition of a class,

11  and they have eligible purchases, they can make a claim and

12  participate in the settlement.  And more than that, I'm not

13  sure we would actually have a position.

14          And I think even though the are briefs filed in our

15  case, there may be -- there should be some allotment for the

16  direct purchasers to file their response.  Although we -- you

17  know, to the extent we have anything, we will inform the

18  Court.

19          THE COURT:  Okay.

20          MR. WEILL:  Your Honor, can I just add one thing?

21          MR. REISS:  Just -- just -- just --

22          MR. WEILL:  Counsel reminds me that the settlement

23  agreement, which I have not read in its entirety, but the

24  settlement agreement with the end payors apparently

25  explicitly excludes direct purchaser plaintiffs from the

1   scope of the settling class.

2           MR. REISS:  Your Honor, it excludes direct

3   purchasers, not direct purchaser plaintiffs, and there is a

4   huge difference.

5           THE COURT:  Direct purchasers, not direct purchaser

6   plaintiffs.

7           MR. REISS:  Your Honor, I just want to be clear

8   because my entire practice career I always operate

9   aboveboard.  I just want to be clear about two things.  This

10  Court approved the notice to the end payor class as

11  constitutionally adequate.  Everyone in the end payor class

12  got this notice.  The notion that these three end payors

13  would not have adequate notice is frankly absurd because

14  these three end payors are actually represented by counsel in

15  this litigation.  So the notion that they didn't have notice

16  is frankly not credible.

17          Second, Your Honor, and here is the disconnect.  I

18  want to be clear, and I know the Court has not looked at any

19  of these papers.  They are relying on an exception to the

20  Illinois Brick bar that says -- the Supreme Court decision in

21  Illinois Brick, only direct purchasers can sue under the

22  Sherman Act.

23          There is an exception to that bar for certain

24  indirect purchasers under the ownership and control

25  exception.  If they purchase from an -- from a subsidiary

 1   that is either owned or controlled by an antitrust violator,

 2   they come into an exception for indirect purchasers under

 3   Illinois Brick.  We claim -- the Sixth Circuit, by the way,

 4   has not found that exception to apply in 42 years.

 5          But beside that, even if the indirect purchaser

 6   exception to Illinois Brick applied, that doesn't make an

 7   indirect purchaser a direct purchaser.  They are still an

 8   indirect purchaser.  They are an indirect purchaser that

 9   falls under the exception of Illinois Brick.  By definition

10   they are an indirect purchaser because otherwise they

11   wouldn't need the exception to Illinois Brick.

12          So I just want to be clear, Your Honor, that the

13   notion that they are not on notice is frankly not right, and

14   I don't want to argue any further, Your Honor.

15          THE COURT:  So the Court needs to review its prior

16   order from way back when, when I said they were a direct

17   purchaser; is that what you are saying?

18          MR. REISS:  No, Your Honor.  All you have ruled is

19   that at the pleading stage they have alleged enough.

20          THE COURT:  Oh --

21          MR. REISS:  But we now have filed a motion to

22   enforce an injunction saying the injunction clearly covers

23   them.

24          THE COURT:  Okay.  You know what, I would like to

25   pick a date, set this for oral argument after I have an

1    opportunity to read your motion and plaintiffs have had an

2    opportunity to respond to your motion.

3              MR. REISS:  Certainly, Your Honor.

4              THE COURT:  I really need to be better informed on

5    this before I rule.

6              MR. REISS:  I agree.  Thank you, Your Honor.

7              THE COURT:  Okay.  Let's -- you just filed it.  We

8    will set a date for you after I look at the motion --

9              MR. REISS:  Thank you, Your Honor.

10             THE COURT:  -- and set a scheduling order.

11             Okay.  Now I hesitate to ask:  Is there anything

12   else?

13             (No response.)

14             THE COURT:  No.  Okay.  Well, I guess that's it.

15   So our next meeting will be --

16             MR. ISSACHAROFF:  Sorry, Your Honor.  The notice

17   motion?

18             THE COURT:  Sure.  Come on up.  We still have a

19   motion.

20             MR. ISSACHAROFF:  Thank you, Your Honor.  Lucas

21   Issacharoff on behalf of the end purchaser plaintiffs.

22             So we filed the motion to give notice of the

23   round-four settlements.  As of now, that is settlements with

24   14 defendant families for $165.8 million.  But as my

25   co-counsel indicated, we are hoping to file a handful of

```
 1    additional settlements for preliminary approval and fold
 2    those into the round-four notice as well.
 3              THE COURT:  Okay.  But before we get into the
 4    round-four notice and the distribution, if anybody wants to
 5    leave who is not involved, feel free to do so.  Okay.  Go
 6    ahead.
 7              MR. ISSACHAROFF:  Thank you, Your Honor.  So the
 8    round-four notice program is fairly similar to the prior
 9    notice régimes that were approved by this Court.  There are,
10    I think, four significant changes that were adopted in
11    consultation with our --
12              THE COURT:  We received a letter on them today.
13              MR. ISSACHAROFF:  I'm sorry.  Those are minor
14    changes to the papers submitted, but I'm referring to
15    comparing the round-four versus the prior rounds of notice.
16              THE COURT:  Yes, I understand.
17              MR. ISSACHAROFF:  So we consulted with our
18    class-notice experts and determined to make four changes, and
19    I can sort of work my way up in significance.
20              So one is, as Your Honor has commented or suggested
21    in the past, we've allocated funds for additional media
22    outreach, e-mail notification, essentially more extensive
23    outreach designed not simply to provide the bare notice
24    required by Rule 23, but to avoid additional notice that we
25    anticipate will stimulate claims activity.  That includes
```

 1    additional online and television advertising, outreach to

 2    drive-earned media coverage and renting certain e-mail lists

 3    for potential class members.

 4         THE COURT:  I have a question about that notice as

 5    it relates to younger people, as has just been brought up to

 6    me.  I guess they don't read papers and they don't watch

 7    television, and Facebook is kind of out.  So where do they

 8    go?  Because I think we need to reach them.  These are the

 9    younger ones who may benefit more from their claim filing

10    than anybody else.

11         MR. ISSACHAROFF:  Your Honor, I guess I'm

12    fortuitously qualified to speak on behalf of my generation.

13         THE COURT:  You are.

14         MR. ISSACHAROFF:  So we -- as is detailed in the

15    declaration of Dr. Whetmen, we do believe that some of the

16    social media and internet advertising will target younger

17    generations, but my generation is also not known for

18    purchasing cars necessarily so that we do --

19         THE COURT:  I didn't give that a thought.  You are

20    more of the Lyft and Uber generation.

21         MR. ISSACHAROFF:  Right.  So we think we have

22    adequately mapped the media coverage that we purchased to the

23    likely demographic profile of the class settlement members.

24    This round covers purchases going as far back as 1990 in one

25    of the cases and up to 2019.  And so, you know, some of the

 1    generation who have stopped using Facebook were not born by

 2    that point.  So we do think that the notice program we have

 3    mapped out, which includes more extensive online advertising

 4    than the prior rounds will --

 5         THE COURT:  I really am being very serious.  To

 6    reach this group, and reading what was said here as to what

 7    they did, I still wasn't quite sure what was the technique to

 8    reach this group.  And is it -- is it acknowledged that they

 9    will reach this particular group by whatever means they are

10    going to use?

11         MR. ISSACHAROFF:  Yes, Your Honor.  If you -- if

12    you look at program components on page 3 of Exhibit A to the

13    Whetmen declaration.

14         THE COURT:  Let me look at that.  Exhibit A,

15    page 3.  I'm at the table of contents.  Is that -- is it

16    under paid media?

17         MR. ISSACHAROFF:  It is actually under the program

18    components, which begins on page 2.  You will see references

19    under both phase 1 and phase 2 to internet banner ads and

20    targeted internet advertising, and then under the earned

21    media phase to keyword search advertising.

22         And then as for the detail -- sorry to have you

23    turn back to page 21 of the Whetmen declaration, it discusses

24    banner ads that will appear on, in addition to Facebook, but

25    Huffington Post, TechCrunch, Engadget, a number of other

```
 1    websites that are properties of the Verizon Media Group.  And
 2    we also think that the earned media component will drive -- I
 3    hate to use the term viral coverage, but it is intended to
 4    drive sort of organic media coverage that we think will
 5    filter out into social media and drive general awareness of
 6    the fact that there is a large settlement fund that is
 7    available for claimants.
 8              THE COURT:  Okay.  So you believe and Kinsella
 9    believes that they have used the best means to target all of
10    the demographics?
11              MR. ISSACHAROFF:  We do, Your Honor.
12              THE COURT:  Okay.
13              MR. ISSACHAROFF:  So I think the second change from
14    the prior notice régimes is that we have submitted as Exhibit
15    D to the Whetmen declaration a revised claim form, and there
16    are certain -- we have reduced the upfront document
17    requirements.
18              THE COURT:  I wanted to ask you about that too.
19              MR. ISSACHAROFF:  Yes.
20              THE COURT:  I note on the claims form in Exhibit D
21    it says basically don't worry, you don't need your VIN number
22    right now.  It says you can submit a claim even if you don't
23    know your VIN.
24              What is the end result?  What is the verification
25    they have to have that they had a vehicle?
```

1      MR. ISSACHAROFF:  So the end result is I think the
2  claims administrator will review the claims that are
3  submitted and will devise a verification program as
4  appropriate.  I think that one mechanism might be for people
5  with a certain number of claims, there will be more steps
6  required.  There will be outreach and verification required.
7  There might be some sort of random auditing to ensure that
8  there are not a lot of spurious claims being filed.
9      THE COURT:  How do you do that?  Most people don't
10  keep records.  This is 20 years we are talking about of
11  vehicles.  One would assume that probably a majority of
12  people don't have records past -- let's just say ten years;
13  they throw away everything.  How do they verify that?  Are
14  they going to be required to go -- I don't know, does the
15  Secretary of State keep these records or --
16      MR. ISSACHAROFF:  I'm not familiar with the precise
17  verification procedures, but I do know that --
18      MS. SALZMAN:  So typically in these cases, Your
19  Honor, especially when you have such a broad number of
20  consumers, like you said, who would not keep all of the
21  information on older vehicles, we don't want to -- we want to
22  encourage filings, and so we are not requiring the
23  information.  However, what the claims administrators do in
24  these cases is they have algorithms they run.  They can see
25  where there might be purchasers that look like they are

1    fraudulent.  In other words, an individual filing a large
2    number of claims.  There are various things that sort of set
3    off an alarm for them, and it will be those claims that they
4    do a deeper dive to ask for additional information.  But the
5    typical consumer who files for one or two cars will not be
6    deterred from filing because they don't have this VIN
7    number that -- I mean, I certainly don't keep it for any of
8    my cars that I've owned.
9         THE COURT:  But then what about -- maybe it was the
10   old claims forms, they asked for purchase agreements?
11        MS. SALZMAN:  What we did was we originally wanted
12   some measure of agreement, but in speaking and consulting
13   with the claims administrator and seeing what was done in
14   other cases, we are not going to require this information.
15   And so with this round we are setting the claims deadline
16   which encourages filing; typically without a claims deadline
17   you don't get class members or an abundance of class members
18   to file.  In lieu of their case experience and our case
19   experience, we've determined that this is the best way to
20   encourage filings while still making sure that there is no
21   fraud on the system.
22        Will one or two fraudulent slip through?  Of
23   course, and that's probably true under any scenario.  But I
24   think based on their experience, they will do a pretty good
25   job and they know what to flag and what to look for.  In

44

```
 1    fact, they have a database of individuals that, you know, in

 2    their history of claims administration have been flagged as

 3    abusers of the system, and so they -- there's lots of bells

 4    and whistles --

 5            THE COURT:  A database of abusers of claims?

 6            MS. SALZMAN:  Yes, believe it or not.  Some people

 7    really want to file a claim.

 8            THE COURT:  And I think the additional change here

 9    is that $100 per --

10            MR. ISSACHAROFF:  Yes.  So as my colleague

11    mentioned, one of the -- the third significant change is the

12    addition of the claims deadline, which in our experience and

13    in our class-notice expert's experience, will stimulate a

14    large number of additional claims and allows us to begin

15    processing.

16            And then the final is the change to the plan of

17    allocation to add the $100 minimum payments.

18            THE COURT:  How many claims have been filed

19    already?

20            MR. ISSACHAROFF:  As of now, Your Honor, there are

21    roughly 58,000 claims for 3.7 million vehicles.  There are

22    also an additional 51,000 registrations on the website, some

23    of which may overlap with those claims on file.

24            THE COURT:  If you -- never mind.  I'm not going

25    ask the question.  All right.  Thank you.
```

| | |
|---|---|
| 1 | MR. ISSACHAROFF:  Thank you, Your Honor. |
| 2 | THE COURT:  All righty.  The Court -- |
| 3 | MR. ISSACHAROFF:  Sorry, Your Honor.  As was |
| 4 | mentioned in the papers, in order to adhere to the current |
| 5 | schedule that's set out in our papers, we will need to have |
| 6 | approval of the notice plan and any of the settlements to be |
| 7 | included within the notice plan by June 30th.  I wanted to |
| 8 | flag that for the Court.  Otherwise we will have to push all |
| 9 | of the dates back to some degree. |
| 10 | THE COURT:  I have reviewed the dates, and there's |
| 11 | no reason I can't get this done now except for including all |
| 12 | of the settlements. |
| 13 | MR. ISSACHAROFF:  Yes, Your Honor. |
| 14 | THE COURT:  I understand we have to get a few more |
| 15 | in there, but once that's done and you submit the final |
| 16 | notice to me, if you can do that by the end of June, the |
| 17 | Court will have it entered because I have reviewed the notice |
| 18 | in detail. |
| 19 | MR. ISSACHAROFF:  Thank you, Your Honor. |
| 20 | MR. HANSEL:  Your Honor, Greg Hansel, for direct |
| 21 | purchasers. |
| 22 | I'm reminded by the last comment that we |
| 23 | respectfully ask if the Court could enter the order on the |
| 24 | notice motions, which are the four orders that we are |
| 25 | submitting today with the October 3rd deadline, by the end of |

1    this week, if possible, to keep the time frame working.

2              THE COURT:  I will do that today.

3              MR. HANSEL:  Thank you, Your Honor.

4              THE COURT:  Okay.  All right.  Is there anything

5    else on this notice?  Anybody have any comment or any problem

6    with dates in there?

7              (No response.)

8              THE COURT:  All right.  I think that's it.  Does

9    anybody have anything else before we break?

10             (No response.)

11             THE COURT:  All right.  Thank you very much.  Have

12   a good summer.  Keep working.

13             THE LAW CLERK:  All rise.  Court is adjourned.

14             (Proceedings concluded at 10:54 a.m.)

15                            —   —   —

16

17

18

19

20

21

22

23

24

25

```
1                          CERTIFICATION

2

3              I, Robert L. Smith, Official Court Reporter of

4    the United States District Court, Eastern District of

5    Michigan, appointed pursuant to the provisions of Title 28,

6    United States Code, Section 753, do hereby certify that the

7    foregoing pages comprise a full, true and correct transcript

8    taken in the matter of In Re: Automotive Parts Antitrust

9    Litigation, Case No. 12-02311, on Wednesday, June 5, 2019.

10

11

12                         s/Robert L. Smith
                           Robert L. Smith, RPR, CSR 5098
13                         Federal Official Court Reporter
                           United States District Court
14                         Eastern District of Michigan

15

16

17   Date:  07/01/2019

18   Detroit, Michigan

19

20

21

22

23

24

25
```