# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: February 24, 2020

Mr. John Alexander Barnstead
Mr. Bradley Robert Love
Mr. Kendall Millard
Barnes & Thornburg
11 S. Meridian Street
Indianapolis, IN 46204

Thomas C. Bright
595 Market Street, Suite 1350
San Francisco, CA 94105

Mr. David H. Fink
Mr. Nathan Joshua Fink
Fink & Associates Law
38500 Woodward Avenue, Suite 350
Bloomfield Hills, MI 48304

Mr. Michael S. Smith
Preti, Flaherty, Beliveau & Pachios
P.O. Box 9546
Portland, ME 04112-9546

Re: Case No. 19-1150, *Performance Internet Parts, et al v. KYB Corporation, et al*
Originating Case Nos. : 2:12-md-02311 : 2:15-cv-03301 : 2:16-cv-13616

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely, Deputy Clerk

cc: Mr. David J. Weaver

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0053p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION.
_____

VIP, INC.; PERFORMANCE INTERNET PARTS, LLC,
                  *Plaintiffs-Appellees*,

    *v*.

KYB CORPORATION; KYB AMERICAS CORPORATION,
                  *Defendants-Appellants*.

> No. 19-1150

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 2:12-md-02311; 2:15-cv-03301; 2:16-cv-13616—Marianne O. Battani, District Judge.

Argued: December 5, 2019

Decided and Filed: February 24, 2020

Before: DAUGHTREY, CLAY, and GRIFFIN, Circuit Judges.
_____

## COUNSEL

**ARGUED:** Bradley Love, BARNES & THORNBURG, LLP, Indianapolis, Indiana, for Appellants. Thomas C. Bright, CERA LLP, San Francisco, California, for Appellees. **ON BRIEF:** Bradley Love, Kendall Millard, J. Alexander Barnstead, BARNES & THORNBURG, LLP, Indianapolis, Indiana, for Appellants. Thomas C. Bright, CERA LLP, San Francisco, California, David H. Fink, Nathan J. Fink, FINK BRESSACK, Bloomfield Hills, Michigan, Michael S. Smith, PRETI, FLAHERTY, BELIVEAU & PACHIOS LLP, Portland, Maine, for Appellees.

## OPINION

GRIFFIN, Circuit Judge.

The Supreme Court recently emphasized that "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (internal citation omitted). The district court concluded the first "if" did not apply to the present dispute, finding the parties did not form an agreement to arbitrate and therefore denied defendants' motion to compel arbitration. We agree and affirm.

I.

Defendant KYB Corporation (KYB) manufactures and distributes car parts throughout the United States through its subsidiary, defendant KYB Americas Corporation (KAC), to a network of retailers. Plaintiffs Performance Internet Parts, LLC and VIP, LLC (Performance, VIP, or, collectively, plaintiffs) stock and sell various replacement parts online and in retail stores. Both purchase KYB's shock absorbers from KAC, and then resell them to consumers.

Plaintiffs purchase the shock absorbers through "buying groups." These trade groups negotiate the purchasing terms and conditions on behalf of the groups' members, including pricing, rebate programs, and warranty allowances. The buying group agreements themselves do not contain an arbitration provision, nor for that matter is there an arbitration agreement contained in invoices reflecting specific purchases between the members and KAC.

Instead, we focus on the buying group agreements' reference to a "Limited Warranty." Beginning in 2016, the applicable buying group agreements provided that individual members agreed to accept an off-invoice rebate from KAC in exchange for servicing consumers' warranty issues. The agreements stated: "Distributor is responsible for warranty authentication of covered KYB products. An off-invoice warranty program is available for credit. In exchange

for the warranty allowance, [KAC] requires that you honor the terms and conditions of the current KYB Limited Warranty." One of the terms of the Limited Warranty mandates arbitration "in accordance with the Rules of the American Arbitration Association," and AAA Commercial Arbitration Rule 7(a), in turn, specifically delegates to the arbitrator the power to determine his jurisdiction.

Plaintiffs assert in this putative class action that defendants and other shock absorber manufacturers engaged in a myriad of anticompetitive activities in the auto parts industry. Defendants moved to dismiss plaintiffs' complaint pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, or, in the alternative, to dismiss all claims subject to arbitration and stay the remaining claims pending arbitration. In their view, the applicable contracts mandate that an arbitrator, not a court, decide the threshold question of arbitrability. Their argument is built on several levels of incorporation: (1) plaintiffs agreed to "honor the terms and conditions" of the Limited Warranty when they agreed to the buying group agreements; (2) one of the terms and conditions of the Limited Warranty is an arbitration clause; and (3) the arbitration clause incorporates AAA's Commercial Arbitration Rules, including its delegation provision. The district court disagreed, and defendants appeal.

II.

A.

The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). It provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts must, consistent with this text, "'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citation omitted). And we resolve "any doubts concerning the

Case 2:12-md-02311-SFC-RSW ECF No. 2040-2 PageID.37637 Filed 02/24/20 Page 6 of 13
Case: 19-1150 Document: 28-2 Filed: 02/24/2020 Page: 4 (6 of 13)

No. 19-1150          *VIP, Inc., et al. v. KYB Corp., et al.*          Page 4

scope of arbitral issues . . . in favor of arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010).

"We review *de novo* a district court's decisions regarding both the existence of a valid arbitration agreement and the arbitrability of a particular dispute." *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 311 (6th Cir. 2000). We "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The parties agree Indiana state law applies. And that law provides familiar parameters: arbitration is a matter of contract, there is a presumption of arbitrability, and "parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate." *Watts Water Tech., Inc. v. State Farm Fire & Cas. Co.*, 66 N.E.3d 983, 989 (Ind. Ct. App. 2016). Moreover, Indiana is receptive to arbitration provisions being incorporated by reference. *See Wilson Fertilizer & Grain, Inc. v. ADM Milling Co.*, 654 N.E.2d 848, 853–54 (Ind. Ct. App. 1995).

B.

Generally, "whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). "[P]arties may," however, "agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc.*, 139 S. Ct. at 529 (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). Known as a "delegation provision," "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S. at 70. There is a "caveat" to enforcing delegation provisions: we "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* at 69 n.1 (internal quotation marks and brackets omitted).

Defendants therefore frame this appeal as a delegation case, requesting that we do what many of our sister circuits have done—generally hold that an arbitration clause's incorporation

Case 2:12-md-02311-SFC-RSW ECF No. 2040-2 PageID.37638 Filed 02/24/20 Page 7 of 13
Case: 19-1150 Document: 28-2 Filed: 02/24/2020 Page: 5 Page 7 of 13 (7 of 13)

No. 19-1150                    VIP, Inc., et al. v. KYB Corp., et al.                        Page 5

of AAA's Commercial Rules suffices as "clear and unmistakable evidence" to delegate arbitrability to an arbitrator. *See Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1246 (10th Cir. 2018)[1]; *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Petrofac, Inc. v. DynMcDermott Petroleum Ops. Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208 (2d Cir. 2005). We have also assumed as much. *See Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 506 (6th Cir. 2011), *abrogated on other grounds by Henry Schein, Inc.*, 139 S. Ct. at 528–29. And we recently held nearly identical language in AAA's Employment Arbitration Rules and Mediation Procedures "shows that the parties 'clearly and unmistakably' agreed that the arbitrator would decide questions of arbitrability." *McGee v. Armstrong*, 941 F.3d 859, 866 (6th Cir. 2019).

With all that said, we need not entertain defendants' request in order to resolve this appeal, for it rests on an assumption that incorporation of AAA's Commercial Rules alone establishes that plaintiffs agreed to the arbitration clause in the first instance. However, "arbitration is a matter of contract." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citation omitted). It is axiomatic that "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *Id.* "Arbitration under the [FAA] is a matter of consent, not coercion," *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989), and "[a] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*," *Granite Rock Co.*, 561 U.S. at 297. Stated another way, "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in

---

[1]Citing *Riley Manufacturing Company v. Anchor Glass Container Corporation*, 157 F.3d 775, 780 (10th Cir. 1998), some of our sister circuits have suggested there is a circuit split on this issue. *See, e.g.*, *Petrofac*, 687 F.3d at 675. But the Tenth Circuit's decision in *Dish Network* makes clear that *Riley* "never addressed whether incorporation of the Commercial Arbitration Rules of the AAA added clear and unmistakable evidence of delegation, and there [wa]s no indication that either party raised [it] as an issue." 900 F.3d at 1248 n.3.

Case 2:12-md-02311-SFC-RSW ECF No. 2040, PageID.37639 Filed 02/24/20 Page 8 of 13
Case: 19-1150 Document: 28-2 Filed: 02/24/2020 Page: 6 (8 of 13)

No. 19-1150        *VIP, Inc., et al. v. KYB Corp., et al.*        Page 6

issue. Where a party contests either or both matters, 'the court' must resolve the disagreement." *Id.* at 299–300. Therefore, "no matter how strong the federal policy favors arbitration, arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (internal quotation marks omitted). As set forth next, we agree with the district court that the parties did not agree to arbitrate any dispute, let alone this one.

C.

We begin with an admonishment regarding defendants' disingenuous selective quotation of the Limited Warranty. Their brief presented to us the following argument:

> KAC's buying group agreements with VIP and Performance clearly and unmistakably include a valid delegation provision. VIP and Performance agreed to "honor the terms and conditions of the current Limited Warranty . . . available at kyb.com." The Limited Warranty specifies that "[a]ny disagreement, dispute, controversy or claim arising out of or relating to . . . the KYB product(s) <u>. . .</u> shall be settled by binding bilateral arbitration located in Indiana before one arbitrator in accordance with the Rules of the American Arbitration Association (AAA) and the Federal Arbitration Act (FAA)."

(Emphasis added and internal record citations omitted). The problem is the underlined third ellipsis. The omitted language provides a key limiting provision of the arbitration agreement, one that shows the arbitration agreement applies only to "original retail purchasers." Here is the text of the arbitration provision again, adding in the words defendants wish to disappear:

> Any disagreement, dispute, controversy or claim arising out of or relating to this Limited Warranty or the KYB product(s) <u>must be brought in the original retail purchaser's individual capacity and</u> shall be settled by binding bilateral arbitration located in Indiana before one arbitrator in accordance with the Rules of the American Arbitration Association (AAA) and the Federal Arbitration Act (FAA).

(Emphasis added).

Indiana law mandates that we "begin with the plain language of the contract, reading it in context and, whenever possible, construing it so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole." *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012). No plain language reading of this arbitration provision

Case 2:12-md-02311-SFC-RSW ECF No. 2040, PageID.37640 Filed 02/24/20 Page 9 of 13
Case: 19-1150   Document: 28-2   Filed: 02/24/2020   Page: 7   (9 of 13)

No. 19-1150                    VIP, Inc., et al. v. KYB Corp., et al.                    Page 7

evidences an intent to bind anyone to arbitration other than "original retail purchasers." Indeed, the remainder of the arbitration provision reinforces this point, using that phrase six more times.

So, the question then becomes, are plaintiffs "original retail purchasers"? The terms of the contracts answer this question. The Limited Warranty clearly differentiates between "original retail purchasers" and "authorized KYB product sellers." Start with its scope:

> [KAC] warrants to the <u>original retail purchaser</u> that each new KYB product . . . purchased from an <u>authorized KYB product seller</u> shall be free from defects in material and workmanship . . . when used on private passenger cars and light trucks for personal use under normal operating conditions.

(Emphasis added). And consider its coverage of the parts defendants allegedly conspired to sell in an anticompetitive manner. The Limited Warranty warrants "KYB Shock Absorbers" for a "lifetime," which it defines as "for as long as the original retail purchaser owns the vehicle on which the KYB products were originally installed." Plainly, an "original retail purchaser" is the consumer who purchases a KYB shock absorber from a "distributor," to be used on their own personal vehicle. We put "distributor" in quotes because that is the exact way the buying group agreements themselves refer to plaintiffs. ("<u>Distributor</u> is responsible for warranty authentication of covered KYB products.") (Emphasis added).

Because plaintiffs are not "original retail purchasers" under the terms of the arbitration provision, the parties did not form an agreement to arbitrate. *Cf. Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC*, 485 F. App'x 821, 825 (6th Cir. 2012) ("[W]hen a party objects to the arbitrator's authority to decide the arbitrability issue in the first instance, *AT & T Technologies* and *First Options* provide that he has a right to judicial determination of the issue unless he and the other party have clearly and unmistakably agreed otherwise. That is, the analysis concerns contract formation principles. . . . Only if the parties have agreed to arbitrate do the AAA's rules apply." (internal citation omitted)).

Defendants resist this conclusion on several grounds.

They highlight that "[g]eneral rules of contract interpretation . . . direct [courts] to read [incorporated documents] together so as to give effect to all words, phrases, and terms." *Bay Colony Civic Corp. v. Pearl Gasper Tr.*, 984 N.E. 2d 231, 235 (Ind. Ct. App. 2013). As such,

Case 2:12-md-02311-SFC-RSW ECF No. 2040 PageID.37641 Filed 02/24/20 Page 10 of 13
Case: 19-1150 Document: 26-2 Filed: 02/24/2020 Page: 8 (10 of 13)

No. 19-1150          VIP, Inc., et al. v. KYB Corp., et al.          Page 8

they contend that "[i]n order for the agreement to 'honor the terms and conditions of the current KYB Limited Warranty' to have meaning, provisions in the separate Limited Warranty must apply to VIP and Performance." We agree we must apply this principle but disagree with defendants' suggested application.

For one, the buying group agreements make clear that "distributors [are] responsible for warranty authentication of covered KYB products" in exchange for receiving a "warranty allowance" from KAC. And in exchange for this warranty allowance, distributors agreed not only to "honor" the Limited Warranty's "terms and conditions," but also to do several things that clearly implicate their obligations in *servicing* warranty claims for *consumers*. For instance, plaintiffs agreed to make the Limited Warranty available to "all purchasers . . . as required by the Federal Trade Commission."

And for another, the plain terms of the Limited Warranty provide a way for distributors to "honor" their commitment to defendants. Most telling is the Limited Warranty's "how to make a warranty claim" section. It details not only how consumers may return defective products, but also sets forth KYB's obligations to receive and process such products. Read together with the buying group agreements' language providing that plaintiffs stand in the shoes of KYB to service some of KYB's warranty obligations, the Limited Warranty mandates that consumers return products they think are defective to distributors, which distributors must inspect, and upon satisfaction that the products are covered under the warranty, the distributors must replace/exchange the part for the consumer.

In an effort to avoid this natural reading, defendants attempt to draw a contrast between the arbitration agreement's broad what-kind-of-claim language ("Any disagreement, dispute, controversy or claim arising out of or relating to this Limited Warranty or the KYB product(s)") and the "original retail purchaser" limitation by arguing the latter "does not restrict the scope of the agreement." That is nonsensical, as the two provisions operate independently: One defines the "what" (disagreement, dispute, controversy or claim) and one defines the "who" (original retail purchasers). To give effect to the arbitration agreement, we must read both restrictions, not just one. *Cf. Solvay Pharm., Inc. v. Duramed Pharm., Inc.*, 442 F.3d 471, 478 (6th Cir. 2006) ("If [a] limitation [on an arbitrator's power] appears in close proximity to the arbitration clause,

Case 2:12-md-02311-SFC-RSW ECF No. 2040, PageID.37642 Filed 02/24/20 Page 11 of 13
Case: 19-1150 Document: 26-2 Filed: 02/24/2020 Page: 9 (11 of 13)

No. 19-1150         *VIP, Inc., et al. v. KYB Corp., et al.*         Page 9

there is good reason to believe that the parties considered it to be a limitation on the proper subjects for arbitration."). Accordingly, it is defendants' interpretation that would render contractual terms—i.e., the "brought in the original retail purchaser's individual capacity" limitation—meaningless.**[2]**

Defendants additionally note that delegation clauses are separate, severable arbitration provisions, *see, e.g.*, *Rent-A-Center*, 561 U.S. at 70–72, and ask us to enforce the delegation provision independent from the arbitration provision. *Id.* at 72 ("[U]nless [a party seeking to avoid arbitration] challenge[s] the delegation provision specifically, we must treat it as valid . . . , and must enforce it . . . , [and] leav[e] any challenge to the validity of the Agreement as a whole for the arbitrator."). But *Rent-A-Center* also makes clear "that [just because] agreements to arbitrate are severable does not mean that they are unassailable." *Id.* at 71. The Court continued: "If a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement." *Id.*; *see also New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019) (similar).

We therefore refuse defendants' invitation for us to merge challenges to the validity of an agreement ("whether it is legally binding") with challenges to the existence of an agreement in the first instance ("whether it was in fact agreed to" or "was ever concluded"). *See, e.g.*, *Rent-A-Center*, 561 U.S. at 69 n.1, 71 & n.2; *see also Granite Rock*, 561 U.S. at 299–300 ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue. Where a party contests either or both matters, 'the court' must resolve the disagreement."); *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 990 (11th Cir. 2012) (agreeing that *Granite Rock*'s

---

**[2]**Nor does the Indiana state court case of *Wilson* control the outcome of this case as defendants insist. There, the parties agreed to a contract for the purchase of grains, and then the defendant sent the plaintiffs additional terms in its purchase confirmation providing the contract was "subject to the Trade Rules of the National Grain and Feed Association," which in turn mandated arbitration. 654 N.E.2d at 849. *Wilson* thus turned on whether these additional terms "materially alter[ed] the agreement," and the Indiana Court of Appeals held they did not. *Id.* at 850. There being no additional terms unagreed to here, *Wilson* is inapposite.

No. 19-1150                     *VIP, Inc., et al. v. KYB Corp., et al.*                     Page 10

formation inquiry precedes the arbitrability question).[3]  Because plaintiffs did not consent to any type of arbitration, we will not coerce them otherwise.  *See Volt*, 489 U.S. at 479; *AT & T Techs.*, 475 U.S. at 648; *Simon*, 398 F.3d at 775.

### III.

For these reasons, we affirm the district court's judgment.

---

[3]Given this, we need not address VIP's argument that because it stopped purchasing KYB shock absorbers in 2010, it did not agree to the buying group agreements.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 19-1150

In re: AUTOMOTIVE PARTS ANTITRUST LITIGATION.
_____

VIP, INC.; PERFORMANCE INTERNET PARTS, LLC,

    Plaintiffs - Appellees,

  v.

KYB CORPORATION; KYB AMERICAS CORPORATION,

    Defendants - Appellants.

> **FILED**
> Feb 24, 2020
> DEBORAH S. HUNT, Clerk

Before: DAUGHTREY, CLAY, and GRIFFIN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's denial of defendants' motion to compel arbitration is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_____
Deborah S. Hunt, Clerk